Jay M. Wolman (D.C Bar No. 473756)
Marc J. Randazza (*pro hac vice* pending)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: (702) 420-2001
ecf@randazza.com

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

**DR. JEROME CORSI** and **LARRY KLAYMAN**,

      Plaintiffs,

  vs.

**INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, ALEX E. JONES, DAVID JONES,** and **OWEN SHROYER**,

      Defendants.

CIVIL ACTION NO. 1:19-cv-00656-ESH

**MOTION TO DISMISS**

    We are most definitely in the wrong court.  A New Jersey commentator and his Florida lawyer are suing three Texans and two Texas companies in the District of Columbia.  There is no personal jurisdiction over the defendants, which Plaintiffs do not even claim in their Complaint, and venue in this forum is specious.

    Not only should this matter not have been filed here, it should not be filed anywhere.  None of the speech at issue constitutes actionable defamation, nor may it be repurposed to fit any other tort theory, including intentional infliction of emotional distress and assault.  Further, the speech is not commercial speech under the Lanham

Act and, in the absence of any tort, it is not unfair competition.  This matter should be dismissed.

### STATEMENT OF POINTS AND AUTHORITIES

**1.0    Factual Background**

Plaintiffs Jerome Corsi and Larry Klayman generally allege that Defendants Alex Jones and Owen Shroyer broadcast radio and internet programs through Defendants Infowars, LLC, and Free Speech Systems, LLC.  *See* Complaint, Dkt. No. 1, at ¶¶ 11-13. They further allege that Alex Jones and David Jones own, control, and operate Defendants Infowars and Free Speech Systems.  *Id*. at ¶ 11.[1]

Alex Jones, David Jones, and Owen Shroyer are all citizens of Texas.  *Id*. at ¶¶ 8-10.  Infowars and Free Speech Systems are limited liability companies organized and headquartered in Texas, owned by a Texan.[2]  *Id*. at ¶¶ 6-9.

Plaintiffs make certain factual allegations as to the various defendants,[3] asserting that their statements constitute defamation, intentional infliction of emotional distress,

---

[1] In actuality, Defendant Infowars plays no role in the broadcast or distribution of the identified programs and they are solely owned and controlled by Alex Jones. However, such facts are immaterial to the issues of personal jurisdiction and venue, even assuming all allegations by Plaintiffs were true.

[2] Although Alex Jones, not David Jones, is the actual owner of these entities, the citizenship of the companies remains that of Texas.

[3] Plaintiffs also claim that Defendants worked in concert with non-party Roger Stone in violation of 18 U.S.C. § 1512.  *See* Complaint at ¶¶ 36-37.  No actual cause of action is asserted; moreover, this Court has properly held that, as to 18 U.S.C. §§ 1512 & 1513, "these criminal statutes do not confer a private right of action, so their venue provisions are irrelevant to a civil case." *Kazenercom Too v. Turan Petroleum, Inc*., 590 F. Supp. 2d 153, 159 n.9 (D.D.C. 2008) (Huvelle, J.).  To the extent Plaintiffs rest on allegations made in other litigation (Complaint at ¶ 36), no actual allegations regarding the claims at issue were presented in those matters.  To establish personal jurisdiction based on Defendants' alleged conspiracy with the defendants in those matters, Plaintiffs "must plead *with particularity* the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." *Jungquist v. Sheikh Sultan Bin Khalifa Al*

unfair competition, and *assault*.[4]   They make the following allegations as to each Defendant:

a) <u>Alex Jones</u>:

    I.   October 26, 2018 Video:   Says Dr. Corsi "seemed to be mentally degraded to the point of what I would call dementia"; says he saw Dr. Corsi at a steakhouse "on the ground" where staff "though he was dead in the elevator"; says he thinks Dr. Corsi suffered a stroke with the result that "whatever comes out of his mouth ain't the truth."   Complaint at ¶¶ 42-46.

    II.   January 21, 2019 Video:   Allegedly accused Dr. Corsi of being a "spook" and "not being able to walk." *Id.* at ¶¶ 68-69.

b) <u>Owen Shroyer</u>:

    I.   January 18, 2019 Video:  Appeared on video with Roger Stone, a Florida citizen and resident,[5] where **Mr. Stone allegedly said** Dr. Corsi was "fired from World Net Daily"; that Dr. Corsi perjured himself; that Dr. Corsi had a "feeble alcohol affected memory"; that Dr. Corsi "was perfectly prepared to bear false witness"; that Dr. Corsi made up a story; and that Dr. Corsi is "lying because his lips are moving"[6]

---

*Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (emphasis added) (internal quotation marks omitted).   Plaintiffs do not make such a particular pleading about any such overt acts in the District of Columbia.

[4] Defendants deny that these statements are actionable and assert that the statements otherwise constitute speech protected by the First Amendment.

[5] Dr. Corsi, through Larry Klayman, alleged Mr. Stone's residency and citizenship as being that of Florida in Paragraph 4 of their companion suit, *Corsi v. Stone,* Case No. 1:19-cv-00324 (D.D.C. Feb. 7, 2019).

[6] Mr. Shroyer is not accused of saying or doing anything more than happening to be in the same frame as Stone when Stone made these statements.

RANDAZZA · | LEGAL GROUP

II.   January 18, 2019 Video:  Appeared on video with Roger Stone, where **Mr. Stone allegedly said** that Mr. Klayman "never actually  won a courtroom victory"; that Mr. Klayman was "ousted" from employment due to sexual misconduct; and that Klayman is a "piece of garbage", "incompetent",  "a numbskull", "an idiot", "an egomaniac" and "could be the single worst lawyer in America" whose IQ is not "higher than 70". Complaint at ¶¶ 48-63.

c) Infowars:

I.   January 17, 2019 Video:  Roger Stone allegedly said that Dr. Corsi was "willing to bear false witness".  Complaint at ¶ 65.

II.   January 21, 2019 Video:   Roger Stone allegedly said that Dr. Corsi had lied about Stone, Infowars, Alex Jones, and David Jones" and that Dr. Corsi was "deep state", calling him a "fraudster" who "made up lies" in an "alcoholic haze". *Id*. at ¶¶ 66-67.[7]

No other pertinent factual allegations are asserted,[8] with none specifically about Free Speech Systems beyond being allegedly liable for the statements due to its corporate role in broadcasting them.

