**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DR. JEROME CORSI, et al

       Plaintiffs

    v.

INFOWARS, LLC, et al

       Defendants.

**Case Number:   1:19-cv-656**
**ORAL ARGUMENT REQUESTED**

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**</u>

Dated: May 13, 2019

Respectfully Submitted,


   */s/ Larry Klayman*
Larry Klayman, Esq.
KLAYMAN LAW GROUP, P.A.
D.C.  Bar Number: 334581
2020 Pennsylvania Ave NW #800
Washington, DC, 20006
Telephone:  (310)-595-0800
Email: <u>leklayman@gmail.com</u>

*Counsel for Plaintiff*

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

LEGAL ARGUMENT ...................................................................................................................2

    This Court May Properly Exercise Personal Jurisdiction Over Defendants............................2

        The District of Columbia Long Arm Statute ....................................................................2

        Due Process Clause ...........................................................................................................5

    Venue is Proper in the District of Columbia............................................................................6

    Defendants' Motion to Dismiss Under Rule 12(b)(6) Must Be Denied ...................................7

        Legal Standard .................................................................................................................7

        Plaintiffs Properly Pled Claims for Defamation, Defamation by Implication, and
        Defamation Per Se ...........................................................................................................8

            Plaintiffs are not Public Figures.................................................................................10

            Plaintiffs' Defamation Allegations are Properly Pled ...............................................12

                The October 26, 2018 Video...............................................................................13

                The January 18, 2019 Video ...............................................................................15

                Other Defamatory Publications...........................................................................18

        Intentional Infliction of Emotional Distress ...................................................................19

        Assault............................................................................................................................20

        Lanham Act Unfair Competition ...................................................................................21

    CONCLUSION...........................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. v. Brewer*, 12 F.2d 818 (D.C. Cir. 1926) .......................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................7

*Abraham v. Baldwin*, 42 So. 591, 592 (Fla. 1906)............................................................................8

*Armstrong v. Thompson*, 80 A.3d 177 (D.C. 2013) .........................................................................19

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).....................................................................6

*Bruce v. Potomac Elec. Power Co.*, 162 A.3d 177 (D.C. 2017).......................................................22

*Competitive Enter. Inst. v. Mann*, 150 A.3d 1213 (D.C. 2016) .........................................................9

*Covey Run, LLC v. Wash. Capital, LLC*, 245 F. Supp. 3d 9 (D.D.C. 2017).......................................2

*Dingle v. District of Columbia*, 571 F.Supp.2d 87, 98 (D.D.C. 2008) ............................................20

*Devincci Salah Hourani v. Mirtchev*, 796 F.3d 1 (D.C Cir 2015) .....................................................9

*Dimick v. Schiedt*, 293 U.S. 474 (U.S. 1935)....................................................................................8

*Glynn v. City of Kissimmee*, 393 So. 2d 774 (Fla. 5th DCA 1980) ...................................................8

*Gordon v. United States Capitol Police*, 778 F.3d 158 (D.C. Cir. 2015) ..........................................7

*GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) ...................................2

*Guilford Transp. Indus. v. Wilner*, 760 A.2d 580 (D.C. 2000).....................................9, 13, 15, 19

*Hourani v. PsyberSolutions LLC*, 164 F. Supp. 3d 128 (D.D.C. 2016) .........................................5, 6

*Homan v. Goyal*, 711 A.2d 812 (D.C. 1998) ..................................................................................19

*Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72 (Tex. App. El Paso 1998)....................19

*In re M.L.P.*, 936 A.2d 316 (D.C. 2007).........................................................................................22

*Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106 (D.C. Cir. 2017)............................................12

*Keeton v. Hustler, Inc.*, 465 U.S. 770 (1984)....................................................................................5

*Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240 (S.D. Fla. 2014)........................................11

*Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112 (D.D.C. 2009).........................................11

*Saucier v. Countrywide Home Loans*, 64 A.3d 428 (D.C. 2013) ...............................................9, 10

*Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539 (M.D. Fla. 1993) ......................................8

*Waldbaum v. Fairchild Publ'ns*, 627 F.2d 1287 (1980) ............................................................10, 11

*Weyrich v. New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001) .......................................................8

**Statutes**

28 U.S.C. §1391(b)(2) .......................................................................................................................6

Fed R. Civ. P 12(b)(6)..........................................................................................................7, 8

D.C. Code § 13-423(a).........................................................................................................2, 3

<u>**MEMORANDUM OF LAW**</u>

## I.    INTRODUCTION

This case is centered around Defendants' latest at pecuniary gain and notoriety through their pattern and practice of spewing false, malicious, and defamatory statements. Now, in collaboration and in concert with their co-conspirator and co-actor, Roger Stone ("Stone"), Defendants are doing everything that he can to smear, discredit, and threaten Plaintiffs Jerome Corsi ("Plaintiff Corsi") and Larry Klayman ("Plaintiff Klayman") in order to try to help Stone avoid prison time for his role Special Counsel Robert Mueller's Russian collusion investigation, for which he was indicted on seven separate felony charges and has a pending criminal case in this judicial district.

