Jay M. Wolman (D.C Bar No. 473756)
Marc J. Randazza (*pro hac vice* pending)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: (702) 420-2001
ecf@randazza.com

*Counsel for Defendants Alex E. Jones, Owen Shroyer, Free Speech Systems, LLC, and Infowars, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| **DR. JEROME CORSI** and **LARRY KLAYMAN**, <br><br> Plaintiffs, <br><br> vs. <br><br> **INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, ALEX E. JONES, DAVID JONES,** and **OWEN SHROYER**, <br><br> Defendants. | CIVIL ACTION NO. 1:19-cv-00656-ESH <br><br> **REPLY IN SUPPORT OF MOTION TO DISMISS** |

"Why am I here?" is one of life's big questions; importantly, it is the question the Texan Defendants are asking this Court to answer, when faced with this suit.[1]  The Court lacks personal jurisdiction over them, and the venue is improper; even if this were not the case, there are no plausible claims against them by Mr. Klayman or his client, Dr. Corsi.

---

[1] This reply is filed only on behalf of Defendants Infowars, LLC, Free Speech Systems, LLC, Alex E. Jones, and Owen Shroyer.  Subsequent to the filing of the original motion, separate counsel appeared on behalf of Defendant David Jones, who will file a separate reply memorandum on his behalf.  To the extent applicable, that reply memorandum is incorporated herein by reference.

### 1.0 Personal Jurisdiction is Absent

Plaintiffs claim that broadcasts that reach into the District of Columbia is business in the district subjecting them to jurisdiction either under D.C. Code § 13-423(a)(1) or (a)(4). *See* Dkt. No. 10 at 7. They also claim that the sale of "tchotchkes" nationwide, including the district, funds speech that occasionally discusses locations in the district, subjecting them to personal jurisdiction. *See id*. at 7-8. Finally, they claim that the indictment of non-party Roger Stone in D.C., for alleged activities entirely separate from the alleged defamation here, warrants personal jurisdiction. *See id*. at 8. Plaintiffs make these same arguments under the Due Process clause, both in support of general and specific jurisdiction. *See id*. at 9-10. None of these arguments make any sense.

These are not "continuous and systematic contacts" warranting general jurisdiction under *Hourani v. PsyberSolutions LLC*, 164 F. Supp. 3d 128, 136-37 (D.D.C. 2016). In *Hourani*, the plaintiffs claimed jurisdiction on the basis of internet broadcasts and publications generally reaching the District. 164 F. Supp. 3d at 134-135. This was insufficient. *See id*. at 137 ("The Court does not have general personal jurisdiction over either man because they do not live or work in the District of Columbia and there are no allegations that they have systematic contacts with the District such that they should reasonably anticipate being sued here."); *see also Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Defendants live in and have their principal places of business in Texas. *See Xie v. Sklover & Company, LLC*, 260 F.Supp.3d 30, 39 (D.D.C. 2017) ("Under D.C. law, there is general jurisdiction over a defendant who is 'domiciled in, organized under the laws of, or maintaining his or its principal place of business in' the District.") (quoting D.C. Code § 13-422). Defendants do not live or work in the District and the alleged contacts, incidentally reaching the District along with the rest of the globe, are not systematic. *See GTE New Media Services, Inc., v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access defendants'

websites, for this does not by itself show any persistent course of conduct by the defendants in the District.").

Neither is there specific jurisdiction. "In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). Defendants did nothing in D.C. related to this dispute. Neither have Plaintiffs provided the proper required "affidavits and other written materials" to support their claim. *Covey Run v. Washington Capital,* 245 F. Supp. 3d 9, 17 (D.D.C. 2017).

Corsi and Klayman rely on a case involving Hustler Magazine, but it is distinguishable. In that case, Hustler was found to have "continuously and deliberately exploited the New Hampshire market[.]" *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 (1984).[2] Hustler had "regular monthly sales of thousands of magazines" in New Hampshire. *Id*. at 774. Specifically, Hustler's "contacts with New Hampshire consist of the sale of some 10,000 to 15,000 copies of Hustler Magazine in that State each month." *Id*. at 772. Plaintiffs make nowhere near the allegations that Defendants transact a similar extent of business as Hustler did in New Hampshire.

Further, despite citing to *Hourani*, Plaintiffs appear to have foregone reading it before citing it. In addressing specific jurisdiction, the Court wrote:

> A forum may assert specific jurisdiction over an out-of-state defendant who has not consented to suit there so long as "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (internal citation and quotation marks omitted).

