Bradley J. Reeves (TX Bar No. 24068266)
REEVES LAW, PLLC
702 Rio Grande Street, Suite 306
Austin, TX 78701
Telephone: 512-827-2246
brad@brtx.law

Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com

Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Telephone: 702-420-2001
jmw@randazza.com

Counsel for Defendants,
Infowars, LLC; Free Speech Systems, LLC;
Alex E. Jones; and Owen Shroyer

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION**

| | |
|---|---|
| **DR. JEROME CORSI** and **LARRY KLAYMAN**,<br><br>         Plaintiffs,<br><br>   vs.<br><br>**INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, ALEX E. JONES, DAVID JONES,** and **OWEN SHROYER**,<br><br>         Defendants. | Civil Action No. 1:20-cv-00298-LY<br><br>**DEFENDANT OWEN SHROYER'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR ATTORNEYS' FEES AND COSTS UNDER FLA. STAT. § 768.295** |

Defendant Owen Shroyer brings this Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) and requests an award of costs and attorneys' fees against Plaintiff Larry Klayman under Fla. Stat. § 768.295.[1]

**1.0   Introduction**

This is one of a number of nearly identical cases brought by Larry Klayman in a vexatious tantrum of a campaign against Roger Stone. In his quest to punish Stone for some perceived slight, Klayman has sued anyone who stood near Roger Stone. This is all that Mr. Shroyer is alleged to have done.[2] It is worth noting that a virtually identical complaint was filed in the Southern District of Florida – which the judge struck *sua sponte* because it was such an unsupportable claim. *See* Dkt. No. 34-2. Klayman then filed a nearly identical claim in state court in Florida.[3] *See* **Exhibit 1** Klayman seems to be desperately filing duplicative cases, again and again, since the judiciary has failed to put an end to his abuse of the judicial system. Today is the day.

None of the speech at issue constitutes actionable defamation, nor may it be repurposed to fit any other tort theory, including intentional infliction of emotional distress and assault. The speech is not commercial speech under the Lanham Act and neither is it unfair competition. Plaintiffs' claims are especially frivolous as to Mr. Shroyer, as he did not utter a single tortious or unlawful word, and Plaintiffs fail to allege he is liable for any statement. Further, given how unsupportable the Lanham Act claim is, this case should be deemed an "exceptional case" with fees awarded to the defendants. Plaintiffs unreasonably multiplied the proceedings, filing an Amended Complaint to add Roger Stone as a defendant, more than a year after the original motion to dismiss was fully briefed. *See* Dkt. Nos.

---

[1]   Florida's Anti-SLAPP statute does not apply to claims brought under federal law, and so Defendants do not seek an award of costs and attorneys' fees under this law as to Mr. Klayman's Lanham Act claim.

[2]   At least, officially, in this matter. Mr. Klayman continues to represent Dr. Corsi in other matters, such as in *Corsi v. Stone, et al.*, Case No. 50-2019-CA013711 (15th Jud. Cir., Fla., filed Oct. 23, 2019). However, interactions with Corsi's counsel have shown that it is still Klayman calling the shots and managing the litigation, despite this court's order to the contrary.

[3]   "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

7 & 10-12.[5]  Mr. Klayman should also be required to pay Mr. Shroyer's costs and attorneys' fees incurred in defending themselves from his frivolous claims under Fla. Stat. § 768.295, as he is a Florida resident and this suit is exactly the kind of litigation sought to be prevented by Florida's Anti-SLAPP law.  Even if the Court declines to apply the Anti-SLAPP law, fees should be awarded under the Lanham Act, 28 U.S.C. § 1927, the Court's inherent power, and/or Fed R. Civ. P. 11.[6]  Further, Klayman and Corsi both should be considered to be vexatious litigants, and the citizens of this District should be protected from their abusive and frivolous litigation in the future.

**2.0   Factual Background**

Plaintiffs allege that Defendants[8] committed defamation, intentional infliction of emotional distress, unfair competition, and even *assault*.  Facts alleged against Mr. Shroyer are:[9]

