Bradley J. Reeves (TX Bar No. 24068266)
REEVES LAW, PLLC
702 Rio Grande Street, Suite 306
Austin, TX 78701
Telephone: 512-827-2246
brad@brtx.law

Marc J. Randazza (*pro hac vice*)
Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com

Counsel for Defendants,
Infowars, LLC; Free Speech Systems, LLC;
Alex E. Jones; and Owen Shroyer

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

| | |
|---|---|
| **DR. JEROME CORSI** and **LARRY KLAYMAN**,<br><br>        Plaintiffs,<br><br>    vs.<br><br>**INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, ALEX E. JONES, DAVID JONES,** and **OWEN SHROYER**,<br><br>        Defendants. | Civil Action No. 1:20-cv-00298-LY |

**DEFENDANTS INFOWARS, LLC, ALEX E. JONES, AND
FREE SPEECH SYSTEMS, LLC'S MOTION TO DISMISS PLAINTIFF
LARRY KLAYMAN'S PORTION OF THE AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

1.0   INTRODUCTION ...........................................................................................1

2.0   FACTUAL BACKGROUND .........................................................................2

3.0   LEGAL STANDARD ....................................................................................3

    3.1   FLORIDA ANTI-SLAPP STATUTE: FLA. STAT. § 768.295 ...............................3

4.0   ANALYSIS ...................................................................................................4

    4.1   THE AMENDED COMPLAINT IS A SHOTGUN PLEADING, ONE PREVIOUSLY THROWN OUT, *SUA SPONTE*, BY A FEDERAL JUDGE ..........................................4

    4.2   THERE IS NO SIGNIFICANT CONFLICT OF LAWS AS TO THE CLAIMS ...............5

    4.3   MR. KLAYMAN HAS NO ACTIONABLE DEFAMATION CLAIM ........................6

        4.3.1   *As a Matter of Law, Mr. Klayman Cannot Prove the Statements Are False or Defamatory* ...........7

        4.3.2   *Mr. Klayman is a Public Figure and the Statements Were Not Published with Actual Malice* ..........9

    4.4   THERE IS NO LIABILITY, AS A MATTER OF LAW, FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ............................................................11

    4.5   MOVING DEFENDANTS DID NOT ASSAULT MR. KLAYMAN WITH INSULTS ...........12

    4.6   THERE IS NO PLAUSIBLE LANHAM ACT OR COMMON LAW UNFAIR COMPETITION CLAIM ..13

    4.7   MOVING DEFENDANTS DID NOT ACT IN CONCERT WITH ANY OTHER DEFENDANT ...........15

    4.8   MR. KLAYMAN FAILED TO COMPLY WITH THE TDMA .............................16

    4.9   MOVING DEFENDANTS ARE ENTITLED TO FEES AND COSTS UNDER THE FLORIDA ANTI-SLAPP STATUTE, AS MR. KLAYMAN IS A FLORIDA CITIZEN ......................17

    4.10   MR. KLAYMAN IS A VEXATIOUS LITIGANT .........................................17

5.0   CONCLUSION ............................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adelson v. Harris,*
774 F.3d 803 (2d Cir. 2014) ....................................................................................3

*Amazing Spaces, Inc. v. Metro Mini Storage,*
608 F.3d 225 (5th Cir. 2010) .................................................................................14

*Arrowood Indem. Co. v. Gulf Underwriters Ins. Co.,* No. EP-08-CV-285-DB,
2010 U.S. Dist. LEXIS 152771 (W.D. Tex. Mar. 3, 2010) ......................................6

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009) ........................................................................................3

*Baber v. Edman,*
719 F.2d 122, 123 (5th Cir. 1983) ........................................................................17

*Barrett v. Humana Ins. Co.,* No. A-14-CA-919-LY,
2014 U.S. Dist. LEXIS 168581 (W.D. Tex. Dec. 5, 2014) ...................................11

*Bass v. Hendrix,*
931 F. Supp. 523 (S.D. Tex. 1996) .......................................................................11

*Baum v. Blue Moon Ventures, LLC,*
513 F.3d 181 (5th Cir. 2008) .................................................................................18

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................3

*Bell v. Itawamba Cty. Sch. Bd.,*
799 F.3d 379 (5th Cir. 2015) .................................................................................11

*Bolger v. Youngs Drug Prods. Corp.,*
463 U.S. 60 (1983) ................................................................................................13

*Bongino v. The Daily Beast Company,* LLC,
No. 2:19-cv-14472-JEM, Doc. No. 23 (S. D. Fla. Aug. 6, 2020) ......................3, 4

*Burstyn v. Wilson,*
343 U.S. 495 (1952) ..............................................................................................14

*Butowsky v. Folkenflik,* Civil Action No. 4:18CV442,
2019 U.S. Dist. LEXIS 104297 (E.D. Tex. Apr. 17, 2019) ..................................17

*Cain v. Hearst Corp.,*
878 S.W.2d 577 (Tex. 1994) ...................................................................................7

*Carr v. Brasher,*
776 S.W.2d 567 (Tex. 1989) ...............................................................................7, 8

*Carroll v. Timmers, Chevrolet, Inc.,*
592 S.W.2d 922, 23 Tex. Sup. Ct. J. 131 (Tex. 1979) ..........................................15

*Casa Orlando Apts., Ltd. v. Fannie Mae,*
624 F.3d 185 (5th Cir. 2010) ...................................................................................5

RANDAZZA | LEGAL GROUP

*Castleman v. Internet Money Ltd.*, No. 07-16-00320-CV,
2018 Tex. App. LEXIS 8559 (Tex. App. Oct. 18, 2018)................................7

*Cedillos v. Tex. Dep't of Pub. Safety*, No. SA-03-CA-0427-XR,
2005 U.S. Dist. LEXIS 3846 (W.D. Tex. Mar. 10, 2005)...........................15

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557, 561 (1980)..............................................................................13

*Chevalier v. Animal Rehab. Ctr.*,
839 F. Supp. 1224 (N.D. Tex. 1993) ..............................................................6

*Coronado v. Freedom Communs., Inc.*, No. 13-13-00525-CV,
2015 Tex. App. LEXIS 10128 (Tex. App. Sep. 30, 2015) .............................8

*Corsi v. Caputo*,
2020 U.S. Dist. LEXIS 60958 (D. D.C. Apr. 7, 2020).................................2

*Corsi v. Stone*,
2020 U.S. Dist. LEXIS 34852 (D. D.C. Mar. 1, 2020)................................2

*Croix v. Provident Tr. Grp., LLC*, No. 1:19-CV-102-LY,
2019 U.S. Dist. LEXIS 212290 (W.D. Tex. Dec. 9, 2019) ............................6

*Davis v. Allstate Fire & Cas. Ins. Co.*, Civil Action No. 4:18-CV-00075,
2018 U.S. Dist. LEXIS 109574 (E.D. Tex. June 29, 2018) .........................17

*DeAngelis v. Hill*,
180 N.J. 1, 847 A.2d 1261 (N.J. 2004).........................................................7

*Deepak Land Tr. v. City of San Antonio*, No. SA-08-CV-418-XR,
2008 U.S. Dist. LEXIS 77432 (W.D. Tex. July 25, 2008) ..........................15

*Elliott v. Tilton*,
89 F.3d 260, 265 (5th Cir. 1996) .................................................................15

