**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

DR. JEROME CORSI, et al

        Plaintiffs

    v.

INFOWARS, LLC, et al

        Defendants.

**Case Number: 1:20-cv-298-LY**

**PLAINTIFF JEROME CORSI'S OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS AND MOTION FOR SANCTIONS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD ............................................................................................................3

LEGAL ARGUMENT.............................................................................................................3

    The Amended Complaint Alleges That Each of the Infowars Defendants Were Working
    Together in Concert, and are Therefore Jointly and Severally Liable ................................3

    Dr. Corsi Has More Than Adequately Pled Defamation Causes of Action ........................5

        Dr. Corsi is Not a Public Figure.................................................................................6

        Dr. Corsi Has More Than Adequately Pled Malice.................................................7

        Dr. Corsi 's Specific Allegations as to Defamation.................................................8

            The October 26, 2018 Video.................................................................8

            The January 18, 2019 Video ................................................................11

            Other Defamatory Publications...........................................................11

        Defendant Shroyer Personally Participated in the Defamation ............................12

    Dr. Corsi Has More Than Adequately Pled Intentional Infliction of Emotional Distress.13

    Dr. Corsi Has More Than Adequately Pled Claim for Assault.........................................14

    Dr. Corsi Has More Than Adequately Pled Unfair Competition Cause of Action............15

    Dr. Corsi Did Not Need to Comply With the Texas Defamation Mitigation
    Act.......................................................................................................................................16

    The Honorable Roy K. Altman's Order in the U.S District Court for the Southern District
    of Florida is Not Binding on this Court .............................................................................16

    Defendant Shroyer's Motion for Sanctions Must be Denied.............................................17

CONCLUSION ......................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Bentley v. Bunton*, 94 S.W.3d 561 (Tex. 2002) .........................................................................6, 9

*Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614 (Tex. 2018) ...................................6

*Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72 (Tex. App. El Paso 1998) ..................13

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549 (S.D. Tex. 2002 ...........3

*LandAmerica Commonwealth Title Co. v. Wido*, 2015 Tex. App. LEXIS 11201 (Tex. App. Oct. 29, 2015 ...................................................................................................................4

*Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242 (5th Cir. 1997 ......................................3

*Mahone v. Addicks Utility District of Harris County*, 836 F.2d 921 (5th Cir. 1988 ......................3

*Moore v. City of Wylie*, 319 S.W.3d 778 (Tex. App. 2010) .........................................14

*Rodriguez v. Gonzales*, 566 S.W.3d 844 (Tex. App. 2018 .........................................5, 6

*Sosa v. Coleman*, 646 F.2d 991 (5th Cir. 1981 ........................................................3

*SR Int'l Bus. Ins. Co. Ltd. V. Energy Future Holdings Corp.*, 539 F. Supp. 2d 871 (N.D. Tex. 2008 .......................................................................................................................3

*Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017) ..................................................15

*Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993) ...................................................13

*Van Der Linden v. Khan*, 535 S.W.3d 179 (Tex. App. 2017) .......................................6

**Statutes**

Texas Defense Mitigation Act ..........................................................................16

Federal Rule of Civil Procedure 11 ...................................................................18

Plaintiff DR. JEROME CORSI ("Dr. Corsi") hereby opposes (1) Defendant Infowars LLC ("Infowars"), Alex E. Jones ("Alex Jones"), and Free Speech Systems, LLC's ("FSS") Motion to Dismiss, ECF No. 58, (2) Defendant Owen Shroyer's ("Shroyer") Motion to Dismiss, ECF No. 55, (3) Defendant Shroyer's Motion for Sanctions, ECF No. 56, and Defendant David Jones' ("David Jones") Motion to Dismiss, ECF No. 57. These Defendants are heretofore collectively referred to as the "Infowars Defendants."

I.    INTRODUCTION

This case is centered around the Infowars Defendants' latest attempt at pecuniary gain and notoriety through their pattern and practice of spewing false, malicious, and defamatory statements. In collaboration with their co-conspirator, Defendant Roger Stone ("Stone"), the Infowars Defendants are doing everything that they can to smear, discredit, and threaten Dr. Dr. Corsi in order try to have helped Stone avoid prison time for his role Special Counsel Robert Mueller's Russian collusion investigation, for which he was indicted on seven separate felony charges and had a pending criminal case in the District of Columbia. Defendant Stone was then convicted on seven counts of perjury, witness tampering and obstruction of justice and was sentenced to 40 months in a federal penitentiary. Am. Comp. ¶ 36. His sentence was commuted by President Donald J. Trump.

To that end, Stone had already made numerous false, malicious, and defamatory statements in public in order to try to improperly influence and corrupt Mr. Mueller's investigation and prosecution. Defendant Stone has falsely accused Dr. Corsi of repeatedly lying, the crime of committing perjury, and being an alcoholic who has no capacity for memory, among a myriad of other defamatory published statements as pled in the Complaint. It is easy to see why Defendant Stone made these types of statements – he was trying to do everything in his power to

discredit, coerce, intimidate, and threaten Dr. Corsi, who had no choice but to cooperate with Mr. Mueller's investigation, and if subpoenaed, to testify truthfully at Defendant Stone's trial. Tellingly, Dr. Corsi was not indicted, while Defendant Stone was. This speaks for itself.

The Infowars Defendants have now stepped in to aid their co-conspirator, Stone, who works as a co-host along with Defendant Shroyer's on *The War Room*, in hopes of not only discrediting Dr. Corsi to aid Stone, but also to eliminate them as competitors. The Infowars Defendants have come up with a myriad of lies and blatant falsities that have severely damaged Dr. Corsi's reputation.

Tellingly, this is not the Infowars Defendants' first foray into the misinformation business:

> The Defendants related to Infowars in particular have a long and sordid history of publishing and broadcasting defamatory material, including falsely, recklessly and baselessly accusing the families of the schoolchildren who lost their lives during the 2012 Sandy Hook Elementary School massacre of staging the massacre and faking the deaths of their children.
>
> The Sandy Hook families had to endure years of abuse and torture from Defendants before finally filing suit against numerous parties involved with InfoWars, including Defendant Alex Jones and Shroyer, for defamation.
>
> As just one example, a Florida woman was arrested for making death threats to a parent of a Sandy Hook victim. According to the U.S. Department of Justice, the motivation behind the threats was the lies propagated by these Defendants that the Sandy Hook massacre
> was a hoax.
>
> Furthermore, Defendant Alex Jones in concert with the other Defendants propagated and promoted the "Pizzagate" conspiracy on his show, accusing a restaurant called Comet Ping Pong in the Washington D.C. area of operating a child sex ring in its non-existent basement that purportedly involved Hillary Clinton and John Podesta. This caused one of his listeners to shoot up the restaurant after being told by Defendant Jones to "self-investigate" the "Pizzagate" conspiracy theory. Am. Comp. ¶¶ 17-21.

