IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

DR. JEROME CORSI, et. al.

        Plaintiff(s),

v.

INFOWARS, LLC et. al.,

        Defendant(s)

Case No.: 1:20-cv-00298-LY

## DEFENDANT ROGER STONE'S REPLY TO PLAINTIFF'S RESPONSE TO THE MOTION TO DISMISS

Defendant, Roger Stone, through counsel files this reply to the response to motion to dismiss the amended complaint. (Plaintiffs' response, ECF No. [79]).

Plaintiffs missed their last opportunity to seek court approval to amend and insufficiently explain how their complaint survives Stone's motion to dismiss. Plaintiffs neglect to address dispositive arguments made in Stone's motion to dismiss. ECF No. [70]. This case cannot survive in Texas when Plaintiffs failed to give written notice to correct as required under the Texas Defamation Mitigation Act and the substantive claims are beyond the one-year the statute of limitations for defamation and related causes of action. Plaintiffs' common law assault and emotional distress claims are frivolous since no parties were alleged to be in Texas when these torts occurred. As a matter of failure to state defamation claims, Stone's comments were true, opinion, a satirical swipe at plaintiffs, or not made with malice. Article III or prudential standing to sue under the Lanham Act cannot survive because the statute applies to commercial speech relating to deceptive advertising. The amended complaint is also a "shotgun" pleading.

Klayman at present is a lawyer. He, most of the time, is Corsi's lawyer. Neither should get the benefit of a *pro se* plaintiff's latitude when pleading a complaint. The amended complaint must be dismissed.

## I.      The Four Corners of the Complaint

Plaintiffs use their response to the motion to dismiss to dump declarations and documents in the public record, and continue a scurrilous campaign against Stone. "At this early pleading stage, our factual universe is bounded by the four corners of the complaint." *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011) (citation omitted). "Furthermore, 'it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.'" *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) & n. 59 ("four corners") (citations omitted). Thus, this Court should discard Plaintiffs' filed declarations and other exhibits.[1]

Plaintiffs complain that defendants defamed them. Interestingly, plaintiffs use the response to the motion to dismiss to defame Stone. Another example is, plaintiffs allege outside of the complaint that Stone "paid individuals as surrogates." (Response pg. 1). No such allegations were made in the amended complaint. Stone never paid anyone to defame Plaintiffs. While plaintiffs conclude, without plausible allegations, there was a conspiracy; they do not allege that as a cause of action. The other scandalous allegations were brought to the Court's attention in the motion to dismiss. ECF No. [70].

---

[1] Stone cites to the Mueller Report. (Motion pg. 19, ECF No. [70]). The existence of the Mueller Report "is not subject to reasonable dispute because it[s existence] ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). And there is not a hearsay issue because the Mueller Report could be admitted under the public records exception. *See* Fed. R. Evid. 803(8) ("A record or statement of a public office [is not excluded by the rule against hearsay] if ... it sets out ... in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation[ ] and ... the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."). *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 425 (S.D.N.Y. 2019).

## II.     Plaintiffs Lack Article III and Prudential Standing under the Lanham Act

Plaintiffs failed to support their burden they have standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Plaintiffs were not injured "in connection with any goods or services." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1051–52 (10th Cir. 2008). "The Lanham Act is intended to protect the ability of consumers to distinguish among competing producers." *Id.* at 1053 (citations omitted). Klayman questions who would hire him as a lawyer or as a commentator if he never had a courtroom victory. Being a lawyer or commentator is not a "service" as contemplated by the Lanham Act. The same analysis applies to Corsi.  Neither plaintiff alleges how the parties are in competition with each other as it relates to a good or service; thus, the cause of action fails as a matter of standing. *See Logan v. Burgers Ozark Country Cured Hams Inc.,* 263 F.3d 447, 460 (5th Cir. 2001).

Prudential standing must allege false advertising. When describing prudential standing the Fifth Circuit said: ". . . [I]n light of the competitive relationship between the parties, there is a sufficiently direct link between the asserted injury and *the alleged false advertising*." *Procter & Gamble Co. v. Amway Corp.,* 242 F.3d 539, 562–63 & n. 51 (5th Cir.2001) (citing Restatement (Third) of Unfair Competition § 3 cmt. f (1995)) (emphasis added). Plaintiffs ignore that a *deception* must be in *false advertising*. There was no advertising in question. The subject remarks were commentary as part of a radio show. Because the Lanham Act cause of action must be dismissed, this Court does not have federal question jurisdiction.

