**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **DR. JEROME CORSI and** | § | |
| **LARRY KLAYMAN** | § | |
| | § | |
| **v.** | § | **A-20-CV-298-LY** |
| | § | |
| **INFOWARS, LLC, FREE SPEECH** | § | |
| **SYSTEMS, LLC, ALEX E. JONES,** | § | |
| **DAVID JONES, OWEN SHROYER,** | § | |
| **AND ROGER STONE** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendants Owen Shroyer's Motion to Dismiss (Dkt. No. 55); Shroyer's

Motion for Sanctions (Dkt. No. 56); David Jones' Motion to Dismiss (Dkt. No. 57); Defendants

Infowars, LLC, Free Speech Systems, LLC, and Alex E. Jones' Motions to Dismiss (Dkt. Nos. 58

and 59); Roger Stone's Motion to Dismiss (Dkt. No. 70); Stone's Motion for Sanctions (Dkt. No.

84); and the related response and reply briefs.  The District Court referred these Motions to the

undersigned for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of

Appendix C of the Local Rules.

## I.  FACTUAL BACKGROUND

This is a defamation case.  On March 7, 2019, Plaintiffs Dr. Jerome Corsi and Larry Klayman

filed the instant suit against Defendants Infowars, LLC, Free Speech Systems, LLC, Alex E. Jones,

David Jones, and Owen Shroyer, alleging claims for defamation, intentional infliction of emotional

distress, assault, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).  Dkt.

No. 1.[1]  The suit was originally filed in the District of Columbia and after a finding of improper venue, was transferred to the Western District of Texas on March 20, 2020.  Dkt. No. 22.  On July 29, 2020, Plaintiffs filed their Amended Complaint, adding Roger Stone as a defendant.  Dkt. No. 47.

Plaintiff's Amended Complaint describes Jerome Corsi as an "author and political commentator," and Larry Klayman as a "public interest legal advocate" and "media personality and author, columnist and syndicated radio talk show host."  Dkt. No. 47 at ¶¶ 3-4.  Defendant Alex Jones is a "media personality" who owns the media outlet company InfoWars, LLC, and a related entity Free Speech Systems, LLC.  *Id.* at ¶¶ 7, 11.  David Jones is Alex Jones' father, and allegedly a co-owner of InfoWars and Free Speech Systems, though Defendants deny this assertion.  *Id.* at ¶ 11; Dkt. No. 57 at 2, n. 1.  Defendant Owen Shroyer is a newscaster for InfoWars, and a co-host of a political news show along with Defendant Roger Stone, who is also a political commentator and media personality.  Dkt. No. 47 at ¶¶ 9-10, 13.

The Plaintiffs' case revolves around allegedly defamatory statements made by Stone and Alex Jones in several InfoWars videos.  Specifically, Plaintiffs point to InfoWars videos featuring Stone, Alex Jones, and Shroyer from October 2018 and January 2019.  Dkt. No. 47 at ¶¶ 41-69. They allege that during the shows, Alex Jones falsely stated that Corsi "seemed to be extremely

---

[1] This case is one of several nearly identical suits filed by Corsi and Klayman against Stone and various other defendants in several district courts.  *See Klayman v. Infowars*, Case No. 20-cv-80614 (S.D. Fla. Apr. 8, 2020); *Corsi v. Stone*, Case No. 1:19-cv-00324;  *Corsi v. Caputo*, Case No. 1:19-cv-01573-TJK (D.D.C.).  Plaintiffs have also filed similar suits in state courts.  *See Corsi v. Stone*, Case No. 50-2019-CA-013711-MB (15th Jud. Cir., Fla. 2019); *Klayman v. Stone*, Case No. 50-2019-CA-015104-MB (15th Jud. Cir., Fla. 2019); *Klayman v. Stone*, Case No. CACE 19-002672 (17th Jud. Cir., Fla. 2019); *Klayman v. Infowars, Stone*, Case No. CACE-20-007120 (17th Jud. Cir., Fla. filed Apr. 28, 2020); *Corsi v. InfoWars, LLC & Stone*, CACE 20-004473 (17th Jud. Cir., Fla. filed Mar. 11, 2020).

mentally degraded to the point of . . . dementia," had a stroke, and does not tell the truth, and that Stone falsely stated that Corsi was fired from a prior job, is an alcoholic, often lies, is willing to perjure himself, and is a "deep state" operative and a "fraud" who seeks to make political conservatives look bad. *Id.* at ¶¶ 42-45, 50-53, 55-56, 90. Plaintiffs further allege that in one of the videos, Stone attacked Klayman's reputation, stating that Klayman "could be the single worst lawyer in America," has "never actually won a courtroom victory in his life," and is an "idiot" and an "egomaniac." *Id.* at ¶¶ 55, 59.

