650 Fed.Appx. 744
This case was not selected for publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also U.S. Ct. of App. 11th Cir. Rule 36-2.
United States Court of Appeals, Eleventh Circuit.

Larry KLAYMAN, Plaintiff–Appellant,
v.
CITY PAGES, Ken Weiner, a.k.a. Ken Avidor, Aaron Rupar, Phoenix New Times, Voice Media Group, Defendants–Appellees.

No. 15–12731
|
Non–Argument Calendar
|
Date Filed: 05/27/2016

**Synopsis**
**Background:** Lawyer brought action against news companies and reporters, asserting claims for defamation and defamation by implication under Florida law, based on three internet articles reporting on two separate civil proceedings involving lawyer. The United States District Court for the Middle District of Florida, Anne C. Conway, J., 2015 WL 1546173, entered summary judgment in companies' and reporters' favor, and denied lawyer's motion to disqualify the court. Lawyer appealed.

**Holdings:** The Court of Appeals held that:

[1] district court judge's use of literary device in summary judgment order did not require judge to recuse herself;

[2] district court judge's admonition of lawyer did not require judge to recuse herself;

[3] under Florida law, article discussing lawyer's child custody proceeding was not defamatory; and

[4] under Florida law, article discussing pending state Bar investigation against lawyer was not defamatory.

Affirmed.

West Headnotes (4)

[1]    **Judges** ⚖ Bias and Prejudice
       District court's use of literary device, i.e., quotes from or allusions to work of classic literature, which included words "moron," and "malice" in subheading in section of summary judgment order discussing actual malice, in lawyer's defamation action against news companies and reporters, did not evidence kind of deep seated favoritism or antagonism that would make fair judgment impossible, as required to warrant recusal of district court judge. 28 U.S.C.A. § 144.

3 Cases that cite this headnote

[2]  **Judges** Statements and expressions of opinion by judge

District court judge's admonition of lawyer who brought action against news companies and reporters, asserting claims for defamation and defamation by implication under Florida law, including admonition forewarning lawyer that, based on his history of plunging into tirade against whomever he felt wronged him, district court would review any motion for reconsideration of district court's summary judgment order with a sharp lens, and lawyer would risk sanctions from court, did not make fair judgment impossible, as required to warrant recusal of district court judge. 28 U.S.C.A. § 144.

7 Cases that cite this headnote

[3]  **Libel and Slander** Criticism and comment on public matters and publication of news

Under Florida law, lawyer's allegation that internet news article discussed lawyer's child custody proceedings, stating that lawyer was capable of disturbing criminal sexual behavior, while omitting fact that no criminal trial regarding lawyer's alleged sexual misconduct took place, and that news company failed to contact him for comment before publication of article, were insufficient to allege actual malice, as required for lawyer, a public figure, to prevail on defamation claim against news company; article gave readers sufficient information to weigh for themselves the likelihood of the article's veracity, including quote from court in child custody case that matter was civil proceeding, and not criminal.

1 Cases that cite this headnote

[4]  **Libel and Slander** Criticism and comment on public matters and publication of news

Under Florida law, lawyer's allegation that internet news article described a pending state Bar investigation and prior state Bar grievance, stating that lawyer had been in trouble with Bar association and publicly reprimanded for taking money from a client and never doing work, and that such claims were false, were insufficient to allege actual malice, as required for lawyer, a public figure, to prevail on defamation claim against news company and reporter; article gave readers sufficient information to weigh for themselves the likelihood of the article's veracity, in that it linked to another news article discussing disciplinary proceedings and provided link to state Bar's public documents.

**Attorneys and Law Firms**

***746** Larry E. Klayman, Pro Se.

Sanford L. Bohrer, Scott Daniel Ponce, Brian W. Toth, Holland & Knight, LLP, Miami, FL, for Defendants–Appellees.

Appeal from the United States District Court for the Middle District of Florida, D.C. Docket No. 5:13–cv–00143–ACC–PRL

Before WILLIAM PRYOR, JORDAN, and JILL PRYOR, Circuit Judges.

**Opinion**

PER CURIAM:

Larry Klayman sued six defendants—Ken Avidor, Aaron Rupar, Matthew Hendley, City Pages, Phoenix New Times, and Voice Media Group—for defamation and defamation by implication under Florida law. The district court granted summary judgment in favor of all the defendants and denied Mr. Klayman's motions to disqualify the court and to amend his third amended complaint. Mr. Klayman now appeals. After review of the record and the parties' briefs, we affirm.