For David Jones, Plaintiffs allege that he holds the official title of Director of Human Relations for Free Speech Systems and incorrectly claim "[o]n information or belief," that he "is the owner of Defendants Infowars and Free Speech Systems, and he manages

---

[7] It is important to note that in this allegation, no defendant is alleged to have said anything – Mr. Jones is merely alleged to be on camera at the same time that Roger Stone said these things.

[8] Plaintiffs include significant unrelated matter, turning their Complaint into a "free for all".  *See USA v. Stone*, Case No. 1:19-cr-00018 (D.D.C. Feb. 28, 2019) (striking filing from Mr. Klayman on behalf of Dr. Corsi and admonishing them upon the filing of improper matter).

RANDAZZA | LEGAL GROUP

the business activities for [those companies] as well as Alex Jones' other companies."[9] Complaint at ¶ 9. They also allege that "he worked in concert with the other Defendants and Roger Stone" but they do not allege, nor can they, that he made any false or defamatory statements about Plaintiffs. *Id.*

## 2.0   Legal Standard

### 2.1   No Personal Jurisdiction - Fed. R. Civ. P. 12(b)(2)

Plaintiffs "bear the burden of establishing a basis for exercising personal jurisdiction." *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 172 (D.D.C. 2018) (Huvelle, J.) citing *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990). As further set forth by the Court in *Cockrum:*

> the Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (citation omitted); *see also Houlahan v. Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013). "Mere conclusions or 'bare allegation[s]' do not constitute the prima facie case for jurisdiction that this standard requires." *Fawzi v. Al Jazeera Media Network*, 273 F. Supp. 3d 182, 186 (D.D.C. 2017) (alteration in original) (citation omitted). "Under District of Columbia law, personal jurisdiction is determined as of the commencement of an action." *Roz Trading Ltd v. Zeromax Grp., Inc.*, 517 F. Supp. 2d 377, 384 (D.D.C. 2007).

319 F. Supp. 3d at 172.  Plaintiffs make no allegations, let alone bare ones, to support personal jurisdiction in the District of Columbia.

### 2.2   Improper Venue - Fed. R. Civ. P. 12(b)(3)

The District of Columbia is an improper venue.  Once more, in *Cockrum*, the Court observed:

> The "question—whether venue is 'wrong' or 'improper'—is generally governed by 28 U.S.C. § 1391." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 134 S. Ct. 568, 577, 187 L. Ed. 2d 487 (2013) (citation omitted). … However, a plaintiff has the burden of demonstrating

---

[9] David Jones is not actually an owner of these companies, but this is not material to the analysis.

that venue is proper once challenged and "[t]he Court . . . need not accept the plaintiff's legal conclusions as true."]  *Fam v. Bank of Am. NA (USA)*, 236 F. Supp. 3d 397,] 406 [(D.D.C. 2017)]; *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 212 (D.D.C. 2014).

319 F. Supp. 3d at 173.  None of the alleged events, let alone a substantial part, occurred in the District of Columbia; the action can properly be brought in the Western District of Texas.

### 2.3   Failure to State a Clam

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### 3.0   Analysis

### 3.1   This Court Lacks Personal Jurisdiction Over Defendants

To subject a defendant to the jurisdiction of the Court, both Constitutional due process and the D.C. Long Arm statute must be satisfied.[10]  *See Cockrum*, *supra* at 173,

---

[10] The D.C. long-arm statute, D.C. Code Ann. § 13-423, is "coextensive with the due process clause." *Copeland-Jackson v. Oslin*, 555 F. Supp. 2d 213, 216 (D.D.C. 2008) (Huvelle, J.) quoting *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004). Thus, the "statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry here." *Id*. quoting *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

citing *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) and *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991).   "To show that the exercise of jurisdiction would comply with the constitutional *requirements* of due process, a plaintiff must demonstrate that there are 'minimum contacts between the defendant and the forum establishing that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Swecker v. Midland Power Coop.*, 253 F. Supp. 3d 274, 278 (D.D.C. 2017) (citation omitted).   The Court may "exercise either general or specific personal jurisdiction." *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 41 (D.D.C. 2018).   Neither is present here.

### 3.1.1   Defendants Are Not Subject to General Jurisdiction

The individual defendants are not subject to general jurisdiction in the District of Columbia.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).   Plaintiffs correctly plead that Alex Jones, David Jones, and Owen Shroyer are all Texas citizens.   Similarly, Infowars and Free Speech system are incorporated in and have their principal places of business in Texas.   "A corporation with a state of incorporation and principal place of business outside of the District cannot be regarded as 'at home' in the District simply because … it conducts business activity in the District." *Cockrum*, *supra* at 174, citing *Duarte v. Nolan*, 190 F. Supp. 3d 8, 15 (D.D.C. 2016).   Thus, no defendant is subject to general jurisdiction in the District of Columbia.

---

Looking solely at the statute, however, even that is not met.   "Publishing defamatory statements within the District that were made outside the District does not meet the terms of" D.C. Code § 13-423(a)(4).  *Hourani v. Psybersolutions LLC*, 164 F.Supp.3d 128, 138 (D.D.C. 2016).  Nor are there any allegations that Plaintiffs – who are New Jersey and Florida citizens – suffered "tortious injury in the District of Columbia" as required under D.C. Code § 13-423(a)(4).   No other portion of the long-arm statute applies.

### 3.1.2   Defendants Are Not Subject to Specific Jurisdiction

"For this Court to exercise specific personal jurisdiction over defendants their 'suit-related conduct must create a substantial connection with' the District." *Cockrum, supra,* at 175 quoting *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014).  "[C]ourts must insure that 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there.'" *GTE*, 199 F.3d at 1347, quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "A plaintiff must show a more exacting nexus between a defendant's contacts and the plaintiff's claims to support a finding of specific jurisdiction." *Cockrum, supra*, at 177.  Plaintiffs do not plead a single suit-related contact by Defendants giving rise to specific jurisdiction.