To that end, using InfoWars and the other Defendants as his platform and agents, Stone had already made numerous false, malicious, and defamatory statements in public in order to try to improperly influence and corrupt Mr. Mueller's investigation and now prosecution, which again, is centered in this judicial district. Stone, by and through the Defendants, has falsely accused Plaintiff Corsi of repeatedly lying, the crime of committing perjury, and being an alcoholic who has no capacity for memory, among a myriad of other defamatory published statements as pled in the Complaint. It is easy to see why Stone is knowingly and maliciously using the Defendants to publish these defamatory of statements – he is trying to do everything in his power to discredit, coerce, intimidate, and threaten Plaintiff Corsi and his legal counsel, co-Plaintiff Larry Klayman.  Plaintiff Corsi had no choice but to cooperate with Mr. Mueller's investigation, and if subpoenaed, to testify truthfully at Stone's trial. Tellingly, Plaintiff Corsi was not indicted, while Stone was. This speaks for itself.

Defendants have now stepped in to aid their co-conspirator, Stone, who works as a co-

host along with Defendant Shroyer's and Defendant Alex Jones on *The War Room*, which is broadcasted on the InfoWars website and through other outlets into this judicial district, in hopes of not only discrediting Plaintiffs to aid Stone, but also to eliminate them as competitors. Defendants have published a myriad of outrageous and unrestrained lies and blatant falsities that have severely damaged the reputation, good will and personal and professional relationships and financial well being of both Plaintiff Corsi and Plaintiff Klayman.[1]

## II   LEGAL ARGUMENT

### A.   This Court May Properly Exercise Personal Jurisdiction Over Defendants

This Court may exercise personal jurisdiction over Defendants if Plaintiffs satisfy the District of Columbia Long Arm Statute and the Due Process Clause of the U.S. Constitution. *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Crucially, Plaintiffs need only satisfy the burden of establishing the factual basis for asserting personal jurisdiction with a *prima facie* showing. *Covey Run, LLC v. Wash. Capital, LLC*, 245 F. Supp. 3d 9, 13 (D.D.C. 2017). As such, "plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial[;] but rather, the plaintiff may rest her arguments on the pleadings, bolstered by such affidavits and other written materials as [he] can otherwise obtain." *Id*. (internal quotations omitted). Furthermore, any "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Id*. at 17.

### 1.   The District of Columbia Long Arm Statute

The District of Columbia Long Arm Statute is satisfied here under two grounds: (1)

---

[1] Plaintiffs would like to bring to the Court's attention what may be a lack of transparency on counsel for Defendants, Marc Randazza, Esq.'s, *pro hac vice* application. Whereas Mr. Randazza only points the Court to the "stayed suspension" that was "issued by the Nevada Supreme court in In re Marc J. Randazza, Bar No. 12265, No. 76543 (Nev. Oct. 10, 2018)," there appears to be many more transgressions that were not reported. Indeed, recently, a Connecticut judge denied Mr. Randazza's *pro hac vice* application, citing "serious misconduct." Exhibit 1. The attached article details Mr. Randazza's transgressions. Exhibit 1.

Defendants transacts business in the District of Columbia under D.C. Code § 13-423(a)(1) and (2) Defendants caused "tortious injury in the District of Columbia by an act or omission outside the District of Columbia [and] he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia under D.C. Code § 13-423(a)(4). Importantly, under the express terms of the District of Columbia Long Arm Statute, the Court may exercise personal jurisdiction stemming not only from the Defendant's personal actions, but also those acting on behalf of the Defendant. ("A District of Columbia Court may exercise personal jurisdiction over a person, who acts directly <u>or by an agent</u>…."

The Complaint clearly alleges that Defendants transact significant business in the District of Columbia, and that Plaintiffs' injury were a direct and proximate result of Defendants' business in this judicial district. The Complaint alleges that *The Alex Jones Show* and *The War Room*, which are hosted by Defendants Alex Jones and Shroyer, respectively, are broadcast into this judicial district. Comp. ¶¶ 12-13. These include the broadcasts in which the tortious, defamatory, and malicious statements were made by Defendants.  Furthermore, the Complaint alleges that "Defendants, each and every one of them, in concert, do substantial business and promote and sell various goods in this judicial district and nation-wide, including medicine, supplements, and "tchotchkes" with InfoWars branding." Comp. ¶ 15. The funds from sales of these goods are then used to influence and direct activity in this judicial district:

> The money earned from these sales funds the conspiracy between Defendants and Stone to defame, intimidate, coerce and threaten Plaintiffs in order to try to improperly influence the Mueller Russian collusion investigation and to coerce false testimony from Plaintiff Corsi favorable to Stone in his upcoming criminal prosecution. Comp. ¶ 15.

Defendants' impact and reach on this judicial district is enormous. Indeed, Defendants even

3

caused and influenced one of their listeners to shoot up a restaurant in the Washington D.C. area after propagating one of their wild and false conspiracies:

> Furthermore, Defendant Alex Jones in concert with the other Defendants propagated and promoted the "Pizzagate" conspiracy on his show, accusing a restaurant called Comet Ping Pong in the Washington D.C. area of operating a child sex ring in its non-existent basement that purportedly involved Hillary Clinton and John Podesta. This caused one of his listeners to shoot up the restaurant after being told by Defendant Jones to "self-investigate" the "Pizzagate" conspiracy theory. Comp. ¶ 20.

Thus, it is clear that Defendants regularly transact substantial business in this judicial district, which satisfies the D.C. Long Arm Statute.