---

[2] Plaintiffs cite *Hustler* in support of general jurisdiction, but it is actually a specific jurisdiction case. *See Bristol-Myers Squibb*, 137 S.Ct. at 1782 ("Concluding that specific jurisdiction was present, we relied principally on the connection between the circulation of the magazine in New Hampshire and damage allegedly caused within the State.").

164 F. Supp. 3d at 137 (D.D.C. 2016). Plaintiffs are not D.C. residents. In fact, Mr. Klayman reaffirms and swears he is a Floridian. *See* Dkt. No. 10-2 at ¶ 2. Nor are comments about an investigation into a nationwide presidential campaign "purposefully directed" at a district whose 3 electoral college votes were not changed by the alleged collusion. *See Bauman v. Butowsky*, 2019 U.S. Dist. LEXIS 54507, *10 (D.D.C. Mar. 28, 2019)("There is also no support for the proposition that merely speaking about a forum (or about entities within that forum)—e.g., producing a film about or seeking employment with the federal government, discussing one's relationships with federal government officials—can confer specific jurisdiction in the absence of identifiable forum contacts.")

Moreover, Plaintiffs lump all of the defendants together, attempting to obfuscate the issues. Plaintiffs do not identify what any specific defendant did to subject him or it to this Court's jurisdiction. Even if one defendant might be subject to this Court's jurisdiction, it does not automatically follow that the rest are. *Accord Keeton v. Hustler Magazine, Inc.*, 465 U.S. at 781 n.13("In addition to Hustler Magazine, Inc., Larry Flynt, the publisher, editor, and owner of the magazine, and L.F.P., Inc., Hustler's holding company, were named as defendants in the District Court. It does not of course follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other defendants.") In fact, Plaintiffs did not dispute in their opposition that the fiduciary shield doctrine would protect the individual defendants, including Alex Jones and Owen Shroyer, even if a relevant corporate defendant could be found subject to personal jurisdiction in this district. *Compare Bauman v. Butowsky*, 2019 U.S. Dist. LEXIS 54507 at *12-13 (dismissing for lack of personal jurisdiction where no actions identified in defendant's personal capacity separate from company's alleged contacts). Nor do Plaintiffs show that the exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Instead, Plaintiffs argue that personal jurisdiction is proper because Defendants are allegedly acting in concert with non-party Roger Stone, who doesn't live here either. *See* Dkt. No. 10 at 8. However, as Plaintiffs should be aware, Mr. Stone is not subject to this Court's personal jurisdiction over the alleged speech at issue. *See* **Exhibit 1**, Motion to Dismiss, *Corsi v. Stone,* Case No. 1:19-cv-00324-TJK (D.D.C. Mar. 6, 2019) (incorporated herein by reference), and **Exhibit 2**, Reply in Support of Motion to Dismiss, *Corsi v. Stone,* Case No. 1:19-cv-00324-TJK (D.D.C. Mar. 27, 2019)(incorporated herein by reference).  Moreover, "bald speculation or a conclusionary statement that individuals are co-conspirators is insufficient to establish personal jurisdiction under a conspiracy theory." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (1997) (internal quotation marks omitted).  Plaintiffs have failed to "plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." *Id*. (internal quotation marks omitted).  Though Mr. Stone is being prosecuted in the District for alleged illegal activity he conducted in the District, Plaintiffs do not claim he defamed them from this District.  No credible conspiracy occurred in this District, Defendants lacked knowledge of Mr. Stone's activities in the District, and no knowledge has been pled with particularity. *See Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 186 (D.D.C. 2018); *see also Vasquez v. Whole Foods Market*, 302 F. Supp. 3d 36, 48-49 (D.D.C. 2018) (precluding plaintiffs from aggregating allegations regarding multiple defendants to establish personal jurisdiction).  Nor is there anything but rife speculation that a conspiracy exists.  Thus, this Court lacks personal jurisdiction over Defendants.

**2.0   Venue is Improper**

A substantial part of the events giving rise to the claims arose in Texas.  No part arose in D.C.  "Peripheral and tangential events occurring in the district will not establish venue." *Cockrum,* 319 F. Supp. 3d at 190.