---

[5]   On July 30, 2020, the Court dismissed the motion without prejudice in light of the filing of the Amended Complaint.  Dkt. No. 48.  Although the Scheduling Order (Dkt. No. 46) set a deadline of Nov. 1, 2020 to file amended pleadings, Plaintiffs failed to seek leave of court as required by Fed. R. Civ. P. 15(a)(2).  *See Pub. Health Equip. & Supply Co. v. Clarke Mosquito Control Prods.,* 410 F. App'x 738, 740 (5th Cir. 2010) (pre-deadline motions are governed by Rule 15(a)(2).  Factors to consider in deciding whether to permit amendment include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).  There was no need to amend the complaint to add Stone to this action—both Corsi and Klayman already had pending actions against Stone for the very statements at issue here. *See Corsi v. Stone,* Case No. CACE-20-004473 (17th Jud. Cir., Fla., filed Mar. 11, 2020) and *Klayman v. Stone,* Case No. 19-002672 CACE (17th Jud. Cir., Fla, Amd. Compl. Filed Aug. 29, 2019).  Notably, Mr. Stone is likely not susceptible to personal jurisdiction in Texas for statements made by him in Florida just as he was not susceptible to jurisdiction in D.C. *See Corsi v. Stone,* 2020 U.S. Dist. LEXIS 34852, *7 (D. D.C. Mar. 1, 2020) and *Corsi v. Caputo*, 2020 U.S. Dist. LEXIS 60958 (D. D.C. Apr. 7, 2020).  Both undue delay and futility of amendment, as the Amended Complaint does not survive Rule 12(b)(6) analysis, should have precluded the filing of the Amended Complaint.  To the extent applicable, Mr. Shroyer requests the Court strike the improper amendment under Rule 12(f) and Rule 15.

[6]   A Rule 11 motion on behalf of Mr. Shroyer is being filed contemporaneously.

[8]   Plaintiffs also claim that Defendants worked in concert with non-party Roger Stone in violation of 18 U.S.C. § 1512.  *See* Amd. Complaint at ¶ 36.  No actual cause of action is asserted; moreover, this statute does not confer a private right of action. *See Merkle v. Gragg*, No. SA-19-CV-00640-XR, 2019 U.S. Dist. LEXIS 204920, at *42 (W.D. Tex. Nov. 26, 2019).  To the extent Plaintiffs rest on allegations made in other litigation (Dkt. No. 47 at ¶ 36), no actual allegations regarding the claims at issue were presented in those matters.

[9]   Plaintiffs make practically no allegations against co-Defendant David Jones.  Allegations as to co-Defendant Roger Stone are not addressed here except as they relate to claims against Mr. Shroyer.

a) <u>January 18, 2019 Video</u>: Appeared on video at the same time as Roger Stone, where Mr. Stone allegedly said Dr. Corsi was "fired from World Net Daily"; that Dr. Corsi perjured himself; that Dr. Corsi had a "feeble alcohol affected memory"; that Dr. Corsi "was perfectly prepared to bear false witness"; that Dr. Corsi made up a story; and that Dr. Corsi is "lying because his lips are moving." Dkt. No. 47 at ¶¶ 49-54.

b) <u>January 18, 2019 Video</u>: Appeared on video at the same time as Roger Stone, where Mr. Stone allegedly said that Mr. Klayman "never actually won a courtroom victory"; that Mr. Klayman was "ousted" from employment due to sexual misconduct; and that Klayman is a "piece of garbage", "incompetent", "a numbskull", "an idiot", "an egomaniac" and "could be the single worst lawyer in America" whose IQ is not "higher than 70". *Id.* at ¶¶ 55-56, 59, 61-62.

That's it. Mr. Shroyer is here because he *appeared in the same video as someone who said something that is not defamatory.* The novel theory of "defamation by proximity" has never existed in American law, and the mere fact that we are on our multiples iteration of this ludicrous claim, which Klayman has brought in multiple other court as well, is a travesty and shows that neither this, nor the other trove of cases filed by Mr. Klayman against his perceived enemies, have minimal merit.

Mr. Shroyer is not accused of doing anything more than happening to be in the same frame as Stone when Stone made these statements, which themselves do not appear to be capable of a defamatory meaning, or are provably true. Mr. Shroyer separately served a Rule 11 motion upon Dr. Corsi relative to the claims made against him.

No other pertinent factual allegations are asserted.[10] Plaintiffs otherwise make a series of conclusory allegations as to their purported competition with Defendants. *Id.* at ¶¶ 63 & 70-74.

---

[10] Plaintiffs include significant unrelated matter, turning their Complaint into a "free for all." *See USA v. Stone*, Case No. 1:19-cr-00018 (D.D.C. Feb. 28, 2019) (striking filing from Mr. Klayman on behalf of Dr. Corsi and admonishing them upon the filing of improper matter).

**3.0   Legal Standard**

**3.1   Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. No one can even see the glow of distant lights of plausibility from this case.