*Farah v. Esquire Magazine*,
736 F.3d 528 (2013) ..............................................................................11, 13

*Garrison v. Louisiana*,
379 U.S. 64, 73 (1964)..................................................................................10

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)........................................................................................9

*Green v. CBS Inc.*,
286 F.3d 281 (5th Cir. 2002).........................................................................7

*Gte Sw. v. Bruce*,
998 S.W.2d 605 (Tex. 1999).........................................................................12

*Harte-Hanks Communications, Inc. v. Connaughton*,
491 U.S. 657 (1989)......................................................................................10

*Hearst Newspapers, LLC v. Status Lounge, Inc.*,
541 S.W.3d 881 (Tex. App. 2017)................................................................17

*Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*,
   53 S.W.3d 799, 806 n.3 (Tex.App.—Austin 2001, pet. denied)............................................14

*Houston v. Gonzalez*, No. A-16-CV-986 LY,
   2017 U.S. Dist. LEXIS 93693 (W.D. Tex. June 19, 2017) ........................................ 17, 18

*Hustler Magazine v. Falwell*,
   485 U.S. 46 (1988) ............................................................................................................11

*Jews For Jesus, Inc. v. Rapp*,
   997 So. 2d 1098, 1106 (Fla. 2008) .........................................................................................7

*Juneau v. State*,
   49 S.W.3d 387 (Tex. App.--Fort Worth 2000, pet. ref'd) ......................................................12

*KBMT Operating Co., LLC v. Toledo*,
   492 S.W.3d 710 (Tex. 2016) ....................................................................................................7

*Kim v. Jung Hyun Chang*,
   249 So. 3d 1300 (Fla. Dist. Ct. App. 2018) ..........................................................................11

*Kincheloe v. Caudle*, No. A-09-CA-010 LY,
   2009 U.S. Dist. LEXIS 96371 (W.D. Tex. Oct. 16, 2009) ...................................................13

*Klayman v. City Pages*,
   2015 U.S. Dist. LEXIS 49134 (M.D. Fla. Apr. 3, 2015) .........................................................9

*Klayman v. Infowars*,
   Case No. 20-80614-CIV (S.D. Fla. Apr. 13, 2020).................................................................4

*Klayman v. Judicial Watch, Inc.*,
   22 F. Supp. 3d 1240 (S.D. Fla. 2014) .....................................................................................9

*Klayman v. Judicial Watch, Inc.*,
   247 F.R.D. 10 (D.D.C. 2007) .................................................................................................8

*Klayman v. Judicial Watch, Inc.*,
   802 F. Supp. 2d 137 (D.D.C. 2011) ........................................................................................8

*Klayman v. Segal*,
   783 A.2d 607 (D.C. 2001) .......................................................................................................8

*Klocke v. Watson*,
   936 F.3d 240 (5th Cir. 2019) ..................................................................................................4

*La Liberte v. Reid*,
   966 F.3d 79 (2d Cir. 2020) .....................................................................................................3

*Lynch v. Cannatella*,
   810 F.2d 1363 (5th Cir. 1987)...............................................................................................15

*Mack v. Nelson*, No. A-12-CV-016-LY,
   2012 U.S. Dist. LEXIS 193538 (W.D. Tex. July 6, 2012) ...................................................12

*Merkle v. Gragg*, No. SA-19-CV-00640-XR,
   2019 U.S. Dist. LEXIS 204920 (W.D. Tex. Nov. 26, 2019) ..................................................2

RANDAZZA | LEGAL GROUP

*Morgan v. City of Alvin*,
  175 S.W.3d 408 (Tex. App.--Houston [1st Dist.] 2004, no pet.)............12

*Nat'l Assoc. of Mfrs. v. S.E.C.*,
  800 F.3d 518 (D.C. Cir. 2015) ...............................................13

*Nat'l Union Fire Ins. Co. v. Am. Eurocopter Corp.*,
  692 F.3d 405 (5th Cir. 2012) .................................................5

*Natividad v. Alexsis, Inc.*,
  875 S.W.2d 695 (Tex. 1994) .................................................11

*New York Times v. Sullivan*,
  376 U.S. 254 (1964) ............................................................10

*O'Hair v. Skolrood*, Civil Action No. A-89-CA-769,
  1990 U.S. Dist. LEXIS 14928 (W.D. Tex. May 4, 1990) ............10

*Oliney v. Gardner*,
  771 F.2d 856 (5th Cir. 1985) .................................................5

*Palomo v. United States,* No. 1:96cv329GR,
  1997 U.S. Dist. LEXIS 24103 (S.D. Miss. Mar. 14, 1997) ..........6

*Peter Scalamandre & Sons v. Kaufman*,
  113 F.3d 556 (5th Cir. 1997) ...............................................10

*Philpot v. Emmis Operating Co.,* No. 1:18-CV-816-RP,
  2019 U.S. Dist. LEXIS 180125 (W.D. Tex. June 25, 2019) ..........5

*Porter v. Charter Med. Corp.*,
  957 F. Supp. 1427 (N.D. Tex. 1997) .....................................16

*Porterfield v. Galen Hosp. Corp.*,
  948 S.W.2d 916 (Tex. App.--San Antonio 1997, writ denied) ..........12

*Pub. Health Equip. & Supply Co. v. Clarke Mosquito Control Prods.*,
  410 F. App'x 738 (5th Cir. 2010) ...........................................1

*Randall's Food Mkts. v. Johnson*,
  891 S.W.2d 640 (Tex. 1995) ............................................. 7, 11

*Rescar, Inc. v. Ward*,
  60 S.W.3d 169 (Tex. App. 2001) ..........................................12

*Ross v. Abbott*, No. 1:12-CA-540-LY,
  2013 U.S. Dist. LEXIS 203997 (W.D. Tex. July 19, 2013) ..........7

*Seven-Up Co. v. Coca-Cola Co.*,
  86 F.3d 1379 (5th Cir. 1996) ...............................................14

*Sistrunk v. Haddox*, No. 18-516,
  2020 U.S. Dist. LEXIS 88178 (W.D. La. May 19, 2020) ..........5

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) ............................................................10

*Sullivan v. Atl. Fed. Sav. & Loan Ass'n*,
  454 So. 2d 52 (Fla. Dist. Ct. App. 1984) ...................................................................13

*Third Party Verification, Inc. v. Signaturelink, Inc.*,
  492 F. Supp. 2d 1314 (M.D. Fla. 2007) ....................................................................14

*Tidwell v. State*,
  187 S.W.3d 771 (Tex. App. 2006) .............................................................................13

*Tobinick v. Novella*,
  108 F. Supp. 3d 1299 (S.D. Fla. 2015) ...............................................................3, 14

*Toyota Motor Co. v. Cook*,
  581 S.W.3d 278 (Tex. App. 2019) ...............................................................................6

*Triplex Communications, Inc. v. Riley*,
  900 S.W.2d 716, 38 Tex. Sup. Ct. J. 765 (Tex. 1995) ..............................................15

*Trostle v. Combs*,
  104 S.W.3d 206 (Tex. App. -- Austin 2003, no pet.) ................................................15

*Tubbs v. Nicol*,
  675 F. App'x 437 (5th Cir. 2017) .......................................................................16, 17

*Twyman v. Twyman*,
  855 S.W.2d 619 (Tex. 1993) ......................................................................................11

*United States v. Stone*,
  2019 U.S. Dist. LEXIS 28860 (D.D.C. Feb. 15, 2019) ..............................................9