The Infowars Defendants have shown time and time again that they are willing to say just about

anything for notoriety, fame, and profit. Thus, it is hardly surprising that they are willing to come to the defense of their co-conspirator Roger Stone in this instance.

## II.     LEGAL STANDARD

A Rule 12(b)(6) motion is disfavored and is rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). When "reviewing the sufficiency of a complaint in response to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) . . . the district court's task is limited." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 563 n.3 (S.D. Tex. 2002). Motion to dismiss are viewed with disfavor and rarely granted. *See Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997); *SR Int'l Bus. Ins. Co. Ltd. V. Energy Future Holdings Corp.*, 539 F. Supp. 2d 871, 874-75 (N.D. Tex. 2008) (citations omitted); *Mahone v. Addicks Utility District of Harris County*, 836 F.2d 921, 926 (5th Cir. 1988) (holding that Rule 12(b)(6) motions are disfavored in the law, and a court will rarely encounter circumstances that justify granting them.

## III.    LEGAL ARGUMENT

### A.     The Amended Complaint Alleges That Each of the Infowars Defendants Were Working Together in Concert, and are Therefore Jointly and Severally Liable

The Amended Complaint specifically and expressly alleges that the Infowars Defendants were at all material times "working together in concert with and as agents of Stone…." Am. Comp. ¶ 36. Furthermore, "Plaintiffs have demanded retraction and correction of the defamatory videos and publications…but Defendant shave arrogantly refused, thereby ratifying any and all defamatory statements contained therein…." Am. Comp. ¶ 38.

There is nothing conclusory about these allegations:

Defendant InfoWars and Defendant Free Speech Systems are both owned, controlled, and operated by Defendant Alex Jones and David Jones. Defendant

> Free Speech Systems owns www.infowars.com, where content created by Defendants Alex Jones, Shroyer and Stone were at all material times posted and broadcast into this district, nationally and internationally. Am. Comp. ¶ 11.

> Defendant David Jones is Defendant Alex Jones's father and holds the official title of Director of Human Relations for Defendant Free Speech Systems. On information and belief, Defendant David Jones is the owner of Defendant InfoWars and Free Speech Systems and he manages and controls the business and related activities for Defendants InfoWars and Free Speech Systems, as well as Defendant Alex Jones' other companies. Am. Comp. ¶ 8.

Thus, given the fact that each of every one of the Infowars Defendants are intricately bound together by virtue of the fact that they all directly participate in creating and publishing the content on the Infowars site, it is more than merely plausible that they are working together in concert.

> Under Texas law:

> Civil conspiracy is used to extend tort liability beyond the wrongdoer to those who merely planned, assisted, or encouraged his acts. *See Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925-26 (Tex. 1979); *Helping Hands Home Care, Inc. v. Home Health of Tarrant County, Inc.*, 393 S.W.3d 492, 506 (Tex. App.-Dallas 2013, pet. denied). Once a civil conspiracy is proved, each conspirator is responsible for all acts done by any of the conspirators in furtherance of the conspiracy. *Bentley v. Bunton*, 94 S.W.3d 561, 619 (Tex. 2002); *Carroll*, 592 S.W.2d at 926 (Tex. 1979); *Helping Hands*, 393 S.W.3d at 506. A finding of civil conspiracy imposes joint and several liability on all conspirators for actual damages resulting from the acts in furtherance of the conspiracy. *Carroll*, 592 S.W.2d at 925; *Helping Hands*, 393 S.W.3d at 506. When a jury finds that liability for a civil conspiracy exists, this finding requires the legal conclusion to impose joint and several liability on the co-conspirators.

*LandAmerica Commonwealth Title Co. v. Wido*, No. 05-14-00036-CV, 2015 Tex. App. LEXIS 11201, at *29 (Tex. App. Oct. 29, 2015). Thus, as the Amended Complaint clearly alleges that each and every one of the Infowars Defendants conspired with Defendant Stone, to maliciously defame and otherwise harm Dr. Corsi, they are jointly and severally liable for each others' actions.

Furthermore, any assertion by Defendant David Jones that he was not involved in the defamation of Mr. Klayman is rebutted by the attached affidavit of Kelly Morales, Defendant Alex Jones' ex-wife. Exhibit 4. For instance, Ms. Morales states, "David Jones runs Infowars with Alex Jones and helps him with his activities, including fixing media stories and endorsing and/or aiding his slanderous and/or fraudulent behaviors." Furthermore, "Alex Jones could not function without David Jones, and has conspired with him on the past to commit this breach of fiduciary duty and fraud on my business/estate with Alex Jones." In fact, in an affidavit filed by David Jones in Alex Jones' bankruptcy case, he swears, "I have been involved with Alex Jones' personal and business finances for many years…." Exhibit 4.

Given this, it is not surprising that Defendant David Jones, along with the other Infowars Defendants, were given a chance to retract the defamatory statements, but chose not to, thereby ratifying them. Am. Comp. ¶ 38.

Lastly, Defendant Stone is still appearing regularly on Infowars, as recently as a few weeks ago, as reported by the Huffington Post.[1] This shows that Defendant Stone is still working together closely with the Infowars Defendants after being pardoned by President Trump.

### B. Dr. Corsi Has More Than Adequately Pled Defamation Causes of Action

The elements that a defamation plaintiff must prove are that (a) the defendant published a false statement of fact; (b) the statement defamed the plaintiff; (c) the defendant acted with actual malice, if the plaintiff is a public figure or a public official, or negligently, if the plaintiff is a private individual; and (d) the statement proximately caused damages." *Rodriguez v. Gonzales*, 566 S.W.3d 844, 848 (Tex. App. 2018). Furthermore, in a claim for defamation *per se,*

---

[1] Allison Quinn, *Roger Stone's Election Plan: Have Feds Block Voting, Arrest 'Seditious' Daily Beast Staff*, Daily Beast, Sept. 13, 2020, available at: https://www.thedailybeast.com/roger-stones-election-plan-have-feds-block-voting-arrest-seditious-daily-beast-staff

damages are presumed, as the "statements are so obviously harmful that damages, such as mental anguish and loss of reputation, are presumed." *Van Der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App. 2017). A defamation by implication claim arises when a "when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 627 (Tex. 2018).