## III.     Plaintiffs' Lanham Act cause of action must be dismissed

The Lanham Act does not have a specific statute of limitations. *Occidental Life Ins. Co. of Cal. v. EEOC,* 432 U.S. 355, 367, 97 S. Ct. 2447, 53 L.Ed.2d 402 (1977), *superseded by statute on other grounds,* 29 C.F.R. § 1601.28 (1995). Plaintiffs claim in Texas, the statute of

limitations under the Lanham Act is four-years. Plaintiffs do not deal with Stone's argument. Plaintiffs claim they were defamed, but not by fraud or deception. The unfair competition theory is not based upon fraud by deception. Plaintiffs theory is limited to Defendants' "false and misleading statements" that were intended to "influence supporters' decisions to provide financial support," or purchase "goods and services," *See* Am. Compl. ¶¶ 105-09. This is where Plaintiffs misconstrue the four-year statute of limitations. Lanham Act violations must be rooted in fraud. Because there were no allegations of fraud, the four-year statute of limitations does not apply. *See Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 147 (5th Cir. 2007) (". . . Texas courts have applied a one-year statute of limitations to business disparagement claims when the gravamen of the complaint is defamatory injury to the plaintiff's reputation. . .").

## IV. Plaintiffs' failed to file written corrective notice under Texas Defamation Mitigation Act

Plaintiffs did not allege they provided any written notice at all, pursuant to the TDMA. By the time plaintiffs came to add Stone as a party in Texas, the statute of limitations had expired. *See Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.,* 512 F.3d 137, 141 (5th Cir. 2007). Plaintiffs claim that when the complaint was transferred from the District of the District of Columbia, so did that District's statute of limitations. Presumably, plaintiffs are applying some type of relation back theory. (Response pg. 16). Plaintiffs do not cite to any authority. District Judge Kelly had no jurisdiction over Stone since Stone was not a defendant in the District of Columbia version of the complaint.

**V.     Defamation related causes of action must be dismissed -- the statute of limitations**

Plaintiffs gloss over the fact that they did not sue Stone until the statute of limitations expired in this District. Plaintiffs respond with: "There as set forth in previous briefs, this argument ignores the fact that this action was filed first in the U.S. District Court for the District of Columbia and was transferred to this Court after the fact. Indeed, the Honorable Timothy Kelly ("Judge Kelly") mooted out this issue in his March 3, 2020 order transferring the case to this Court." (Response pg. 16-17). That would be a sufficient argument but for the fact Stone was not a defendant in the District of the District of Columbia. The statute of limitations does not transfer or relate back to a defendant that has not yet been sued. Judge Kelly's justification for transfer recognized that the transfer to this District would not prejudice defendants; but *it does prejudice* Stone, a nonparty to the original action. *See Corsi v. InfoWars, LLC*, 2020 WL 1156864, at *3 (D.D.C. Mar. 10, 2020). Stone in his motion to dismiss never advocated application of Florida law as plaintiffs assert. Thus, the defamation claims fail based upon lack of notice and statute of limitations.

**VI.     Plaintiffs are Public Figures – the standard is malice**

Recognizing that Plaintiffs cannot sufficiently allege malice, they vacillate between being media personalities, political commentators, generally very important people, and known public figures, to private targets. *Compare* Am. Compl. ¶¶ 3, 4, 70 *with* (Response pg. 9-10). Somewhere between their egos and the argument for a lesser standard, plaintiffs fail to sufficiently allege malice. First, Klayman has sought to be a public figure his entire career. He has included his *curriculum vitae* as an exhibit in every lawsuit he has filed against Stone. Writing about himself: "Larry became so famous for fighting corruption in the government and the legal profession that the NBC hit drama series 'West Wing' created a character after him."

(Response pg. 67). Second, courts have concluded: "Because of Klayman's notoriety and high-profile work in the public realm, the Court considers Klayman a public figure." *Klayman v. Judicial Watch, Inc.,* 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015), *see also Klayman v. City Pages*, 13-CV-143-OC-22PRL, 2015 WL 1546173, at *13 (M.D. Fla. Apr. 3, 2015), *aff'd,* 650 Fed. Appx. 744 (11th Cir. 2016), and *aff'd*, 650 Fed. Appx. 744 (11th Cir. 2016) (Klayman admits that he is a public figure).

A district court writing about Corsi stated: "Having become such well-known proponents of one position on the issue, [President Obama was not a natural born citizen and therefore not qualified to be President], Plaintiffs [Corsi and Farah] cannot complain that the very intensity of their advocacy also became part of the public debate. Those who speak with loud voices cannot be surprised if they become part of the story." *Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 37 (D.D.C. 2012), *aff'd sub nom. Farah v. Esquire Magazine*, 736 F.3d 528 (D.C. Cir. 2013). Certainly, Corsi is a public figure in the context of the Mueller investigation. He made himself part of the story. Regardless, plaintiffs argue that they adequately pled malice, but they have failed. (Response pg. 10). Malice is a high standard. *Peter Scalamandre & Sons, Inc. v. Kaufman,* 113 F.3d 556, 561 (5th Cir. 1997). Plaintiffs must plausibly allege that Stone's statements were false and Stone knew they were false *before* they were uttered. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345 (1974).