In their Amended Complaint, Plaintiffs acknowledge that the sole speakers of the allegedly defamatory statements at issue are Stone and Alex Jones. Dkt. No. 47 at ¶¶ 37-39. Nonetheless, Plaintiffs contend that Stone has "used and continues to employ surrogates and agents, either out in the open or secretly, to defame Plaintiffs," alleging that the Defendants have "acted in concert" at Stone's direction to defame them. *Id.* at ¶¶ 31-32, 76. Plaintiffs further allege that they are competitors to Defendants "as conservative media personalities, broadcasters, authors and columnists on social media and elsewhere," and that Defendants' actions thus constitute unfair competition in violation of the Lanham Act. *Id.* at ¶¶ 70-74, 104-109. Their Amended Complaint also states causes of action for intentional infliction of emotional distress and assault, alleging that Defendants threatened Plaintiffs, causing them severe emotional distress and has placed them "in apprehension of an imminent harmful or offensive contact and physical harm and death, by coercing and threatening Plaintiffs." *Id.* at ¶¶ 93-103. In five separately filed motions to dismiss, Defendants seek dismissal of Plaintiffs' suit in its entirety. *See* Dkt. Nos. 55, 57, 58, 59, 70.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(1). Federal district courts are courts of limited

jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

## III.  ANALYSIS

### A.    Lanham Act Claims

The Lanham (Trademark) Act, 15 U.S.C. § 1051 et seq., prohibits deceptive trade practices such as false advertising and trademark infringement. Section 1125 provides for civil liability in the case of:

> any person who on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any ... false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the ... sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1)(A) & (B).

Plaintiffs argue that because Defendants are their competitors "as conservative media personalities, broadcasters, authors and columnists on social media and elsewhere," that Defendants' allegedly defamatory and misleading statements during the InfoWars videos thus constitute unfair competition in violation of the Act. Dkt. No. 47 at ¶¶ 104-109. Defendants argue that Plaintiffs have failed to establish their standing under the Lanham Act. Dkt. No. 55 at 7; Dkt. No. 57 at 16; Dkt. No. 70 at 4-9.

To establish standing under the Lanham Act, "the Plaintiff's injuries must fall within the 'zone of interests' the statute was intended to protect." *Lexmark Int'l v. Static Control Comps.*, 572 U.S. 118, 130 (2014). In *Lexmark Int'l*, the Supreme Court explained that a "plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* In other words, to proceed with their Lanham Act claim, Plaintiffs must plead an injury to some commercial interest in sales or business reputation that was proximately caused by the Defendants' misrepresentations.

Plaintiffs have not met their burden to establish standing under the Lanham Act. Specifically, Plaintiffs fail to show that their alleged injuries fall within the zone of interests of the Act. Here, the Plaintiffs allege that they compete with Defendants as media personalities who derive income from the internet and radio. Dkt. No. 47 at ¶ 74. According to Plaintiffs, the Defendants' allegedly defamatory remarks were made to harm their reputations and eliminate them as competition for potential listeners or donors. Dkt. No. 79 at 6. However, "[t]he mere fact that the parties may compete in the marketplace of ideas is not sufficient to invoke the Lanham Act." *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013).

6

It is well established that Section 1125(a) applies only to commercial speech, which is not at issue here. *Alliance for Good Government v. Coalition for Better Government*, 901 F.3d 498, 506 n.8 (5th Cir. 2018) (noting Section 1125(a) applies only to "commercial advertising and promotion"); *Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289, 295 (D.D.C. 2017) ("The Lanham Act only restricts commercial speech, or speech connected with a good or service."). The allegedly defamatory comments made by Defendants during the InfoWars video are not commercial speech or advertisements, but rather expressions of opinions as commentary during a radio show. *See Farah*, 736 F.3d at 541. The complained of conduct at issue does not fall within the zone of interest that the Lanham Act was intended to protect. *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 n. 6 (5th Cir. 1996). Because Plaintiffs do not have standing under the Lanham Act,[2] the claims under that statute should be dismissed with prejudice.