**I**

Because we write for the parties, we assume their familiarity with the underlying record and set out only what is necessary to resolve this appeal.

Mr. Klayman sought over $15 million in his defamation suit, which was based on three internet articles. The complaint was styled in six counts: three counts for defamation and three counts for defamation by implication. The articles themselves reported on two separate civil proceedings involving Mr. Klayman.

In June of 2009, Mr. Klayman and Stephanie Luck, his former wife, were engaged in an acrimonious child custody and support dispute in Ohio, during which Ms. Luck accused Mr. Klayman of sexually abusing their children. The magistrate judge in that case made the following findings of fact:

> [O]n more than one occasion the Plaintiff act [sic] in a grossly inappropriately [sic] manner with the children. His conduct may not have been sexual in the sense that he intended to or did derive any sexual pleasure from it or that he intended that the children would. That, however, does not mean that he didn't engage in those acts or that his behavior was proper.

> And for all his protestations of innocence ... he repeatedly invoked his Fifth Amendment right against self-incrimination ... [Because this is a civil proceeding,] the Court may draw an adverse inference from a party's decision not to respond to legitimate questions....

D.E. 95–2 at 22. Mr. Klayman filed an objection to the magistrate judge's order, but the Ohio trial court overruled the objection. Mr. Klayman appealed, but the Court of Appeals of Ohio found that the trial court did not abuse its discretion when it overruled Mr. Klayman's objections to "the magistrate's

finding that Klayman inappropriately touched the children." D.E. 95–6 at 11–14.

In November of 2007, Natalia Humm, Mr. Klayman's former client, filed a Florida Bar grievance against him for failing to work on her case after she had paid him a $25,000 retainer. Mr. Klayman and Ms. Humm submitted the matter to the Florida Bar Grievance Mediation Program. The parties settled, and Mr. Klayman agreed to pay Ms. Humm $5,000 within 90 days from the date of the mediation agreement. Mr. Klayman failed to make timely payments, however, and the Florida Bar filed a formal complaint with the Florida Supreme Court. Mr. Klayman eventually agreed to pay the outstanding amount, admitted to violating several Rules Regulating the Florida Bar, and consented to a public reprimand by the Florida Supreme Court. In August of 2011, the Florida Supreme Court publicly reprimanded Mr. **\*747** Klayman for failing to comply with the settlement terms.

Counts I and IV—the defamation and defamation by implication claims against Mr. Avidor, Mr. Rupar, City Pages, and Voice Media Group—are based on an article authored by Mr. Rupar and published in City Pages on September 28, 2012. The article, titled "Bradlee Dean's Attorney, Larry Klayman, Allegedly Sexually Abused His Own Children," discusses Mr. Klayman's previous comments linking homosexuality to child abuse and then quotes the Ohio Court of Appeals decision upholding the magistrate's factual findings about Mr. Klayman's conduct.

Counts II and V—the defamation and defamation by implication claims against Mr. Hendley, Phoenix New Times, and Voice Media Group—are based on an article authored by Mr. Hendley and published in the Phoenix New Times on February 22, 2013. The article is titled "Birther Lawyer Fighting Joe Arpaio Recall Was Found to Have 'Inappropriately Touched' Kids," and quotes roughly the same section of the Ohio Court of Appeals decision that was quoted in the City Pages article. This February 22, 2013, article reported that "[Mr. Klayman] was found by a court to have 'inappropriately touched' children...." D.E. 52–2 at 1.

Counts III and VI—the defamation and defamation by implication claims against Mr. Hendley, Phoenix New Times, and Voice Media Group—are based on another article authored by Mr. Hendley. This article, published in the Phoenix New Times on June 18, 2013, and titled, "Larry Klayman Under Investigation by Arizona Bar," discussed an investigation by the Arizona Bar into Mr. Klayman's efforts to prevent the recall of Sheriff Joe Arpaio. The article provided a link to a Miami New Times story that discussed Ms. Humm's Florida Bar grievance. That Miami New Times story itself included a link; it directed those that clicked it to a Florida Bar web page that contained several publically available documents relating to the resolution of Ms. Humm's grievance against Mr. Klayman, including the formal complaint, the consent judgment, the report of the referee, and the Florida Supreme Court reprimand.