Mentions of Defendants' contacts with the District of Columbia are only alleged as incidental to their world-wide broadcast.[11]  Defendants' content is "posted and broadcast into this district, nationally and internationally."   Complaint at ¶ 11. Defendants Alex Jones and Shroyer host shows broadcast "throughout the United States of America and internationally, including this judicial district, and online."  *Id.* at ¶¶ 12-13.  Defendants and Stone allegedly "do substantial business and promote and sell various goods in this juridical district and nation-wide."  *Id.* at ¶ 15; and see *id.* at ¶ 16. Non-party Stone allegedly "began a public relations campaign in this district, nationally

---

[11] Plaintiffs' sole connection to the District of Columbia appears to be that Plaintiff Corsi allegedly publishes unrelated works in the district.  Complaint at ¶ 4.  However, assuming *arguendo* Plaintiffs suffered some cognizable injury in the District, "these injuries cannot serve as an independent basis for exercising personal jurisdiction over an out-of-state defendant that does not have sufficient in-forum contacts, as the Supreme Court has held, 'the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.'" *Cockrum, supra* at 183, quoting *Walden*, 134 S. Ct. at 1122.

and internationally" to defame Plaintiffs. *Id.* at ¶ 26. Stone's January 18, 2019 statements were allegedly made "in this district, nationally and internationally". *Id.* at ¶ 48. Defendants allegedly compete with Plaintiffs "in media markets in this district, nationally and internationally." *Id.* at ¶ 64. Defendants allegedly published defamatory statements "in this judicial district, nationwide, and worldwide." *Id.* at ¶ 77; *see also id.* at ¶ 83 ("statements were published in this district and on the internet and elsewhere, domestically and for the entire world to see and hear"); *id.* at ¶ 89 ("statements were published on the internet and published and republished elsewhere in this district, domestically and for the entire world to see and hear."; and *id.* at ¶ 109 (alleged statements "were widely broadcast on radio, on the internet, in social media, and elsewhere in this district, nationally and internationally.").

The mere fact that Defendants' broadcasts reach the District of Columbia, as but a part of the nation and the world, is insufficient forum-related contacts.[12] *Compare Hourani v. PsyberSolutions LLC*, 164 F. Supp. 3d 128, 139 (D.D.C. 2016) (discussing precedent where "[e]ven though the information on the website could be viewed by Internet users everywhere, this fact did not create nationwide personal jurisdiction. The

---

[12] To the extent Plaintiffs seek to assert Defendants Alex Jones, David Jones, and Owen Shroyer are subject to personal jurisdiction in the District of Columbia should the Court determine that one of the corporate entities is, such does not automatically follow. "Under the fiduciary shield doctrine, personal jurisdiction over a corporate officer may not be asserted based on 'contacts with the forum [that] are exclusively in relation to the defendant's corporate responsibility.'" *Mouzon v. Radiancy, Inc.*, 85 F. Supp. 3d 361, 371 (D.D.C. 2015) quoting *Nat'l Cmty. Reinvestment Coal v. NovaStar Fin., Inc.*, 631 F. Supp. 2d 1, 5 (D.D.C. 2009). Rather, "[p]ersonal jurisdiction over officers of a corporation in their individual capacities must be based on their personal contacts with the forum, not their acts and contacts carried out solely in a corporate capacity." *Overseas Partners, Inc., v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti,* 15 F.Supp.2d 47, 51 (D.D.C. 1998). Plaintiffs do not allege any such personal contacts of those defendants in their personal capacities with the District of Columbia.

RANDAZZA · LEGAL GROUP

critical fact for the determination of personal jurisdiction was where the tortious injury occurred"). In *Copeland-Jackson, supra*, the Court considered a defamation claim in which the D.C.-resident plaintiff was referred-to as a pedophile in an online publication, stating:

> The D.C. Circuit has made clear that the mere act of 'writing an article for a publication that is circulated throughout the nation, including the District, hardly constitutes doing or soliciting business, or engaging in a persistent course of conduct within the District.' *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996) (emphasis in original). ... Furthermore, the D.C. Circuit has also explained that 'personal jurisdiction . . . cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District.' *GTE New Media Services Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000). *See also Young v. New Haven Advocate*, 315 F.3d 256, 262-63 (4th Cir. 2002) ('[A]pplication of *Calder* in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly targeted or directed to the forum state.') Plaintiff has therefore failed to make any showing that defendants purposefully availed themselves of the privilege of doing business in the District, such that the exercise of jurisdiction over them would not offend due process. Plaintiff's complaint must therefore be dismissed under Fed. R. Civ. P. 12(b)(2).

555 F. Supp. 2d at 216-17. Personal jurisdiction is absent where a plaintiff cannot show "that the defendants purposefully availed themselves of the District of Columbia any more than they availed themselves of every other jurisdiction in which their website was accessible." *Hayes v. FM Broadcast Station WETT (FM)*, 930 F. Supp. 2d 145, 151-52 (D.D.C. 2013). Similarly, Defendants' and Mr. Stone's online broadcasts do not solicit business or engage in conduct in the District of Columbia and it is not expressly targeted or directed to it. That it may relate to the Special Counsel's investigation is no more targeted or directed to D.C. than the Ashland Times Gazette's article about Mr. Copeland-Jackson.

Neither does the Complaint satisfy the *Calder* effects test. "[T]here is nothing as yet to indicate that the defendants engaged in unabashedly malignant actions directed at or felt in this forum." *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (2000) citing *Panavision Int'l, Ltd. P'ship v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (itself citing *Calder v. Jones*, 465 U.S. 783 (1984)).  Under the doctrine, "personal jurisdiction may rest upon '(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered -- and which the defendant knows is likely to be suffered -- in the forum state.'" *Kline v. Williams*, 2006 U.S. Dist. LEXIS 23263, *17, 2006 WL 758459 (D.D.C. 2006) quoting *Panavision, supra* at 1318.  Plaintiffs cannot meet these elements.  The statements were no more aimed at the District of Columbia than to any other state and Plaintiffs' alleged harm was not suffered, and would not have been known to be suffered, in the District of Columbia.  D.C. is not the "focal point" of the statements. *Kline*, *supra* at * 19 n. 9.  None of the statements refer to D.C. or the Special Counsel's investigation.[13]  Even if they did, "[t]here is also no support for the proposition that merely speaking about a forum (or about entities within that forum)— e.g., producing a film about or seeking employment with the federal government, discussing one's relationships with federal government officials—can confer specific jurisdiction in the absence of identifiable forum contacts." *Bauman v. Butowsky*, 2019 U.S. Dist. LEXIS 54507, *10 (D.D.C. Mar. 28, 2019).  None of the allegations relate to Plaintiffs' ability to access the D.C. media market or sell books there.  Thus, the matter should be dismissed for lack of personal jurisdiction.