This is even more clear when considering the actions of Defendants' agent - Stone, a co-host on *The War Room* -  as provided for under the D.C. Long Arm Statute. It is clear that Stone regularly conducts business in the District of Columbia. In his indictment by Special Counsel Mueller and his team of prosecutors, which is attached to the Complaint as an exhibit and incorporated therein by reference, Stone is a "political consultant who worked for decades in U.S. politics and on U.S. political campaigns." Comp. Ex. 1 at 2. Stone was an "official on the U.S. presidential campaign of Donald J. Trump…until in or around August 2015, and maintained regular contact with and publicly supported the Trump Campaign through the 2016 election. *Id*.

The Complaint alleges that Defendants are working together in concert with Stone in order to illegally and improperly attempt to influence the result of Special Counsel Mueller's Russian collusion investigation and now prosecution, which is centered in this judicial district:

> Defendants and Stone's conspiracy to defame, smear, intimidate, tamper with and threaten Plaintiffs is calculated to improperly and illegally influence the Russian collusion investigation, for which Stone has already been criminally indicted and to coerce false testimony favorable to Stone at his upcoming prosecution. This illegal conduct is also maliciously intended to harm Plaintiffs' reputations and credibility as Stone fears that Dr. Corsi will testify truthfully if subpoenaed by Special Counsel Mueller at Stone's upcoming criminal prosecution. Comp. ¶ 31.

Thus, it is clear that this Court may properly exercise personal jurisdiction over Defendants pursuant to the D.C. Long Arm Statute

### 2.    Due Process Clause

In addition to complying with the D.C. Long Arm Statute, the exercise of personal jurisdiction over Defendants in this district comports with all necessary due process requirements. "Due process is satisfied if the defendant's 'minimum contacts' with the District are such that subjecting it to suit would not offend traditional notions of fair play and substantial justice. *Id*. at 18 (internal quotations and citations omitted). "Under the 'minimum contacts' standard, courts must insure that 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id*.

Importantly, the U.S. Supreme Court case of *Keeton v. Hustler, Inc*., 465 U.S. 770 (1984), the plaintiff was a resident of New York, who brought a defamation case in New Hampshire against the defendant magazine, which was an Ohio corporation. *Id*. at 772. The only connection that the defendant had to New Hampshire was that the magazine had circulation in New Hampshire. *Id*. The U.S. Supreme Court held that the publisher of a national magazine was subject to jurisdiction in every location in which it was circulated, even if "the bulk of the harm done to petitioner occurred outside [the forum]." *Id*. at 780. In addition, in *Keeton*, the only connection necessary that the publisher had to the forum state was the circulation and sale of the publication. It is indisputable that the defamatory statements were published in this judicial district. Exhibit 1 ¶ 10, thereby affording the Court personal jurisdiction in this case.

Furthermore, here, the Court has grounds to exercise both general and specific jurisdiction over Defendants. As set forth above, Defendants' daily broadcast into Washington D.C. and this creates the requisite "continuous and systematic" contacts with this judicial district

for general personal jurisdiction. *See Hourani v. PsyberSolutions LLC*, 164 F. Supp. 3d 128, 136 (D.D.C. 2016). As set forth in the preceding section, Defendants' regularly broadcast both *The Alex Jones Show* and *The War Room* into this judicial district, which has already led to extremely violent and deadly conduct in this judicial district. Defendants also "do substantial business and promote and sell various goods in this judicial district and nation-wide, including medicine, supplements, and "tchotchkes" with InfoWars branding." Comp. ¶ 15.

In the unlikely event that this Court finds no general jurisdiction, it is still abundantly clear that specific jurisdiction exists. A court has specific jurisdiction if (1) the defendant has "purposefully established minimum contacts" with the forum by "purposefully direct[ing]" his activities there and (2) the plaintiff's claims "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). As set forth above, Defendants tortious conduct is "purposefully directed" at the District of Columbia, in an effort to tamper with and interfere with Special Counsel Mueller's Russian collusion investigation and his indictment in the U.S. District Court for the District of Columbia. *See* Comp. ¶ 15, 31. Plaintiffs' injuries – i.e. being defamed, threatened, and discredited – all arise directly and proximately from Defendants attempts to illegally influence Special Counsel Mueller's investigation and his criminal prosecution , which is in this judicial district.

### B.    Venue is Proper in the District of Columbia

Under 28 U.S.C. §1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." The Complaint alleges that Defendants' tortious conduct was targeted at the District of Columbia, in an attempt to illegally influence and tamper with the ongoing Russian Collusion Investigation and now criminal prosecution, both of which

are centered and/or located in this judicial district. Put another way, a substantial part of the Defendants' tortious conduct involves his investigation and now prosecution in the District of Columbia by Special Counsel Mueller, since without the prosecution and Russian collusion investigation, there would be no need to defame, discredit, and threaten Plaintiffs. In addition, as Person 1 in the Mueller indictment, Plaintiff Corsi will likely be subpoenaed to testify in Stone's criminal trial in this district.

Furthermore, it is clear that he defamatory statements made by Defendants were broadcast into this judicial district by virtue of their availability on the internet. They were therefore widely projected into and thus available for viewing and consumption in his judicial district.

**C.     Defendants' Motion to Dismiss Under Rule 12(b)(6) Must Be Denied**

**1.     Legal Standard**

Fed. R. Civ. P. 8(a)(2) states that a pleading need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." When reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court must "accept the complaint's allegations as true and draw all reasonable inferences in favor of the non-moving party." *Gordon v. United States Capitol Police*, 778 F.3d 158, 163-164 (D.C. Cir. 2015).