Plaintiffs cite to no authority where allegedly targeting a venue through defamation of non-residents who might, one day, enter that venue means that the alleged defamation arose in that

venue.  Rather, the district must bear "the brunt of the alleged injury".  *United States Trade Ass'n v. Unidentified Parties,* 2011 U.S. Dist. LEXIS 63606, at *37 (E.D. La. June 15, 2011).  The brunt of the alleged injury would be felt no more in D.C. than in any other random place.  As one court noted, "it is difficult to see how a plaintiff can show in the absence of state-specific targeting that an event actually "occurred" in the state under § 1391(b)(2)." *Poor Boy Prods. v. Fogerty*, 2015 U.S. Dist. LEXIS 113086, at *22 n.2 (D. Nev. Aug. 26, 2015).  To the contrary, and "[m]uch more probably, the Supreme Court would consider internet [postings] to have "occurred" in the state where the offending party sits when he posts them, or perhaps where his servers are located[.]" *Id.*

Neither does the simple availability of the programming on the internet, with no greater targeting of D.C. than of Uzbekistan, make this district a proper venue.  *Compare Equidyne Corp. v. Does 1-21*, 279 F. Supp. 2d 481, 489 (D. Del. 2003) ("posting to message boards on the internet is not sufficient to constitute an act or transaction in Delaware.")  Though Mr. Klayman may prefer filing suit in this forum, even when expressly barred by a contractual forum selection clause, the Court should not indulge his whims.  *Compare Moore, et al. v. Cohen, et al.*, Case No. 1:18-cv-02082-TFH (D.D.C. Apr. 29, 2019) (transferring case improperly filed in this district by Mr. Klayman).  Thus, the matter should be dismissed for improper venue.

**3.0     Plaintiffs' Claims Lack Merit**

There is no reason for this litigation to continue regardless of jurisdiction or venue; the Court should adjudicate these claims for their lack of merit.

**3.1     Defendants Did Not Defame Plaintiffs**

Notwithstanding Plaintiffs' citations to Florida cases, as set forth in *Zimmerman v. Al Jazeera Am., LLC,* these claims may be dismissed at this stage:

> "When confronted with a motion to dismiss [a defamation claim], a court must evaluate '[w]hether a statement is capable of defamatory meaning,'" which is a threshold "question of law[,]" *Jankovic v. Int'l Crisis Grp. (Jankovic I),* 494 F.3d 1080, 1091 (D.C. Cir. 2007) (second alteration in original) (quoting *Weyrich v. New Republic, Inc.,* 235 F.3d 617, 627 (D.C. Cir. 2001)), and must also determine whether the statement is false, *see White v. Fraternal Order of Police,* 909 F.2d

512, 520 (D.C. Cir. 1990) ("Defamatory meaning and falsity are distinct elements of the tort of defamation and are considered separately."). 246 F. Supp. 3d 257, 273 (D.D.C. 2017). The defamation claims should all be dismissed.

First, "bare assertion[s]" of conspiracy are insufficient to find liability on the part of any defendant for the speech of any other person. *See Ye v. Holder*, 644 F. Supp. 2d 112, 119 (D.D.C. 2009) (Huvelle, J.); *see also Flowers v. Executive Off. of Pres.*, 142 F. Supp. 2d 38, 47 (D.D.C. 2001) (dismissing conspiracy claim where the plaintiff "fail[ed] to allege any facts to support such a claim"). In fact, under D.C. law, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Executive Sandwich Shoppe v. Carr Realty Corp.*, 749 A.2d 724, 739 (D.C. 2000).

Nor is there any basis to suggest Mr. Shroyer is liable for the allegedly defamatory speech of Mr. Stone just because Mr. Stone appeared on a program hosted by Mr. Shroyer. Plaintiffs cite no authority for this proposition. To the contrary, "[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1992).

Second, Plaintiffs are public figures to whom the actual malice standard applies. Dr. Corsi does not dispute his self-proclaimed "world-renowned" status observed in *Farah v. Esquire Magazine*, 736 F.3d 528, 531 (D.C. Cir. 2013). Neither does Mr. Klayman show that the prior findings that he is a public figure are "context specific", where the findings in those prior cases were general in nature as to his "notoriety and high-profile work in the public realm," *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014), and he ignores his own concession of such status in *Klayman v. City Pages*, 2015 U.S. Dist. LEXIS 49134, at * 39 (M.D. Fla. Apr. 3, 2015). Plaintiffs even pled themselves as a "nationwide" publisher and a "media personality". *See* Complaint at ¶¶ 4-5. Mr. Klayman pled his fame, and he cannot now run from his own pleadings nor distinguish multiple cases finding that he is a public figure.