**3.2   Florida Anti-SLAPP Statute: Fla. Stat. § 768.295**

Florida's Anti-SLAPP statute applies here, because a SLAPP plaintiff cannot outrun his home state's Anti-SLAPP law by forum shopping in a state that does not have one.[11] *See Tobinick v. Novella*, 108 F. Supp. 3d 1299, 1304 (S.D. Fla. 2015) (California plaintiff subject to California anti-slapp law) *aff'd* 848 F.3d 935 (11th Cir. 2017); *Adelson v. Harris*, 774 F.3d 803 (2d Cir. 2014). The statute provides that "[a] person … in this state may not file or cause to be filed … any lawsuit … against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue …." Fla. Stat. § 768.295(3). A person sued in violation of the statute "has a right to an expeditious resolution of" the claims, allowing them to "move the court for an order dismissing the action" and "file a motion for summary

---

[11]   Indeed, Texas has one, but it does not apply in Federal Court. That said, all Anti-SLAPP laws are not equal, and courts have shown that the imperfections in Texas's law do not exist in other state's laws. *See, e.g., La Liberte v. Reid,* 966 F.3d 79 n.3 (2d Cir. 2020) (distinguishing Nevada statute) and *Bongino v. The Daily Beast Company*, LLC, No. 2:19-cv-14472-JEM, Doc. No. 23 (S. D. Fla. Aug. 6, 2020) (distinguishing Florida statute).

judgment[12] … seeking a determination that the claimant's … lawsuit has been brought in violation of this section." Fla. Stat. § 768.295(4). The prevailing party on a motion brought under this statute is entitled to a mandatory award of "reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." *Id.* The term "free speech in connection with public issues" is defined as "any written or oral statement that is protected under applicable law and is made … in connection with a … radio broadcast, … news report, or other similar work." *Id.* at § 768.295(2)(a).

As discussed in more detail below, the Florida anti-SLAPP statute applies to Mr. Klayman in federal court. Unlike the Texas Citizens Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code §§ 27.001, *et seq.,* which was found to conflict with Rule 12 & 56 in *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019), the Florida statute does not conflict and is strictly a substantive fee-shifting statute.[13]

## 4.0 Analysis

### 4.1 The Amended Complaint is a Shotgun Pleading, One Previously Thrown Out, *Sua Sponte*, by a Federal Judge

Mr. Klayman filed a nearly identical complaint in the Southern District of Florida. *See* Dkt. No. 34-1. *Sua sponte*, Judge Altman issued an Order Requiring More Definite Statement, requiring Mr. Klayman to "remove all references to irrelevant, conclusory, and scandalous material" and, if he were to replead the Lanham Act claim, show cause that he had standing to do so. *See* Dkt. No. 34-2, *Klayman v. Infowars,* Case No. 20-80614-CIV (S.D. Fla. Apr. 13, 2020). The complaint was deemed a "shotgun pleading", violating Fed. R. Civ. P. 8 & 10(b). The case upon which Judge Altman relied, *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015), has been favorably cited in this Circuit. *See, e.g., Sistrunk v. Haddox*, No. 18-516, 2020 U.S. Dist. LEXIS 88178, at *32-33 (W.D. La.

---

[12] While the statute refers to a "motion for summary judgment," Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6). A party need not bring a motion styled as a motion for summary judgment to be entitled to an award of costs and fees. *See Bongino v. The Daily Beast Company, LLC*, No. 2:19-cv-14472-JEM, Doc. No. 23 (S. D. Fla. Aug. 6, 2020) (granting motion to dismiss under Fed. R. Civ. P. 12(b)(6) and finding entitlement to fees under Fla. Stat. § 768.295) (attached as **Exhibit 2**.)

[13] To the extent the TCPA would apply under a choice of law analysis and the decision in *Klocke* is reversed, Defendants bring this motion pursuant to that statute in the alternative.

May 19, 2020). Rather than comply with the order, Mr. Klayman dismissed that action. *See* Dkt. Nos. 34-3 & 34-4. He pursued the same complaint here – forum shopping his ludicrous claims to a court he apparently presumed would not hold him to the same standard. Mr. Shroyer hopes that Klayman was mistaken.

The Amended Complaint contains identical material the Southern District of Florida found irrelevant, conclusory, and scandalous. It also fails to make the additional showing of standing under the Lanham Act claim. The closest Mr. Klayman came to complying was in filing yet another identical lawsuit, styled *Klayman v. Infowars,* Case No. CACE-20-007120 (17th Jud. Cir., Fla. filed Apr. 28, 2020), in which the same defamation claims were raised as in the complaint stricken by Judge Altman, substituting a claim under the Florida Deceptive and Unfair Trade Practice Act (FDUTPA), Fla. Stat. §§ 501.202 *et seq.*, for the Lanham Act claim.[14] This Court should respect and follow the decision of Judge Altman and dismiss the amended complaint.[15]

### 4.2   Plaintiffs Do Not Allege Mr. Shroyer Did Anything

Plaintiffs do not allege Mr. Shroyer uttered an actionable word or otherwise did anything that could expose him to liability. All of their claims against Mr. Shroyer thus fail at the outset. All they do is make the bare assertion that Mr. Shroyer acted "in concert" with the other Defendants, presumably by being in the same room as other Defendants when they made allegedly actionable statements. This is not sufficient. "Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987)).