*USA v. Stone*,
  Case No. 1:19-cr-00018 (D.D.C. Feb. 28, 2019) .......................................................3

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) ..............................................................................10, 16

*Walters v. Blankenship*,
  931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006) ........................................................15

*Weiland v. Palm Beach Cty. Sheriff's Office*,
  792 F.3d 1313 (11th Cir. 2015) ..................................................................................4

*WFAA-TV, Inc. v. McLemore*,
  978 S.W.2d 568 (Tex. 1998) ........................................................................................7

*Wimm v. Jack Eckerd Corp.*,
  3 F.3d 137 (5th Cir. 1993) ...........................................................................................2

*Woolley v. Clifford Chance Rogers & Wells, L.L.P.*,
  2004 U.S. Dist. LEXIS 97, 2004 WL 57215 (N.D. Tex. Jan. 5, 2004) .....................16

**STATUTES**

15 U.S.C. § 1117 ........................................................................................................18

15 U.S.C. § 1125 ........................................................................................................13

28 U.S.C. § 1927 ........................................................................................................18

Fla. Stat. § 768.295 ...........................................................................................1, 2, 3, 4

Fla. Stat. § 770.01 .....................................................................................................16

Fla. Stat. §§ 501.202 ...................................................................................................5

Tex. Civ. Prac. & Rem. Code § 16.002 .......................................................................16

Tex. Civ. Prac. & Rem. Code § 73.055 .......................................................................16

Tex. Penal Code § 1.07 ...............................................................................................12

Tex. Penal Code § 22.01 .............................................................................................12

Texas Penal Code § 22.01 ...........................................................................................12

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 145 ..........................................................6

Restatement (Second) of Torts § 46 cmt. d (1965) ......................................................11

Restatement (Second) of Torts § 558 (1977) ................................................................7

**RULES**

Fed. R. Civ. P. 10 ........................................................................................................4

Fed. R. Civ. P. 12 ............................................................................................1, 2, 3, 4, 5

Fed. R. Civ. P. 15 .....................................................................................................1, 2

Fed. R. Civ. P. 56 ........................................................................................................4

Fed. R. Civ. P. 8 ..........................................................................................................4

RANDAZZA | LEGAL GROUP

**DEFENDANTS INFOWARS, LLC, ALEX E. JONES, AND FREE SPEECH SYSTEMS, LLC'S MOTION TO DISMISS PLAINTIFF LARRY KLAYMAN'S PORTION OF THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendants Infowars, LLC ("Infowars"), Alex E. Jones ("Mr. Jones"), and Free Speech Systems, LLC ("FSS") (collectively, the "Moving Defendants") bring this Motion to Dismiss Against Plaintiff Larry Klayman for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) and request an award of costs and attorneys' fees under Fla. Stat. § 768.295.[1]

## 1.0     Introduction

This is one of a number of nearly identical cases brought by Plaintiffs Jerome Corsi and Larry Klayman in a vexatious tantrum of a campaign against Roger Stone.  In their quest to punish Stone for some perceived slight, they have sued anyone who so much as stood near Roger Stone.  This motion only seeks dismissal of Mr. Klayman's claims, but Moving Defendants also seek dismissal of Dr. Corsi's claims by a contemporaneously filed separate motion.  These motions are filed separately, because the complaint is such a jumbled mess, and Plaintiffs have absolutely no reason to be in the same complaint.  This appears to be by design.  The only way to handle this mess is by filing two motions, one as to each unrelated Plaintiff.

None of the speech at issue constitutes actionable defamation, nor may it be repurposed to fit any other tort theory, including intentional infliction of emotional distress and assault.  The speech is not commercial speech under the Lanham Act and neither is it unfair competition.  Further, given how unsupportable the Lanham Act claim is, this case should be deemed an "exceptional case" with fees awarded to Moving Defendants.  Mr. Klayman unreasonably multiplied the proceedings, filing an Amended Complaint to add Roger Stone as a defendant, more than a year after the original motion to dismiss was fully briefed. *See* Dkt. Nos. 7 & 10-12.[2]  Mr. Klayman should also be required to pay

---

[1]     Mr. Klayman is a Florida citizen.  He cannot forum shop himself away from the requirements of his home state's Anti-SLAPP law, as briefed in full below.

[2]     On July 30, 2020, the Court dismissed the motion without prejudice in light of the filing of the Amended Complaint.  Dkt. No. 48.  Plaintiffs failed to seek leave of court as required by Fed. R. Civ. P. 15(a)(2).  *See Pub. Health Equip. & Supply Co. v. Clarke Mosquito Control Prods.,* 410 F. App'x 738, 740 (5th Cir. 2010) (pre-deadline motions are governed by Rule 15(a)(2).  Factors to consider in

Moving Defendants' costs and attorneys' fees incurred in defending themselves from Mr. Klayman's frivolous claims under Fla. Stat. § 768.295, as he is a Florida resident and this suit is exactly the kind of litigation sought to be prevented by Florida's Anti-SLAPP law.  Further, Mr. Klayman both should be considered to be a vexatious litigant, and the citizens of this District should be protected from his abusive and frivolous litigation in the future.

## 2.0   Factual Background

Mr. Klayman generally alleges that Defendants broadcast radio and internet programs through Infowars and FSS.[3]  Mr. Klayman makes factual allegations as to Moving Defendants, asserting that they committed defamation, intentional infliction of emotional distress, unfair competition, and even *assault*.  Mr. Klayman does not allege Moving Defendants made any actionable statements about him, instead asserting that he acted "in concert" with Roger Stone, who did talk about Mr. Klayman.

The only allegedly actionable statement Mr. Klayman identifies about himself is by *Defendant Roger Stone* – not any of the Moving Defendants.  These statements were made during a January 18, 2019 video, in which **Mr. Stone** said that Mr. Klayman "never actually won a courtroom victory"; that Mr. Klayman was "ousted" from employment due to sexual misconduct; and that Mr. Klayman

---

deciding whether to permit amendment include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).  There was no need to amend the complaint to add Stone to this action—both Dr. Corsi and Mr. Klayman already had pending actions against Stone for the very statements at issue here.  *See Corsi v. Stone,* Case No. CACE-20-004473 (17th Jud. Cir., Fla., filed Mar. 11, 2020) and *Klayman v. Stone,* Case No. 19-002672 CACE (17th Jud. Cir., Fla, Amd. Compl. Filed Aug. 29, 2019).  Notably, Mr. Stone is likely not susceptible to personal jurisdiction in Texas for statements made by him in Florida just as he was not susceptible to jurisdiction in D.C.  *See Corsi v. Stone,* 2020 U.S. Dist. LEXIS 34852, *7 (D. D.C. Mar. 1, 2020) and *Corsi v. Caputo*, 2020 U.S. Dist. LEXIS 60958 (D. D.C. Apr. 7, 2020).  Both undue delay and futility of amendment, as the Amended Complaint does not survive Rule 12(b)(6) analysis, should have precluded the filing of the Amended Complaint.  To the extent applicable, Moving Defendants request the Court strike the improper amendment under Rule 12(f) and Rule 15.