Furthermore, the Supreme Court of Texas has found that a defendant may not escape liability for his defamatory conduct simply by couching his defamatory statement as an "opinion." *Bentley v. Bunton*, 94 S.W.3d 561 (Tex. 2002). The *Bentley* court gave an example:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." As Judge Friendly aptly stated: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'" See *Cianci* [*v. New Times Publishing Co.*, 639 F.2d 54, 64 (2d Cir., 1980)]. It is worthy of note that at common law, even the privilege of fair comment did not extend to "a false statement of fact, whether it was expressly stated or implied from an expression of opinion." Restatement (Second) of Torts, § 566, Comment *a* (1977). *Id*. at 583-84.

## 1. Dr. Corsi is Not a Public Figure

First and foremost, it is important to establish that Dr. Corsi is not a public figure. Thus, he does not need to have alleged that the Infowars Defendants acted with actual malice, even though he has done so. "In the context of defamation claims, there are two types of 'public figures.' 'All-purpose' or 'general purpose' public figures are those 'who have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts.'"

*Rodriguez v. Gonzales*, 566 S.W.3d 844, 850 (Tex. App. 2018). "In contrast, a 'limited-purpose' public figure is a public figure only "for a limited range of issues surrounding a particular public controversy.' *Id.* To determine whether a defamation claimant is a limited-purpose public figure, Texas courts apply the following three-part test: (1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy. *Id.*

It is clear that Dr. Corsi is not a general purpose public figure. In the context of the defamation, Dr. Corsi is not a limited purpose public figure either. Here, Dr. Corsi did not injected himself into the purported "public controversy." Their involvement was not by choice, but instead forced by Defendants and Special Counsel Mueller and his staff, who named Dr. Corsi as a witness on Defendant Stone's indictment. Dr. Corsi was then forced to retain counsel, Plaintiff Klayman, and make public statements in order to protect his own reputation as an investigative journalist. Put another way, Dr. Corsi never sought out any of the media attention, but was involuntarily brought into the controversy and forced to defend himself once Defendants began maliciously defaming them. Furthermore, it is abundantly clear that Defendants' false, malicious, and misleading statements essentially, such as by way of just one example, calling Dr. Corsi an alcoholic are not germane in any way to the Russian collusion investigation and prosecution, and were made by Defendants solely to discredit Dr. Corsi and tarnish his reputation in this district. Comp. ¶¶ 42 – 47

### 2. Dr. Corsi Has More Than Adequately Pled Actual Malice

As set forth above, neither Dr. Corsi is not a public figure the purposes of this litigation,

rendering a showing of malice unnecessary. However, even in the unlikely event that this Court finds that Dr. Corsi is a limited-public figure, it is clear that the Infowars Defendants acted with malice. Dr. Corsi specifically pled that each of the false and defamatory statements were made by Defendants <u>with malice</u> and actual knowledge of their falsity.

The Amended Complaint sets forth the fact that Defendants "have known Plaintiff Corsi for a long time and even worked with him… so they were well aware that the statements made by the co- Defendant Stone, and their own false, misleading, malicious and defamatory statements were, indeed, false, as well as their acting as agents of, much less their ratification of the malicious false statements published by Defendant Stone on their networks and media sites." Am. Comp. ¶ 39.

Indeed, the fact that the Infowars Defendants have known Dr. Corsi for a long time and even worked with him conclusively shows the actual malice stemming from the false and defamatory statements now being made. Why would the Infowars Defendants have worked so closely with an individual that they allegedly knew was an "alcoholic" or someone that the knew was a "liar?" They would not have, because they know that Dr. Corsi is neither of those things. Indeed, Dr .Corsi's book, "*Killing the Deep State,"* is still available for sale on the Infowars website! <u>Exhibit 1</u>; *Affidavit of Dr. Corsi*. This shows that the Infowars Defendants at all times knew that Dr. Corsi was neither an alcoholic nor a liar, yet still willingly participated in branding him as such. This is textbook actual malice. Dr. Corsi has attached a sworn affidavit hereto in this regard. <u>Exhibit 1</u>.

### 3. Dr. Corsi's Specific Allegations as to Defamation

#### i. The October 26, 2018 Video

Defendants' primary defense appears to be trying to couch their false, malicious, and

defamatory statements of fact as opinion. However, it is clear that a tortfeasor may not escape liability for defamation simply by couching their statement as opinion. *See Bentley v. Bunton*, 94 S.W.3d 561 (Tex. 2002). Indeed, this makes perfect sense. Otherwise, a tortfeasor would be given free reign to defame any other person simply be using the word "seems" in the defamatory publication.

The first statement at issue appears in paragraph 42 of the Amended Complaint, where Defendant Alex Jones stated that Dr. Corsi "seemed to be extremely mentally degraded to the point of what I would call dementia." Despite the Infowars Defendants' attempts to argue opinion, based solely on the inclusion of the word "seemed," it is clear that the defamatory statement provides an objectively verifiable statement of fact. Whether a person is "mentally degraded" is a medical question of fact. One either is, or is not. Defendant Alex Jones takes it a step further, making a diagnosis of "dementia." Again, this is an objective medical diagnosis that is a statement of fact. One either has dementia or he doesn't. Dr. Corsi is neither "mentally degraded" not does he have "dementia." Thus, the statements of "fact" spewed by Defendant Alex Jones are objectively and provably false. These statements were made simply to discredit Dr. Corsi as a witness in Stone's indictment and prosecution. Lastly, this false statement was based on a supposed first hand account, so Defendant Alex Jones must know the truth or falsity of his statement. Thus, if false, it is clear that he acted with malice. This statement falls under the rule set forth in *Bentley*, which prohibits a tortfeasor from simply couching their statements of fact as opinion.

The second statement at issue appears in paragraph 43 of the Amended Complaint, where "Defendant Alex Jones, acting in concert with the other Defendants, maliciously fabricates a story where he purportedly saw Plaintiff Corsi at a steakhouse "on the ground at another table"

and that his security staff "thought he was dead in the elevator." These are two statements of objectively verifiable fact. Either Dr. Corsi collapsed or he didn't, and either his security staff thought he "was dead in the elevator" or they didn't. It is especially important that these statements were made in the context of Defendant Alex Jones clearly trying to discredit Dr. Corsi, as he immediately tries to defend Stone in the context of Mueller's investigation and prosecution immediately afterwards. Indeed, a person that simply passes out on the ground at a restaurant would not be a reputable source of information, as he would be seen as feeble, weak, and therefore not in the state of mind to be able to tell the truth. This is exacerbated by the lie compounded by Alex Jones that his security staff thought Dr. Corsi was "dead in the elevator." Again, this statement of false objectively verifiably fact only seeks to further discredit Dr. Corsi's credibility. Lastly, this false statement was based on a supposed first hand account, so Defendant Alex Jones must know the truth or falsity of his statement. Thus, if false, it is clear that he acted with malice.