Just because Klayman left Judicial Watch and then ran for the Senate, does not mean he left Judicial Watch in order to run for the Senate. He left Judicial Watch under a cloud. He admitted to having or trying to have a relationship with a staffer.[2] The Fifth Circuit held that "the

---

[2] Klayman was in the midst of a divorce. His ex-wife alleged he had an inappropriate relationship with a Judicial Watch employee and assaulted her physically. Klayman was in love with the employee and bought her gifts and had kissed her. This was at odds with a conservative, pro-family organization. He was asked to resign. Klayman offered to resign. *Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 10, 12 (D.D.C. 2007).

subjective awareness of probable falsity required by *St. Amant v. Thompson*, 390 U.S. 731 (1968), cannot be found where, as here, the publisher's allegations are supported by a multitude of previous reports upon which the publisher reasonably relied."*Rosanova v. Playboy Enterprises, Inc.,* 580 F.2d 859, 862 (5th Cir. 1978). Such reports Stone reasonably relied upon among others were:

The United States Court of Appeals for the Ninth Circuit noted how "the district court found quite relevant, 'numerous other courts' findings that he [Klayman] is unfit to practice' based on his 'inappropriate and unethical behavior.'" *In re Bundy*, 840 F.3d 1034, 1045 (9th Cir. 2016). The Ninth Circuit cited:

- "Klayman's record demonstrates more than an occasional lapse of judgment, it evinces a total disregard for the judicial process." Order Denying Pro Hac Vice Application at 4, *Stern v. Burkle*, 867 N.Y.S.2d 20 (Sup. Ct. 2008).[3]

- Klayman was sanctioned for filing an untimely complaint and opposing the government's motion with "frivolous filings" that "wasted time and resources of defendants as well as of the court." *Wire Rope Importers' Ass'n v. United States*, 18 C.I.T. 478, 485 (Ct. Int'l Trade 1994).

- Klayman exhibited "often highly inappropriate behavior" and his performance "was episodically blighted by rude and unprofessional behavior which was directed toward the presiding judge and opposing counsel." *Material Supply Int'l, Inc. v. Sunmatch Indus., Co.*, No. Civ. A. 94–1184, 1997 WL 243223 at *8, *10 n.7 (D.D.C. May 7, 1997), *aff'd in part and reversed in part*, 146 F.3d 983 (D.C. Cir. 1998).

- Klayman "apparently misread (or never read) the local rules" and the district court threatened sanctions for any future failures to comply with local rules. *Alexander v. FBI*, 186 F.R.D. 197, 199 (D.D.C. 1999). The district court

---

[33] That having been said, the First Verified Amended Complaint, a thirty-eight page, one-hundred and eight paragraph document, can most accurately be described as a political diatribe drawn by Larry Klayman of Freedom Watch, Inc., an avowed enemy of the Clintons. The Complaint contains all of the buzzwords calculated to evoke visions of licentious behavior, conspiracy and criminality. There are references to Anthony Pellicano, Monica Lewinsky, "Whitewater", "Filegate", "Travelgate", "Chinagate" and Mr. Burkle's alleged illicit sexual liaisons. In short, the Complaint reads more like a Mickey Spillane novel than a "statement ... sufficiently particular to give the court and parties notice of the transactions or occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action ..." (CPLR 3013). *Stern v. Burkle*, 20 Misc. 3d 1101(A) (N.Y. Sup. Ct. 2008).

"gr[ew] weary of [Klayman's] use—and abuse—of the discovery process" and "ha[d] already sanctioned [Klayman] for making misrepresentations to the court, allowing the court to rely upon those representations in a favorable ruling, and then later contravening those very (mis)representations." *Alexander v. FBI*, 186 F.R.D. 188, 190 (D.D.C. 1999).

- Klayman responded to the district court's orders with a "forked tongue" and made arguments with "malicious glee." *Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*, 159 F.Supp.2d 763, 764 (D.D.C. 2001).

- Klayman made arguments regarding the conduct of the district court that were "bizarre" and "beyond the far-fetched." *Dely v. Far E. Shipping Co.*, 238 F.Supp.2d 1231, 1241 (W.D. Wash. 2003).