## B.    Defamation Claims

Plaintiffs' Amended Complaint alleges claims for defamation, defamation *per se*, and defamation by implication against each of the Defendants. Dkt. No. 47 at ¶¶ 75-92. Under Texas law, a plaintiff seeking to state a defamation claim must plead the following elements: (1) publication of a false statement of fact to a third party, (2) the statement must concern the plaintiff and be defamatory, (3) the publication must be made with the requisite degree of fault, and (4) the publication must cause damages. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). A statement is

---

[2] Notably, in April 2020, Plaintiff Klayman filed a nearly identical suit filed in the Southern District of Florida. *See Klayman v. Infowars*, Case No. 20-cv-80614 (S.D. Fla. Apr. 13, 2020). There, *sua sponte* the district judge issued an order requiring a more definite statement, directing Klayman that if he were to replead his Lanham Act unfair competition claim, he needed to show that he had standing to do so. *Id.* Rather than replead, Klayman voluntarily dismissed that action, Dkt. Nos. 34-3, and instead has pursued the claim here, without alleging any additional facts to address the standing deficiencies the Florida court noted.

defamatory "if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *Lipsky*, 460 S.W.3d at 593.   Damages must be shown unless the statements are defamatory *per se*, meaning that  the statements are so clearly harmful that general damages may be presumed.  *Id.*

When a defamation suit is brought against a media defendant over a matter of public concern, the plaintiff bears the burden of proving falsity. *Klentzman v. Brady*, 312 S.W.3d 886, 898 (Tex. App. – Houston [1st Dist.] 2009).  Texas Courts employ the "substantial truth doctrine" to determine the truth or falsity of a broadcast or publication: "if a broadcast taken as a whole is more damaging to the plaintiff's reputation than a truthful broadcast would have been, the broadcast is not substantially true and is actionable." *Neely v. Wilson*, 418 S.W.3d 52, 63 (Tex. 2013).

Claims of defamation by implication cover both "gist" and implication.  *Dallas Morning News, Inc. v. Tatum*, 2018 WL 2182625, at *8 (Tex. 2018).  To determine defamation by implication, the court must "determine whether the implication the plaintiff alleges is among the implications that the objectively reasonable reader would draw." *Id.* at *9.  The court must "not place 'overwhelming emphasis on a[ny] single term' or 'focus on individual statements' to the exclusion of the entire publication." *Id.* at *10.  It must "consider[ ] inferential meaning carefully, but not exhaustively." *Id.* Further, in order to curtail a chilling effect on freedom of speech, the plaintiff "must point to 'additional, affirmative evidence' within the publication itself that suggests the defendant 'intends or endorses the defamatory inference.'" *Id.*

### 1.      Owen Shroyer

Defendant Shroyer's motion to dismiss asserts that Plaintiffs have not pled sufficient facts to maintain a defamation claim against him.  Dkt. No. 55.  The Court agrees.  Plaintiffs' Amended

Complaint contains no allegations that Shroyer himself engaged in defamatory conduct, but instead seeks to hold Shroyer liable for the alleged defamatory conduct of other defendants by arguing Shroyer was acting "in concert" with them.  Dkt. No. 47 at ¶¶ 8, 76, 81, 87.  Plaintiffs provide no facts in support of their conclusory allegations of conspiracy to defame with other defendants or that Shroyer "ratified" the allegedly defamatory statements complained of by Plaintiffs.  Rather, the only facts alleged against Shroyer in the Amended Complaint are that he appeared in InfoWars videos with his co-host Stone when Stone made the allegedly defamatory comments about Corsi and Klayman. Dkt. No. 47 at ¶¶ 49-54, 59-62.  Plaintiffs' attempt to equate Shroyer's presence in these videos with a conspiracy to defame is entirely conclusory and insufficient to support their claims.  *Walker v. Beaumont Ind. School Dist*., 938 F.3d 724, 734 (5th Cir. 2019); *Hourani v. Mirtchev*, 796 F.3d 1, 16 (D.C. Cir. 2015); *King v. Jarrett*, 2016 WL 11581949, at *6 (W.D. Tex. June 17, 2016).  Given the lack of any factual allegations supporting Plaintiffs' assertion that Shroyer conspired with other defendants to defame Corsi or Klayman, Plaintiffs have failed to state a defamation claim against him.