The defendants filed two motions to dismiss the complaint for failure to state a claim. Both times, the district court granted the motions

to dismiss without prejudice and gave Mr. Klayman leave to amend his complaint.

On October 20, 2014, the defendants moved for summary judgment. They argued, in part, that Voice Media Group did not publish any newspapers, that Mr. Avidor did not write the September 28 article published by City Pages, that the evidence of actual malice was insufficient to meet a clear and convincing evidence standard, and that the articles' statements were true. Mr. Klayman filed an opposition to the defendants' motion for summary judgment.

Before the district court ruled on the motion for summary judgment, Mr. Klayman filed a motion to perfect a prayer for punitive damages. The district court denied the motion because it was filed 11 months after the deadline to amend pleadings and because Mr. Klayman had not shown good cause to excuse the delay as required by Rule 16(b) of the Federal Rules of Civil Procedure. Mr. Klayman then filed a motion for reconsideration and in the alternative motion to certify as controlling question of law to the Eleventh Circuit for interlocutory appeal, which the district court denied.

In April of 2015, the district court granted the defendants' motion for summary judgment. In its order, the district court found that Voice Media Group and Mr. **\*748** Avidor did not publish any of the articles, that Mr. Klayman had failed to establish a genuine issue of material fact as to the existence of actual malice, and that the statements in one of the articles—the February 22 article in the Phoenix New Times discussing the allegations of inappropriate touching—were true. Afterward, Mr. Klayman filed a motion to disqualify, under 28 U.S.C. §§ 144 and 455(a), which the district court also denied.

## II

We review for abuse of discretion a district court's decision as to whether to disqualify. *See Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1319–20 (11th Cir.2002).

Judges must recuse themselves when they are personally biased or prejudiced against a party or in favor of an adverse party. *See* 28 U.S.C. § 144. "To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists." *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir.2000). Judges must also recuse themselves when their "impartiality might reasonably be questioned," or when they have "a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a) and (b)(1). A court must conduct the inquiry using an objective standard. *See Christo*, 223 F.3d at 1333.

For bias to be sufficient to disqualify a judge, it generally must arise from extrajudicial sources. *See In re Walker*, 532 F.3d 1304, 1310–11 (11th Cir.2008). If instead, the alleged bias arises from the judge's remarks or opinions during the course of judicial proceedings (and not from extrajudicial sources), the party moving for disqualification must clear a much higher hurdle. The opinions formed by a judge on the basis of facts introduced or events occurring during judicial proceedings are not a basis for a bias or partiality challenge unless they "display

a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). "Mere friction between the court and counsel ... is not enough to demonstrate pervasive bias." *Id.* (internal citations omitted).

Mr. Klayman argues that the district court's quoting of *Alice in Wonderland*, admonitions for his behavior, and the threat of sanctions revealed the court's bias. Because Mr. Klayman has produced no evidence that the district court formed any opinions from extrajudicial sources, he must demonstrate that the district court's remarks display such bias that a fair judgment is impossible.

**[1]** Many sections of the district court's order begin with quotes from or allusions to *Alice in Wonderland*. For example, the court used the following quotation as a subheading in the section discussing actual malice: "I've been considering words that start with the letter M. Moron. Mutiny. Murder. Mmm—malice." D.E. 124 at 22. Mr. Klayman alleges that the quote implied that *he* was the moron and thus demonstrated bias. But the use of a literary device to enliven a summary judgment order does not evidence the kind of "deep seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147.

With respect to the district court's admonitions, Mr. Klayman primarily takes exception to the district court's following comments:

> [T]he Court learned early on in this case that this approach to litigation is the norm and not the exception for Plaintiff.

> While the Court would not ordinarily conclude with an admonition ... when Plaintiff receives unfavorable rulings, he **\*749** often plunges into a tirade against whomever he feels has wronged him ... This is all to say that the Court will review any motion for reconsideration of this Order with a very sharp lens. Should Plaintiff file a motion to reconsider, the Court forewarns Plaintiff that any such motion must at least arguably meet the stringent standard for reconsideration of an Order, at the risk of facing sanctions from the Court.