---

[13] This is not to say that even discussing the Special Counsel's investigation or the prosecution of Roger Stone, or Corsi's status as a witness, makes D.C. a focal point.  In fact, "[c]ourts have also generally held that a defendant's contacts with the United States government do not factor into the personal jurisdiction analysis." *Lewy v. Southern Poverty Law Ctr., Inc.*, 723 F.Supp.2d 116, 125 (D.D.C. 2010).

RANDAZZA · LEGAL GROUP

### 3.2   The District of Columbia is an Improper Venue

Plaintiffs assert that venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) & (3), claiming that "a substantial part of the events or omissions giving rise to Plaintiffs' claims arose in this district." Complaint at ¶ 3. Specifically, they claim that the statements are intended to influence the Special Counsel's investigation and prosecution of Roger Stone in the district, and that the other alleged statements at issue "occurred herein", presumably meaning in the District of Columbia. *Id.* Venue is not proper in this district.

Under section 1391(b)(2), "[a] civil action may be brought in . . . a judicial district in which a *substantial* part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2)(emphasis added). Again, this Court's decision in *Cockrum* controls, where it observed:

> "[W]here 'the claim arose' should . . . be ascertained by advertence to events having operative significance in the case, and a commonsense appraisal of the implications of those events for accessibility to witnesses and records." *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978). Peripheral and tangential events occurring in the district will not establish venue. *See Ciralsky v. CIA*, 689 F. Supp. 2d 141, 161 (D.D.C. 2010). "[P]laintiffs must show that a considerable portion of the events took place in their chosen forum." *Perlmutter v. Varone*, 59 F. Supp. 3d 107, 110 (D.D.C. 2014).

319 F. Supp. 3d at 190. The events having operative significance occurred in Texas—all the statements were allegedly made on programs originating from there. No portion, let alone a considerable one, took place in D.C. The Special Counsel's investigation is peripheral and tangential. Reliance on "on vague allegations of conspiratorial activity possibly occurring in the District" is insufficient. *Cockrum, supra* at 190.

1    Under section 1391(b)(3), "if there is no district in which an action may otherwise
2    be brought as provided in this section," then the case may be   brought in "any judicial
3    district in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. §
4    1391(b)(3).  However, Defendants are subject to the general jurisdiction of the courts in
5    Texas, including the Western District of Texas, where Austin is situated and Defendants
6    are resident.  Compare *Amr v. Virginia*, 58 F. Supp. 3d 27, 31-32 (D.D.C. 2014) (dismissing
7    action where case could be brought in the Eastern District of Virginia).

8    Defendants recognize that, "[u]pon a showing that venue in this district is
9    improper, a court 'shall dismiss, or if it be in the interest of justice, transfer such case to
10   any district or division in which it could have been brought.'" *Amr*, *supra*, at 32 quoting
11   28 U.S.C. § 1406.  Although transfer is favored when a plaintiff is *pro se*, Mr. Klayman is an
12   experienced attorney and is also representing Dr. Corsi in this matter.  *See James v.*
13   *Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 15 (D.D.C. 2009) Thus, his *pro se* status should hold
14   no weight.   Further, another "consideration is whether transfer would prejudice
15   Defendant's position on the merits." *Id.* (citing *Sinclair v. Kleindienst*, 711 F.2d 291, 293-94
16   (D.C. Cir. 1983)) (internal quotation marks and citation omitted).  Here, Defendants
17   would be prejudiced by a transfer as they will have not been able to move for dismissal
18   on the merits in conjunction with a motion under the Texas Citizens Participation Act.
19   Unlike the analogous D.C. anti-SLAPP statute, "[t]he Fifth Circuit has not decided
20   whether the TCPA applies in federal court when a court exercises its diversity or
21   supplemental jurisdiction over state-law claims." *N.P.U., Inc. v. Wilson Audio Specialties,*
22   *Inc.*, 343 F. Supp. 3d 661, 665 (W.D. Tex. 2018).  Plaintiffs' claims are outrageous, seeking
23   $50,000,000 each here,[14] filed without any risk that the common law claims would be
24   subject to fee shifting.  Plaintiffs are fully capable of litigating in Texas and deciding for

25   ───────────────
     [14] They claim similar damages in a separate case against Mr. Stone, but it is only
26   for a mere $25,000,000.

27

RANDAZZA · LEGAL GROUP

1  themselves whether they truly believe their claims have merit to warrant refiling there.

2  Thus, dismissal, rather than transfer, is proper.

### 3.3   Plaintiffs have No Actionable Defamation Claim

4  Plaintiffs first three causes of action sound in defamation.  To state a defamation

5  claim under D.C. tort law, a plaintiff must adequately plead: "(1) that he was the subject

6  of a false and defamatory statement; (2) that the statement was published to a third

7  party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff

8  suffered either actual or legal harm." *Farah v. Esquire Mag.*, 736 F.3d 528, 533-34 (D.C.

9  Cir. 2013). Plaintiffs cannot meet these elements.

### 3.3.1   As a Matter of Law, Plaintiffs Cannot Prove the Statements Are

### False or Defamatory

12  The statements at issue are generally neither false nor defamatory, whether

13  viewed directly or by implication.[15]  "Actionable statements must be *both* false and

14  defamatory" *Deripaska v. AP*, 282 F. Supp. 3d 133, 141 (D.D.C. 2017) (Huvelle,

15  J.)(emphasis in original).  The Court must consider whether the allegations "(1) contains

16  [] express or implied verifiably false statements of fact, which (2) are reasonably

17  capable of defamatory meaning or otherwise place [Plaintiffs] in an offensive false

18  light." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 623 (D.C. Cir. 2001).  More specifically,

19  in *Copeland-Jackson,* this Court observed:

> To make out a claim for defamation, plaintiff must demonstrate by a
> preponderance of the evidence that the statements made about him
> were false. *Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001) (citing *Moldea
> v. New York Times Co.*, 15 F.3d 1137, 1142 (D.C. Cir. 1994)). The truth of the

---

[15] "A defamation by implication…is not treated any differently than a direct defamation once the publication has been found capable of a defamatory meaning. A defendant may escape liability if the defamatory meaning is established as true or as constitutionally protected expression." *White v. Fraternal Order of Police*, 909 F.2d 512, 523 (D.C. Cir. 1990).