A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotations omitted). As such, a motion to dismiss at this stage must be decided solely on what Plaintiffs have plead in their complaint, taken as true, and not upon any factual "contradictions" that Defendants have attempted to insert. Involving such

weighing of fact would take the standards of pleading to new heights not contemplated before by any Court.

When deciding on a motion to dismiss a claim for defamation, the Court "must assume, as the complaint alleges, the falsity of any express or implied factual statements made in the article." *Weyrich v. New Republic, Inc.,* 235 F.3d 617, 623 (D.C. Cir. 2001). It must also assume that the defamatory statements were made "with knowledge of their falsity or reckless disregard for their truth." Id. In situations where resolution is necessarily fact intensive, like defamation, the U.S. Supreme Court has held that "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486 (U.S. 1935). As such, it is crucial and required that Plaintiffs be afforded the opportunity to conduct discovery and present its findings to the proper fact-finding body—the jury. In fact, courts have held that even in a summary judgment motion for defamation, taking the matter out of the jury's hands is almost always inappropriate, except in those rare cases where the circumstances surrounding the allegedly defamatory communication are completely undisputed. *See, e.g., Shaw v. R.J. Reynolds Tobacco Co*., 818 F. Supp. 1539, 1541 (M.D. Fla. 1993), aff'd, 15 F.3d 1097 (11th Cir. 1994); *Abraham v. Baldwin*, 42 So. 591, 592 (Fla. 1906); *Glynn v. City of Kissimmee*, 393 So. 2d 774. 776 (Fla. 5th DCA 1980). This principle applies even stronger here, where Defendants have not yet entered any evidence on his behalf and where a simple Rule 12(b)(6) motion is at bar. Plaintiffs must, at a minimum, be permitted to conduct discovery.

> ### 2. Plaintiffs Properly Pled Claims for Defamation, Defamation by Implication, and Defamation Per Se

Under District of Columbia law, a valid defamation claim must plead only four elements:

> [T]he defendant made a false and defamatory statement concerning the plaintiff";
> (2) the defendant published the statement without privilege to a third party; (3) the
> defendant's fault in publishing the statement amounted to at least negligence; and
> (4) either the statement was actionable as a matter of law irrespective of special
> harm, or its publication caused the plaintiff special harm.

*Devincci Salah Hourani v. Mirtchev*, 796 F.3d 1, 16 (D.C Cir 2015) (internal quotations omitted). Defamation is . . . that which tends to injure "reputation" in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him. *Guilford Transp. Indus. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000). Importantly, statements that are purported to be "opinion" may be nonetheless actionable as long as they have "an explicit or implicit factual foundation and is therefore objectively verifiable." *Id*. at *597* (internal quotation omitted). "[S]tatements of opinion can be actionable if they imply a provably false fact, or rely upon stated facts that are provably false." *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1241 (D.C. 2016) "Whether a defamatory statement of opinion is actionable often depends on the context of the statement in question. *Id*. "If, for example, an average reader would likely understand that particular words, in the context of an entire article, were not meant to imply factual data but, rather, were intended merely to disagree strongly with the views of the [plaintiff], those words would be protected despite their factual content." *Id*.

As a threshold matter, the Complaint clearly alleges that each and every Defendant is working together in concert to maliciously defame, discredit, and smear Plaintiffs. Comp. ¶ 22. This renders each and every Defendant jointly and severally liable for the tortious conduct of their co-conspirators. "[L]iability for civil conspiracy depends on performance of some underlying tortious act"; "[civil] conspiracy is not independently actionable; rather it is a means for establishing vicarious liability or the underlying tort." *Saucier v. Countrywide Home Loans*,

64 A.3d 428, 446 (D.C. 2013). Defendant Shroyer is also directly liable for the false and defamatory statements made on his own show, *The War Room*, as Stone made the false and defamatory statements in the context of a conversation with Defendant Shroyer which Shroyer the adopted and ampflied. Thus, at a minimum, these statements were approved and/or ratified by Defendant Shroyer. Comp. ¶¶ 48 – 64. Furthermore, "if a corporation under the doctrine of respondeat superior is responsible for the willfully slanderous utterances of its employee while acting for it within the scope of his employment, a joint action may be maintained against both the corporation and the employe by the injured party." *Aetna Life Ins. Co. v. Brewer*, 12 F.2d 818, 820 (D.C. Cir. 1926). It is clear that both Defendants Alex Jones and Shoryer - as well as Stone, who is Defendant Shroyer's co-host on *The War Room* - were acting within the scope of their employment, (broadcasting their respective radio shows for Defendant Infowars) which means that the corporate entities, Infowars, LLC and Free Speech Systems, LLC are properly included in this lawsuit.

### a.  Plaintiffs Are Not Public Figures

From the outset, it is abundantly clear that neither Plaintiff are general purpose public figures. In order to qualify under this standard, "[a]n individual may have attained a position of such persuasive power and influence," id., and of "such pervasive fame or notoriety, that he has become a public figure in all situations. This test is a strict one. The Court stated flatly that (a)bsent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Waldbaum v. Fairchild Publ'ns*, 201 U.S. App. D.C. 301, 627 F.2d 1287, 1292 (1980) (internal quotations and citations omitted). It is clear from this incredibly high standard that neither of Plaintiffs are general purpose public figures. Thus, the only remaining

possibility is the limited-purpose public figure.