Even if Plaintiffs' general public figure status were at issue, there is no legitimate question of voluntary injection into the debate —Exhibit 1 to the Complaint, the indictment of Mr. Stone, which Plaintiffs incorporated by reference in to their complaint, is riddled with Dr. Corsi's willful communications with Mr. Stone.  Mr. Klayman chose to represent Dr. Corsi publicly in relation thereto.  At a minimum, Plaintiffs are public figures, at least for the purposes of this case.

Third, the statements were not made by any of the defendants with actual malice.  Mr. Shroyer made no allegedly defamatory statements at all.  Nor is there any plausible allegation, beyond conclusory allegations of vicarious liability, that the corporate defendants knew any statements were false or aired them in reckless disregard for their truth.  And, as discussed in the motion and below, the statements were otherwise opinion and/or rhetorical hyperbole.

Plaintiffs fail to properly understand that an opinion does not have to be correct to have a foundation.  It does not matter if Dr. Corsi is mentally degraded, had a stroke, appeared able to walk, or not; it would only be actionable if Mr. Jones had not actually observed Dr. Corsi—a factual foundation they do not deny.  Nor do they deny that Dr. Corsi could have *appeared* mentally degraded.  They do not claim that Mr. Jones did not see Dr. Corsi at a steakhouse.  They do not deny staff saw him in the elevator or that the staff thought he was dead and so informed Mr. Jones.  Mr. Jones laid the factual foundation for his protected opinions and those statements are not actionable.

Neither did Mr. Jones call Dr. Corsi a liar; his statement was one of rhetorical hyperbole. Certainly, no one who heard it thought that the phrase "whatever comes out of his mouth ain't the truth" means that every word said by Dr. Corsi must be false.  Rather, it is more akin to the determination in *Smith v. Clinton* that calling the plaintiffs "wrong" in the press is not defamatory. 253 F. Supp. 3d 222, 241 (D.D.C. 2017).

Similarly, Mr. Stone's January 18 statements are classic rhetorical hyperbole; calling someone a "numbskull" or that they could get the electric chair for the non-capital offense of perjury or that they are a "piece of garbage" does not imply the literal truth of any of those

statements. Defendants asserted that all of the statements, in context, constituted Mr. Stone's opinion and rhetoric; none of them were conceded to be actionable. As summarized by one court:

> whether the language is hyperbolic is relevant to distinguishing fact from opinion. Rhetorical hyperbole—"language that, in context, was obviously understood as an exaggeration, rather than a statement of literal fact"—is not actionable. In particular, "[t]he ad hominem nature of abusive epithets, vulgarities, and profanities," which some writers "use to enliven their prose," indicates that the statement is hyperbole.
>
> Exercises in "name calling" generally fall under the category of rhetorical hyperbole. For example, courts have held that "idiot," "raving idiot," "[i]diots [a]float," and more vulgar variants were rude statements of opinion, rather than lay diagnoses of mental capacity. Similarly, courts have held that statements calling the plaintiff "stupid," a "moron," and a "nincompoop" were not actionable. Courts have also held that statements potentially referring to the plaintiff's mental health, such as "raving maniac" "pitiable lunatics" "wacko," "nut job," and "hysterical" "crazy" and "crank," were statements of opinion.

*Steinhausen v. Homeservices of Neb., Inc.*, 289 Neb. 927, 941-42, 857 N.W.2d 816, 829 (2015) (citations omitted); *see also Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) (summarizing cases that concluding that insults, such as phony, lazy, stupid, and chicken-stealing idiot, lacked defamatory meaning). No listener would believe Mr. Stone had access to any IQ test taken by Mr. Klayman.[3] Such indicates the overall tenor of the statements as hyperbolic.

There is further no indication that Mr. Jones or Mr. Stone acted with actual malice when making statements about Plaintiffs, let alone the other defendants passively letting speech be aired. "[T]he plaintiff must demonstrate that the author 'in fact entertained serious doubts as to the truth of his publication,' or acted with a 'high degree of awareness of … probable falsity.'" *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (citations omitted). As to Mr. Klayman's separation from Judicial Watch, Plaintiffs are squabbling over a fair interpretation of the judicial findings. Allegations were made against Mr. Klayman of an inappropriate relationship, which he admitted in part. Judicial Watch requested he resign. Judicial Watch won the lawsuit. At a

---

[3] Mr. Klayman's exhibit is not appropriate at this stage of the proceedings; even if it were, the statements remain rhetorical hyperbole.

minimum, it cannot be reckless disregard of the truth for Mr. Stone to come to the same conclusion as a jury, let alone for Defendants to have engaged in actual malice through the broadcasting of his spontaneous utterances.