"Under Texas law, a civil conspiracy requires (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful,

---

[14]   The Florida case remains pending. Since the Court deemed the Amended Complaint in this case to supersede the original complaint, the Florida case was a prior pending action at the time the Amended Complaint was filed. Thus, Mr. Klayman's suit here is a duplicate that should be dismissed. *See Oliney v. Gardner,* 771 F.2d 856, 859 (5th Cir. 1985); *see also Philpot v. Emmis Operating Co.,* No. 1:18-CV-816-RP, 2019 U.S. Dist. LEXIS 180125, at *16-17 (W.D. Tex. June 25, 2019).

[15]   Although the Court could issue an order under Rule 12(f) requiring a more definite statement, Plaintiffs have had their chances and they have taken enough bites at the apple.

overt acts; and (5) damages as the proximate result.  *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719-20, 38 Tex. Sup. Ct. J. 765 (Tex. 1995).  For a conspiracy claim, there must be an injury resulting from an act done pursuant to a common purpose.[17]  *Trostle v. Combs*, 104 S.W.3d 206, 214-15 (Tex. App. -- Austin 2003, no pet.) (*citing Carroll v. Timmers, Chevrolet, Inc.*, 592 S.W.2d 922, 925, 23 Tex. Sup. Ct. J. 131 (Tex. 1979))."  *Cedillos v. Tex. Dep't of Pub. Safety*, No. SA-03-CA-0427-XR, 2005 U.S. Dist. LEXIS 3846, at *23-24 (W.D. Tex. Mar. 10, 2005); *accord Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006) and *Morgan v. Union Cty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364-65, 633 A.2d 985, 998 (Super. Ct. App. Div. 1993).

The Amended Complaint consists of bald assertion after bald assertion.  Although the Amended Complaint asserts Defendants acted in concert or as surrogates for Stone, with the word "concert" appearing 38 times, no facts alleging how they acted in concert or how they were surrogates are set forth.  In fact, Dr. Corsi, represented by Mr. Klayman, lost on this very "surrogacy" theory only last month in a similar claim in the absence of "a scintilla of admissible evidence to support" it.  *See* **Exhibit 3**, *Corsi v. Stone, et al.* Case No. 19-CA-013711-AXX (15th Jud. Cir., Fla. Aug. 12, 2020).  Corsi should not get a "lateral appeal" of his unsupportable theory in this court.

There are no allegations as to any object to be accomplished or a meeting of the minds.  Thus, Mr. Shroyer cannot be liable for anything done by any other Defendant.  Due to the lack of any viable conspiracy claim and the lack of any allegations specific to Mr. Shroyer, Plaintiffs have failed to state a claim against him.  Similarly, the allegations that Mr. Shroyer "ratified" the allegedly defamatory statements, as a form of that word appears 6 times in the Amended Complaint, lacks merit.  A "conclusory allegation" that a defendant "ratified' defamation, without "factual content in support

---

[17]   No choice of law analysis is required as to this issue, as Texas and Florida law is in agreement. "[F]or a court to conduct a choice of law analysis, it must be presented with a true conflict of laws.  A 'true conflict' arises when the law of two or more forums conflicts in such a way that the difference has a significant effect upon the outcome of the case." *Arrowood Indem. Co. v. Gulf Underwriters Ins. Co.*, No. EP-08-CV-285-DB, 2010 U.S. Dist. LEXIS 152771, at *9 (W.D. Tex. Mar. 3, 2010) (internal citation omitted).  Further, any choice of law analysis must be done on an issue-by-issue basis.  *See Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 284 (Tex. App. 2019); *see also Palomo v. United States,* No. 1:96cv329GR, 1997 U.S. Dist. LEXIS 24103, at *6 (S.D. Miss. Mar. 14, 1997) ("Texas law also utilizes depeçage, an issue by issue analysis in choice of law decisions.")

of this assertion, let alone the type of factual content that would allow the court to 'to draw the reasonable inference that the defendant is liable for the misconduct alleged'" is insufficient. *King v. Jarrett*, No. 1:15-CV-491-LY, 2016 U.S. Dist. LEXIS 196578, at *19-20 (W.D. Tex. June 17, 2016) quoting *Iqbal*, 556 U.S. at 677.