[3]    Mr. Klayman also claims that Defendants worked in concert with non-party Roger Stone in violation of 18 U.S.C. § 1512.  *See* Amd. Complaint at ¶ 36.  No actual cause of action is asserted; moreover, this statute does not confer a private right of action.  *See Merkle v. Gragg*, No. SA-19-CV-00640-XR, 2019 U.S. Dist. LEXIS 204920, at *42 (W.D. Tex. Nov. 26, 2019).  To the extent Mr. Klayman rests on allegations made in other litigation (Dkt. No. 47 at ¶ 36), no actual allegations regarding the claims at issue were presented in those matters.

is a "piece of garbage," "incompetent," "a numbskull," "an idiot," "an egomaniac," and "could be the single worst lawyer in America" whose IQ is not "higher than 70."  Dkt. No. 47 at ¶¶ 55-56, 59, 61-62.  No other pertinent factual allegations are asserted.[4]  Mr. Klayman otherwise makes a series of conclusory allegations as to their purported competition with Defendants.  *Id.* at ¶¶ 63 & 70-74. **3.0    Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  No one can even see the glow of distant lights of plausibility from this case.

### 3.1    Florida Anti-SLAPP Statute: Fla. Stat. § 768.295

Florida's Anti-SLAPP statute applies here, because a SLAPP plaintiff cannot outrun his home state's Anti-SLAPP law by forum shopping in a state that does not have one.[5]  *See Tobinick v. Novella*, 108 F. Supp. 3d 1299, 1304 (S.D. Fla. 2015) (California plaintiff subject to California Anti-SLAPP law) *aff'd* 848 F.3d 935 (11th Cir. 2017); *Adelson v. Harris*, 774 F.3d 803 (2d Cir. 2014) (Nevada plaintiff subject to Nevada's Anti-SLAPP law).  The statute provides that "[a] person … in this state may not file or cause to be filed … any lawsuit … against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue …."  Fla. Stat. § 768.295(3).  A person sued in violation of the statute "has a right to an expeditious resolution of" the claims, allowing them to "move the court for an order dismissing the

---

[4]    Mr. Klayman includes significant unrelated matter, turning his Complaint into a "free for all."  *See USA v. Stone*, Case No. 1:19-cr-00018 (D.D.C. Feb. 28, 2019) (striking filing from Mr. Klayman on behalf of Dr. Corsi and admonishing them upon the filing of improper matter).

[5]    Indeed, Texas has one, but it does not apply in Federal Court.  That said, all Anti-SLAPP laws are not equal, and courts have shown that the imperfections in Texas's law do not exist in other state's laws.  *See, e.g., La Liberte v. Reid*, 966 F.3d 79 n.3 (2d Cir. 2020) (distinguishing Nevada statute and acknowledging that it does apply in federal court) and *Bongino v. The Daily Beast Company*, LLC, No. 2:19-cv-14472-JEM, Doc. No. 23 (S. D. Fla. Aug. 6, 2020) (same, but as to the Florida statute).

RANDAZZA | LEGAL GROUP

action" and "file a motion for summary judgment[6] … seeking a determination that the claimant's … lawsuit has been brought in violation of this section."  Fla. Stat. § 768.295(4).  The prevailing party on a motion brought under this statute is entitled to a mandatory award of "reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section."  *Id.*  The term "free speech in connection with public issues" is defined as "any written or oral statement that is protected under applicable law and is made … in connection with a … radio broadcast, … news report, or other similar work."  *Id.* at § 768.295(2)(a).

As discussed in more detail below, the Florida anti-SLAPP statute applies to Mr. Klayman in federal court.  Unlike the Texas Citizens Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code §§ 27.001, *et seq.*, which was found to conflict with Rule 12 & 56 in *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019), the Florida statute does not conflict and is strictly a substantive fee-shifting statute.[7]

**4.0     Analysis**

**4.1     The Amended Complaint is a Shotgun Pleading, One Previously Thrown Out, *Sua Sponte*, by a Federal Judge**

Mr. Klayman filed a nearly identical complaint in the Southern District of Florida.  *See* Dkt. No. 34-1.  *Sua sponte*, Judge Altman issued an Order Requiring More Definite Statement, requiring Mr. Klayman to "remove all references to irrelevant, conclusory, and scandalous material" and, if he were to replead the Lanham Act claim, show cause that he had standing to do so.  *See* Dkt. No. 34-2, *Klayman v. Infowars,* Case No. 20-80614-CIV (S.D. Fla. Apr. 13, 2020).  The complaint was deemed a "shotgun pleading," violating Fed. R. Civ. P. 8 & 10(b).  The case upon which Judge Altman relied, *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015), has been favorably cited in this Circuit.  *See, e.g., Sistrunk v. Haddox*, No. 18-516, 2020 U.S. Dist. LEXIS 88178, at *32-33 (W.D. La.

---

[6]   While the statute refers to a "motion for summary judgment," Moving Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6).  A party need not bring a motion styled as a motion for summary judgment to be entitled to an award of costs and fees.  *See* Dkt. No. 55-2, *Bongino v. The Daily Beast Company, LLC*, No. 2:19-cv-14472-JEM, Doc. No. 23 (S. D. Fla. Aug. 6, 2020) (granting motion to dismiss under Fed. R. Civ. P. 12(b)(6) and finding entitlement to fees under Fla. Stat. § 768.295).

[7]   To the extent the TCPA would apply under a choice of law analysis and the decision in *Klocke* is reversed, Moving Defendants bring this motion pursuant to that statute in the alternative.

May 19, 2020).  Rather than comply with the order, Mr. Klayman dismissed that action.  *See* Dkt. Nos. 34-3 & 34-4.  He pursued the same complaint here – forum shopping his ludicrous claims to a court he apparently presumed would not hold him to the same standard.  Moving Defendants hope and believe that Mr. Klayman was sorely mistaken.

The Amended Complaint contains identical material the Southern District of Florida found irrelevant, conclusory, and scandalous.  It also fails to make the additional showing of standing under the Lanham Act claim.  The closest Mr. Klayman came to complying was in filing yet another identical lawsuit, styled *Klayman v. Infowars*, Case No. CACE-20-007120 (17th Jud. Cir., Fla.) (filed Apr. 28, 2020), in which the same defamation claims were raised as in the complaint stricken by Judge Altman, substituting a claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.202 *et seq.*, for the Lanham Act claim.[8]  This Court should respect and follow the decision of Judge Altman and dismiss the amended complaint.[9]

### 4.2    There is No Significant Conflict of Laws as to the Claims

This case was filed in D.C., transferred to Texas due to improper venue, asserting claims regarding speech that occurred in Texas and Florida regarding individuals from Florida and New Jersey.[10]  "The choice-of-law rules of the transferee state apply if a diversity suit was transferred from a district court that had no personal jurisdiction over the defendant or where venue was otherwise improper."  *Nat'l Union Fire Ins. Co. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 n.3 (5th Cir. 2012).  Texas choice of law rules, therefore, apply.  As this Court has found:

> In a diversity case, federal courts apply the choice of law rules of the forum state.  *Casa Orlando Apts., Ltd. v. Fannie Mae*, 624 F.3d 185, 190 (5th Cir. 2010).  Texas courts follow the "most significant relationship" test in the Restatement (Second) of Conflict of

---

[8]    The Florida case remains pending.  Since the Court deemed the Amended Complaint in this case to supersede the original complaint, the Florida case was a prior pending action at the time the Amended Complaint was filed.  Thus, Mr. Klayman's suit here is a duplicate that should be dismissed. *See Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985); *see also Philpot v. Emmis Operating Co.*, No. 1:18-CV-816-RP, 2019 U.S. Dist. LEXIS 180125, at *16-17 (W.D. Tex. June 25, 2019).