The third statement at issue appears in paragraph 44 of the Amended Complaint, where "after accusing Plaintiff Corsi of having suffered a stroke, publishes maliciously that "whatever comes out of his mouth ain't the truth." This is textbook defamation, especially in the context of Defendant Alex Jones' previous attempts to cast Dr. Corsi as a liar or, at a minimum, someone mentally incapable of telling the truth. As set forth above, falsely accusing someone of having suffered a stroke is not only reprehensible, but it is also stating a false, objectively verifiable fact. Defendants likely recognize this and put forth the weak assertion that Defendant Alex Jones "did not call Dr. Corsi an intentional liar." ECF No. 58 at 16. This is a distinction without a difference. The bottom line is that Defendant Alex Jones has publicly broadcasted that Dr. Corsi is a liar who cannot be trusted. This has undeniably harmed Dr. Corsi' profession as an

investigative journalist, as an investigative journalist with a reputation for lying is no longer an investigative journalist. Thus, th.is statements was *per se* defamator

Lastly, it is clear that this was no "hyperbole" or that was a mere "expression of outrage." From the context of the entire broadcast, as conveniently set forth by the Infowars Defendants themselves, this was a carefully calculated segment to try to discredit Dr. Corsi and smear his reputation to the benefit of their co-conspirator, Stone. Defendant Alex Jones gave specific, albeit false and fabricated, instances of Dr. Corsi's mental health supposedly being compromised, all leading up the payoff that "whatever comes out of his mouth ain't the truth." There is no opinion, no hyperbole, and no rhetoric. These are fabricated facts.

### ii. The January 18, 2019 Video

While the false and defamatory statements contained in this video range from paragraphs 47 – 63 of the Amended Complaint, the Infowars Defendants offer up no actual defense to any of them pertaining to Dr. Corsi, which shows that they concede the defamatory nature of these statements. Likely, the Infowars Defendants knew that there was no defense to be made, as they are clearly false statements of fact. Indeed, as just one example, at "2:09 in the January 18 Video, Stone maliciously and falsely published that Plaintiff Corsi was "fired from World Net Daily." Comp. ¶ 50. This is purely a question of fact.

### iii. Other Defamatory Publications

While the false and defamatory statements contained in this section range from paragraphs 64 – 69 of the Complaint, Defendants only address paragraphs 67 and 68. Thus, the rest must be treated as conceded.

"Defendant Alex Jones maliciously and falsely accuses Plaintiff Corsi of being a 'spook, back and forth with different agencies,' falsely saying that Dr. Corsi had worked with different

government agencies." Am. Comp. ¶ 67. The defamatory nature of this false statement of fact is apparent when considering the context in which it was made. This statement was made to advance the false notion that Dr. Corsi was cooperating with Special Counsel Mueller to try to take down Stone, and by extension, President Trump. By publishing the false statement that Dr. Corsi is now working with Mueller to take down Trump, the Infowars Defendants has severely harmed Plaintiff Corsi professional image and reputation. This has negatively impacted Plaintiff Corsi's ability to garner support in the conservative community. Falsely accusing Dr. Corsi of working with Mueller to take down President Trump is tantamount to an accusation of "treason" in the conservative community. Indeed, conservatives who support Trump and believed Defendants' false statements would understandably be turned off to Dr. Corsi's work.

"Lastly, Defendant Alex Jones further maliciously falsely accuses Plaintiff Corsi of sometimes "not being able to walk," creating the false and defamatory implication that he is an alcoholic." Am. Comp. ¶ 68. There is no possible "context" where this is not defamatory. Merely falsely asserting that at some point, Dr. Corsi had been, or continues to be unable to even walk, especially when trying to accuse Dr. Corsi of alcoholism, clearly tends to injure reputation in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him.

### 4. Defendant Shroyer Personally Participated in the Defamation

Defendant Shroyer makes the incredibly curious –to put it generously – argument that "Plaintiffs Do Not Allege Mr. Shoryer Did Anything." ECF No. 55 at 7. This is a bizarre allegation, especially given the fact that one of the defamatory videos at issue – the January 18, 2019 video, Am. Comp. ¶¶ 47 – 63 – happened to be from an episode of *The War Room*," which is hosted by Defendant Shroyer. Defendant Shroyer is prominently featured in the January

18, 2019 video, which is in question and answer format, and he proceeds to set up Defendant Stone's malicious defamation of Dr. Corsi. The only way that there was no "meeting of the minds" between Defendant Shroyer and Defendant Stone, as Defendant Shroyer apparently suggests, is if there was absolutely zero preparation that went into this segment and Defendants Shroyer and Stone had no idea what they were planning on discussing. This is obviously not the case from even a cursory viewing of the January 18 video, as both Defendant Stone and Shroyer are clearly prepared and have questions and answers mapped out. Thus, it is disingenuous at best for Defendant Shroyer to allege that the Amended Complaint does not set forth his personal participation.

### C.    Dr. Corsi Has Adequately Pled Intentional Infliction of Emotional Distress

To succeed on a claim of intentional infliction of emotional distress, a plaintiff must who that "1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). Texas Courts have held that a single threat of physical harm or death can sustain a claim for intentional infliction of emotional distress. "With the possible exceptions of the bomb and death threats, no single action...rises to the level of intentional infliction of emotional distress." *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 82 (Tex. App. El Paso 1998).

Here, the Infowars Defendants' co-conspirator, Defendant Stone directly threatens Dr. Corsi, after maliciously defaming him, saying "I think you've [Corsi] been deep state from the beginning. Your whole birther thing is used as a club to destroy conservatives.... ***I look forward to our confrontation. I will demolish you***. You're a fraudster, out of your alcoholic haze you

have made up lies about David Jones and Alex Jones and Roger Stone and now I suspect they want you to lie about the President." Am. Comp. ¶ 66. (emphasis added). This is a direct, credible threat to Dr. Corsi's life and the lives of those around him.