Additionally, it is public record that Klayman, during divorce proceedings was found to have "on more than one occasion the Plaintiff [Klayman] act [sic] in a grossly inappropriately [sic] manner with the children. His conduct may not have been sexual in the sense that he intended to or did derive any sexual pleasure from it or that he intended that the children would. That, however, does not mean that he didn't engage in those acts or that his behavior was proper." *Klayman v. City Pages*, 650 Fed. Appx. 744, 746 (11th Cir. 2016) (citing records from Klayman's 2009 divorce hearing regarding Klayman's behavior towards his own children).

Lastly, Klayman is currently on suspension with the D.C. Bar. *In re Klayman,* 228 A.3d 713, 720 (D.C. 2020). Additionally, since the filing of the motion to dismiss, the D.C. Bar has recommended an additional 18-month suspension for Klayman for harassing a former client. *See In re Klayman,* 17-BD-063, Report & Recommendation at 32-33 (Oct. 2, 2020) ("In sum, we find clear and convincing evidence that casts a serious doubt upon [Klayman's] continuing fitness to practice law"). ECF No. [83 – 1]. If Stone's opinion is that Klayman is not a good lawyer, good person, and is dumb; and Corsi is in dire trouble if he employs Klayman as his lawyer, does not meet the malice standard. *See Rosanova,* 580 F.2d at 862. According to the

allegations in the complaint, Defendants presumably know all of the above because defendants are "intimately familiar" with plaintiffs. *See* Am. Compl. ¶ 39.

In response, plaintiffs attach exhibits in their response in an attempt to add circumstantial allegations into the amended complaint. In short, plaintiffs' opinion of themselves as wonderful writers, speakers, and lawyer does not properly impute sufficient allegations in the complaint and overcome the failure to allege malice, but it does reinforce that they are public figures. Lastly, repeating claims of "mafia" tactics, alleged threats toward others (not plaintiffs), and other dirty tricks does not sufficiently allege defamation by Stone or a conspiracy with other defendants. ECF No. [70 pg. 24].

**VII.    Intentional Infliction of Emotional Distress (Count IV) & Assault (Count V)**

Plaintiffs recognize that "With the possible exceptions of the bomb and death threats no single action… rises to the level of intentional infliction of emotional distress." (Response pg. 14) (citing *Household Credit Services, Inc. v. Driscol*, 989 S.W.2d 72, 82 (Tex. App.—El Paso 1998, pet. denied). The subject statement: "Looking forward to our confrontation, I will demolish you," in the context of a radio show concerning the issue of Corsi lying to the Special Counsel is at worst a threat of cross-examination in court, not death.

Plaintiffs use lawsuits to gratuitously and recklessly make false claims and connections to Stone based upon their flawed perceptions. Notably, Plaintiffs at every opportunity claim that Stone threatened a district court judge. (Response pg. 1). Stone did not threaten any judge. Stone's bond was never revoked and no criminal charges were filed against him for the alleged conduct. Plaintiffs know that the district court must limit its review to the four corners of the complaint. Yet, Plaintiffs inundated the docket with pages of declarations and other irrelevant

exhibits. Plaintiffs never keep their eye on the ball. They fail to connect facts relating to them and only them.

Most importantly, Plaintiffs *were not injured in Texas*. Both allege to reside in other states. Plaintiffs failed to address the argument that the torts of intentional infliction of emotional distress and assault must be alleged to have occurred in Texas. Because both plaintiffs reside in different states, plaintiffs fail to plausibly allege an imminent assault. *See* Texas Penal Code § 22.01(a)(2). As a result, their claims are frivolous.

## VIII.  Judge Altman's Order is Instructive

Stone did not suggest Judge Altman's Order is controlling. Stone argued to the Court that the Order is worth reviewing, just like the order transferring venue from the District of the District of Columbia. That suggestion also puts plaintiffs on notice that suing Stone in this District is frivolous. Plaintiffs had an opportunity to amend their complaint to comply with Federal Rules of Civil Procedure 8(b) and 10(b). *Id.* ECF No. [57-2] (Order more definite statement and to show cause).

Plaintiffs did not amend when given fair warning what district court judges think about the operative complaint. Klayman claims that he asked District Judge Altman if he was biased against him and the court failed to respond. (Response pg. 17). No record of that request is evident. Regardless, Klayman does not learn from past foibles. "Significantly, Mr. Klayman has a history of accusing judges of bias or prejudging cases." *Macdraw, Inc. v. CIT Group Equip. Fin., Inc.*, 994 F. Supp. 447, 459 (S.D.N.Y. 1997), *aff'd,* 138 F.3d 33 (2d Cir. 1998). Mr. Klayman's *pro hac* status was revoked in that case in the Southern District of New York and he must submit that court order every time he seeks admission there. *Id.* The point: Plaintiffs should have heeded Judge Altman's Order rather than presume bias, because the shotgun pleading

blasted across the country does not comply with the Federal Rules of Civil Procedure anywhere in our federal system. Because Plaintiffs failed to amend their complaint to comply with 8(b) and 10(b), the Court should dismiss the case in this District.