### 2.     David Jones

The defamation claims against David Jones fail for the same reason.  Plaintiffs' Amended Complaint does not make any specific allegations of defamatory conduct by David Jones.  As with Shroyer, Plaintiffs attempt to hold David Jones liable for alleged defamatory remarks made by other defendants by asserting that David Jones was "acting in concert" with the other defendants.  Dkt. No. 47 at ¶¶ 8, 76, 81, 87.  The Amended Complaint's only factual allegations regarding David Jones are that he is the father of Defendant Alex Jones, that he is the alleged co-owner of Defendant entities InfoWars and Free Speech Systems,[3] and that he allegedly held the position of Director of Human

---

[3] In his motion to dismiss, David Jones denies the allegation that he is an owner of either InfoWars or Free Speech Systems. Dkt. No. 57 at 5.

Relations for Free Speech Systems. *Id.* at ¶ 8.  Based on these assertions alone, Plaintiffs contend that David Jones "worked in concert with and as an agent for the other Defendants," "participated in and ratified the illegal acts set forth in this Complaint," and "profited … from the tortious acts of the other Defendants." *Id.*  These assertions are wholly conclusory and unsupported by facts, and thus insufficient to survive a Rule 12(b)(6) motion. *Hershey v. Energy Transfer Partners*, 610 F.3d 239, 245-46 (5th Cir. 2010); *Walker*, 938 F.3d at 734.

To the extent Plaintiffs attempt to hold David Jones liable for any alleged defamatory actions of other defendants as an alleged owner of the limited liability companies InfoWars and Free Speech Systems, this argument also fails.  Under Texas law, owners of limited liability companies are not liable for the torts of the entity, unless the plaintiff can allege some basis for piercing the corporate veil.  *See Hong v. Havey*, 551 S.W.3d 875, 885 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Bates Energy Oil & Gas v. Complete Oildfield Svcs*., 361 F.Supp. 3d 633, 665 (W.D. Tex. 2019). Here, Plaintiffs include no allegations that indicate an intention to proceed against David Jones as an owner on an alter-ego theory of liability.  Given the lack of any allegations that David Jones personally engaged in defamatory conduct, or allegations supporting a basis to pierce the corporate veil or to hold David Jones liable on a theory of conspiracy, Plaintiffs' defamation claims against David Jones should be dismissed without prejudice.

### 3.    Alex Jones, InfoWars, and Free Speech Systems

Defendants Alex Jones, InfoWars, and Free Speech Systems ("Moving Defendants") jointly move to dismiss the claims filed by Corsi (Dkt. No. 58) and Klayman (Dkt No. 59), arguing that their defamation claims fail to allege facts sufficient to state a claim against them.  Dkt. Nos. 58, 59. Klayman does not allege Alex Jones himself made any defamatory remarks about Klayman. Nevertheless, as with Shroyer and David Jones, he seeks to hold Alex Jones and the Moving

Defendants liable for Stone's allegedly defamatory remarks about Klayman, based on a conspiracy theory.  Dkt. No. 47 at ¶¶ 8, 76, 81, 87.  The Moving Defendants assert that these claims fail because Plaintiffs fail to connect the Moving Defendants to the remarks.  Dkt. No. 59 at 15-16.  For the reasons discussed above with regard to Shroyer and David Jones, the Court agrees.  Plaintiffs fail to allege any facts that give credence to any of the Defendants acting "in concert" such that the Moving Defendants could be held liable for any alleged defamatory remarks of other defendants. Accordingly, the undersigned recommends these claims be dismissed.