D.E. 124 at 14 n.7 and 32. He forgets to mention, however, that the district court also reproved the defendants for possible "sandbagging" and "negligence." D.E. 124 at 13–14 n.6.

**[2]** It is not uncommon for judges to quote literature or admonish parties for their behavior. *See, e.g.*, *Mobile Logistics, LLC v. Old Dominion Freight Line, Inc.*, Docket No. 4:12–cv–02297 (S.D. Tex. filed Nov. 7, 2012) (admonishing attorneys, "1. Motions to the court must be filed with a caption. / 2. E-mails will not be read and will be deleted. The court is not your ex-girlfriend's Facebook wall."). Mr. Klayman contends that the comments were unnecessary, mocking, and unbecoming of a federal judge. What Mr. Klayman fails to do is produce evidence or convincingly show that these statements made a "fair judgment impossible." We therefore hold that the district court did not abuse its discretion in denying Mr. Klayman's motion to disqualify.

## III

### A

In Florida, defamation is composed of the following elements: (1) publication, (2) a defamatory statement, (3) falsity, and (4) actual damages. *See Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla.2008). Additionally, the First Amendment requires that a plaintiff who is a public person (as stipulated by the parties here) prove that the defendant acted with actual malice—knowledge or reckless disregard as to the falsity of the statement. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). This constitutional requirement is examined under a subjective standard, and a plaintiff must produce evidence that the defendants "actually entertained serious doubts as to the veracity of the published account, or [were] highly aware that the account was probably false." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir.2016) (remanding the case to allow the plaintiffs to plead facts sufficiently alleging actual malice).

The elements of defamation by implication are (1) a juxtaposition of a series of facts so as to imply a defamatory connection between them, or (2) the creation of a defamatory implication by omitting facts. *See Rapp*, 997 So.2d at 1106. Defamation of a public figure by implication also requires proof of actual malice because it "is subsumed within the tort of defamation ... [so] all of the protections of defamation law ... [are] extended to the tort of defamation by implication." *Id.* at 1108.

*See also Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 90 (3d Cir.2013) ("We agree with the First, Sixth, Seventh, and Ninth Circuits: plaintiffs in defamation-by-implication cases must show something beyond knowledge of, or recklessness in regard to, the falsity of the statement's defamatory meaning.") (emphasis omitted).

### B

We review *de novo* a district court's grant of summary judgment and apply the same legal standards governing the district court's decision. *See Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir.2007). Summary judgment is appropriate "if the movant shows that there is no **\*750** genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir.2013). Because a public figure must prove actual malice by clear and convincing evidence, the appropriate question at summary judgment is "whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### C

With respect to the City Pages article—discussing the child custody proceedings—Mr. Klayman asserts that the article gives the false impression that he committed and was convicted of child sexual abuse. He specifically points to the sentence, "Turns out, gays aren't the only ones capable of disturbing criminal sexual behavior—apparently even conservative straight guys tight with Bradlee Dean turn out to be total creeps." Additionally, Mr. Klayman claims that the article omitted the fact that no criminal trial took place and that the Cleveland Department of Children Families, the Cuyahoga County Sheriff, and the District Attorney "cleared" him of sexual misconduct allegations. Mr. Rupar defends the use of the word "criminal," claiming that he understood the conduct described by the Ohio Court of Appeals to be "criminal" conduct. Moreover, because the Ohio Court of Appeals upheld the trial court's ruling, he believed the statement was true.

Mr. Klayman argues that the June 18 Phoenix New Times article—which described the pending Arizona Bar investigation and the prior Florida Bar grievance—is defamatory. The article stated, "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work." According to Mr. Klayman, this excerpt represents and gives the false impression that he was reprimanded for taking client money and never doing any work, but he was actually reprimanded for failing to pay Ms. Humm completely as required by the settlement. Mr. Hendley responds that he used the public filings related to the Florida Bar disciplinary proceedings and the Miami New Times story as the basis for his article and that he believed the statements were true at the time of publication.

Mr. Klayman asserts that he presented circumstantial evidence to meet the clear and convincing standard and allow a reasonable jury to find actual malice. First, he says the defendants' lack of editorial or verification processes and the authors' failure to contact him for comment before publication is evidence of ill will and a reckless disregard for the truth. Second, he argues that Mr. Hendley's prior criminal convictions reveal a man "who had nothing to lose to take risks and defame others for a living," and by hiring him, City Pages demonstrated that it was "not interested in the truth." Mr. Klayman argues that this compounds the circumstantial evidence of actual malice. The final piece of evidence, according to Mr. Klayman, is the defendants' refusal to correct the statements after receiving his letter demanding correction.