RANDAZZA · LEGAL GROUP

1
2
3

publication is a complete defense in a libel action. *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 59 (D.D.C. 2002). If a publication is substantially true, then it is "true" as a legal matter for defamation purposes. *See Benic v. Reuters America, Inc*., 357 F. Supp. 2d 216, 221 (D.D.C. 2004).

4   *Copeland-Jackson v. Oslin*, 555 F. Supp. 2d 213, 217 (D.D.C. 2008).  "Where the question

5   of truth or falsity is a close one, a court should err on the side of nonactionability." *Liberty*

6   *Lobby, Inc. v. Dow Jones & Co*., 838 F.2d 1287, 1292 (D.C. Cir. 1988).

7            Further, "'imaginative expression' and 'rhetorical hyperbole' are not actionable

8   in defamation because 'they cannot reasonably be interpreted as stating actual facts

9   about an individual.'" *Ford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 596-7 (D.C. 2000)

10  (quoting *Milkovich v. Lorain Journal Co.*, 491 U.S. 1, 2 (1990)).  Additionally, "although a

11  statement of opinion can be actionable where it implies 'a provably false fact, or rel[ies]

12  upon stated facts that are provably false,' 'if it is plain that a speaker is expressing a

13  subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming

14  to be in possession of objectively verifiable facts, the statement is not actionable.'"

15  *Deripaska v. AP*, 282 F. Supp. 3d 133, 141 (D.D.C. 2017) quoting *Guilford Transp. Indus. v.*

16  *Wilner*, 760 A.2d 580, 597 (D.C. 2000) (internal citation omitted).  The determination of

17  "[w]hether a statement 'asserts actionable facts or implies such facts is a question of law

18  for the court to determine as a threshold matter.'" *Montgomery v. Risen*, 197 F.Supp.3d

19  219, 247-48 (D.D.C. 2016) (quoting *Moldea v. N.Y. Times Co*., 15 F.3d 1137, 1144 (D.C. Cir.

20  1994).  Just as Mr. Klayman could not meet his burden in *Klayman v. Segal,* he and his

21  client cannot do so here.

22           At the outset, it must be noted that there are no allegations that Defendants

23  David Jones, Owen Shroyer, Infowars, or Free Speech Systems themselves made any

24  false statements at all.[16]  All of the statements at issue were either made by Defendant

25
26

---

[16] As discussed below, Plaintiffs cannot show any fault, let alone actual malice, in Defendants broadcasting statements made by others.

27

Alex Jones or non-party Roger Stone.   Accordingly, all other defendants should be dismissed without further analysis being necessary.

As to the statements by Alex Jones in the October 26, 2018, video,[17] these are all substantially true, non-defamatory, and/or statements, in their context, of opinion or rhetorical hyperbole.

1)   "when I was in DC about six months ago with dr. [sic] Corsi he seemed to mentally be extremely degraded to the point of what I would call dementia."   See Complaint at ¶ 43 and **Exhibit 1**. Although Plaintiffs refer to this statement as "false", they do not assert a particular falsehood.   They do not assert it is factually false that Mr. Jones observed Dr. Corsi at that time and place.   The remainder is Mr. Jones's opinion based on his observation, *i.e.*, what it **"seemed"**.   Accord *Q Intern. Courier, Inc. v. Seagraves*, 1999 U.S. Dist. LEXIS 23355 at *6 (D.D.C. Feb. 26, 1999)("the inclusion of cautionary language" favors "treating the statement that follows as an expression of opinion."); *Bauman v. Butowsky*, *supra* at *20 ("seemed" is "subjective" and "unverifiable").

2)   "[Corsi]'s on the ground at another table we had to help him out of there man they thought he was dead in the elevator".   *See* Complaint at ¶ 44 and **Exhibit 1**. Whether or not third parties thought Dr. Corsi was dead, which he discloses was based on them "listening to his chest", is merely a report of their opinions.   Neither is there any defamatory meaning in a statement about whether Dr. Corsi may have passed out.

---

[17]   Plaintiffs' claims arise from the video at the URL cited at footnote 9 of their Complaint.   A copy of the closed captions embedded in that video at that URL appears at **Exhibit 1**.   In deciding a motion to dismiss "a court is not limited to the facts alleged in the complaint, but also may consider documents attached to or incorporated by reference in the complaint, matters about which the court may take judicial notice, and any documents appended to a motion to dismiss whose authenticity is not disputed if they are referred to in the complaint and are integral to a claim." *GenopsGroup LLC v. Pub. House Invs. LLC*, 67 F. Supp. 3d 338, 341 (D.D.C. 2014)(Huvelle, J.) citing *U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 24 (D.D.C. 2010) and Fed. R. Civ. P. 10(c).

3)  "[Corsi] had a stroke or whatever's going on with Corsi that whatever comes out of his mouth ain't the truth".  *See* Complaint at ¶ 45 and **Exhibit 1**.  Although, in isolation, these might sound like false statements of fact, in context Mr. Jones had earlier said "*I think he's got dementia or a stroke I mean I don't know*", describing him as having had "*a really sharp brain until about a year ago*", and then relaying his grandfather's mental demise following a heart attack.  *See* **Exhibit 1**.  Thus, Mr. Jones did not call Dr. Corsi an intentional liar, but rather one who he believes Corsi said things in error based on his observations of Corsi's health conditions.   When "the bases for the . . . conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993).  Moreover, "just stating that someone is 'spreading lies' or is a liar may not be actionable as defamation." *Sinclair v. TubeSockTedD*, 596 F.Supp.2d 128, 133 (D.D.C. 2009).  "Context is crucial," as it "can turn what, out of context, appears to be a statement of fact into 'rhetorical hyperbole,' which is not actionable." *Ollman v. Evans*, 750 F.2d 970, 1000 (D.C. Cir. 1984) (Bork, J., concurring).  Thus, in "[t]he medium of talk radio," "hyperbole and diatribe" are "preferred tools of discourse" and speech is "not infrequently caustic and offensive". *Bauman supra* at * 24, quoting *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 304 (4th Cir. 2008) (Duncan, J., concurring).  The reasonable listener would view an accusation of lying as just an "expression of outrage".  *Schnare v. Ziessow*, 104 F. App'x 847, 852 (4th Cir. 2004) citing *Horsley v. Rivera*, 292 F.3d 695, 701-02 (11th Cir. 2002).