A limited-purpose public figure is "an individual (who) voluntarily injects himself or is drawn into a particular public controversy and therefore becomes a public figure for a limited range of issues." *Waldbaum v. Fairchild Publ'ns*, 627 F.2d 1287, 1292 (1980) (internal citation and quotation omitted). "The relevant examination turns on 'the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.'" *Id*. The *Waldbaum* Court set forth three elements to determine whether a person is a limited public figure: (1) the existence of a public controversy, (2) whether a reasonable person would have concluded that this individual would play or was seeking to play a major role in determining the outcome of the controversy and (3) whether the alleged defamation related to that controversy. *Id*. at 1298. If the Court determines that the Plaintiff is a limited purpose public figure, the Plaintiff must show that the Defendant acted with actual malice in order to sustain a cause of action for defamation. If is clear that neither of the Plaintiffs are limited purpose public figures,

Defendants' only real argument that Plaintiff Klayman is a "public figure" based on the findings of different Courts that Plaintiff had been a public figure for the purposes of those litigations. *See Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240 (S.D. Fla. 2014); *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112 (D.D.C. 2009). However, it is clear that the analysis as to whether a specific Plaintiff is a limited purpose public figure is context specific. As such, findings by previous courts in different contexts that Plaintiff Klayman was a limited purpose public figure are entirely irrelevant to the current context and situation.

Here, neither of the Plaintiffs voluntarily injected himself into the purported "public controversy." Their involvement was not by choice, but instead forced by Defendants and Special Counsel Mueller and his staff, who named Plaintiff Corsi as a witness on Stone's

indictment. Plaintiff Corsi was then forced to retain counsel, Plaintiff Klayman, and make public statements in order to protect his own reputation as an investigative journalist. Put another way, Plaintiffs never sought out any of the media attention, but were involuntarily brought into the controversy and forced to defend themselves once Defendants began maliciously defaming them. Furthermore, it is abundantly clear that Defendants' false, malicious, and misleading statements essentially, such as by way of just one example, calling Plaintiff Corsi an alcoholic are not germane in any way to the Russian collusion investigation and prosecution, and were made by Defendants solely to discredit Plaintiff Corsi and tarnish his reputation in this district. Comp. ¶¶ 42 – 47. The same holds true for the false and defamatory allegations that Plaintiff Klayman had been "ousted" from Judicial Watch because of a "sexual harassment complaint."  Comp. ¶ 57.

### b.    Plaintiffs' Defamation Allegations Are Properly Pled

As set forth above, neither Plaintiff Klayman nor Plaintiff Corsi are public figures for the purposes of this litigation, rendering a showing of malice unnecessary. However, even in the unlikely event that this Court finds that one or both of the Plaintiffs are limited-public figures, it is clear that Defendants acted with malice. "[A] public-official or public-figure plaintiff must demonstrate that a publisher either actually knew that a published statement was false, or recklessly disregarded whether it might be false." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 112 (D.C. Cir. 2017).  From the very outset, it is clear that Plaintiffs specifically pled that each of the false and defamatory statements were made by Defendants <u>with malice</u> and actual knowledge of their falsity. At this point in the case, these allegations are enough and this case must, at a minimum, proceed to discovery.

///

### i.      The October 26, 2018 Video

Defendants' primary defense appears to be trying to couch their false, malicious, and defamatory statements of fact as opinion. However, it is clear that "statements that are purported to be "opinion" may be nonetheless actionable as long as they have "an explicit or implicit factual foundation and is therefore objectively verifiable." *Guilford*, 760 A.2d at *597* (internal quotation omitted). Indeed, this makes perfect sense. Otherwise, a tortfeasor would be given free reign to defame any other person simply be using the word "seems" in the defamatory publication.

The first statement at issue appears in paragraph 43 of the Complaint, where Defendant Alex Jones stated that Plaintiff Corsi "seemed to be extremely mentally degraded to the point of what I would call dementia." Despite Defendants' attempts to argue opinion, based solely on the inclusion of the word "seemed," it is clear that the defamatory statement provides an objectively verifiable statement of fact. Whether a person is "mentally degraded" is a medical question of fact. One either is, or is not. Defendant Alex Jones takes it a step further, making a diagnosis of "dementia." Again, this is a objective medical diagnosis that is a statement of fact. One either has dementia or he doesn't. Plaintiff Corsi is neither "mentally degraded" not does he have "dementia." Thus, the statements of "fact" spewed by Defendant Alex Jones are objectively and provably false. These statements were made simply to discredit Plaintiff Corsi as a witness in Stone's indictment and prosecution. Lastly, this false statement was based on a supposed first hand account, so Defendant Alex Jones must know the truth or falsity of his statement. Thus, if false, it is clear that he acted with malice.