None of the statements were conceded by omission; there was no omission. Defendants generally addressed the allegations at paragraphs 65, 66, 67, and 70 in the second paragraph on page 18 of their motion, where they discussed "[t]he remaining allegations" as to the truthfulness of Dr. Corsi's statements. Plaintiffs ignore that Dr. Corsi's statements that his own "recollections are not always accurate against an objective sense of truth" and that Dr. Corsi is "not maintaining that [his own] recollection is true and [Mr. Stone's] is false." Dkt. No. 7 at 18. Neither do Plaintiffs deny Dr. Corsi's work with various agencies as true; they rather make a large logical leap that it somehow falsely implies certain communications with the Special Counsel. Plaintiffs' imagination does not amount to defamation. Thus, the allegations are not actionable.

### 3.2 Plaintiffs have no Valid Claim for Intentional Infliction of Emotional Distress or Assault

Plaintiffs make the risible claim that Mr. Stone saying that he looks forward to "confrontation" and that he would "demolish" Dr. Corsi suggest that a physical injury was threatened. The claims for assault and intentional infliction of emotional distress arise from this purported threat – by a non party. No matter how imposing Plaintiffs claim the 66-year old Roger Stone appears to them, no reasonable person would perceive the statements as anything other than rhetoric. *Contrast Homan v. Goyal,* 711 A.2d 812 (D.C. 1998) (only finding a claim for intentional infliction of emotional distress after *repeated death* threats and actual physical confrontation). The circumstances in *Homan* are sorely lacking here. Neither is the so-called threat immediate to constitute assault, where Mr. Stone was in Florida and Dr. Corsi in New Jersey. Moreover, even if Mr. Stone could be deemed to have threatened Dr. Corsi with demolition, there is no basis to find any of the Defendants possibly liable for those utterances. Neither claim can proceed.

### 3.3 Economic Motivation is Not Commercial Speech

Plaintiffs entirely misrepresent the decision in *Tobinick v. Novella,* 848 F.3d 935 (11th Cir. 2017). In *Tobinick*, the Eleventh Circuit expressly rejected the notion that merely because a defendant might somehow have a downstream pecuniary benefit to speech, it is commercial, saying:

> The Tobinick Appellants describe a complex "funneling" scheme to generate profit for Dr. Novella, in which the Tobinick Appellants claim that the two articles are connected to other websites through hyperlinks in a way that readers are directed to websites that generate revenue for Dr. Novella, such as through advertising or membership subscriptions. This funneling theory, which attempts to connect the articles to revenue sources, relies on such a level of attenuation that it fails to demonstrate economic motivation in the commercial speech context.

848 F.3d at 951. Plaintiffs' theory is similarly attenuated. Under Plaintiffs' view, any time a media personality criticizes another, it is *ipso facto* commercial speech because they might compete elsewhere in the market.

That Defendants might earn revenue by airing criticism of Plaintiffs is not determinative. As discussed by the Supreme Court, "[i]f a newspaper's profit motive were determinative, all aspects of its operations -- from the selection of news stories to the choice of editorial position -- would be subject to regulation if it could be established that they were conducted with a view toward increased sales. Such a basis for regulation clearly would be incompatible with the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Com. on Human Relations*, 413 U.S. 376, 385, (1973). The speech is not commercial by any stretch and the Lanham Act claim must be dismissed.

### 4.0   Conclusion

There is no personal jurisdiction over Defendants.  The District of Columbia is not a proper venue.  None of the statements are actionable.  This matter should be dismissed with prejudice.

Dated: May 20, 2019.   Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman
(D.D.C. Bar No. 473756)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
Email: ecf@randazza.com

Marc J. Randazza
*pro hac vice pending*
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Tel: (702) 420-2001
Email: ecf@randazza.com

*Attorneys for Defendants Alex E. Jones, Owen Shroyer, Free Speech Systems, LLC, and Infowars, LLC*

Civil Action No. 1:19-cv-00656-ESH

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document was filed and served upon all parties of record on May 20, 2019 by CM/ECF, the court's electronic filing system.

/s/ Jay M. Wolman
Jay M. Wolman