Assuming, *arguendo*, Plaintiffs adequately asserted a conspiracy claim against Mr. Shroyer, Plaintiffs present no elements of any of these other claims. Mr. Shroyer hereby incorporates by reference the discussions of Plaintiffs' defamation, defamation *per se*, defamation by implication, intentional infliction of emotional distress, assault, and Lanham Act claims found in the forthcoming motions to dismiss filed by the other Defendants.

### 4.3     Plaintiffs Failed to Comply with the TDMA

Even if Plaintiffs had alleged Mr. Shroyer uttered every allegedly defamatory word at issue, Plaintiffs' defamation claims would still fail for failure to comply with the pre-suit notification provisions of the Texas Defamation Mitigation Act ("TDMA"). The TDMA

> provides that "[a] person may maintain an action for defamation only if … the person has made a timely and sufficient request for correction, clarification, or retraction from the defendant." [Tex. Civ. Prac. & Rem. Code §] 73.055(a). If a plaintiff does not make such a request before the statute of limitations expires, she may not state a claim for defamation. *See id.* at § 73.055(b).

*Tubbs v. Nicol*, 675 F. App'x 437, 439 (5th Cir. 2017). The statute of limitations for defamation in Texas is one year. Tex. Civ. Prac. & Rem. Code § 16.002. It has been over a year since the alleged statements were made, and Mr. Shroyer is not alleged to have been sent a request for correction, clarification, or retraction (and Plaintiffs cannot otherwise show a sufficient request was sent).

This is not a case where the plaintiffs can dismiss, send a TDMA request, and re-file. "The Fifth Circuit has held that Texas applies its own statute of limitations, regardless [of] what substantive law applies." *Woolley v. Clifford Chance Rogers & Wells, L.L.P.*, 2004 U.S. Dist. LEXIS 97, 2004 WL 57215, at *3 (N.D. Tex. Jan. 5, 2004) (citations omitted). Texas has a one-year statute of limitations for defamation claims. *See* Tex. Civ. Prac. & Rem. Code § 16.002(a). It applies to all of the common law claims, as this "one-year limitation likewise applies to other causes of action for which the

gravamen of the complaint is injury to a plaintiff's reputation because of allegedly defamatory statements." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 741-42 (5th Cir. 2019) (citations omitted). The claims accrue on the "first date of publication," even on the internet. *See id.* at 742 (citations omitted).

Although Florida has its own defamation mitigation statute, Fla. Stat. § 770.01, with which Mr. Klayman similarly failed to comply, and under which his defamation claims would be dismissed, the Texas statute governs. The New Jersey iteration, N.J. Stat. § 2A:43-2, with which Dr. Corsi similarly failed to comply, restricts damages to those "specially alleged in the complaint." Dr. Corsi pleads no special damages and, thus, there are no damages recoverable. "For procedural matters, … Texas, generally speaking, applies the law of the forum state." *Porter v. Charter Med. Corp.*, 957 F. Supp. 1427, 1432 n.2 (N.D. Tex. 1997) (collecting cases). The Texas statute is a "procedure."[18] *Butowsky v. Folkenflik*, Civil Action No. 4:18CV442, 2019 U.S. Dist. LEXIS 104297, at *132-33 (E.D. Tex. Apr. 17, 2019); *Hearst Newspapers, LLC v. Status Lounge, Inc.*, 541 S.W.3d 881, 891 (Tex. App. 2017). Similarly, the Florida statute is a "procedural step." *Ross v. Gore*, 48 So. 2d 412, 416 (Fla. 1950).

### 4.4 Mr. Shroyer is Entitled to Fees and Costs under the Florida Anti-SLAPP Statute as against Larry Klayman, since he is a Florida citizen

Plaintiff Larry Klayman should be required to pay Mr. Shroyer's attorneys' fees and costs. Mr. Klayman is a citizen of Florida. Dkt. No. 47 at ¶ 4. As such, he is subject to the laws of Florida, including its Anti-SLAPP law, under the most significant relationship test. Unlike the substantive law as to the causes of action, there is a conflict between Texas and Florida anti-SLAPP law. The Texas Citizens Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code § 27.001, *et seq.*, is also an Anti-

---

[18] It is, however, sufficiently substantive for *Erie* purpose to apply in diversity cases, as other pre-suit notice requirements are enforceable. *See Baber v. Edman,* 719 F.2d 122, 123 (5th Cir. 1983) (finding Texas pre-suit notice in medical malpractice cases to apply in diversity actions); *Davis v. Allstate Fire & Cas. Ins. Co.*, Civil Action No. 4:18-CV-00075, 2018 U.S. Dist. LEXIS 109574, at *5-7 (E.D. Tex. June 29, 2018) (same regarding Texas Deceptive Trade Practice Act requirement and collecting cases). The Fifth Circuit has applied the TDMA pre-suit notice requirement. *Tubbs v. Nicol*, 675 F. App'x 437, 439 (5th Cir. 2017). The Fifth Circuit and other federal courts have similarly applied the Fla. Stat. § 770.01. *See Caldwell v. Crowell-Collier Pub. Co.*, 161 F.2d 333, 336 (5th Cir. 1947); *Tobinick v. Novella*, 2015 U.S. Dist. LEXIS 31884, at *31 (S.D. Fla. Mar. 16, 2015); *Laney v. Knight-Ridder Newspapers, Inc.*, 532 F. Supp. 910, 911 n.2 (S.D. Fla. 1982).