[9]    Although the Court could issue an order under Rule 12(f) requiring a more definite statement, Mr. Klayman has had his chances and he has taken enough bites at the apple.

[10]    The original motion to dismiss was brought under the law of the forum—the District of Columbia.  Plaintiffs did not object.

Laws ("Restatement").  *Id.* (citations omitted).  The choice of law is evaluated issue by issue.  *Id.* at 191.  In a tort case, the primary factors for choice of law are: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  *Id.* (citing Restatement (Second) of Conflict of Laws § 145).

*Croix v. Provident Tr. Grp., LLC*, No. 1:19-CV-102-LY, 2019 U.S. Dist. LEXIS 212290, at *12-13 (W.D. Tex. Dec. 9, 2019).  "As the Restatement commentary notes, the place of injury will not play an important role in a choice of law analysis in the case of multistate defamation."  *Chevalier v. Animal Rehab. Ctr.*, 839 F. Supp. 1224, 1229 (N.D. Tex. 1993) citing Restatement § 154 cmt. e.  The alleged statements were made primarily in Texas and Florida and are alleged to have been broadcast from Texas.  The relationship among the parties is centered on Texas—in fact, Plaintiffs bring joint claims in their Amended Complaint, not accounting for Dr. Corsi and Mr. Klayman being from New Jersey and Florida, essentially asserting that a single law governs the claims brought by both.  The only commonality between them is Texas.

However, this analysis need not be generally undertaken.  "[F]or a court to conduct a choice of law analysis, it must be presented with a true conflict of laws.  A 'true conflict' arises when the law of two or more forums conflicts in such a way that the difference has a significant effect upon the outcome of the case."  *Arrowood Indem. Co. v. Gulf Underwriters Ins. Co.*, No. EP-08-CV-285-DB, 2010 U.S. Dist. LEXIS 152771, at *9 (W.D. Tex. Mar. 3, 2010) (internal citation omitted).  Further, any choice of law analysis must be done on an issue-by-issue basis.  *See Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 284 (Tex. App. 2019); *see also Palomo v. United States,* No. 1:96cv329GR, 1997 U.S. Dist. LEXIS 24103, at *6 (S.D. Miss. Mar. 14, 1997) ("Texas law also utilizes depeçage, an issue by issue analysis in choice of law decisions.").

### 4.3     Mr. Klayman has No Actionable Defamation Claim

The first three causes of action sound in defamation.  "Under Texas law a defamation cause of action requires the plaintiff to prove: (1) the defendant published a false statement; (2) defamatory to the plaintiff, in that it damaged the plaintiff's reputation, exposing him to financial injury; and (3) the defendant made the statement negligently as to its truth.  *Green v. CBS Inc.*, 286 F.3d 281, 283 (5th Cir.

2002); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)." *Ross v. Abbott*, No. 1:12-CA-540-LY, 2013 U.S. Dist. LEXIS 203997, at *21 (W.D. Tex. July 19, 2013) (Yeakel, J.).  New Jersey and Florida law do not present a true conflict.  *See DeAngelis v. Hill,* 180 N.J. 1, 847 A.2d 1261, 1267-68 (N.J. 2004) (citing Restatement (Second) of Torts § 558 (1977)) and *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).  Mr. Klayman cannot meet these elements.

### 4.3.1   As a Matter of Law, Mr. Klayman Cannot Prove the Statements Are False or Defamatory

Mr. Klayman's defamation claims against Moving Defendants fail at the outset because they did not actually say anything about him.  All the alleged statements by Moving Defendants were of and concerning Dr. Corsi, exclusively.  For the sake of thoroughness, however, they will discuss the allegedly actionable statements about Mr. Klayman spoken by Mr. Stone in the unlikely event the Court gives credence to Mr. Klayman's theory of all Defendants acting "in concert" – a claim that was summarily thrown out in a nearly identical case in Florida.  *See* Dkt. No. 55-3.

The statements at issue are generally neither false nor defamatory, whether viewed directly or by implication.[11]  "[D]efamatory statements must be false in order to be actionable." *Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex. 1994).  "Truth is a complete defense to defamation." *Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). "A statement need not be perfectly true; as long as it is substantially true, it is not false." *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 714 (Tex. 2016).  The words must be "reasonably susceptible of a defamatory meaning" and "verifiably false and not merely an opinion masquerading as a verifiable fact." *Castleman v. Internet Money Ltd.*, No. 07-16-00320-CV, 2018 Tex. App. LEXIS 8559, at *8 (Tex. App. Oct. 18, 2018).  Rhetorical hyperbole is

---

[11]  "In a defamation-by-implication case, the defamatory meaning arises from the statement's text, but it does so implicitly." *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 627 (Tex. 2018).  It requires "extrinsic evidence" to show that the "gist" of the story is wrong, where material facts are omitted or facts are juxtaposed in a misleading way to "create a substantially false and defamatory impression." *Id.* at 627-628 (internal citation omitted); *see also Jews for Jesus, Inc. v. Rapp*, 997 So. 2d at 1108 n.13.  Mr. Klayman fails to plead any omission or juxtaposition as to truthfully stated facts that give a false impression.

the objectively verifiable and, therefore, does not constitute actionable defamation.  *See Coronado v. Freedom Communs., Inc.*, No. 13-13-00525-CV, 2015 Tex. App. LEXIS 10128, at *6-7 (Tex. App. Sep. 30, 2015).  "[W]hether the publication is a protected expression of opinion or an actionable statement of fact is a question of law for the court."  *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989).  Just as Mr. Klayman could not meet his burden in *Klayman v. Segal,* 783 A.2d 607 (D.C. 2001), he cannot do so here.

Mr. Stone's statements about Mr. Klayman are primarily statements of opinion and rhetorical hyperbole as to his competence.  They are otherwise true or substantially true.  Mr. Klayman's arguments have been deemed "patently inadequate."  *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 148 (D.D.C. 2011).  It was also observed that "[d]espite having more than ample opportunity to do so, Klayman has utterly failed to discharge his obligations in the course of pretrial proceedings."  *Id.* at 149.  As to the separation from Judicial Watch in paragraph 56 of the Amended Complaint, such was relaying assertions about which Mr. Klayman has already lost:

> Judicial Watch alleges that in May 2003, Klayman informed Fitton and Orfanedes that his wife, a former Judicial Watch employee, had commenced divorce proceedings against him and that she alleged that Klayman had had an inappropriate relationship with a Judicial Watch employee with whom he had been in love and that Klayman had assaulted her physically.  According to Judicial Watch, Klayman denied having a sexual relationship with the employee but acknowledged that he had been in love with the employee, that he had purchased gifts for the employee and had kissed her, and also acknowledged an incident with his wife that clearly provided the basis for his wife's allegation of physical assault.  Judicial Watch alleges that Fitton and Orfanedes considered Klayman's acknowledged behavior entirely inconsistent with that of a leader of a conservative, pro-family organization, as well as Klayman's fiduciary duties to the organization, and that they were concerned about Klayman's possible misuse of Judicial Watch resources.  Judicial Watch further alleges that, as a result of these revelations, Fitton requested that Klayman resign, and Fitton and Orfanedes also insisted that Judicial Watch undertake an internal investigation into Klayman's conduct, including an audit.  According to Judicial Watch, Klayman offered to resign rather than face such an inquiry, and the parties began negotiating for his separation from Judicial Watch, which eventually culminated in the September 19, 2003 Severance Agreement.

*Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 10, 12-13 (D.D.C. 2007) (internal citations and quotation marks omitted).

Judicial Watch and Fitton had counterclaimed, *inter alia*, that Mr. Klayman made false and disparaging statements when he said his separation related to Fitton "set[ting] out to hijack the group to further his own personal interests." *See* Amended Counterclaim, *Klayman v. Judicial Watch, Inc.*, Case No. 1:06-cv-00670 (Dec. 3, 2007) (Dkt. No. 86 ¶ 35). Final judgment on the disparagement claim in favor of Judicial Watch and Fitton entered on March 18, 2019, and Mr. Klayman is estopped from relitigating the allegations. *See Klayman v. Judicial Watch, Inc.*, Case No. 1:06-cv-00670 (Mar. 18, 2019) (Dkt. No. 584). Thus, as a matter of law, Mr. Stone's statement is true or substantially true.

### 4.3.2   Mr. Klayman is a Public Figure and the Statements Were Not Published with Actual Malice

Mr. Klayman is a public figure, whether he be deemed a general public figure "for all purposes and in all contexts" or a limited-purpose public figure who "voluntarily injects himself or is drawn into a particular public controversy and therefore becomes … a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).

Mr. Klayman is a general public figure or, at a minimum, a limited purpose public figure. He has already been found to be, and has conceded, that he is a public figure, meaning this issue need not be relitigated. *See Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014) (finding that "[b]ecause of Klayman's notoriety and high-profile work in the public realm, the Court considers Klayman a public figure"); *see also Klayman v. City Pages*, 2015 U.S. Dist. LEXIS 49134, *39 (M.D. Fla. Apr. 3, 2015) (noting that "Plaintiff has conceded that he is a public figure"). Mr. Klayman also voluntarily injected himself into the high-profile prosecution of Roger Stone through his representation of Dr. Corsi.[12] *See, e.g., United States v. Stone*, 2019 U.S. Dist. LEXIS 28860, *2 (D.D.C. Feb. 15, 2019). Thus, the public figure standard applies.

---

[12]   To determine whether an individual is a limited-purpose public figure:

(1) The controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential

A public figure defamation plaintiff must "sufficiently allege[] actual malice in order to state a defamation claim." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 744 (5th Cir. 2019). "A statement is made with 'actual malice' when it is made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *O'Hair v. Skolrood*, Civil Action No. A-89-CA-769, 1990 U.S. Dist. LEXIS 14928, at *7-8 (W.D. Tex. May 4, 1990) quoting *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964)). Notably,

> "Proving actual malice is a heavy burden. … Proof that a defendant spoke out of dislike, or with ill will towards another, also does not automatically meet the test of actual malice, even if his statements are shown to be false. *Garrison v. Louisiana*, 379 U.S. 64, 73 (1964). … That a defendant publishes statements anticipating financial gain likewise fails to prove actual malice: a profit motive does not strip communications of constitutional protections. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). As long as a defendant does not act knowing his statement is false or with reckless disregard of its truth, actual malice will not be present. …
>
> "A 'reckless disregard' for the truth, however, requires more than a departure from reasonably prudent conduct." *Harte-Hanks*, 491 U.S. at 688. The standard for reckless disregard "is a subjective one–there must be sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of … probable falsity'." *Harte-Hanks*, 491 U.S. at 688 (quoting *Garrison*, 379 U.S. at 74, 85 S. Ct. at 215-16). …
>
> In short, "the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks*, 491 U.S. at 666, 109 S. Ct. at 2685. Culpability on the part of the defendant is essential. "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant [v. Thompson,* 390 U.S. 727, 731 (1968)]."

*Peter Scalamandre & Sons v. Kaufman*, 113 F.3d 556, 561 (5th Cir. 1997). Mr. Klayman cannot meet this burden.

---

role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy.

*Trotter v. Jack Anderson Enters.*, 818 F.2d 431, 433-34 (5th Cir. 1987). The Special Counsel's investigation and prosecution of Mr. Stone was a public controversy. Dr. Corsi and Mr. Klayman's roles are non-trivial. And, the record shows that he tried to have an impact on the outcome of it. The statements at issue were directly germane to Mr. Klayman's role in the controversy.

There are no plausible allegations that Moving Defendants acted with actual malice.  They are not alleged to have done anything in relation to Mr. Stone's statements about Mr. Klayman, meaning there is no allegations of actual malice at all.  Thus, the defamation claims must be dismissed.

### 4.4    There is No Liability, as a Matter of Law, for Intentional Infliction of Emotional Distress

As he cannot recover for defamation, Mr. Klayman cannot recover for intentional infliction of emotional distress.   A "plaintiff may not circumvent the protections accorded by the First Amendment by pleading a cause of action, such as intentional infliction of emotional distress, instead of a claim for defamation." *Bass v. Hendrix*, 931 F. Supp. 523, 530 (S.D. Tex. 1996).  The constitutional limitations equally apply to IIED claims.  *See Bell v. Itawamba Cty. Sch. Bd.,* 799 F.3d 379, 421 (5th Cir. 2015) citing *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988).  Such was fatal to Dr. Corsi's claims, brought by Mr. Klayman, in *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (2013).

Notwithstanding the failure of this claim under the First Amendment, it fails on the merits. To bring a claim for intentional infliction of emotional distress, a plaintiff must show "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe.  *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995)." *Barrett v. Humana Ins. Co.*, No. A-14-CA-919-LY, 2014 U.S. Dist. LEXIS 168581, at *4 (W.D. Tex. Dec. 5, 2014) adopted 2014 U.S. Dist. LEXIS 191225 (W.D. Tex. Dec. 22, 2014) (Yeakel, U.S.D.J.); *accord Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. Dist. Ct. App. 2018).  "The conduct must go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community.  Moreover, the plaintiff's emotional distress must be so severe that no reasonable person could be expected to endure it."  *Id.* (citation omitted).

> To be extreme and outrageous, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994) (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)); Restatement (Second) of Torts § 46 cmt. d (1965).  Generally, insensitive or even rude behavior does not constitute extreme and outrageous conduct. *Natividad*, 875 S.W.2d at 699.  Similarly, **mere insults, indignities, threats, annoyances, petty**

> **oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct**. *See Porterfield v. Galen Hosp. Corp.*, 948 S.W.2d 916, 920 (Tex. App.--San Antonio 1997, writ denied); RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965).

*Gte Sw. v. Bruce*, 998 S.W.2d 605, 611-12 (Tex. 1999) (emphasis added).

The statements about Mr. Klayman are mere insults and indignities, at best. The Instagram image noted at paragraphs 94-95 extreme or outrageous conduct. It is not a death threat—it was a rhetorical device. *See S&T Aircraft Accessories v. Bonnington,* No. 03-98-00648-CV, 2000 Tex. App. LEXIS 73, at *14 n.2 (Tex. App. Jan. 6, 2000) (finding "[t]hrowing paper at an employee, frightening her with snake rattles, calling her obscene names, pilfering and vandalizing her belongings, ostracizing her, and mutilating her photograph on an employee bulletin board" not extreme or outrageous).[13]

In addition to the absence of extreme or outrageous conduct directed toward Mr. Klayman, no severe harm was pleaded. Further, "feelings of anger, depression, and humiliation (even when embarrassed in front of one's children), are insufficient to constitute severe distress." *Rescar, Inc. v. Ward*, 60 S.W.3d 169, 181 (Tex. App. 2001). Mr. Klayman's allegations here are perfunctory. *See* Amd. Complaint at ¶ 96. Thus, this claim must be dismissed.