### D. Dr. Corsi Has Adequately Pled Claim for Assault

In order to sustain a claim for assault, a Plaintiff need only plead that the Defendant "intentionally or knowingly threatens another with imminent bodily injury." *Moore v. City of Wylie*, 319 S.W.3d 778, 782 (Tex. App. 2010)

As set forth in the previous section, the Infowars Defendant's co-conspirator, Defendant Stone made direct threats to Dr. Corsi's life, saying "**I look forward to our confrontation. I will demolish you.**" Am. Comp ¶ 66. These threats are more than credible, as Stone also threatened to kill Randy Credico and his service dog. Am. Comp. ¶ 66. Like Plaintiff Corsi, Mr. Credico was named as Person 2 in Defendant Stone's indictment. Dr. Corsi was named as Person 1 as a material witness to Stone's crimes. Even more, as set forth previously, Defendant Stone went so far as to publicly threaten the life of the judge assigned to his criminal case, Judge Amy Berman Jackson, which caused her to issue a total gag order, for which this Court can take judicial notice. These types of threats are what Defendant Stone are known for:

> Defendant Stone likes to portray himself as Mafia, frequently making reference to Mafia figures who he admires, as well as other unsavory types who have been alleged to have engaged in unethical and/or illegal behavior. He frequently makes reference to his heroes being Hyman Roth in the 'Godfather,' who was the movie version of Meyer Lansky, and Roy Cohn, not to mention, Richard Nixon, for his role in Watergate. In this regard, after Stone was indicted he held a press conference on the courthouse steps of the federal courthouse in Ft. Lauderdale, where he was booked, with his arms defiantly in the air in the 'victory' pose used by Nixon after he resigned in disgrace as a result of the Watergate scandal. At the time, Stone had been employed by a Nixon group called CREEP, or the Committee to Reelect the President. Defendant Stone even has a large tattoo of Richard Nixon affixed to his back. Thus, given his admiration for persons such as these, particularly Mafia figures, his actions as pled herein can be taken as threats, as well as being defamatory. And, Plaintiff Corsi is 72 years old. Defendant

> Stone's intentional infliction of emotional distress and coercion and threats are intended to try even cause Plaintiff Corsi to have heart attacks and strokes, in order that Plaintiff will be unable to testify at Stone's criminal trial. Tellingly, Defendant Stone threatened kill a material witness and his dog, Credico, Person 2 in the Mueller Indictment, "Mafia style." Defendant Stone also fashions himself and indeed has the reputation, at a minimum, as being the preeminent "dirty trickster." *See* "Get Me Roger Stone" on Netflix. Am. Comp. ¶ 29.

Dr. Corsi took this as a viable threat of severe bodily injury or death. Apparently the FBI took his threats the same way when they raided his house with 27 armed agents.[2]

### E.    Dr. Corsi Has Adequately Pled Unfair Competition Cause of Action

The Infowars Defendants falsely assert that Dr. Corsi's claim under the Lanham Act for Unfair Competition must fail because there is no "commercial" speech at issue. However, it is clear that at all times, the Infowars Defendants had a strong economic motivation for distributing the material at issue. *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) quoting *Bolger*, 463 U.S. at 66-67. The Amended Complaint alleges that "Defendants, acting in concert, as part of their latest scheme for notoriety, fame, **and profit**, are now working in concert with Stone to defame, intimidate, and threaten Plaintiffs." Am. Comp. ¶ 22 (emphasis added). Indeed, the Am. Complaint sets forth the fact that "Plaintiffs Corsi and Plaintiff Klayman are both competitors to Defendants as conservative media personalities, broadcasters, authors and columnists on social media and elsewhere." Am. Comp. ¶ 70. Thus, by discrediting and defaming Dr. Corsi, the Infowars Defendants are trying to "materially prejudice the viewers and/or listeners as to the quality, nature, and contents of Plaintiffs' services, which has caused significant competitive and commercial injury to Plaintiffs, as well as loss of good will and reputation." Am. Comp. ¶ 73. Thus, in essence, the motivation behind the Infowars Defendants' misconducts entirely financial,

---

[2] James A. Gagliano, *Retired FBI agent: The Roger Stone raid was totally by the book*, CNN, January 31, 2019, available at: https://www.cnn.com/2019/01/31/opinions/lindsey-graham-roger-stone-fbi-raid-response-gagliano/index.html

as they seek to destroy Dr. Corsi's reputation in order to eliminate them as competition.

**F.      Dr. Corsi Did Not Need to Comply With the Texas Defamation Mitigation Act**

In an obvious attempt to invoke the Texas one-year statute of limitations for defamation claims, the Infowars Defendants assert that Dr. Corsi did not comply with the notice requirements of the Texas Defamation Mitigation Act ("TDMA"). Their motivations are clear, as they assert that "[t]his is not a case where the plaintiffs can dismiss, send a TDMA request, and re-file." ECF No. 55 at 9. However, this argument ignores the fact that this action was filed first in the U.S. District Court for the District of Columbia and was transferred to this Court after the fact. Indeed, the Honorable Timothy Kelly ("Judge Kelly") mooted out this issue in his March 3, 2020 order transferring the case to this Court. In his memorandum opinion, in deciding to transfer the case instead of dismissing it, stated, "And because Texas has a one-year statute of limitations for libel and slander, Plaintiffs would be unable to refile those claims in the Western District of Texas were the Court to dismiss their suit. Tex. Civ. Prac. & Rem. Code § 16.002. Because Plaintiffs would be prejudiced by dismissal but it appears Defendants will not be prejudiced by transfer, the Court will transfer the case to the Western District of Texas in the interest of justice." *Corsi v. Infowars, LLC et al*, 19-cv-656 (D.D.C) ECF No. 21 at 6.

Accordingly, Judge Kelly transferred this case to this Court so the Dr. Corsi would have to opportunity to litigate it substantively. Thus, any statute of limitations or other procedural issues raised by the Infowars Defendants have been mooted out.

Lastly, in any event, Mr. Klayman – back when he was representing Dr. Corsi - put counsel for the Infowars Defendants, Marc Randazza on notice of his clients' defamation on January 25, 2019, prior to this case being originally filed in the District of Columbia. Exhibit 2.

**G.      The Honorable Roy K. Altman's Order in the U.S. District Court for the**

**Southern District of Florida is Not Binding on this Court**

The Infowars Defendants cite a case previously filed by co-Plaintiff Larry Klayman in the U.S. District Court for the Southern District of Florida styled *Klayman v. Infowars,* 20-cv-80614 (S.D. Fl.)(the "Florida Complaint") as evidence that this instant complaint is a "shotgun pleading."

First and foremost, Dr. Corsi was not a party to that action, and therefore it has no bearing on him as a Plaintiff here.

Secondly, the Florida Complaint was dismissed voluntarily by Mr. Klayman, and was therefore never adjudicated substantively.