## CONCLUSION

Plaintiffs did not alternatively seek permission to amend the complaint again. Based on the foregoing, the amended complaint should be dismissed with prejudice.

Respectfully submitted,

Robert C. Buschel, Esq.
BUSCHEL GIBBONS, P.A.
One Financial Plaza
100 S.E. Third Avenue, Suite 1300
Fort Lauderdale, Florida  33394
Tele: (954) 530-5301
Email: Buschel@BGlaw-pa.com

Attorneys for Roger J. Stone

By: ___/s/__Robert Buschel_____
        ROBERT C. BUSCHEL
        Florida Bar No. 0063436
        (admitted *pro hac vice* pending admission to
        W.D. Texas)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document was filed and served upon all parties of record on October  13, 2020 by CM/ECF, the court's electronic filing system.

By: ___/s/__Robert Buschel_____
        ROBERT C. BUSCHEL

**1:20-cv-00298-LY** Corsi et al v. Infowars, LLC et al

**Sanjay Biswas**
Sanjay Biswas Attorney at Law PC
11720 Duxbury Drive
Frisco, TX 75035
972-866-5879                          representing
800-506-6804 (fax)
sanjaybiswas41@gmail.com
 *Assigned: 07/29/2020*
 *ATTORNEY TO BE NOTICED*

**Jerome Corsi**
*(Plaintiff)*

**Larry Klayman**
*(Plaintiff)*

**Larry Klayman**
Klayman Law Group P.A.
2020 Pennsylvania Ave. NW #800
Washington, DC 20006
561-558-536                           representing
202-318-8839 (fax)
leklayman@gmail.com
 *Assigned: 03/07/2019*
 *ATTORNEY TO BE NOTICED*

**Jerome Corsi**
*(Plaintiff)*

**Larry Klayman**
*(Plaintiff)*

**Marc J. Randazza**
Randazza Legal Group, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
702-420-2001                          representing
702-297-6584 (fax)
mjr@randazza.com
 *Assigned: 07/24/2019*
 *PRO HAC VICE*
 *ATTORNEY TO BE NOTICED*
cell is 702-757-1001

**Free Speech Systems, LLC**
*(Defendant)*

**Infowars, LLC**
*(Defendant)*
**Alex E. Jones**
*(Defendant)*
**David Jones**
*(Defendant)*
**Owen Shroyer**
*(Defendant)*

**Bradley Jordan Reeves**
Reeves Law, PLLC
702 Rio Grande St., Suite 306
Austin, TX 78701
512-827-2246                    representing          **Free Speech Systems, LLC**
512-318-2484 (fax)                                   *(Defendant)*
brad@brtx.law
  *Assigned: 04/02/2020*
  *ATTORNEY TO BE NOTICED*

                                                     **Infowars, LLC**
                                                     *(Defendant)*
                                                     **Alex E. Jones**
                                                     *(Defendant)*
                                                     **Owen Shroyer**
                                                     *(Defendant)*

**Gregory P. Sapire**
Soltero Sapire Murrell PLLC
7320 North MoPac Expy.
Suite 309
Austin, TX 78731-2311
512-431-9518                    representing          **David Jones**
512-359-7996 (fax)                                   *(Defendant)*
greg@ssmlawyers.com
  *Assigned: 04/02/2020*
  *ATTORNEY TO BE NOTICED*

**David Scott Wachen**
Wachen LLC
11605 Montague Court
Potomac, MD 20854
(240) 292-9121                  representing          **David Jones**
301-259-3846 (fax)                                   *(Defendant)*
david@wachenlaw.com
  *Assigned: 04/24/2019*
  *LEAD ATTORNEY*
  *ATTORNEY TO BE NOTICED*

**Jay Marshall Wolman**
Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
(702) 420-2001                  representing          **Free Speech Systems, LLC**
(305) 437-7662 (fax)                                 *(Defendant)*
jmw@randazza.com
  *Assigned: 04/04/2019*
  *LEAD ATTORNEY*
  *ATTORNEY TO BE NOTICED*

**Infowars, LLC**
*(Defendant)*

**Alex E. Jones**
*(Defendant)*

**David Jones**
*(Defendant)*

**Owen Shroyer**
*(Defendant)*