Plaintiffs' Amended Complaint does, however, contain allegations that Alex Jones himself made several defamatory statements about Corsi during the October 2018 and January 2019 InfoWars videos.  Dkt. No. 47 at 41-44.  The statements Corsi alleges Jones made are these:

- "[W]hen I was in DC about six months ago with dr. [sic] Corsi he seemed to mentally be extremely degraded to the point of what I would call dementia."  Dkt. 47 ¶ 42.

- "[Corsi]'s on the ground at another table we had to help him out of there man they thought he was dead in the elevator."  *Id.* ¶ 43.

- "[Corsi] had a stroke or whatever's going on with Corsi that whatever comes out of his mouth ain't the truth."  *Id.* ¶ 44

- Corsi is a "spook, back and forth with different agencies."  *Id.* ¶ 67

The Moving Defendants assert that none of these remarks are actionable because they are all expressions of opinion, rhetorical hyperbole, or substantially true statements.  Dkt. No. 58 at 15-17. They argue that none of the remarks are actionable defamation because they are the type of imaginative expression, rhetorical hyperbole, and opinion statements that "cannot reasonably be interpreted as stating actual facts about an individual."  *Milkovich v. Lorain Journal Co.*, 491 U.S. 1, 2 (1990).

11

Defendants allege that Jones' statement that "when I was in DC about six months ago with dr. [sic] Corsi he seemed to mentally be extremely degraded to the point of what I would call dementia," is a statement of Alex Jones' opinion, and is thus not actionable as defamation. Dkt. No. 58 at 15-16.  The Court agrees.  Jones in this statement is offering his opinion regarding how he perceived Corsi's cognitive state based on seeing him in person.  This is not a fact statement, but rather a statement of opinion and is thus not actionable.  The same is the case with the related statement that "[Corsi]'s on the ground at another table we had to help him out of there man they thought he was dead in the elevator."  Corsi does not contend that Jones did not see him on the floor, nor does he challenge that others were concerned about his medical state.  Again, this is a statement of what Jones perceived.  Further,  Corsi fails to demonstrate how the statement has a defamatory meaning.

With regard to the statement that "[Corsi] had a stroke or whatever's going on with Corsi that whatever comes out of his mouth ain't the truth,"(Dkt. No. 47 ¶ 44), the motion asserts the statement was rhetorical hyperbole, and cannot be the basis of a defamation action. Dkt. No. 58 at 16.  They contend that, reviewed in context, "a person of ordinary intelligence would perceive these words as nothing more than rhetorical hyperbole." *Id.* (citing *Rehak Creative Servs. v. Witt*, 404 S.W.3d 716, 729 (Tex. App. 2013)).  The Court agrees that the second half of this statement, that "whatever's going on with Corsi that whatever comes out of his mouth ain't the truth," would be considered by the ordinary person, particularly in the context of an InfoWars video, to be rhetorical hyperbole.  The statement that "[Corsi] had a stroke," however, is a straightforward factual statement, which, if false could support a defamation claim.  Jones concedes this, noting that, "in isolation, these might sound like false statements of fact." Dkt. 80 at 5.  He notes, however, that when read in the full context of Jones' commentary, the statement is not defamatory, and instead is a statement of Jones' speculation

12

on Corsi's medical state. This context includes Jones' earlier statement that "I think he's got dementia or a stroke I mean I don't know," and his description of Corsi having "a really sharp brain until about a year ago." *See* Dkt. No. 7-2. Jones contends that in this context, the statement is Jones' view that Corsi was prone to error based on Jones' observations of Corsi's health. Though this is a closer call than the other statements, the Court agrees.

With regard to Jones' statement calling Corsi a "spook, back and forth with different agencies," (Dkt. No. 47 at ¶ 67), Jones contends the statement is not defamatory, but rather "most reasonable people would find such facts to be flattering." Dkt. No. 58 at 17. Indeed, a "spook" is a colloquial term for a person employed in the intelligence community,[4] and is generally not taken as a derogatory term. It is akin to referring to a police officer as a "cop." Further, Corsi's own affidavit establishes that the statement is literally true, in that Corsi worked with several intelligence agencies and had a top secret security clearance. Dkt. 74 at 24-26; ¶¶ 7, 15. To the extent Corsi contends that the implication of the statement was that he had assisted the Mueller investigation in an attempt to harm Roger Stone and Donald Trump, that implication is not apparent from anything alleged in the Amended Complaint, and Corsi fails to demonstrate how, even assuming the implication was made, the statement is defamatory.