Mr. Klayman's characterizations of the defendants are immaterial as to whether they actually had doubts about the veracity of the statements or alleged implications. Furthermore, on this record, the defendants' failure to investigate and poor **\*751** journalistic standards are insufficient to establish actual malice. *See Michel*, 816 F.3d at 703 (explaining that "[a]ctual malice requires more than a departure from reasonable journalistic standards" and that "a failure to investigate, standing on its own, does not indicate the presence of actual malice"). To show actual malice, a plaintiff must produce evidence "showing that the defendant purposely avoided further investigation with

the intent to avoid the truth." *Id.* Mr. Klayman has not produced any such evidence, and a mere refusal to correct a publication falls short. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 286, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

 **[3]** **[4]** Evidence that an article contains information that readers can use to verify its content tends to undermine claims of actual malice. "Where a publisher gives readers sufficient information to weigh for themselves the likelihood of an article's veracity, it reduces the risk that readers will reach unfair (or simply incorrect) conclusions, even if the publisher itself has." *Michel*, 816 F.3d at 703. In this case, the September 28 article quotes the Ohio Court of Appeals' opinion: "The magistrate stated that he could draw an adverse inference from Klayman's decision not to testify to these matters because *it was a civil proceeding, not criminal*." D.E. 52–1 at 2 (emphasis added). Likewise, the June 18 article links to the Miami New Times story that (1) discussed the Florida Bar disciplinary proceedings and (2) provided a link to the Florida Bar's public documents. These facts undercut Mr. Klayman's case; if the defendants actually had been highly aware of the publications' falsity, it is unlikely they would have included source information that refuted any defamatory claims or implications.

## D

The district court entered summary judgment in favor of Voice Media Group and Mr. Avidor on every pertinent count, holding that neither published any articles. As to Count II, which was based on the February 22 article, Mr. Klayman argued that (1) the statements made by Mr. Hendley in the article were defamatory and (2) Mr. Hendley was also liable for statements he "republished" by linking to the September 28 article in his February 22 article. The district court entered summary judgment in favor of the defendants after finding that (1) the statements at issue were not false, a required element of defamation, *see Rapp*, 997 So.2d at 1106, and (2) Mr. Hendley was not liable for statements in the September 28 article because linking to content that is already publicly available on the internet does not constitute republication. Mr. Klayman does not challenge these rulings on appeal and also fails to contest the district court's grant of summary judgment on Count V, his corresponding defamation by implication claim based on the February 22 article. Consequently, we will not consider them, and we affirm these rulings by the district court. *See Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1296–97 (11th Cir.2010) (holding that parties waive all legal claims and arguments not briefed before the court on appeal). *See also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir.2014) ("A party fails to adequately brief a claim when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims.") (internal citation omitted).

Mr. Klayman argues that a blog post authored by Mr. Avidor—later linked to in Mr. Rupar's September 28 article that discussed the child custody case—provides sufficient evidence of defamation by implication to survive summary judgment. But **\*752** Mr. Klayman did not raise this argument with the district court. In his opposition to the motion for summary judgment, Mr. Klayman mentioned the blog post as circumstantial evidence of actual

malice. Only on appeal does he argue a claim for defamation by implication based on the blog post. We therefore decline to consider it. *See Norelus*, 628 F.3d at 1296 (stating that issues not raised by a party in the district court are not considered on appeal).

Considering all the evidence, and drawing all reasonable inferences in favor of Mr. Klayman, we hold that a reasonable jury could not find the existence of actual malice on the part of the defendants by clear and convincing evidence. The district court did not err in granting summary judgment in favor of the defendants. As a result, Mr. Klayman's claim that the district court erred in denying his motion to perfect a prayer for punitive damages is rendered moot.

## IV

For the foregoing reasons, we affirm the district court's grant of summary judgment on all counts, the denial of Mr. Klayman's motion to disqualify, and the denial of his motion to perfect a prayer for punitive damages.

**AFFIRMED.**

**All Citations**

650 Fed.Appx. 744, 44 Media L. Rep. 2243

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.