Similarly, in the January 21, 2019, video,[18] Mr. Jones is accused of calling Plaintiff Corsi a "spook, back and forth with different agencies." Complaint at ¶ 68.  There is

---

[18] Plaintiffs' claims arise from the video at the URL cited in footnote 13 of their Complaint.  A copy of the first 53 minutes of the closed captions embedded in that video at that URL appears at **Exhibit 2**.

nothing defamatory about working with the intelligence community.  On the contrary – most reasonable people would find such facts to be flattering.

Moreover, in context, Mr. Jones was reporting on what FBI agents and others had relayed to him.  *See* **Exhibit 2**.  Further, Mr. Jones did not accuse Corsi of "not being able to walk"; what he actually said was that Corsi is "*super smart unless you catch him when he can't walk*".  Compare Complaint at ¶ 69 with **Exhibit 2.**  Expressing an opinion as to when someone might not seem terribly smart is not actionable defamation.

The remaining allegations stem from statements by non-party Roger Stone that Dr. Corsi is not telling the truth and that Mr. Klayman is an incompetent attorney.  However, Dr. Corsi has recently admitted "My recollections and Roger's differ on this.  Now, I'm not maintaining that my recollection is true and his is false. … My recollections are not always accurate against an objective sense of truth[.]"[19]  Thus, the statements as to him are substantially true.

The statements as to Mr. Klayman are primarily statements of opinion and rhetorical hyperbole as to his competence.  They are otherwise true or substantially true.  Klayman's arguments have been deemed "patently inadequate".  *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 148 (D.D.C. 2011).  It was also observed that "[d]espite having more than ample opportunity to do so, Klayman has utterly failed to discharge his obligations in the course of pretrial proceedings." *Id*. at 149.  As to the separation from Judicial Watch in paragraph 57 of the Complaint, such was relaying information of which this Court is aware:

> Judicial Watch alleges that in May 2003, Klayman informed Fitton and Orfanedes that his wife, a former Judicial Watch employee, had commenced divorce proceedings against him and that she alleged that Klayman had had an inappropriate relationship with a Judicial Watch

---

[19]   *See*   https://play.acast.com/s/skullduggery/coulterandcorsi-thedeplorablesedition

employee with whom he had been in love and that Klayman had assaulted her physically.  According to Judicial Watch, Klayman denied having a sexual relationship with the employee but acknowledged that he had been in love with the employee, that he had purchased gifts for the employee and had kissed her, and also acknowledged an incident with his wife that clearly provided the basis for his wife's allegation of physical assault.  Judicial Watch alleges that Fitton and Orfanedes considered Klayman's acknowledged behavior entirely inconsistent with that of a leader of a conservative, pro-family organization, as well as Klayman's fiduciary duties to the organization, and that they were concerned about Klayman's possible misuse of Judicial Watch resources. Judicial Watch further alleges that, as a result of these revelations, Fitton requested that Klayman resign, and Fitton and Orfanedes also insisted that Judicial Watch undertake an internal investigation into Klayman's conduct, including an audit.  According to Judicial Watch, Klayman offered to resign rather than face such an inquiry, and the parties began negotiating for his separation from Judicial Watch, which eventually culminated in the September 19, 2003 Severance Agreement.

*Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 10, 12-13 (D.D.C. 2007) (internal citations and quotation marks omitted).    Judicial Watch and Fitton had counterclaimed, inter alia, that Mr. Klayman made false and disparaging statements when he said his separation related to Fitton "set[ting] out to hijack the group to further his own personal interests." *See* Amended Counterclaim, *Klayman v. Judicial Watch, Inc.*, Case No. 1:06-cv-00670 (Dec. 3, 2007) (Dkt. No. 86 ¶ 35).  Final judgment on the disparagement claim in favor of Judicial Watch and Fitton entered on March 18, 2019, and Mr. Klayman is estopped from relitigating the allegations.  *See Klayman v. Judicial Watch, Inc.*, Case No. 1:06-cv-00670 (Mar. 18, 2019) (Dkt. No. 584).  Thus, as a matter of law, Mr. Stone's statement is true or substantially true.

### 3.3.2 Plaintiffs are Public Figures and the Statements were not Published with Actual Malice

Plaintiffs are public figures. "There are two types of public figures: (1) general public figures who maintain such status for all purposes and (2) limited-purpose public figures '"(who) voluntarily inject[] [themselves] or [are] drawn into a particular public controversy and therefore become[] . . . public figure[s] for a limited range of issues."' *Jankovic v. Int'l Crisis Grp.*, 72 F. Supp. 3d 284, 300 (D.D.C. 2014) quoting *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1292 (D.C. Cir. 1980) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351(1974)).

Dr. Corsi and Mr. Klayman are both general public figures or, at a minimum, limited purpose public figures. As to Mr. Klayman, this has been found previously as a matter of law, which he has also conceded, and it need not be relitigated. *See  Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014) ("Because of Klayman's notoriety and high-profile work in the public realm, the Court considers Klayman a public figure.") and *Klayman v. City Pages*, 2015 U.S. Dist. LEXIS 49134, at *39 (M.D. Fla. Apr. 3, 2015) ("Plaintiff has conceded that he is a public figure.") Similarly, "Jerome Corsi is a 'world-renowned author of several New York Times bestsellers[.]'" *Farah v. Esquire Magazine*, 736 F.3d 528, 531 (D.C. Cir. 2013) (quoting Corsi's own claims). Dr. Corsi has otherwise voluntarily injected himself into the high-profile prosecution of Roger Stone.[20]

---

[20] To determine whether an individual is a limited-purpose public figure: First, the Court must determine whether a public controversy existed. This assessment requires the Court to determine whether there was a dispute that in fact had received public attention because its ramifications would be felt by persons who were not direct participants. Second, the Court must analyze the plaintiff's role in the controversy. Trivial or tangential participation is not enough…to be considered a limited-purpose public figure, a plaintiff must have achieved special prominence in the debate. To satisfy the special prominence requirement, the plaintiff either must have

*See*, e.g., United States v. Stone, 2019 U.S. Dist. LEXIS 28860, *2 (D.D.C. Feb. 15, 2019). Thus, the public figure standard applied.