The second statement at issue appears in paragraph 44 of the Complaint, where "Defendant Alex Jones, acting in concert with the other Defendants, maliciously fabricates a

story where he purportedly saw Plaintiff Corsi at a steakhouse "on the ground at another table" and that his security staff "thought he was dead in the elevator."  These are two statements of objectively verifiable fact. Either Plaintiff Corsi collapsed or he didn't, and either his security staff thought he "was dead in the elevator" or they didn't. It is especially important that these statements were made in the context of Defendant Alex Jones clearly trying to discredit Plaintiff Corsi, as he immediately tries to defend Stone in the context of Mueller's investigation and prosecution immediately afterwards. Indeed, a person that simply passes out on the ground at a restaurant would not be a reputable source of information, as he would be seen as feeble, weak, and therefore not in the state of mind to be able to tell the truth. This is exacerbated by the lie compounded by Alex Jones that his security staff thought Plaintiff Corsi was "dead in the elevator." Again, this statement of false objectively verifiably fact only seeks to further discredit Plaintiff Corsi's credibility. Lastly, this false statement was based on a supposed first hand account, so Defendant Alex Jones must know the truth or falsity of his statement. Thus, if false, it is clear that he acted with malice.

The third statement at issue appears in paragraph 45 of the Complaint, where "after accusing Plaintiff Corsi of having suffered a stroke, publishes maliciously that "whatever comes out of his mouth ain't the truth." This is textbook defamation, especially in the context of Defendant Alex Jones' previous attempts to cast Plaintiff Corsi as a liar or, at a minimum, someone mentally incapable of telling the truth. As set forth above, falsely accusing someone of having suffered a stroke is not only reprehensible, but it is also stating a false, objectively verifiable fact. Defendants likely recognize this and put forth the weak assertion that Defendant Alex Jones "did not call Dr. Corsi an intentional liar." Def's Mtn. at 17. This is a distinction without a difference. The bottom line is that Defendant Jones has publicly broadcasted that

Plaintiff Corsi is a liar who cannot be trusted. This clearly and unequivocally "tends to injure "reputation" in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him. *Guilford*, 760 A.2d at 594. This is especially true given Plaintiff Corsi's profession as an investigative journalist. An investigative journalist with a reputation for lying is no longer an investigative journalist.

Lastly, it is clear that this was no "hyperbole" or "diatribe" that was a mere "expression of outrage." From the context of the entire broadcast, as conveniently set forth by Defendants themselves, ECF No. 7 Ex. 1, this was a carefully calculated segment to try to discredit Plaintiff Corsi and smear his reputation to the benefit of their co-conspirator, Stone. Defendant Jones gave specific, albeit false and fabricated, instances of Plaintiff Corsi's mental health supposedly being compromised, all leading up the payoff that "whatever comes out of his mouth ain't the truth." There is no opinion, no hyperbole, and no rhetoric. These are fabricated facts.

### ii.  The January 18, 2019 Video

The January 18, 2019 video contains numerous false, malicious, and defamatory statements made by Stone on Defendant Shroyer's *The War Room*, which is filmed and broadcasted by and on behalf of Defendant Infowars. Thus, Defendant Infowars gave Stone the platform to maliciously defame and discredit Plaintiffs in furtherance of the conspiracy between Defendants and Stone to try to illegally influence and tamper with Mueller's Russian collusion investigation and now prosecution while seeking financial gain.

While the false and defamatory statements contained in this video range from paragraphs 50 – 64 of the Complaint, Defendants offer up no actual defense to any of them, except for paragraph 57 of the Complaint, other than a half-hearted assertion of "opinion" and "hyperbole."

Since Defendants make no showing of how these statements are supposedly "opinion" or "hyperbole"- nor could they - these unaddressed statements of fact should be treated as conceded to be defamatory. Indeed, as just one example, at "2:09 in the January 18 Video, Stone maliciously and falsely published that Plaintiff Corsi was "fired from World Net Daily." Comp. ¶ 50. This is purely a question of fact. Other defamatory publications concerning Plaintiff Klayman which are left unaddressed and are therefore conceded as well:

> At 1:25 in the January 18 Video, Stone maliciously falsely published that "He's (Klayman) never actually won a courtroom victory in his life." Comp. ¶ 56.

> At 1:37 in the January 18 Video, Stone maliciously falsely published, "He's (Klayman) incompetent, he's a numbskull, he's an idiot, he's an egomaniac, and he could be the single worst lawyer in America. With him as Jerry Corsi's lawyer, Corsi may get the electric chair. So your idea that he's a good guy is entirely wrong. Comp. ¶ 60.

> At 2:01 in the January 18 Video, Stone maliciously falsely and misleadingly published that Plaintiff Klayman is a "piece of garbage." Comp. ¶ 62.

> At 4:11 in the January 18 Video, Stone maliciously falsely and misleadingly published, "For those people out there who think…that Larry Klayman's IQ is higher than 70, you're wrong…" Comp. ¶ 63.

Not only do Defendants not address these false, malicious, and defamatory statements in their Motion to Dismiss, Plaintiff Klayman also attaches hereto an affidavit that conclusively demonstrates the falsity of these statements. Exhibit 2.