SLAPP statute passed for the purpose of immunizing speakers from frivolous litigation based on protected speech. The TCPA requires a plaintiff, at the outset of litigation and before discovery has commenced, to "establish[] by clear and convincing evidence a prima facie case for each essential element of the claim in question." *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). In contrast, the Florida statute, Fla. Stat. § 768.295(4), "fuses with Rules 8, 12, and 56 by entitling the prevailing party to fees and costs if, after invoking the devices set forth by those rules, a court finds an action is 'without merit' and thus prohibited." *Bongino v. The Daily Beast Co.*, Case No. 2:19-cv-14472 (S.D. Fla. Aug. 6, 2020), slip op. at 16.

> There are 7 general factors courts should consider in a choice of law analysis:
>
> (a) The needs of the interstate and international systems,
> (b) The relevant policies of the forum,
> (c) The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) The protection of justified expectations,
> (e) The basic policies underlying the particular field of law,
> (f) Certainty, predictability and uniformity of result, and ease in determination and application of the law to be applied.

*Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000) (quoting Restatement (Second) of Conflict of Laws § 6(2)). As noted above, Texas also consider four additional factors in tort cases: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws, § 145(2).

Not all factors are weighed equally in every analysis. For example, factors such as the location where a tort occurred and where injury was felt are important in determining which state's law should be applied in determining liability, but not when deciding which law to apply regarding damages. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 (Tex. 2000). And factors like the justified expectations of the parties is of lesser importance in tort cases. Restatement (Second) of Conflict of Laws, § 145 cmt. b. Mr. Shroyer only argues that Florida's Anti-SLAPP law should apply, and so factors such as the states' policies and the domicile of the plaintiff are more important to this analysis.

### 4.4.1 The Policies of the States, Basic Anti-SLAPP Policies, and Needs of the Interstate System

Texas and Florida both have a strong interest in protecting individuals from frivolous defamation claims. Specifically, the TCPA provides that:

> The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to … speak freely … and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

Tex. Civ. Prac. & Rem. Code § 27.002. Florida's law similarly provides that:

> It is the intent of the Legislature to protect the right in Florida to exercise the rights of free speech in connection with public issues … **It is the public policy of this state that a person … not engage in SLAPP suits because such actions are inconsistent with the right of persons to exercise such constitutional rights of free speech in connection with public issues**. Therefore, the Legislature finds and declares that prohibiting such lawsuits as herein described will preserve this fundamental state policy, preserve the constitutional rights of persons in Florida, and assure the continuation of representative government in this state.

Fla. Stat. § 768.295(1) (emphasis added). Importantly, Florida's underlying policy includes discouraging SLAPP suits, and not simply protecting Florida residents from these suits. The kind of harm the law is meant to prevent is "unnecessary litigation" in response to certain categories of speech. *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 311 (Fla. 2d DCA 2019).

Considering the policies of the relevant states, Florida's Anti-SLAPP statute should be applied. Texas has a policy of protecting its residents from SLAPP suits, and Florida has a policy of discouraging Floridians from filing SLAPP suits. Applying Florida law will serve both of these policies, while applying Texas law will serve neither of them. For this reason, the interstate system of laws would not be in any way compromised by application of Florida law here, either.

### 4.4.2 Protection of Justified Expectations

Defendants are justified in expecting Florida's laws to apply to Mr. Klayman, a Florida resident. He cannot escape the laws of his state of residence simply by bringing his claims in a different forum, whether it be D.C., Texas, or the prior-pending action in Florida. Likewise, Mr. Klayman should expect that he will be subject to a Florida law specifically designed to discourage SLAPP suits brought by Florida residents. In fact, Mr. Klayman filed a nearly identical complaint in the Southern

District of Florida[19] and, thereafter, in the state court of Florida. Mr. Klayman evidently believes Florida law should apply to his claims, and he cannot now claim it would be improper to apply Florida's Anti-SLAPP statute.