### 4.5    Moving Defendants Did Not Assault Mr. Klayman with Insults

No Moving Defendant threatened imminent bodily injury. Under the law:

> The elements of assault are the same in both civil and criminal cases. *Morgan v. City of Alvin*, 175 S.W.3d 408, 418 (Tex. App.--Houston [1st Dist.] 2004, no pet.). Under Texas Penal Code § 22.01(a), a person commits assault if the person (1) intentionally, knowingly, or recklessly causes bodily injury to another, (2) intentionally or knowingly threatens another with imminent bodily injury, or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. Tex. Penal Code § 22.01(a)(1)-(3) (Vernon 2007). Thus, an assault under § 22.01(a)(1), requires that the actor "caus[e] bodily injury" to another. *Juneau v. State*, 49 S.W.3d 387, 391 (Tex. App.--Fort Worth 2000, pet. ref'd). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *Id.* at 390-91 (citing Tex. Penal Code § 1.07(a)(8)).

---

[13]   The tort is, also, a gap-filler tort; a claim cannot lie where the facts are not independent of Mr. Klayman's defamation claim. *See Mack v. Nelson*, No. A-12-CV-016-LY, 2012 U.S. Dist. LEXIS 193538, at *7-8 (W.D. Tex. July 6, 2012) (Yeakel, U.S.D.J.).

*Kincheloe v. Caudle*, No. A-09-CA-010 LY, 2009 U.S. Dist. LEXIS 96371, at *64 (W.D. Tex. Oct. 16, 2009); *accord Sullivan v. Atl. Fed. Sav. & Loan Ass'n*, 454 So. 2d 52, 54 (Fla. Dist. Ct. App. 1984).  "The gist of the offense of assault, as set out in Section 22.01(a)(2), is that one acts with intent to cause a reasonable apprehension of imminent bodily injury."  *Tidwell v. State*, 187 S.W.3d 771, 775 (Tex. App. 2006).

Mr. Klayman does not plead an actual threat, let alone intent, on the part of Moving Defendants.  There are no credible allegations that Moving Defendants called anyone "to arms" with "deadly violence" as stated in Paragraph 100 of the Complaint.  Though it purports to refer to matters "set forth above," none are.  Amd. Complaint at ¶ 100.  Verbally mocking someone and posting a meme on Instagram are not threats of physical harm.  Nor is there any allegation that Moving Defendants bear any responsibility for Mr. Stone's statements.  Mr. Klayman does not allege intent and none can be implied.  Compare *Kincheloe, supra* at *64-65 (dismissing assault claim in the absence of a threat of imminent bodily injury.).  Thus, the assault claim should be dismissed.

### 4.6    There is No Plausible Lanham Act or Common Law Unfair Competition Claim

In his final cause of action, Mr. Klayman asserts claims of common law unfair competition and violation of 15 U.S.C. § 1125(a).  As set forth above, Moving Defendants did not make any provably false statements of fact.  Moreover, as Mr. Klayman should be aware, Section 1125(a) "appl[ies] only to commercial speech."  *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013).  "The mere fact that the parties may compete in the marketplace of ideas is not sufficient to invoke the Lanham Act."  *Id.*  Commercial speech is "expression related solely to the economic interests of the speaker and its audience."  *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561, 100 (1980).  The "core notion" of commercial speech is speech that does "'no more than propose a commercial transaction,'" *Nat'l Assoc. of Mfrs. v. S.E.C.,* 800 F.3d 518, 523 n.12 (D.C. Cir. 2015) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)).  "The Supreme Court has identified three factors in looking beyond the core notion of commercial speech: (1) that the material was 'conceded to be advertisements,' (2) it contained a 'reference to a specific product,' and (3) the speaker 'has an economic motivation' for distributing the material.  No one factor is dispositive."

*Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) quoting *Bolger*, 463 U.S. at 66-67; *see also Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 (5th Cir. 1996) ("A representation constitutes a 'commercial advertising or promotion' under section 43(a)(1)(B) if it is: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services.")  These factors do not support a claim that the speech is commercial.

First, Moving Defendants do not concede the speech to be *advertisements*.  This is the same foolishness the plaintiff in the *Tobinick* case tried to use.  Second, as in *Tobinick,* the speech does not discuss any products or services for sale.  Third, there is no basis to suggest an economic motivation for the speech.  Compare *Tobinick*, supra at 952 ("Even if Dr. Novella receives some profit for his quasi-journalistic endeavors as a scientific skeptic, the articles themselves, which never propose a commercial transaction, are not commercial speech simply because extraneous advertisements and links for memberships may generate revenue"); *Burstyn v. Wilson*, 343 U.S. 495, 501 (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment").  Thus, the claim under the Lanham Act must fail.

The common-law tort of unfair competition in Texas is essentially the same as such a claim under the Lanham Act.  *See Amazing Spaces, Inc. v. Metro Mini Storage,* 608 F.3d 225, 235 n.7 (5th Cir. 2010) (citing *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex.App.—Austin 2001, pet. denied)).  "To state a claim for unfair competition under Florida common law a party must plead (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion."  *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007).  As discussed above, Moving Defendants do not compete with Mr. Klayman and he does not allege any consumer confusion.  Since Moving Defendants committed none of these acts, the claim for common law unfair competition fails no matter which state's law applies. Moreover, any flavor of Klayman's common-law unfair competition claims fail to meet the actual-malice requirement.  As a result, the sixth cause should be dismissed.

**4.7     Moving Defendants did not Act in Concert with any other Defendant**

The bare assertions that Defendants acted "in concert" is not sufficient to bring any of the claims.  "Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987)).  "The Fifth Circuit has held that, as a matter of law, a corporation cannot conspire with itself, and acts of agents of corporations are seen as acts of the corporation itself for this purpose. *Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996)." *Deepak Land Tr. v. City of San Antonio*, No. SA-08-CV-418-XR, 2008 U.S. Dist. LEXIS 77432, at *6 (W.D. Tex. July 25, 2008).  There are no allegations as to Infowars or FSS independent of the natural-person defendants.  Thus, absent any viable claim against the individuals, the claims against Infowars and FSS must fail as well.

"Under Texas law, a civil conspiracy requires (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the  proximate result. *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719-20, 38 Tex. Sup. Ct. J. 765 (Tex. 1995).  For a conspiracy claim, there must be an injury resulting from an act done pursuant to a common purpose. *Trostle v. Combs*, 104 S.W.3d 206, 214-15 (Tex. App. -- Austin 2003, no pet.) (*citing Carroll v. Timmers, Chevrolet, Inc.*, 592 S.W.2d 922, 925, 23 Tex. Sup. Ct. J. 131 (Tex. 1979))." *Cedillos v. Tex. Dep't of Pub. Safety*, No. SA-03-CA-0427-XR, 2005 U.S. Dist. LEXIS 3846, at *23-24 (W.D. Tex. Mar. 10, 2005); *accord Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006).