Third, the Honorably Roy K. Altman ("Judge Altman") appears to have been a highly politicized judge, which caused Mr. Klayman to voluntarily dismiss the Florida Complaint shortly after filing it. Indeed, Judge Altman *sua sponte* issued an Order Requiring More Definite Statement before the Defendants were even served. Due to the bizarre and unusual nature of this order, and because Defendant Stone is a close confidant of President Trump and had recommended people to the bench in the past, Mr. Klayman respectfully asked if Judge Altman had been recommended to the bench by Defendant Stone. This would have explained the unusual order from Judge Altman. Judge Altman refused to give an answer. Thus, Mr. Klayman saw no recourse but to dismiss the Florida Complaint, as it was clear that he would not receive unbiased adjudication.

**H.      Defendant Shroyer's Motion for Sanctions Must be Denied**

Defendants Shroyer has filed a motion for sanctions under Rule 11 of the Federal Rules o Civil Procedure, which simply repeats the arguments set forth by theInfowars Defendants in their motions to dismiss. As shown conclusively above, Dr. Corsi has alleged proper causes of action

against each and every Infowars Defendant, including Defendant Shroyer, who personally participated in the defamation of Dr. Corsi on his show, *The War Room*.

Accordingly, for the same reason that Defendant Shroyer's motion to dismiss must be denied, so too must his motion for sanctions under Rule 11. Indeed when a Rule 11 motion itself is not well grounded in fact or law, or is filed for an improper purpose, the court may sanction the *moving* party. *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407 (S.D.N.Y.2003).

## IV.   CONCLUSION

Based on the foregoing, Dr. Corsi respectfully requests that this Court deny the Infowars Defendants motion to dismiss and motions for sanctions so that this matter may proceed expeditiously to discovery and trial.

Dated: October 1, 2020                                     Respectfully Submitted,


                                                          */s/Sanjay Biswas*
                                                          SANJAY BISWAS, Esq.
                                                          #24061235—Texas
                                                          #24966--Louisiana
                                                          11720 Duxbury Dr.
                                                          Frisco, Texas 75035
                                                          Telephone: (972)-866-5879
                                                          Email:sanjaybiswas41@gmail.com
                                                          Fax: 1-800-506-6804

                                                          *Counsel for Dr. Jerome Corsi*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of September, 2020, a true copy of the foregoing was filed via ECF and served to all counsel of record though the Court's ECF system.


                                                          */s/ Sanjay Biswas*

EXHIBIT 1

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| **DR. JEROME CORSI** and **LARRY KLAYMAN**, | § § § | CIVIL ACTION NO. 1:20-CV-00298-LY |
| Plaintiffs, | § § | |
| vs. | § § | |
| **INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, ALEX E. JONES, DAVID JONES, OWEN SHROYER**, and **ROGER STONE** | § § § § § | |
| Defendants. | § § | |

## SWORN DECLARATION OF DR. JEROME CORSI

I, Dr. Jerome Corsi, being over eighteen years of age and duly competent to testify, hereby swear and affirm as follows:

1.      I have personal knowledge of the following facts and if called upon as a witness, could testify competently thereto.

2.      I graduated magna cum laude with a B.A. in Political Science and Economics from Case Western Reserve University in 1968.

3.      I received a Ph.D. in Political Science from Harvard University in 1972.

4.      For over twenty-five (25) years, I worked in banking and finance, establishing investment programs for banks in the United States and worldwide to create financial planning services for their retail customers.

5.      From 1968 to 1981, I worked at various universities where I conducted research on federally funded grants.

6.      In 1981, I published "Terrorism as a Desperate Game: Fear, Bargaining, and Communication in the Terrorist Event" in *Journal of Conflict Resolution*, a mathematical game-theoretical model for predicting the outcome of terrorist events.

7.      The content of my publication resulted in a top-secret clearance by the U.S. Department of State's ("State Department") Agency for International Development, where I joined a team of psychiatrists and psychologists to develop a hostage-survival training program for State Department's officials overseas.

8.      Since 2004, I have published over twenty-five (25) books, seven (7) of which were *New York Times* Bestsellers, including two (2) #1 *New York Times* Best-sellers.

9.      In addition to being a New York Times Bestselling author, I am also an investigative journalist and political analyst.

10.     I currently hold active Life & Health insurance licenses, as well as Property & Casualty insurance licenses in New Jersey.

11.     For over twenty (20) years, I have been a licensed National Association of Security Dealers registered representative, currently holding FINRA-registered licenses as a Registered Principal, Financial Principal, Options Principal and Municipals Principal.

12.     I have been a frequent guest on radio and television shows, including but not limited to appearances on CNN, Fox News, Fox Business, MSNBC, and on Infowars, before having been defamed by Defendants.

13.     I personally know Defendant Roger Stone ("Defendant Stone") and he personally knows my qualifications and me. I have even ghostwritten books for Defendant Stone and we used to be friends and colleagues. Defendant Stone is thus intimately familiar with my personal and professional history.

14.     In 2016, after the presidential election, I worked very closely with Alex Jones and his father David Jones, as well as with the Infowars staff, including Owen Shroyer. I made multiple trips to Austin, Texas, to appear live in-studio on Infowars broadcasts. I accepted an assignment from Alex Jones to create for Infowars a news bureau in Washington, D.C. From the beginning, I found Alex Jones to be erratic, subjects to emotional outbursts, even reacting that I was trying to "steal his company" when with his father's assistance, I brought a multi-million dollar legitimate investment offer from highly credible sources to the table to discuss the proposal with Alex and his father.

15.     Several times, concerned that I might quit over how badly Alex Jones was treating me, Dr. Jones met with me privately, often over breakfast. In those breakfasts, I counseled Dr. Jones over my concerns that Alex should seek professional psychological help. While in my work under various contracts with federal government agencies to consult over anti-terrorism tactics, I had the opportunity to work with very experienced psychiatrists and psychologists. Still, I am not medically trained, and I cautioned Dr. Jones that the problems I perceived with Alex's behavior should be professionally evaluated by qualified medical professionals.

16.     My efforts to create a news bureau in the nation's capital failed because Alex Jones insisted that staff I wanted to hire must work for free as "interns." Throughout my 12 years at World Net Daily, I frequently had White House press credentials. In 2012, the Secret Service cleared me to work as "traveling press," riding on the Romney campaign airplane for the last 3 weeks of the presidential campaign. At no time was I ever denied press credentials at the highest levels was alcohol ever raised as an issue in the many extensive background checks I underwent. In the early 1980s, I received Top Secret clearance from the federal government to

work on anti-terrorism contracts with the Agency for International Development at the State Department in Washington, D.C.