In addition to the above arguments, the Moving Defendants also argue that the defamation claims fail because Plaintiffs have failed to allege any facts establishing the Defendants made these statements with actual malice. Because Corsi and Klayman's own pleadings demonstrate they are public figures, the Moving Defendants contend Corsi and Klayman must meet a heightened pleading standard requiring that they allege facts showing the Defendants made the defamatory remarks with

---

[4]The Merriam Webster Dictionary defines "spook" as "an undercover agent: SPY." *See* https://www.merriam-webster.com/dictionary/spook (visited 5/24/21).

actual malice. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974) (holding that private individuals become public figures when they have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved."). The Moving Defendants' contend Corsi's and Klayman's defamation claims fail because they make no plausible allegations that Defendants acted with actual malice. Dkt. No. 58 at 18. The Court agrees. Actual malice is a high burden. *See Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 561 (5th Cir. 1997). A public figure suing for defamation must show the defendant knowingly made false statements, or made false statements with reckless disregard for the truth. *Id.* In this regard, the Amended Complaint is lacking. There are no allegations that lead to a reasonable inference that the Defendants acted with malice or a reckless disregard for the truth with regard to the remarks above. This is an alternative reason that dismissal is appropriate on these claims.

Corsi has failed to adequately allege that Alex Jones knowingly made false statements or acted with reckless disregard for the truth in making the complained of statements about Corsi, and has failed to adequately plead that Jones acted with malice in making the statements. As a result he has failed to state a claim against Jones or the Moving Defendants.

### 4. Roger Stone

Lastly, Defendant Stone asserts that the defamation claims against him should be dismissed because they are time-barred. Dkt. No. 70 at 11-13. Under Texas law, defamation claims generally are subject to a one-year statute of limitations. TEX. CIV. PRAC. & REM. CODE, § § 16.002(a), 16.003(a); *Jackson v. W. Telemarketing Corp*., 245 F. 3d 518, 523 (5th Cir. 2001); *Hamad v. Center for Jewish Cmty. Studies*, 265 F. App'x 414, 417 (5th Cir. 2008). To determine whether a defamation claim is timely, courts in Texas have adopted the "single publication rule." *Forbes Inc. v. Granada Biosciences, Inc*., 124 S.W.3d 167, 173 (Tex. 2003). Under the single publication rule, defamation

14

claims must be brought within one year from the first date of publication, whether that be traditional print publication or publication on the internet. *Id.*; *Glassdoor, Inc. v. Andra Group, LP*, 575 S.W.3d 523, 529 (Tex. 2019).

Here, the allegedly defamatory statements on which the Plaintiffs' claims are premised were published when the InfoWars videos were made available online in October 2018 and January 2019, respectively. Dkt. No. 47 at ¶¶ 41-69. Corsi and Klayman sued Shroyer, Alex Jones, David Jones, InfoWars, and Free Speech Systems on March 7, 2019, are thus the claims against these defendants are timely under the statute of limitations. *See* Dkt. No. 1. However, Stone was not added as a defendant until the filing of the Amended Complaint on July 29, 2020. Dkt. No. 47. Because the claims against Stone were filed after the one year statute of limitations expired, the claims are time-barred. *See, e.g. Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."). Accordingly, the Plaintiffs' defamation claims against Stone should be dismissed with prejudice.

## C.    Intentional Infliction of Emotional Distress Claims

Next, Plaintiffs assert common law claims of intentional infliction of emotional distress ("IIED"). To recover for IIED under Texas law, "a plaintiff must prove that  1) the defendant acted intentionally or recklessly, 2) the conduct was 'extreme and outrageous,' 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe." *Standard Fruit & Veg. Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998). Plaintiffs assert IIED claims against each Defendant for "knowingly and intentionally threatening Plaintiffs, in a manner similar to other death threats co-conspirator and Defendant Stone made to at least one material witness, involved in Special Counsel Mueller's Russian collusion investigation ... as well as Judge Amy