A public figure defamation plaintiff is "required to plausibly allege that the [defendant] 'published the defamatory falsehood with 'actual malice,' that is, with 'knowledge that it was false or with reckless disregard of whether it was false or not.'" *Deripaska v. AP*, 282 F. Supp. 3d 133, 143 (D.D.C. 2017) (Huvelle, J.) quoting *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (1988) (itself quoting *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964)).  Notably,

> "[t]he standard of actual malice is a daunting one." *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996).  To establish actual malice, plaintiffs must show that defendant either knew that the challenged publication was false, or that he "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Subjective ill-will does not establish actual malice, nor does a malevolent motive for publication. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989). Even "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" does not establish actual malice. *Id.* at 666. But a plaintiff can show actual malice if he can demonstrate by clear and convincing evidence that defendant was "subjectively aware that it was highly probable that the story was (1) fabricated; (2) so inherently improbable that only a reckless person would have put it in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that appellees had obvious reasons to

---

been purposely trying to influence the outcome or could realistically have been expected, because of his position in the controversy, to have an impact on its resolution. Finally, the Court must assess whether the alleged defamation was germane to the plaintiff's participation in the controversy. *Jankovic v. Int'l Crisis Group*, 72 F.Supp.3d 284, 301 (D.D.C. 2014) [internal citations omitted].  The Special Counsel's investigation and prosecution of Mr. Stone is a public controversy.  Dr. Corsi's role is non-trivial.  And, the record shows that he is trying to have an impact on the outcome of it.  The statements at issue were directly germane to Dr. Corsi's role in the controversy.

doubt." *Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003) (citations omitted).

*Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 81 (D.D.C. 2012). Plaintiffs cannot meet this burden.

First, as to Defendants Owen Shroyer and David Jones, there are no allegations that they themselves published any statements, let alone with actual malice. Similarly, Infowars and Free Speech Systems have not acted with actual malice. Although Plaintiffs allege that the defendants conspired together, actual malice must be proven separately as to each defendant. *See St. Amant,* 390 U.S. at 730. Having Mr. Stone appear on their programs offers no basis to suggest they believed Mr. Stone's statements would be fabricated, inherently improbably, or that they had obvious reasons to be doubted.

Second, as to Alex Jones, as with the other defendants, there are no plausible allegations that he acted with actual malice in merely having Mr. Stone on the programs, rendering him responsible for any of those statements. As to his own statements, they were based on his perceptions of Dr. Corsi and what others reported to him. There is no basis to suggest he acted in reckless disregard of the truth, especially where Dr. Corsi himself admits that his memory could be faulty. Thus, the defamation claims must be dismissed.

### 3.4    Defendants Are Not Liable, As a Matter of Law, for Intentional Infliction of Emotional Distress

As they cannot recover for defamation, Plaintiffs cannot recover for intentional infliction of emotional distress. Plaintiffs are aware that they "may not use related causes of action to avoid the constitutional requisites of a defamation claim." *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 319-20 (1994) (citing *Cohen v. Cowles Media Co.*, 501 U.S. 663, 671(1991)). Such was fatal to Dr. Corsi's claims, brought by Mr. Klayman, in *Farah v.*

*Esquire Magazine*, 736 F.3d 528, 540 (2013).  The constitutional limitations equally apply to claims for intentional infliction of emotional distress.  *See Barr v. Clinton*, 370 F.3d 1196, 1203 (D.C. Cir. 2004) citing *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988).

Notwithstanding the failure of this claim under the First Amendment, they fail on the merits.  To bring a claim for intentional infliction of emotional distress, "a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff [to suffer] severe emotional distress." *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1269 (D.C. 2015) (citing *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013)) (brackets in original). *See id.* "To survive a motion to dismiss," a plaintiff must allege conduct that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing *Williams v. District of Columbia,* 9 A.3d 484, 494 (D.C. 2010)).

> The standard for "extreme and outrageous conduct" is exceptionally demanding. Conduct is considered 'extreme and outrageous' when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. **[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are not sufficient.**

*Bonner v. S-Fer International, Inc.*, 207 F.Supp.3d 19, 25 (D.D.C. 2016) (internal citations omitted) (emphasis added).  The statements about Corsi and Klayman are mere insults and indignities, at best.   The only so-called threat, in paragraph 67, was Mr. Stone saying "I look forward to our confrontation.  I will demolish you [Dr. Corsi]." No physicality is threatened; the confrontation referred to is a verbal one and there is no basis to suggest otherwise.  Even if someone could possibly interpret "demolish" a threat, "'[i]nsults, indignities, [and] threats,' without more, do not constitute intentional infliction of emotional distress." *De Sousa v. Embassy of Angl.*, 267 F. Supp. 3d 163, 172 (D.D.C. 2017)

quoting *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993).  Neither is the Instagram image noted at paragraphs 95-96 extreme or outrageous conduct.  It is not a death threat—it was a rhetorical device.  *See id.* at 173 ("Calling the plaintiff names and even threatening the plaintiff may have indeed upset him, but inflicting some worry and concern does not bring the conduct to the level of extreme and outrageous, and these insults, indignities, and threats, even if the meetings did in fact occur as the plaintiff alleges, are simply not sufficient to support the plaintiff's claim." Internal citations and quotation marks omitted).

In addition to the absence of extreme or outrageous conduct directed toward Dr. Corsi, with no allegations of any conduct directed to Mr. Klayman, no severe harm was pleaded.  In *Wood v. Newman*, plaintiff described that the defendant's actions left her "horrified," "shaken," "embarrassed," "constantly crying," and "almost sleepless," but these allegations were insufficient. *Wood v. Newman*, 979 A.2d 64, 78 (D.C. 2009). Plaintiffs' allegations here are perfunctory.  *See* Complaint at ¶ 97.  Thus, this claim must be dismissed.