Defendants' sole argument pertains to paragraph 57, which states that "At 1:30 in the January 18 Video, Stone maliciously falsely published, "He (Klayman) was ousted at Judicial Watch. Ask Tom Fitton [the current president of Judicial Watch] why he left. He was 'ousted' because of a 'sexual harassment complaint.'" In their defense, Defendants cite a paragraph from *Klayman v. Judicial Watch, Inc.,* 247 F.R.D. 10, 12-13 (D.D.C. 2007) which read:

> Judicial Watch alleges that in May 2003, Klayman informed Fitton and Orfanedes that his wife, a former Judicial Watch employee, had

commenced divorce proceedings against him and that she alleged that Klayman had had an inappropriate relationship with a Judicial Watch employee with whom he had been in love and that Klayman had assaulted her physically.  According to Judicial Watch, Klayman denied having a sexual relationship with the employee but acknowledged that he had been in love with the employee, that he had purchased gifts for the employee and had kissed her, and also acknowledged an incident with his wife that clearly provided the basis for his wife's allegation of physical assault. Judicial Watch alleges that Fitton and Orfanedes considered Klayman's acknowledged behavior entirely inconsistent with that of a leader of a conservative, pro-family organization, as well as Klayman's fiduciary duties to the organization, and that they were concerned about Klayman's possible misuse of Judicial Watch resources.  Judicial Watch further alleges that, as a result of these revelations, Fitton requested that Klayman resign, and Fitton and Orfanedes also insisted that Judicial Watch undertake an internal investigation into Klayman's conduct, including an audit.  According to Judicial Watch, Klayman offered to resign rather than face such an inquiry, and the parties began negotiating for his separation from Judicial Watch, which eventually culminated in the September 19, 2003 Severance Agreement.

Absolutely nothing contained in this excerpt, which has not been proven in any event, supports the factual finding that Plaintiff Klayman was "ousted" from Judicial Watch due to a "sexual harassment complaint." Indeed, plain language of the excerpt clearly states that Plaintiff Klayman "offered to resign" in order to run for U.S. Senate in Florida. *See* Exhibit 3, *Severance Agreement*. This is not being "ousted." Furthermore, the unfounded "sexual harassment complaint" allegation appears to be based solely on allegations from Plaintiff Klayman's ex-wife as grounds for divorce, which Plaintiff Klayman denied, and which the ex-wife later retracted. "Klayman denied having a sexual relationship with the employee but acknowledged that he had been in love with the employee…." *Id*. This is not sexual harassment. Stone had no basis to make these false, malicious, and defamatory claims.

Importantly, there is not showing that Defendants were even aware of the

allegations when they defamed Klayman, notwithstanding their falsity.

### iii.    Other Defamatory Publications

While the false and defamatory statements contained in this section range from paragraphs 65 – 70 of the Complaint, Defendants only address paragraphs 68 and 69. Thus, the rest must be treated as conceded.

"Defendant Alex Jones maliciously and falsely accuses Plaintiff Corsi of being a 'spook, back and forth with different agencies,' falsely saying that Dr. Corsi had worked with different government agencies." Comp. ¶ 68. The defamatory nature of this false statement of fact is apparent when considering the context in which it was made. This statement was made to advance the false notion that Plaintiff Corsi was cooperating with Special Counsel Mueller to try to take down Stone, and by extension, President Trump. By publishing the false statement that Plaintiff Corsi is now working with Mueller to take down Trump, Defendants has severely harmed Plaintiff Corsi professional image and reputation. This has negatively impacted Plaintiff Corsi's ability to garner support in the conservative community. Falsely accusing Plaintiff Corsi of working with Mueller to take down President Trump is tantamount to an accusation of "treason" in the conservative community. Indeed, conservatives who support Trump and believed Defendants' false statements would understandably be turned off to Plaintiff Corsi's work.

"Lastly, Defendant Alex Jones further maliciously falsely accuses Plaintiff Corsi of sometimes "not being able to walk," creating the false and defamatory implication that he is an alcoholic." Comp. ¶ 69. There is no possible "context" where this is not defamatory. Merely falsely asserting that at some point, Plaintiff Corsi had been, or continues to be unable to even walk, especially when trying to accuse Plaintiff Corsi of alcoholism, clearly "tends to injure

"reputation" in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him. *Guilford,* 760 A.2d at 594.

### 3.    Intentional Infliction of Emotional Distress

"To succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013). Courts have held that a single threat of physical harm or death can sustain a claim for intentional infliction of emotional distress. "With the possible exceptions of the bomb and death threats, no single action…rises to the level of intentional infliction of emotional distress." *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 82 (Tex. App. El Paso 1998). *See also Homan v. Goyal,* 711 A.2d 812 (D.C. 1998) (finding the requisite outrageous behavior based largely on the presence of death threats).

Here, Defendants' co-conspirator Stone directly threatens Plaintiff Corsi, after maliciously defaming him, saying "I think you've [Corsi] been deep state from the beginning. Your whole birther thing is used as a club to destroy conservatives…. ***I look forward to our confrontation. I will demolish you***. You're a fraudster, out of your alcoholic haze you have made up lies about David Jones and Alex Jones and Roger Stone and now I suspect they want you to lie about the President." Comp. ¶ 67. (emphasis added). This is a direct, credible threat to Plaintiff Corsi's life and the lives of those around him, including Plaintiff Klayman, who has been representing him with regard to both Defendants' defamation, but also Mueller's investigation.

//

4.      **Assault**

In order to sustain a claim for assault, a Plaintiff need only plead in the District of Columbia, "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim." *Dingle v. District of Columbia*, 571 F.Supp.2d 87, 98 (D.D.C. 2008). Plaintiff Corsi has more than fulfilled this requirement.