### 4.4.3 Certainty, Predictability, and Uniformity of Results, and the Ease in Determination and Application of the Law to be Applied

There is no likelihood of uncertain or non-uniform results by virtue of applying Florida's Anti-SLAPP statute, nor would it be difficult to apply Florida law here. Florida's statute would only have the effect of entitling Defendants to an award of costs and attorneys' fees if the Motion to Dismiss is granted. Thus, the only question is whether Mr, Klayman has adequately pled his claims, which the Court must otherwise decide under Rule 12(b)(6).

### 4.4.4 Where the Injury and Conduct Causing the Injury Occurred

While Mr. Klayman does not allege he suffered harm in any particular state, the state in which he suffered the most harm must have been Florida. He resides there and, presumably, does his alleged work as an "author, columnist, and syndicated radio talk show host" there. Dkt. No. 47 at ¶ 4. He also alleges to have previously run for U.S. Senate in Florida. Dkt. No. 47 at ¶ 60. The Middle District of Florida, applying the same "most significant relationship" test that Texas uses, has found that "the applicable substantive law for purposes of the anti-SLAPP statute is the state of [the plaintiff's] principal place of business, where the loss of sales and market share was most felt." *Ranbaxy Labs., Inc. v. First Databank, Inc.*, 2014 U.S. Dist. LEXIS 31916 (M.D. Fla. Mar. 12, 2014); *see also Tobinick v. Novella,* 108 F. Supp. 3d 1299, 1303-04 (S.D. Fla. 2015).

### 4.4.5 Domicile and Place of Business of the Parties

"[T]he place of the plaintiff's domicil, or on occasion his principal place of business, is the single most important contact for determining the state of the applicable law as to most issues in situations involving the multistate publication of matter that injures plaintiff's reputation or causes him financial injury …." Restatement (Second) of Conflict of Laws, § 145 cmt. e. Mr. Klayman is a

---

[19] Plaintiffs erroneously state the Florida federal case was transferred to this Court. Dkt. No. 47 at ¶ 2. In reality, Mr. Klayman dismissed those claims voluntarily.

Florida resident and his claims primarily allege personal harms such as reputational injury and emotional damage. There is thus a strong presumption that Florida's Anti-SLAPP law should apply.

The Southern District of New York previously dealt with a situation similar to the one here in *Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013) (*aff'd*, 876 F.3d 413 (2d Cir. 2017)). That case involved a Nevada plaintiff bringing a defamation suit against Washington, D.C. residents. The court found that Nevada's Anti-SLAPP statute applied to the dispute because the plaintiff and his business were both located in Nevada, and "Nevada has an interest in protecting its citizens from tortious conduct." *Id.* at 477-78. Similarly, Mr. Klayman is domiciled in Florida and Florida has an express interest in preventing its residents from filing and prosecuting SLAPP suits.

The District of Massachusetts came to same conclusion in *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343 (D. Mass. 2017) in applying Massachusetts's Anti-SLAPP statute. There, the plaintiff was domiciled in Massachusetts at the time the defendant published allegedly defamatory statements online from California. It found that, even though California's statute was more protective than Massachusetts's, the Massachusetts law should apply due to the strength of the presumption that a plaintiff's domicile should determine the choice of law analysis. *Id.* at 354. On balance, the above factors weigh in favor of applying Florida's Anti-SLAPP statute.

### 4.5 The Florida Anti-SLAPP Statute Applies in Federal Court

The Fifth Circuit has determined that the TCPA's protections do not apply in federal court.[20] *See Klocke v. Watson*, 936 F.3d 240, 248-49 (5th Cir. 2019) (finding that procedural hurdles and burden-shifting in the TCPA were inconsistent with Fed. R. Civ. P. 12 and 56). Florida's statute, however, is different from the TCPA in that it has no burden-shifting mechanism or language; instead, "Florida's statute is a garden variety fee shifting provision, which the Florida legislature enacted to accomplish a 'fundamental state policy'—deterring SLAPP suits. Fla. Stat. § 768.295(1)." *Bongino, supra* at 16. The *Bongino* decision specifically distinguished the *Klocke* decision and the TCPA in reaching this

---

[20] In the event the *Klocke* decision is reversed and Texas anti-SLAPP law would otherwise apply in this case under choice of law principles, Defendant invokes the protections of the TCPA in the alternative.

conclusion. *Id.* Thus, as Florida has the most significant interest in the application of its anti-SLAPP statute, this Court can apply that state's law, as it survives the *Klocke* analysis.

The Fifth Circuit has recognized that state fee-shifting statutes apply in diversity cases. *Powell v. Old Southern Life Ins. Co.*, 780 F.2d 1265, 1267 (5th Cir. 1986) (holding that "[f]ederal courts in diversity … follow[] state statutes allowing attorney's fees unless the state practice directly conflicts with a … rule of court"); *see also Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995) (same). Accordingly, Florida's Anti-SLAPP statute is a substantive fee-shifting statute and it is applicable in this matter.