The Amended Complaint consists of bald assertion after bald assertion.  Although the Amended Complaint asserts Defendants acted in concert or as surrogates for Stone, with the word "concert" appearing 38 times, no facts alleging how they acted in concert or how they were surrogates are set forth.  In fact, Dr. Corsi, represented by Mr. Klayman, lost on this very "surrogacy" theory only last month in a similar claim in the absence of "a scintilla of admissible evidence to support" it. *See* Dkt. No. 55-3.  Beyond the absence of any unlawful acts for the reasons set forth above, there are no allegations as to any object to be accomplished or a meeting of the minds.  Moving Defendants are not liable for anything done by any other defendant.

### 4.8    Mr. Klayman Failed to Comply with the TDMA

Mr. Klayman cannot maintain his action for defamation as he failed to comply with the pre-suit notification provisions of the Texas Defamation Mitigation Act ("TDMA").  The TDMA

> provides that "[a] person may maintain an action for defamation only if … the person has made a timely and sufficient request for correction, clarification, or retraction from the defendant."  [Tex. Civ. Prac. & Rem. Code §] 73.055(a).  If a plaintiff does not make such a request before the statute of limitations expires, she may not state a claim for defamation.  *See id.* at § 73.055(b).

*Tubbs v. Nicol*, 675 F. App'x 437, 439 (5th Cir. 2017).  The statute of limitations for defamation in Texas is one year.  Tex. Civ. Prac. & Rem. Code § 16.002.  It has been over a year since the alleged statements were made, and Moving Defendants are not alleged to have been sent a request for correction, clarification, or retraction (and Mr. Klayman cannot otherwise show a sufficient request was sent).

This is not a case where Mr. Klayman can dismiss, send a TDMA request, and re-file.  "The Fifth Circuit has held that Texas applies its own statute of limitations, regardless [of] what substantive law applies."  *Woolley v. Clifford Chance Rogers & Wells, L.L.P.*, 2004 U.S. Dist. LEXIS 97, 2004 WL 57215, at *3 (N.D. Tex. Jan. 5, 2004) (citations omitted).  Texas has a one-year statute of limitations for defamation claims.  *See* Tex. Civ. Prac. & Rem. Code § 16.002(a).  It applies to all of the common law claims, as this "one-year limitation likewise applies to other causes of action for which the gravamen of the complaint is injury to a plaintiff's reputation because of allegedly defamatory statements."  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 741-42 (5th Cir. 2019) (citations omitted).  The claims accrue on the "first date of publication," even on the internet.  *See id.* at 742 (citations omitted).

Although Florida has its own defamation mitigation statute, Fla. Stat. § 770.01, with which Mr. Klayman similarly failed to comply, and under which his defamation claims would be dismissed, the Texas statute governs.  "For procedural matters, … Texas, generally speaking, applies the law of the forum state."  *Porter v. Charter Med. Corp.*, 957 F. Supp. 1427, 1432 n.2 (N.D. Tex. 1997) (collecting

cases).  The Texas statute is a "procedure."[14]  *Butowsky v. Folkenflik*, Civil Action No. 4:18CV442, 2019 U.S. Dist. LEXIS 104297, at *132-33 (E.D. Tex. Apr. 17, 2019); *Hearst Newspapers, LLC v. Status Lounge, Inc.*, 541 S.W.3d 881, 891 (Tex. App. 2017).

### 4.9    Moving Defendants are Entitled to Fees and Costs under the Florida Anti-SLAPP Statute, as Mr. Klayman is a Florida Citizen

Mr. Klayman should be required to pay Moving Defendants' attorneys' fees and costs, as he filed this suit in violation of Florida's Anti-SLAPP statute.  The applicability of this statute, and Mr. Klayman's violation of it, are discussed in the Motion to Dismiss previously filed by Defendant Owen Shroyer.  *See* Dkt. No. 55 at 10-15.  That discussion is hereby incorporated by reference as if set out fully herein.

### 4.10    Mr. Klayman is a Vexatious Litigant

Mr. Klayman is a vexatious litigant.  He files the same claims, against the same defendants, time after time, ignoring judicial pronouncements as to the merits of his claims, personal jurisdiction, standing, and shotgun pleading.  This Court should enjoin him from any such further complaints without leave of court.

As this Court has held, "[o]ne of the well-settled appropriate exercises of a court's power to sanction is issuing pre-filing injunctions against vexatious litigants."  *Houston v. Gonzalez*, No. A-16-CV-986 LY, 2017 U.S. Dist. LEXIS 93693, at *9 (W.D. Tex. June 19, 2017) (*report and recommendation adopted* Aug. 31, 2017, Yeakel, U.S.D.J.).  As the Court noted in *Houston*:

Before issuing a pre-filing injunction, a "court must weigh all the relevant circumstances," including:

(1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on

---

[14]    It is, however, sufficiently substantive for *Erie* purpose to apply in diversity cases, as other pre-suit notice requirements are enforceable.  *See Baber v. Edman*, 719 F.2d 122, 123 (5th Cir. 1983) (finding Texas pre-suit notice in medical malpractice cases to apply in diversity actions); *Davis v. Allstate Fire & Cas. Ins. Co.*, Civil Action No. 4:18-CV-00075, 2018 U.S. Dist. LEXIS 109574, at *5-7 (E.D. Tex. June 29, 2018) (same regarding Texas Deceptive Trade Practice Act requirement and collecting cases).  The Fifth Circuit has applied the TDMA pre-suit notice requirement.  *Tubbs v. Nicol*, 675 F. App'x 437, 439 (5th Cir. 2017).

the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* quoting *Baum v. Blue Moon Ventures, LLC,* 513 F.3d 181, 189 (5th Cir. 2008).  Here, Mr. Klayman's history of vexatious, harassing, and duplicative lawsuits strongly favors such an injunction.  As the claims fly in the face of prior adverse rulings, they have no good-faith basis.  The burden on the courts and Moving Defendants (and others) is high, where he is forced to litigate all over the country, the same claims, over and over.  And, though monetary sanctions should be a part of any decision, they are insufficient; Mr. Klayman has no fear of sanctions.

## 5.0 Conclusion

In light of the foregoing, Defendants Alex Jones, Infowars, and FSS respectfully request this Honorable Court dismiss the matter as to them for failure to state a claim and award them their attorneys' fees and costs under the Florida Anti-SLAPP law, 28 U.S.C. § 1927 and the Court's inherent power,[15] and under the fee-shifting provision of the Lanham Act, 15 U.S.C. § 1117(a), and to bar Mr. Klayman from filing further suits against him without prior leave of court.

Dated: September 2, 2020.

Respectfully submitted,

/s/Marc J. Randazza
Marc J. Randazza (*pro hac vice*)
Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com

Bradley J. Reeves (TX Bar No. 24068266)
REEVES LAW, PLLC
702 Rio Grande Street, Suite 306
Austin, TX 78701
Telephone: 512-827-2246
brad@brtx.law

Attorneys for Defendants
Infowars, LLC; Free Speech Systems, LLC;
Alex E. Jones; and Owen Shroyer

---

[15]   Upon dismissal, Moving Defendants will seek fees under these provisions by separate motion.

Civil Action No. 1:20-cv-00298-LY

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document was filed and served upon all parties of record on September 2, 2020 by CM/ECF, the court's electronic filing system.

/s/ Marc J. Randazza
Marc J. Randazza

- 19 -
Motion to Dismiss Against Larry Klayman
1:20-cv-00298-LY