17.     Throughout the time I spent with Infowars, Dr. Jones would typically pick me up at the Austin Airport to transport me to the downtown hotel where Dr. Jones had made my room reservations.  At various times, we had breakfast together, often on trips when he was returning me to the airport to depart Austin.

18.     I am today 74 years-old.  I have no alcohol-related offenses on my record.  Since the mid-1980s, I have held securities licenses, first with the NASD and now with FINRA, agencies that conduct licensing in the securities industry for the federal government.  My securities records over that time, contain no customer complaints and no reports of behavior problems of any kind, including no alcohol-related problems.  I also have held for decades property and casualty as well as life and health insurance licenses in New Jersey.  I have created two broker/dealers in my financial services career.

19.     On my website, CorsiNation.com — a website I founded and managed as CEO — I conduct a daily hour-long podcast, live-streamed on multiple Internet channels simultaneously. I hold a Ph.D. from Harvard University's Department of Political Science, dating back to 1972.  I appear regularly on various news programs, including those broadcast by the major networks.  I have conducted thousands of radio interviews going back to 2004, when I entered the third phase of my career, currently working full-time as an investigative journalist and political commentator.

20.     Charges of alcoholism by the Defendants including broadcast charges made by Alex Jones and Defendant Roger Stone, have no basis in fact or substantiation in the extensive public record that exists of my life and professional career.

21.     Special Counsel Robert Mueller indicted Defendant Stone on seven counts of perjury, witness tampering and obstruction of justice.

22.     The Honorable Amy Berman Jackson who presided over Defendant Stone's prosecution, placed a gag order on him in part for threatening the judge herself by posing an Instagram meme of a crosshairs (gun) to her head.

23.     The seven-count indictment against Defendant Stone included lying under oath, witness tampering and obstruction of justice by threatening to kill a material witness, Randy Credico ("Credico") and his service dog if Credico did not lie or invoke the Fifth Amendment to government authorities concerning his involvement with Defendant Stone. Credico is Person 2 in the indictment. I am Person 1. Defendant Stone was later convicted of all seven (7) felony counts.

24.     Based on my personal knowledge of the interactions of Defendant Stone and the other Defendants, I assert that Defendant Stone, acting in concert with the other Defendants including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars, began a calculated and premeditated public relations campaign against my lawyer, Mr. Larry Klayman ("Mr. Klayman") and myself.

25.     Defendant Stone knew of his imminent indictment and therefore began his malicious crusade against Mr. Klayman and myself in order to influence public opinion and Special Counsel Robert Mueller by trying to attribute guilt to me.

26.     It is apparent that the malicious crusade against me by Defendants, who acted in concert, was calculated to coerce me to testify falsely at Defendant Stone's criminal trial.

27.     Defendant Stone, acting in concert with the other Defendants, also sought to divert funds away from my legal defense fund, while boosting his own.

28.     Contrary to Defendant Stone's false publication, I am not "certifiably insane and I have not "told multiple provable lies." Compl. at ¶ 26. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

29.     Contrary to Defendant Stone's false publication, I am not "mentally degraded to the point of [] dementia." Compl. at ¶ 42. I do not have dementia and have never been diagnosed with any mental illness. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

30.     Importantly, I was under contract with Infowars until the relationship ended and Defendants would not have retained me if I was "mentally degraded to the point of [] dementia." Compl. at ¶ 42.

31.     Contrary to Defendant Stone's false publication, he never saw me at a steakhouse where I was "on the ground at another table" where security staff "thought that [I] was dead in the elevator." Compl. at ¶ 43. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

32.     Contrary to Defendant Stone's false publication, I never suffered a stroke and it is a false statement of fact that "whatever comes out of [my] mouth ain't the truth." Compl. at ¶ 44. In publishing this false statement that Defendants knew to be false or published recklessly

because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

33.     Contrary to Defendant Stone's false publication, I was not "fired from World Net Daily." Compl. at ¶ 49. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

34.     Contrary to Defendant Stone's false publication, I was not "perfectly willing to lie, to perjure [myself] saying that a memp that [I] had [written] [Defendant Stone] on the 30th for the purposes of cover-up . . . which is further proof that [I] lied under oath." Compl. at ¶ 50. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

35.     Contrary to Defendant Stone's false publication, I do not have a "feeble alcohol affected memory." Compl. at ¶ 51. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

36.     Contrary to Defendant Stone's publication, I was not "prepared to stab a principle Trump supported in the back" nor was I "perfectly prepared to bear false witness against [Defendant Stone]." Compl. at ¶ 52. In publishing this false statement that Defendants knew to

be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

37.     Contrary to Defendant Stone's publication, it is a false statement of fact that "all [Defendant Stone] ever did was show [me] friendship and support and try to help [me] and [my] family and what [Defendant Stone] got was Judas Iscariot, the willingness to testify against [Defendant Stone] and help the deep state bury [Defendant Stone] . . . and then [I] make[] up this story about helping [Defendant Stone] formulate a cover story." Compl. at ¶ 53. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

38.     Contrary to Defendant Stone's false publication, it is a false statement of fact that "you can always tell when [I] [am] lying because [my] lips are moving . . ." Compl. at ¶ 54. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

39.     Contrary to Defendant Stone's false publication, it is a false statement of fact that Mr. Klayman "never actually won a courtroom victory in his life." Compl. at ¶ 55. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

40. Contrary to Defendant Stone's false publication, it is a false statement of fact that Mr. Klayman "was ousted at Judicial Watch. Ask Tom Fitton why he left .he was 'ousted' because of a sexual harassment complaint." Compl. at ¶ 56. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar Mr. Klayman and with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

41. Contrary to Defendant Stone's false publication, it is a false statement of fact that Mr. Klayman is "incompetent, he's a numbskull, he's an idiot, he's an egomaniac, and he could be the worst single lawyer in America. With him as [my] lawyer, [I] may get the electric chair. So [the] idea that he's a good guy is entirely wrong." Compl. at ¶ 59. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with Mr. Klayman and me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

42. Contrary to Defendant Stone's false publication, it is a false statement of fact that Mr. Klayman is "a piece of garbage." Compl. at ¶ 61. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with Mr. Klayman and me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

43. Contrary to Defendant Stone's false publication, Mr. Klayman's IQ is higher than 70. Compl. at ¶ 62. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

44.     Contrary to Defendant Stone's false publication, it is a false statement of fact that "[I] was perfectly willing to bear false witness against [Defendant Stone] on multiple points that are complete fabrications." Compl. at ¶ 64. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

45.     Contrary to Defendant Stone's false publication, it is a false statement of fact that "[I] had told a number of lies. In fact, [I] [am] starting to conflate [my] lies . . . [I] was perfectly willing to lie about [Defendant Stone] . . . but now lying about Alex Jones, lying about Infowars, lying about Dr. [David] Jones . . . [I] can no longer be believed." Compl. at ¶ 65.