Berman Jackson." Dkt. No. 47 at ¶ 95.  The Amended Complaint otherwise fails to allege facts to support any of the elements of their IIED claims, and further, includes no specific allegations as to any defendant except for Stone. *Id.*

In addition to this lack of factual allegations necessary support the claim, IIED is a "gap-filler tort" designed to "supplement existing forms of recovery by providing a cause of action for egregious conduct 'that its more established neighbors in tort doctrine would technically fence out.'" *Standard Fruit*, 985 S.W.2d at 65.  Thus, "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447-48 (Tex. 2004).  Here, the "gravamen" of Plaintiffs' IIED claim is defamation.  Their IIED claim is "merely incidental to the commission of some other tort," and thus should be dismissed.  *Standard Fruit*, 985 S.W.2d at 68.

**D.    Assault Claims**

Plaintiffs also assert common law claims of assault against all Defendants.  Texas law defines assault as "threaten[ing] another with imminent bodily injury." Texas Penal Code § 22.01(a).[5]  The Amended Complaint vaguely alleges that "Defendants placed Plaintiffs in apprehension of an imminent harmful or offensive contact and physical harm and death. . ." Dkt. No. 47 at ¶ 98.  It further alleges, without any factual support, that Defendants call their followers "to arms" against unspecified victims. *Id.* at ¶¶ 99-100.  With the exception of a vague comparison of Defendant Stone to the "Mafia," the Complaint provides no specific allegations that the Defendants threatened Corsi or Klayman with imminent bodily injury. *Id.* at ¶¶ 99-100.  Plaintiffs' assault claims thus fail to survive Defendants' Rule 12(b)(6) motions and should be dismissed.

---

[5] Under Texas law, the elements for assault are the same in the civil and criminal context. *Sanders v. Schulze*, 2015 WL 5547630, at *9 (N.D. Tex. Aug. 31, 2015).

16

**E.    Leave to Amend**

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving plaintiff "at least one chance to amend." *Hernandez v. Ikon Ofc. Solutions, Inc.*, 306 Fed. Appx. 180, 182 (5th Cir. 2009). "Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 177 (5th Cir. 2016) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)). The Fifth Circuit has previously stated that "[a] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion [within] the contemplation of Rule 15(a)." *Id.* (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).  As noted earlier, this is one of several lawsuits Corsi and Klayman have filed raising these very same claims.  Moreover, they have already amended their complaint in this case once.  Further, a nearly identical version of this suit was filed in the Southern District of Florida, and the judge there issued an order that pointed out many of the same problems that are addressed above, and ordered Corsi and Klayman to file a more definite statement to address the problems.  Instead of doing so, they chose to withdraw that suit and file this one.  Thus, if they had more facts to plead to cure the identified problems, they have certainly already had the opportunity to do so.  For these reasons, the undersigned recommends that the Court not permit Corsi or Klayman leave to amend, and dismiss the claims with prejudice.

## IV. MOTIONS FOR SANCTIONS

In addition to the motions to dismiss, Defendants Shroyer and Stone have both filed motions seeking sanctions against Corsi and Klayman under Rule 11.  Dkt. Nos. 56, 84.  Should the district judge adopt the recommendations made herein, it is possible that sanctions could be appropriate as

the defendants who made no challenged statements, and as to Stone, given that the statute of limitations had run on the claim against him when the suit was filed.  It would, however, be premature for the Court to address that issue before the district judge has acted on this Report and Recommendation.  Accordingly, the undersigned **ORDERS** that Defendants Shroyer and Stone's Motions for Sanctions (Dkt. Nos. 56 & 84) be **DENIED WITHOUT PREJUDICE** to being refiled once the district judge acts on this Report and Recommendation.

## V.  RECOMMENDATIONS

For the reasons set forth above, the undersigned **RECOMMENDS** that the Court **GRANT** the Defendants' motions to dismiss (Dkt. Nos. 55, 57, 58, 59, 70), and **DISMISS** the Plaintiffs' claims **WITH PREJUDICE**, for failure to state a claim, and   **DENY** Defendants Shroyer and Stone's Motions for Sanctions (Dkt. Nos. 56 & 84) **WITHOUT PREJUDICE** to being refiled once the district judge acts on this Report and Recommendation.

## VI.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474

U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 24th day of May, 2021.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

19