### 3.5    Defendants Did Not Assault Plaintiffs with Insults

Defendants are not liable for assault. "Claims for assault must involve 'an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim.'" *Dingle v. District of Columbia*, 571 F.Supp.2d 87, 98 (D.D.C. 2008) quoting *Etherege v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993). "An actor will not be held liable for assault for negligent or reckless behavior lacking the requisite intent to commit an assault." *Forras v. Rauf*, 39 F.Supp.3d 45, 56 (D.D.C. 2014), *aff'd on other grounds,* 812 F.3d 1102 (D.C. Cir. 2016), *see also Jackson v. District of Columbia*, 412 A.2d 948, 955 n. 15 (D.C. 1980). "Also, 'an essential element of ... assault is ... intentional[ly]

putting another in apprehension' and absent such an allegation a complaint is 'clearly deficient.' *Id.* (quoting *Madden v. D.C. Transit Sys., Inc.,* 307 A.2d 756, 757 (D.C. 1973).

Plaintiffs do not plead an actual threat, let alone intent, on the part of any defendant.  There are no credible allegations that Defendants called anyone "to arms" with "deadly violence" as stated in Paragraph 101 of the Complaint.  Though it purports to refer to matters "set forth above", none are.   Complaint at ¶ 101.  Verbally demolishing someone and posting a meme on Instagram are not threats of physical harm.  Nor is there any allegation that the defendants here bear any responsibility for Mr. Stone's statements.   Plaintiffs do not allege intent and none can be implied. Compare *Zhi Chen v. District of Columbia*, 808 F.Supp.2d. 252, 258-9 (D.D.C. 2011)(dismissing assault claim because plaintiff failed "to point to any record evidence indicating that Officer Ha ever attempted or threatened to harm Ms. Chen physically. Ms. Chen's failure to identify such evidence is fatal to her assault claim.")  Thus, the assault claim should be dismissed.

### 3.6 Defendants Are Neither Liable Under the Lanham Act Nor for Common Law Unfair Competition

In their final cause of action, Plaintiffs assert claims of common law unfair competition and violation of 15 U.S.C. § 1125(a).  As set forth above, Defendants did not make any provably false statements of fact.  Moreover, as Plaintiffs should be aware, Section 1125(a) "appl[ies] only to commercial speech." *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013).  "The mere fact that the parties may compete in the marketplace of ideas is not sufficient to invoke the Lanham Act." *Id.*  Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561, 100 (1980). The "core notion" of commercial speech is speech that does "'no more

than propose a commercial transaction,'" *Nat'l Assoc. of Mfrs. v. S.E.C.*, 800 F.3d 518, 523 n.12 (D.C. Cir. 2015) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)). "The Supreme Court has identified three factors in looking beyond the core notion of commercial speech: (1) that the material was "conceded to be advertisements," (2) it contained a "reference to a specific product," and (3) the speaker "has an economic motivation" for distributing the material. No one factor is dispositive." *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) quoting *Bolger*, 463 U.S. at 66-67.  These factors do not support a claim that the speech is commercial.

First, Defendants do not concede the speech to be advertisements.  Second, as in *Tobinick,* the speech does not discuss any products or services for sale.  Third, there is no basis to suggest an economic motivation for the speech.  Compare *Tobinick*, supra at 952 ("Even if Dr. Novella receives some profit for his quasi-journalistic endeavors as a scientific skeptic, the articles themselves, which never propose a commercial transaction, are not commercial speech simply because extraneous advertisements and links for memberships may generate revenue."); *see also  Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976) ("Speech . . . is protected . . . even though it may involve a solicitation to purchase or otherwise pay or contribute money."); *Burstyn v. Wilson*, 343 U.S. 495, 501 (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment.").  Thus, the claim under the Lanham Act must fail.

The common-law tort of unfair competition "is not defined in terms of specific elements, but by the description of various acts that would constitute the tort if they resulted in damage." *See Camarda v. Certified Fin. Planner Bd. of Standards, Inc.*, 672 F. App'x 28, 30 (D.C. Cir. 2016) quoting *Furash & Co. v. McClave*, 130 F. Supp. 2d 48, 57

RANDAZZA · LEGAL GROUP

(D.D.C. 2001). Torts that could constitute unfair competition include "defamation, disparagement of a competitor's goods or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless suits, commercial bribery, inducing employees to sabotage, false advertising or deceptive packaging likely to mislead customers into believing goods are those of a competitor." *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982). Since Defendants committed none of these acts, the claim for common law unfair competition fails.[21] *See Camarda, supra.* As a result, the sixth cause should be dismissed.

### 4.0    Conclusion

In light of the foregoing, Defendants respectfully request this Honorable Court dismiss the matter for lack of personal jurisdiction, for improper venue and/or for failure to state a claim. Though this case properly should have been brought in Texas as Defendants are not subject to this Court's jurisdiction, none of the claims would succeed there. All of the speech at issue is protected and the matter should be dismissed on the merits.[22]

---

[21] To the extent Plaintiffs claim "disparagement", as distinct from defamation, this must fail. Any asserted disparagement of Mr. Klayman is in his legal abilities—a field in which there is no plausible basis to suggest Defendants are competitors. And the alleged disparagement of Dr. Corsi relates to his recollection of events, not to his abilities as a political commentator, thus it is not disparagement of his goods, services, or methods.

[22] Plaintiffs' suit arises from speech "in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502. Because Defendants are entitled to dismissal as a matter of law, Plaintiffs cannot demonstrate likelihood of success on the merits, and, were it applicable in this Court, Defendants would be entitled to their attorneys' fees and expenses. *See id.* Although Defendants recognize that this Circuit does not apply the D.C. anti-SLAPP statute in diversity cases, Defendants formally invoke it now and move to dismiss thereunder, in the event that holding is subsequently superseded. *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015)

Dated: April 8, 2019.                     Respectfully submitted,

                                          /s/ Jay M. Wolman
                                          Jay M. Wolman
                                          (D.D.C. Bar No. 473756)
                                          Randazza Legal Group, PLLC
                                          100 Pearl Street, 14th Floor
                                          Hartford, Connecticut 06103
                                          Tel: (702) 420-2001
                                          Email: ecf@randazza.com

                                          Marc J. Randazza
                                          *pro hac vice pending*
                                          Randazza Legal Group, PLLC
                                          2764 Lake Sahara Drive, Suite 109
                                          Las Vegas, NV 89117
                                          Tel: (702) 420-2001
                                          Email: ecf@randazza.com

                                          *Attorneys for Defendants*

CIVIL ACTION NO. 1:19-cv-00656-ESH

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above document was filed and served upon all parties of record on April 8, 2019 by CM/ECF, the court's electronic filing system.

/s/ Jay M. Wolman
Jay M. Wolman