As set forth in the previous section, Defendant's co-conspirator, Stone made direct threats to Plaintiff Corsi's life, saying "**I look forward to our confrontation. I will demolish you**." Comp. ¶ 67. These threats are more than credible, as Stone also threatened to kill Randy Credico and his service dog. Comp. ¶ 67. Like Plaintiff Corsi, Mr. Credico was named as Person 2 in Stone's indictment. Plaintiff Corsi was named as Person 1 as a material witness to Stone's crimes. Even more, as set forth previously, Stone went so far as to publicly threaten the life of the judge assigned to his criminal case, Judge Amy Berman Jackson, which caused her to issue a total gag order, for which this Court can take judicial notice. These types of threats are what Stone, who fashions himself as Mafia,  are known for:

> Stone likes to portray himself as Mafia, frequently making reference to
> Mafia figures who he admires, as well as other unsavory types who have been
> alleged to have engaged in unethical and/or illegal behavior. He frequently makes
> reference to his heroes being Hyman Roth in the 'Godfather," who was the movie
> version of Meyer Lansky, and Roy Cohn, not to mention, Richard Nixon, for his
> role in Watergate. In this regard, after Stone was indicted he held a press
> conference on the courthouse steps of the federal courthouse in Ft. Lauderdale,
> where he was booked, with his arms defiantly in the air in the "victory' pose used
> by Nixon after he resigned in disgrace as a result of the Watergate scandal. At the
> time, Stone had been employed by a Nixon group called CREEP, or the
> Committee to Reelect the President. Stone even has a large tattoo of Richard
> Nixon affixed to his back. Thus, given his admiration for persons such as these,
> particularly Mafia figures, his actions as pled herein can be taken as threats, as
> well as being defamatory. And, Plaintiff Corsi is 72 years old. Stone's intentional
> infliction of emotional distress and coercion and threats are intended to try even
> cause Plaintiff Corsi to have heart attacks and strokes, in order that Plaintiff will
> be unable to testify at Stone's criminal trial. Tellingly, Stone threatened kill a
> material witness and his dog, Credico, Person 2 in the Mueller Indictment, "Mafia

style." Stone also fashions himself and indeed has the reputation, at a minimum, as being the preeminent "dirty trickster." *See* "Get Me Roger Stone" on Netflix. Comp. ¶ 29.

### 5.      Lanham Act Unfair Competition

Defendants falsely assert that Plaintiffs' claim under the Lanham Act for Unfair Competition must fail because there is no "commercial" speech at issue. However, it is clear that at all times, Defendant had a strong economic motivation for distributing the material at issue. *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) quoting *Bolger*, 463 U.S. at 66-67. The Complaint alleges that "Defendants, acting in concert, as part of their latest scheme for notoriety, fame, **and profit**, are now working in concert with Stone to defame, intimidate, and threaten Plaintiffs." Comp. ¶ 22 (emphasis added). Indeed, the Complaint sets forth the fact that "Plaintiffs Corsi and Plaintiff Klayman are both competitors to Defendants as conservative media personalities, broadcasters, authors and columnists on social media and elsewhere." Comp. ¶ 71. Thus, by discrediting and defaming Plaintiffs, Defendants are trying to "materially prejudice the viewers and/or listeners as to the quality, nature, and contents of Plaintiffs' services, which has caused significant competitive and commercial injury to Plaintiffs, as well as loss of good will and reputation." Comp. ¶ 74. Thus, in essence, the motivation behind Defendants' defamation is greatly financial, as they seek to destroy Plaintiffs reputation in order to eliminate them as competition.

Indeed, the Complaint clearly alleges that Plaintiffs are both "competitors' to Defendants as conservative media personalities, broadcasters, authors and columnists on social media and elsewhere. Comp. ¶ 71. For instance, Plaintiff Klayman "hosts an online radio show and produces videos that are posted on the internet, issues press releases, commentary and other publications." Crucially, Defendants have engaged in unfair competition, under the ambit of the

Lanham Act because they have "made, adopted, and or ratified numerous false or misleading statements of fact of and concerning Plaintiffs during their various programs and media postings and publication, which all contain significant advertisement or promotions." Comp. ¶ 73. As a result, Plaintiffs have suffered severe harm, as "These false and/or misleading (published) facts materially prejudice the viewers and/or listeners as to the quality, nature, and contents of Plaintiffs' services, which has caused significant competitive and commercial injury to Plaintiffs, as well as loss of good will and reputation." Comp. ¶ 74.

### III.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully requests that this Court deny Defendants' Motion to Dismiss. Plaintiffs also respectfully requests that this Court sua sponte award counsel for Defendants pursuant to its inherent authority for filing this patently frivolous Motion to Dismiss, which he has had to expend great time and expense to oppose. *Bruce v. Potomac Elec. Power Co.*, 162 A.3d 177, 186 (D.C. 2017). *See also In re M.L.P.*, 936 A.2d 316, 322 (D.C. 2007) ("[T]he court also has inherent authority to award attorneys fees and costs upon a showing of bad faith"), which like much of what Defendants are regrettably known for, is present here. *See also* supra footnote 1 regarding counsel for Defendants, Marc Randazza.

Dated: May 13, 2019                                    Respectfully Submitted,


                                               *   /s/ Larry Klayman   *
                                               Larry Klayman, Esq.
                                               KLAYMAN LAW GROUP, P.A.
                                               D.C.  Bar Number: 334581
                                               2020 Pennsylvania Ave NW #800
                                               Washington, DC, 20006
                                               Telephone:  (310)-595-0800
                                               Email: leklayman@gmail.com

                                               *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties on May 13, 2019

*/s/ Larry Klayman*
Larry Klayman, Esq