### 4.6 Larry Klayman Filed this Suit in Violation of Fla. Stat. § 768.295

Mr. Klayman violated Florida's Anti-SLAPP statute in filing this suit. The Florida statute prohibits suits against "another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3). "Free speech in connection with public issues" means speech "made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." *Id.* § 768.295(2)(a). Plaintiffs claim Defendants' allegedly defamatory statements were made on *The Alex Jones Show* and *The War Room*, which are both "broadcast on radio and internet social media networks throughout the United States of America and internationally … and online." Dkt. No. 47 at ¶¶ 12-13. Though Mr. Shroyer did not personally make any of these statements, Plaintiffs allege some undefined involvement in making these statements. Mr. Klayman brought his claims directly in response to these alleged radio broadcasts, *i.e.* free speech in connection with public issues. As explained above (and by the other defendants), Mr. Klayman's claims are meritless and must be dismissed. Mr. Shroyer will, therefore, be the prevailing party for purposes of Fla. Stat. § 768.295(4), entitling him to an award of costs and attorneys' fees.

### 4.7 Plaintiffs are Vexatious Litigants

Plaintiffs are vexatious litigants. They file the same claims, against the same defendants, time after time, ignoring judicial pronouncements as to the merits of their claims, personal jurisdiction,

standing, and shotgun pleading. This Court should enjoin them from any such further complaints without leave of court.

As this Court has held, "[o]ne of the well-settled appropriate exercises of a court's power to sanction is issuing pre-filing injunctions against vexatious litigants." *Houston v. Gonzalez*, No. A-16-CV-986 LY, 2017 U.S. Dist. LEXIS 93693, at *9 (W.D. Tex. June 19, 2017) (*report and recommendation adopted* Aug. 31, 2017, Yeakel, U.S.D.J.). As the Court noted in *Houston*:

> Before issuing a pre-filing injunction, a "court must weigh all the relevant circumstances," including:
>
> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* quoting *Baum v. Blue Moon Ventures, LLC,* 513 F.3d 181, 189 (5th Cir. 2008). Here, Plaintiffs' history of vexatious, harassing, and duplicative lawsuits strongly favors such an injunction. As the claims fly in the face of prior adverse rulings, they have no good-faith basis. The burden on the courts and Defendants (and others) is high, where they are forced to litigate all over the country, the same claims, over and over. And, though monetary sanctions should be a part of any decision, they are insufficient; Plaintiffs have no fear of sanctions.

## 5.0    Conclusion

In light of the foregoing, Mr. Shroyer respectfully requests this Honorable Court dismiss the matter as to him for failure to state a claim and award Mr. Shroyer his attorneys' fees and costs under the Florida Anti-SLAPP law (as to Klayman only), Rule 11 (as to both plaintiffs), 28 U.S.C. § 1927 and the Court's inherent power (as to both plaintiffs),[21] and under the fee-shifting provision of the Lanham Act, 15 U.S.C. § 1117(a), as to both plaintiffs, and to bar Klayman and Corsi from filing further suits against him without prior leave of court.

---

[21]    Upon dismissal, Defendant will seek fees under these provisions by separate motion.

| | |
|---|---|
| Dated: August 26, 2020. | Respectfully submitted, |
| | /s/Marc J. Randazza |
| | Marc J. Randazza (*pro hac vice*) |
| | RANDAZZA LEGAL GROUP, PLLC |
| | 2764 Lake Sahara Drive, Suite 109 |
| | Las Vegas, NV 89117 |
| | Telephone: 702-420-2001 |
| | ecf@randazza.com |
| | |
| | Jay M. Wolman (*pro hac vice)* |
| | RANDAZZA LEGAL GROUP, PLLC |
| | 100 Pearl Street, 14th Floor |
| | Hartford, CT 06103 |
| | Telephone: 702-420-2001 |
| | jmw@randazza.com |
| | |
| | Bradley J. Reeves (TX Bar No. 24068266) |
| | REEVES LAW, PLLC |
| | 702 Rio Grande Street, Suite 306 |
| | Austin, TX 78701 |
| | Telephone: 512-827-2246 |
| | brad@brtx.law |
| | |
| | Attorneys for Defendants |
| | Infowars, LLC; Free Speech Systems, LLC; Alex E. Jones; and Owen Shroyer |

Civil Action No. 1:20-cv-00298-LY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document was filed and served upon all parties of record on August 26, 2020 by CM/ECF, the court's electronic filing system.

/s/ Marc J. Randazza
Marc J. Randazza