46.     Defendant Stone falsely published: "I think you've [Corsi] been deep state from the beginning. Your whole birther thing is used as a club to destroy conservatives . . . **I look forward to our confrontation. I will demolish you.** You're a fraudster, out of your alcoholic haze you have made up lies about David Jones and Alex Jones and Roger Stone and now I suspect they want you to lie about the President." Compl. at ¶ 66 (emphasis added). Not only does Defendant Stone know this to be false but this malicious rant is also a threat. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me,, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

47.     Contrary to Defendant Stone's false publication, I am not a "spook, back and forth with different agencies[.]" Compl. at ¶ 67. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me,

as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

48.    Contrary to Defendant Stone's false publication, it is a false statement of fact that sometimes I am "not being able to walk" which creates the false and defamatory implication that I am an alcoholic. Compl. at ¶ 68. I am not an alcoholic. In publishing this false statement that Defendants knew to be false or published recklessly because they are intimately familiar with me, as set forth above, Defendant Stone acted in concert with the other Defendants, including Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars.

49.    As an investigative journalist, as well as my other professions and hobbies, I rely on my virtue and integrity.

50.    My reputation determines everything from the amount of books I sell to the frequency of my radio and television appearances.

51.    I have ghostwritten books for Defendant Stone and he intimately knows my qualifications and me. Thus, Defendant Stone and the other Defendants falsely published these statements when they knew them to be false or at least with a reckless disregard for their truth.

52.    Defendant Stone, acting in concert with Defendants Alex Jones, David Jones, Owen Shroyer, Free Speech and Infowars, has caused severe harm to my reputation, good will and well-being, financially and otherwise. They also caused my family and me severe emotional distress for which I have had to seek medical care.

SWORN TO UNDER OATH THIS 30TH DAY OF SEPTEMBER OF 2020.

Dr. Jerome Corsi

EXHIBIT 2



**Oliver Peer <oliver.peerfw@gmail.com>**

# Re: Defamation by Roger Stone, InfoWars, and Alex Jones with regard to Dr. Jerome Corsi

**Oliver Peer** <oliver.peerfw@gmail.com>                          Fri, Jan 25, 2019 at 11:43 AM
To: buschel@bglaw-pa.com, gsmith@strategysmith.com, kcoffey@coffeyburlington.com, contact@randazza.com
Cc: jrlc@optonline.net, Larry Klayman <leklayman@gmail.com>, dgray@graylawgroupnj.com

*This email is being forwarded at the direction of Larry Klayman, counsel to Dr. Jerome Corsi.*

Dear Counsel for Roger Stone, Infowars, and Alex Jones,

As instructed by my client, Dr. Jerome Corsi, please be advised that any further defamation about Dr. Corsi and the undersigned will result in immediate legal action. If you have any further questions, you may contact me at (310) 595-0800.

Sincerely,
Larry Klayman, Esq.
Klayman Law Group P.A.

EXHIBIT 3

DR. JEROME CORSI, ET AL

Plaintiffs

v.

INFOWARS, LLC, et al

Defendants.

**Case Number:    1:20-cv-298-LY**

## SWORN DECLARATION OF KELLY MORALES

1. I, Kelly Morales, hereby declare under penalty of perjury that the following is true and correct and based on my personal knowledge and belief.

2. I am over the age of 18 and mentally and legally competent to make this affidavit, sworn under oath.

3. I am the former wife of Defendant Alex Jones.  I was married to Alex Jones for 12 years and with him for 15 years and we have 3 children together. During our time together, I was involved in the activities of Alex, his father David and Infowars and am intimately knowledgeable about their activities and business structure.

4. Based on my personal knowledge and experience, David Jones runs Infowars with Alex Jones and helps him with his activities, including fixing media stories and endorsing and/or aiding his slanderous and/or fraudulent behaviors, all for profit.

5. Infowars, LLC is a sub-entity of Free Speech Systems, LLC ("FSS"), and David Jones is an employee of FSS, or he has been.

6. David Jones is additionally a managing member of multiple entities that are closely held businesses, constituting financial holding companies or financial distribution centered around Infowars/Alex Jones' supplement line, which are quintessential to funding and running Infowars.

7. Alex Jones could not function without David Jones, and has conspired with him on the past to commit this breach of fiduciary duty and fraud on my business/estate with Alex Jones. While David Jones did this, he slandered and/or defamed me to experts and assisted Alex Jones and his attorneys to do the same, so as to steal/hide my estate and his grandchildren's inheritance.

8. Alex Jones is quasi-illiterate, and cannot use technology or apps such as email with any fluency, and he cannot function without assistance from those around him, including David Jones.

I hereby swear under oath and penalty of perjury that the foregoing facts are true and correct to the best of my knowledge and belief.

Executed on September 30, 2020

Kelly Morales

2

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Alexander E. Jones, | § | CASE NO. 20-10118-hcm |
| | § | |
| Alleged Debtor. | § | Chapter 11 |
| | § | |

**Affidavit of David Jones in Support of Alleged Debtor's Motion to Dismiss**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared David Jones, who after being sworn did state upon his oath, as follows:

1.     "My name is David Jones. I am over 18 years of age and otherwise competent and capable of making this Affidavit. I have personal knowledge of the facts set forth herein and they are true and correct.

2.     "I have been involved with Alex Jones' personal and business finances for many years and have personal knowledge of the matters set forth herein, and they are true and correct.

3.     "I have personally reviewed the Real Estate Lien Note from Alexander Jones to Kelly R. Jones dated March 19, 2015 (the "*Note*"), which is attached to the Involuntary Bankruptcy Petition filed in the above referenced case and have reviewed the record of payments made by Alexander Jones to Kelly R. Jones under the Note. I have personally calculated the remaining balance of the Note. The balance of the Note is $596,267.16 as of the date hereof.

"Further Affiant sayeth not."

SIGNED on this 1⅟ day of February, 2020.

_____
David Jones

Sworn to and subscribed before me, the undersigned authority, on this 13ᵗʰ day of February, 2020.

_____
Notary Public for the State of Texas
EXP   07-24-2022

PATRICK RILEY
Notary Public, State of Texas
Comm. Expires 09-24-2022
Notary ID 131734177

4837-5475-576

1