**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

DR. JEROME CORSI, et al.,

   Plaintiffs,

vs.

INFOWARS, LLC, et al.,

   Defendants.

Civil Action No. 1:20-cv-00298-LY

## DEFENDANTS INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; ALEX E. JONES; AND OWEN SHROYER'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

Defendants Infowars, LLC; Free Speech Systems, LLC; Alex E. Jones; and Owen Shroyer (collectively, "Defendants") seek attorneys' fees under 15 U.S.C. § 1117(a); under Florida's Anti-SLAPP statute, Fla. Stat. § 768.295; and, for sanctions under 28 U.S.C. § 1927.  This is an "exceptional case" under the Lanham Act, as Plaintiffs' Lanham Act claim has always been meritless.  Plaintiffs have also litigated this case in an unreasonable manner, including by making personal insults against judges for not agreeing with their theory of the case.  Plaintiffs and their counsel have unreasonably multiplied the proceedings, in violation of 28 U.S.C. § 1927.  Furthermore, Plaintiff Larry Klayman, as a Florida citizen, is subject to the fee-shifting provisions of Florida's Anti-SLAPP statute.

## 1.0 INTRODUCTION AND FACTUAL BACKGROUND

The court is already well-acquainted with the factual background of this case.  For purposes of this Motion, it is only worth noting that Klayman is a Florida citizen [Dkt. 47 at ¶ 4], along with a few details of the case's procedural history.

Plaintiffs filed their initial Complaint on March 7, 2019 in the District of Columbia (Dkt. 1), asserting causes of action for defamation, defamation *per se*, defamation by implication, intentional

RANDAZZA · LEGAL GROUP

infliction of emotional distress, assault, and unfair competition under the Lanham Act.  Defendants moved to dismiss the Complaint for failure to state a claim on April 8, 2019, explaining that Plaintiffs' Lanham Act claim was deficient because none of the conduct at issue constituted commercial speech. [Dkt. 7 at 25-27.]  After the case was transferred to this Court, Plaintiffs filed an Amended Complaint on July 29, 2020 [Dkt. 47], asserting the identical claims on the identical theories as in the initial Complaint, including their Lanham Act claim.  Rather than change anything legally operative, Plaintiffs merely added irrelevant factual and legal allegations, and Plaintiffs added Roger Stone as a Defendant, thereby mooting Defendants' then-pending motion to dismiss [Dkt. 48].  Defendants then were required to re-draft and file new motions to dismiss the Amended Complaint,[1] explaining again that there was no commercial speech.  [Dkt. 55; Dtk. Dkt. 58 at 21-23; Dkt. 59 at 21-22.]  Plaintiffs filed their oppositions [Dkts. 73 & 74] but failed to recognize binding legal authority cited by Defendants. Defendants reiterated this point in their replies in support of their motions to dismiss.  [Dkt. 80 at 9; Dkt. 81 at 8.]  Defendants' replies also explained that none of the extrinsic evidence attached to Plaintiffs' oppositions to the motions to dismiss could properly be considered in deciding the motions. [Dkt. 80 at 1 n.1; Dkt. 81 at 1 n.1; Dkt. 82 at 1 n.1 & 6-7.]

Thereafter, this case was referred to Magistrate Judge Austin.  [Dkt. 88.]  Plaintiffs attempted to take discovery despite having failed to conduct a Fed. R. Civ. P. 26(f) conference [Dkt. 92], which required Defendants to seek a protective order to prevent such discovery from taking place.  [Dkt. 94.]  Nothing about Plaintiffs' conduct had been reasonable, but Plaintiffs' response to the protective order process resulted in a litany of abuse directed at the Court.  Plaintiffs began to openly insult Magistrate Judge Austin and baselessly call his impartiality into question [Dkt. 99], which only intensified after the Magistrate Judge stayed discovery until after the motions to dismiss were resolved [Dkt. 100].  After discovery was stayed, Plaintiffs were desperate to have someone other than the Magistrate Judge decide the motions to dismiss and tried to have the District Judge decide them in a

---

[1]   Upon transfer, and prior to amendment, the Court might have seen fit to adjudicate the claims under D.C. precedent, rather than have the parties rebrief the caselaw for the new forum.  The amendment necessitated that the renewed motion to dismiss use the precedent most applicable for this forum.

filing that insulted both Magistrate Judge Austin and the Hon. Roy K. Altman, who presided over a substantially identical suit filed in the Southern District of Florida. [Dkt. 101.] The Court properly construed this as a meritless motion to recuse the Magistrate Judge and denied it. [Dkt. 107.]

The Magistrate Judge issued his Report and Recommendation on May 25, 2021 [Dkt.108], recommending that all Plaintiffs' claims be dismissed with prejudice, and finding that Plaintiffs' Lanham Act claim failed due to a lack of commercial speech. [Dkt. 108 at 5-7.] Two days later, Plaintiffs filed a procedurally improper motion to vacate the Report and Recommendation, once again failing to address binding authority on the commercial speech issue [Dkt. 109], and then filed a separate objection to the Report and Recommendation with the same deficiency. [Dkt. 115.] Each time, Defendants were compelled to draft responses explaining over and over again why none of the speech at issue was commercial. [Dkts. 113 & 119.] Even after the Court adopted the Report and Recommendation [Dkt. 122] and Plaintiffs filed their motion for reconsideration [Dkt. 124], they *still* failed to address the binding, dispositive case law on commercial speech. Plaintiffs have made multiple frivolous and immaterial filings that involve personal attacks on the litigants, their counsel, this Court, and other courts. In fact, Klayman recently described this Court's order adopting the Report and Recommendation as "erroneous, thoughtless and fatally flawed" to the Southern District of Florida. [*See* Response to Notice of Supplemental Authority in *Klayman v. Infowars, LLC*, Case No. 0:20-cv-61912-AMC, Doc. No. 73, attached as **Exhibit 1**.]

There has never been any merit to Plaintiffs' Lanham Act claim, and Plaintiffs were informed of this at the outset of this case. They have done nothing to cure the fatal defects in their Lanham Act claim, despite amending their Complaint and having multiple opportunities at further amendment. Furthermore, they have litigated this case in an objectively unreasonable manner. This case is exceptional under the Lanham Act.

Furthermore, all of Plaintiffs' claims are premised on speech and conduct protected under Florida's Anti-SLAPP statute, Defendants invoked this statute in their motions to dismiss, and all of Plaintiffs' claims were dismissed. Defendants are thus entitled to an award of attorneys' fees against Plaintiff Larry Klayman for their defense of the state law claims brought by him.

## 2.0   LEGAL STANDARDS

Under 15 U.S.C. § 1117(a), "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." In analyzing the Patent Act's analogous fee provision, the Supreme Court created a holistic standard for exceptionality, stating that:

> An "exceptional" case is simply one that stands out from the others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District Courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. Icon Health & Fitness*, 134 S. Ct. 1749, 1756 (2014). The Fifth Circuit applies the *Octane Fitness* standard to Lanham Act cases. *Alliance for Good Gov't v. Coalition for Better Gov't*, 919 F.3d 291, 295 (5th Cir. 2019). Thus, a case is "exceptional" if either (1) a party's legal claims were exceptionally weak; or (2) a party litigated in an unreasonable manner. Both are present here.

Fla. Stat. § 768.295 was invoked in Dkts. 55 & 59. This statute makes a fee award mandatory. The law forbids a person from filing a meritless lawsuit "primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue ...." Fla. Stat. § 768.295(3). As the prevailing party, Defendants are entitled to a mandatory award of "reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." *Id.* at § 768.295(4). The term "free speech in connection with public issues" is defined as "any written or oral statement that is protected under applicable law and is made ... in connection with a ... radio broadcast, ... news report, or other similar work." *Id.* at § 768.295(2)(a).

## 3.0   ARGUMENT

### 3.1   This Case is "Exceptional" Under the Lanham Act

#### 3.1.1   Plaintiffs' Lanham Act Claim Was Exceptionally Weak

Plaintiffs' Lanham Act claim has been fatally defective since the outset of this case; every brief addressing the merits of this case has contained such explanation. In short, the Lanham Act is concerned only with commercial speech; without this element, a plaintiff does not have standing under the Lanham Act and cannot establish liability under the statute. *See, e.g., Alliance for Good Government v.*

*Coalition for Better Government*, 901 F.3d 498, 506 n.8 (5th Cir. 2018).  The statements and conduct at issue in Plaintiffs' complaints were political commentary and expression of opinion, without so much as an allegation of how any of these statements proposed or even related to a commercial transaction. This is not commercial speech. *See Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013).[4]

The only argument Plaintiffs have *ever* provided in response is that they alleged Defendants acted with an economic motivation in making and distributing their statements (Dkt. 10 at 25; Dkt. 73 at 19; Dkt. 74 at 18; Dkt. 115 at 20), relying on *Tobinick v. Novella*, 848 F.3d 935, 951 (11th Cir. 2017), a case that explicitly found an economic motivation was *insufficient* to establish commercial speech. Until their motion for reconsideration, they made essentially identical arguments and did not even attempt to address any of the case law Defendants cited in response or acknowledge their erroneous interpretation of *Novella*. The only other case they cited, *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983), also explicitly found that economic motivation is not by itself sufficient to establish commercial speech.

Despite amending their complaint and having numerous opportunities to address this fatal defect in their Lanham Act claim, Plaintiffs did absolutely nothing but repeat the same erroneous argument for over 2 years.  Plaintiffs' Lanham Act claim is, and always has been, exceptionally weak, such that Defendants deserve a fee award in their favor.

---

[4]    *Farah v. Esquire* was litigated by Klayman, on Corsi's behalf, under the same theory – meeting the same result.  There is a saying that "Insanity is doing the same thing over and over again and expecting different results."  Calling Klayman's and Corsi's instant case "insane" would be over-selling it.  It is not "insane" at all.  They knew full well that the Lanham Act could not be used this way.  But, they did not expect it to be – they <u>expected</u> to file an unreasonable complaint, to litigate it in an unreasonable way, and then *yet again* be able to do it without consequence. Klayman and Corsi are quite sane.  They expected the same result they are used to – losing a frivolous case with no consequences.  They will expect this pattern to continue, if this Court lets them off the hook.  On the other hand, if there are consequences, the next dozen defendants that would otherwise have had to deal with this kind of thing will find Corsi and Klayman thinking twice about it – because finally, at long last, there will be consequences for wasting judicial and party resources on frivolous shakedown lawsuits.

### 3.1.2   Plaintiffs' Unreasonable Litigation Conduct

Plaintiffs litigated this case in an unreasonable manner.  After Defendants' first motion to dismiss was fully briefed and ready for decision, Plaintiffs filed their Amended Complaint, adding Roger Stone as a defendant but doing nothing to address the fatal flaw that there was a lack of any factual allegations regarding commercial speech aside from an insufficient economic motive.  Indeed, Plaintiffs' oppositions to Defendants' motions to dismiss on this point are nearly identical.  [*Compare* Dkt. 10 at 25-26 with Dkt. 73 at 19-20 & Dkt. 74 at 18-19.]  Plaintiffs filed their Amended Complaint for no purpose other than mooting the then-pending motions to dismiss so that they could further burden Defendants with the cost of litigation.  Plaintiffs then tried to take discovery without conducting a Rule 26(f) conference and refused to admit this error, necessitating discovery motion practice.  [Dkts. 90-100.]  And, after this case was referred to Magistrate Judge Austin, Plaintiffs began filing a slew of frivolous motions and other filings that, once again, did not address the fatal defects in their Lanham Act claim and additionally insulted the Court, the Magistrate Judge, Defendants, and Defendants' counsel.  [Dkts. 101, 109, 112, 114-115, 119-121, 124, & 128.]  They even extended this campaign of personal attacks to *other courts*.  [**Exhibit 1**.]  This is unreasonable litigation conduct.

*Novella* found the plaintiffs' Lanham Act claims to be exceptional, in part, because "more than eleven months after the litigation began, Plaintiffs repeatedly sought to multiply the proceedings by adding new parties and claims," and "Plaintiffs repeatedly failed to produce new arguments or evidence to distinguish the Court's prior rulings" on the issue of commercial speech.  207 F. Supp. 3d at 1342.  Similarly, Plaintiffs have known for years that they never had a valid Lanham Act claim and did not attempt to make one even plausible, yet they have made every effort to keep this frivolous claim pending.  This is an exceptional case and Defendants are entitled to an award of all attorneys' fees incurred in relation to the Lanham Act claim.

### 3.2   Defendants Should be Awarded Fees Under Florida's Anti-SLAPP Statute as Against Klayman Only

Defendants previously briefed the issue of choice of law and how Florida's Anti-SLAPP law, rather than the Texas Citizens Participation Act ("TCPA") should apply here.  [*See* Dkt. 55 at 10-14;

Dkt. 82 at 4-5.][5]  Florida's statute explicitly states a public policy that people not engage in SLAPP suits, Fla. Stat. § 768.295(1), and the law is meant to prevent "unnecessary litigation" in response to certain categories of speech.  *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 311 (Fla. 2d DCA 2019).  As a Florida citizen, Klayman is subject to the laws of Florida; indeed, he brought nearly identical suits in Florida federal and state courts, and can hardly complain it would be improper to apply Florida law here.  Because Florida is where Klayman alleges to do his work (Dkt. 47 at ¶ 4), any harm to his reputation or business must necessarily have been felt there, and thus there is a strong presumption that Florida law should apply.  *See Tobinick v. Novella*, 108 F. Supp. 3d 1299, 1303-04 (S.D. Fla. 2015) (applying California Anti-SLAPP statute to California plaintiff against non-California defendant); *Adelson v. Harris*, 973 F. Supp. 2 467 (S.D.N.Y. 2013) (applying Nevada Anti-SLAPP statute to Nevada plaintiff).  The Florida Anti-SLAPP statute applies here.

Klayman violated Florida's Anti-SLAPP statute in filing this suit.  The Florida statute prohibits suits against "another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue."  Fla. Stat. § 768.295(3).  "Free speech in connection with public issues" means speech "made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work."  *Id.* § 768.295(2)(a).  Plaintiffs claim Defendants' allegedly defamatory statements were made on *The Alex Jones Show* and *The War Room*, which are both "broadcast on radio and internet social media networks throughout the United States of America and internationally ... and online."  [Dkt. 47 at ¶¶ 12-13.]  Klayman brought his claims directly in response to these alleged radio broadcasts, *i.e.* free speech in connection with public issues.

---

[5]      The Court is likely aware that the Texas Anti-SLAPP Law does not apply in federal court, because it has been deemed to be procedural and not substantive.  *See Klocke v. Watson*, 936 F.3d 240, 248-49 (5th Cir. 2019).  However, the Florida Anti-SLAPP law does apply in federal court, even though the TCPA does not.  *Bongino*, 477 F. Supp. 3d at 1322-24.  It does not have any substantive elements; as a result, it has been singled out as applying in federal court even when other anti-SLAPP statutes do not.  *Id.*  Movants do not otherwise concede that the Fifth Circuit's decision in *Klocke* was correctly decided.  If this Court and the Fifth Circuit do find that the Florida statute and the TCPA are identical enough for *Klocke* to apply, then Movants preserve this issue for further appellate review.

Defendants invoked the Florida Anti-SLAPP statute in their motions to dismiss and Klayman's claims were dismissed pursuant to these motions. Defendants are thus the prevailing parties for purposes of Fla. Stat. § 768.295(4), entitling them to a **mandatory** award of costs and attorneys' fees. Fla. Stat. § 768.295(4). Klayman did not provide a substantive response to these arguments previously, and he has, therefore, waived any substantive opposition. While fees recoverable under this statute do not include Lanham Act fees, as Klayman's Lanham Act claim was brought under federal law, the Lanham Act and Florida's Anti-SLAPP statute, in combination, allow for Defendants to recover all fees incurred in defending themselves against Klayman.

### 3.3    Klayman and Attorney Biswas Unreasonably and Vexatiously Multiplied Proceedings – 28 U.S.C. § 1927

Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The court may consider litigation conduct of the attorneys in other proceedings when making this determination. *Travelers Ins. Co. v. St. Jude Hosp.*, 38 F.3d 1414, 1418 (5th Cir. 1994) (finding that conduct in bankruptcy proceedings outside of main case could be used to determine that conduct in main case was taken in bad faith or with an improper motive). Courts consider three factors in determining the amount of a § 1927 sanction: "(1) whether there is a connection between the amount of monetary sanctions imposed and the sanctionable conduct by the violating party; (2) whether the costs or expenses claimed by the aggrieved party are "reasonable," as opposed to self-imposed, mitigable, or the result of delay in seeking court intervention; and (3) whether the sanction is the least severe sanction adequate to achieve the purpose of § 1927." *In re Silica Prods. Liabl. Litig.*, 398 F. Supp. 2d 563, 677 (S.D. Tex. 2005).

Just as Plaintiffs and their counsel litigated this case in an unreasonable manner, they unreasonably and vexatiously multiplied these proceedings. Amending a complaint after being

informed of fatal defects in their claims,[6] yet doing nothing to address these fatal defects in the amendment and adding time-barred claims against a new defendant, shows that Plaintiffs and their counsel filed the Amended Complaint for the sole purpose of multiplying proceedings. This improper motive has become even more apparent recently, as Plaintiffs made two efforts to object to the Report and Recommendation and sought reconsideration of the Court's order dismissing their claims, attempting to multiply the proceedings even further with a belated request for amendment and referring to arguments the Court has already rejected. Even when giving the benefit of the doubt to a *pro se* litigant, the Fifth Circuit has found that "filing repeated objections insisting that her complaint was sufficient and making disparaging remarks about the defendant, his attorney, and the district court judge constitute a clear record of contumacious conduct warranting dismissal." *Williamson v. Walker*, 378 Fed. Appx. 376, 377 (5th Cir. 2010). Plaintiff Klayman is no mere *pro se* plaintiff; he is an attorney and Dr. Corsi is represented by counsel. Attorneys Klayman and Biswas should know better, but they continued to multiply these proceedings in a completely unreasonable and vexatious manner. Sanctions against them under 28 U.S.C. § 1927 are warranted. This sanction should be payment of Defendants' attorneys' fees incurred in defending themselves from Plaintiffs' claims.

### 3.4    The Fees Requested are Reasonable

Defendants seek fees under federal law (15 U.S.C. § 1117(a) and 28 U.S.C. § 1927) and the Florida Anti-SLAPP law (Fla. Stat. § 768.295(4)).

In determining an appropriate fee award, the "lodestar" calculation method is the "most useful starting point." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar calculation consists of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). There is a presumption that a fee amount calculated by the lodestar method is reasonable. *Perdue v. Kenny A*, 559 U.S. 542, 553-54 (2010).

---

[6]    And the Court should recall that Klayman and Corsi litigated this issue as early as 2013. *See Farah*, 736 F.3d 528. It is not as if they decided to try out a novel theory for the first time as a reasonable argument for the expansion of the law. Further, Klayman claims to be a resident of the Southern District of Florida – where the *Tobinick v. Novella* case took place. *See Tobinick v. Novella*, 142 F. Supp. 3d 1275, 1279-82 (S.D. Fla. 2015); *see also Novella*, 848 F.3d at 951. This is well-worn legal ground. It comes as a surprise to precisely nobody that this Court dismissed this claim.

The court may increase or decrease the lodestar amount, however, upon consideration of twelve factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), called the *Johnson* factors. *Alvarez v. McCarthy*, 2020 U.S. Dist. LEXIS 59790, *1 n.1 (W.D. Tex. Apr. 6, 2020).[7]  Florida courts also apply the lodestar method to calculate reasonable fee award and use eight factors to determine an award which are essentially identical to the *Johnson* factors. *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122, 1126 (Fla. 2017).

Where Lanham Act claims are brought alongside other claims, a court should generally allow recovery under 15 U.S.C. § 1117(a) to be only for time spent on addressing the Lanham Act claims. However, time not strictly apportioned to Lanham Act claims is recoverable where "the Lanham Act and non-Lanham Act claims are so intertwined that it is impossible to differentiate between the work done on claims." *Gracie v. Gracie*, 217 F.3d 1060, 1069-70 (9th Cir. 2000).  Because the Lanham Act claim is premised on factual allegations essentially identical to those for all of Plaintiffs' other claims, the claims are so intertwined that, for most time entries, it is impossible to differentiate what work was unrelated to the Lanham Act claim.

### 3.4.1   Hourly Rates and Hours Worked

A list of attorney time entries and hours worked by Randazza Legal Group's attorneys is attached to this Motion as **Exhibit 2**.  Invoices for time entries and hours worked by Attorney Bradley J. Reeves is attached as **Exhibit 3**.  Attorney Marc Randazza's customary[8] billing rate is $800 per hour. [Declaration of Marc J. Randazza ("Randazza Decl."), attached as **Exhibit 4**, at ¶ 13.]  Attorney Jay Wolman's rate is $600 per hour. [*Id.* at ¶ 15.]  Attorney Bradley Reeves's hourly rate is $325 per hour.

---

7    These factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id.*

8    Defendants received a discount on their counsel's hourly rates in recognition of their stable attorney-client relationship and the First Amendment issues presented by this case, but a fee award is properly fashioned based on the reasonable value of an attorney's work, not what discounts the client received.

[Declaration of Bradley J. Reeves ("Reeves Decl."), attached as **Exhibit 5**, at ¶ 10.]  Attorney Alex Shepard's rate is $450 per hour.[9]  [Randazza Decl. at ¶ 16.]  Law Clerks Trey Rothell and Bryttni Yi's rate is $200 per hour.  [*Id.* at ¶¶ 20-21.]  Paralegals Cassidy Curran, Jasmyn Montano, Heather Ebert, Suzanne Levenson, Tennyson Fauver, and Precious Carroll's rate is $175 per hour.  [*Id.* at ¶¶ 22-27.]

Each time keeper[11] worked the following hours and billed the following amounts:

| Timekeeper | Total Hours Worked | Lanham Act Hours Worked | Total Amount Billed | Lanham Act Amount Billed |
|---|---|---|---|---|
| Marc J. Randazza | 93.4 | 67.7 | $74,060 | $53,500 |
| Jay M. Wolman | 174.4 | 143.2 | $103,720 | $85,180 |
| Bradley Reeves | 75.4 | 75.4 | $24,505 | $24,505 |
| Alex J. Shepard | 113.6 | 85.4 | $50,870 | $38,230 |
| Trey A. Rothell | 17.0 | 17.1 | $3,400 | $3,420 |
| Bryttni Yi | 6.2 | 6.2 | $1,240 | $1,240 |
| Cassidy Curran | 30.5 | 27.1 | $5,328.75 | $4,742.50 |
| Heather Ebert | 16.0 | 11 | $2,800 | $1,925 |
| Tennyson Fauver | 4.3 | 1.7 | $752.50 | $297.50 |
| Jasmyn Montano | 13.5 | 12.2 | $2,362.50 | $2,135.50 |
| Suzanne Levenson | 5.3 | 4.8 | $927.50 | $840 |
| Precious Carroll | 0.5 | 0.5 | $87.50 | $87.50 |
| **Total** | **550.0** | **452.3** | **$270,053.75** | **216,122.50** |

Defendants' counsel thus spent a total of 550 compensable hours of labor and $270,053.75 in billing defending them from Plaintiffs' frivolous lawsuit, with 452.3 compensable hours and

---

[9]    The  Fifth Circuit finds it proper to include time worked by attorneys not admitted to practice in the specific court where the case is pending. *See, e.g., Sandoval v. Apfel*, 86 F. Supp. 2d 601, 606 (N.D. Tex. 2000); *Padilla v. Astrue*, 2009 U.S. Dist. LEXIS 131691, *5-8 (W.D. Tex. Mar. 20, 2009); *Ace Am. Ins. Co. v. Walters*, 2014 U.S. Dist. LEXIS 15883, *8-11 (S.D. Tex. Feb. 7, 2014) (collecting cases); *Grant v. Gusman*, 2020 U.S. Dist. LEXIS 181831, *7-9 (E.D. La. Sept. 9, 2020); *Brown v. Asea Brown Boveria, Inc.*, 2018 U.S. Dist. LEXIS 812, *5-6 (S.D. Miss. Jan. 3, 2018).

[11]    Due to how long this case has gone on, there are several other attorneys and staff who have worked on this matter, namely attorneys Ronald D. Green, LaTeigra Cahill, and Marisa Cochrane; as well as paralegals Crystal Sabala, Elena Strakosha, Heather Snedeker, and Leo Ciaramitaro.  However, in order to simplify the Motion, Defendants have chosen to write off their time entirely.

$216,102.50 in billing attributable to defending Defendants from Plaintiffs' Lanham Act claim. Defendants also incurred $337.04 in costs, which should be taxed against Plaintiffs.

### 3.4.2   The Hourly Rates are Reasonable

#### 3.4.2.1   Skill and Experience of Attorneys

Marc Randazza's hourly rate is justified, and has been found so by multiple courts.  He is an experienced attorney who specializes in First Amendment and intellectual property litigation and is licensed to practice in five states.  Randazza was instrumental in the passage of Nevada's 2013 Anti-SLAPP legislation, and played a significant role in shaping the statute's 2015 amendments.  [Randazza Decl. at ¶¶ 10-11; Senate Committee on Judiciary hearing on Nev. SB 286 (May 6, 2013), attached as **Exhibit 6**.]  When Nevada's Anti-SLAPP statute was amended in 2015, Randazza successfully led the lobbying effort to save the statute from repeal, and was instrumental in crafting the language in the statute today.  [Randazza Decl. at ¶ 11; Minutes of Assembly Committee on Judiciary hearing on SB 444, April 24, 2015, attached as **Exhibit 7**, at 35-38.]

Randazza is a nationally recognized expert on Anti-SLAPP legislation and free speech and intellectual property issues, and has assisted legislatures in Nevada, Pennsylvania, Ohio, Missouri, New Hampshire, and New York on Anti-SLAPP legislation. [*See* Randazza Decl. at ¶¶ 9-12; **Exhibits 6-7**; video of public hearing on Pennsylvania Senate Bill 1095, April 23, 2014, at 32:30-43:47.][12]  He is the author of Nevada Lawyer articles on that state's Anti-SLAPP statute. [*See* Marc Randazza, "Nevada's New Anti-SLAPP Law: The Silver State Sets the Gold Standard," Nevada Lawyer (Oct. 1, 2013), attached as **Exhibit 8**; Marc Randazza, "Nevada's Anti-SLAPP Law Update," Nevada Lawyer (Sept. 2016) attached as **Exhibit 9**.] He has also published numerous other law review articles on free speech issues.  [*See curriculum vitae* of Marc Randazza, attached as **Exhibit 10**.]

Randazza has been a commentator for CNN on free speech issues. [*See* Randazza Decl. at ¶ 9.] And, he previously has been a commentator on FOX News for First Amendment issues. [*See id.*] Randazza holds a JD from Georgetown University Law Center, a Master's in Mass Communications

---

[12]   Available at: <http://judiciary.pasenategop.com/senate-bill-1095-slapp-suits/> (last visited July 9, 2021).

from the University of Florida (with a media law focus), and an international degree in the form of an LLM from the University of Turin, Italy, where he wrote and published a thesis on freedom of expression issues. [**Exhibit 10**; Marc J. Randazza, "Freedom of Expression and Morality-Based Impediments to the Enforcement of Intellectual Property Rights, 16 Nev. L.J., 107 (Jan. 15, 2016).] Mr. Randazza has been a practicing attorney for 19 years. [Randazza Decl. at ¶ 1.] Randazza has taught First Amendment law at the law school level. [**Exhibit 10**.] And, he gives presentations to attorneys in CLE courses on how to handle Anti-SLAPP litigation. (*Id.*) Former Nevada senator Justin Jones described Mr. Randazza as "one of the preeminent experts on the issue" of Anti-SLAPP litigation. [**Exhibit 6** at 3.] Randazza's experience in free speech issues is relevant not only to Plaintiffs' defamation and related state tort claims, but also Plaintiffs' Lanham Act claim, as that claim failed precisely because it attempted to premise liability on speech protected under the First Amendment.

According to the Adjusted Laffey Matrix, the reasonable billing rate for such an experienced attorney, with no other qualifications, is $759 per hour. [Adjusted Laffey Matrix, attached as **Exhibit 11**.] This hourly rate is for attorneys of Randazza's years of experience, but not for attorneys with specialized expertise in First Amendment law and Anti-SLAPP litigation. Randazza's specialized expertise justifies him billing at even a higher rate than $759 per hour.

Attorney Jay Wolman is a graduate of Georgetown University Law Center, is admitted to practice in Connecticut, New York, Massachusetts, and the District of Columbia, and has been practicing for 20 years. [Randazza Decl. at ¶ 15.] He has significant experience in free speech and trademark litigation. [*Id.*] According to the Adjusted Laffey Matrix, the standard acceptable billing rate for an attorney of his experience is $914 per hour. [*See* **Exhibit 11**.] Wolman's hourly rate of $600 is thus reasonable, and in fact, quite low.

Attorney Bradley Reeves is a graduate of South Texas College of Law, is admitted to practice in Texas, and has been practicing for over 10 years. [Reeves Decl. at ¶ 1.] According to the Adjusted Laffey Matrix, the standard acceptable billing rate for an attorney of his experience is $672 per hour. [*See* **Exhibit 11**.] Reeves's hourly rate of $325 is thus reasonable.

Attorney Alex Shepard earned his JD from Washington University School of Law, is licensed

to practice in both Nevada and California, and has over 7 years of experience primarily in intellectual property and First Amendment litigation, including Lanham Act cases.  [Randazza Decl. at ¶ 16.] According to the Adjusted Laffey Matrix, the standard acceptable billing rate for an attorney of his experience is $465 per hour.  [*See* **Exhibit 11**.]  Shepard's hourly rate of $450 is thus reasonable.

Trey Rothell is a law clerk with over six years of paralegal experience and recently graduated from Florida State University College of Law.  [Randazza Decl. at ¶ 20.]  Bryttni Yi is a law clerk with 1 year of legal experience and recently graduated from Brooklyn Law School.  [Randazza Decl. at ¶ 21.]  Under the Adjusted Laffey Matrix, they are able to command a fee of $206 per hour.  [*See* **Exhibit 11**.]  Rothell and Yi's hourly rate of $200 is thus reasonable.

Jasmyn Montano, Heather Ebert, Cassidy Curran, Tennyson Fauver, Suzanne Levenson, and Precious Carroll were or are paralegals with one to three years of experience each.  (Randazza Decl. at ¶¶ 22-27.)  According to the Adjusted Laffey Matrix, they are each able to command a fee of $206 per hour.  [**Exhibit 11**.]  Their hourly rate of $175 is thus reasonable.

### 3.4.2.2    Recognition by Other Courts

The above hourly rates have been found reasonable just recently in *Cheng v. Guo*, No. A-18-779172-C (Nev. Dist. Ct. Jun. 4, 2020), *Las Vegas Resort Holdings, LLC v. Roeben*, Case No. A-20-819171-C (Nev. Dist. Ct. Dec. 30, 2020), and *Postle v. Brill*, Case No. 34-2020-00286265 (Cal. Sup. Ct. July 2, 2021).  The court in the *Guo* and *Roeben* cases found hourly rates of $800, $550, and $450 for attorneys Marc J. Randazza, Ronald D. Green,[13] and Alex J. Shepard, respectively, as well as $200/hour for Trey Rothell and $175/hour for paralegals.  [*See* Order granting motion for attorneys' fees in *Cheng*, attached as **Exhibit 12**, at 2-4 (recognizing Mr. Randazza as "a nationally recognized expert on Anti-SLAPP legislation and free speech issues, has assisted the judiciary committees in both Nevada and Pennsylvania on Anti-SLAPP legislation, and has also published numerous other law review articles on free speech issues," and has been a commentator on Fox News and CNN on free speech and First Amendment issues); *see also* Order granting motion for attorneys' fees in *Roeben*, attached as **Exhibit 13**

---

[13]    Attorney Green has a similar amount of experience as Attorney Wolman, and thus the same hourly rate for both is reasonable. [Randazza Decl. at ¶¶ 14 & 15.]

(finding that "Defendant's counsel is nationally regarded for their experience in defamation and Anti-SLAPP litigation, and has specialized knowledge and experience regarding the issues in this case").] The *Brill* court approved of hourly rates of $800 for Randazza, $450 per hour for Shepard, and $175 for paralegals. [Order granting motion for attorneys' fees in *Brill*, attached as **Exhibit 14**.]

Previously, the court in *Tobinick v. Novella*, 207 F. Supp. 3d 1332 (S.D. Fla. 2016) approved of hourly rates for attorneys similar to those sought here,[14] and ultimately awarded $223,598.75 to the defendant for fees in connection with the plaintiff's Lanham Act claims. In 2016 in *iQTAXX, LLC v. Boling*, No. A-15-728426-C, 2016 BL 154334 (Nev. Dist. Ct. May 10, 2016), attached as **Exhibit 15**, the court found hourly rates of $650 for Mr. Randazza and $325 for Mr. Shepard to be reasonable.

These rates are reasonable, and in fact, low when compared to those in various free speech cases involving highly qualified counsel and public figure plaintiffs or defendants. The court in *Wynn v. Chanos*, 2015 U.S. Dist. LEXIS 80062, *6 (N.D. Cal. June 19, 2015) found it was reasonable for the defendant's attorneys to charge an hourly rate between $1,035 and $1,085 despite their lack of specialized experience in defamation law. Randazza's rate of $800 per hour and Wolman's rate of $600 per hour is a bargain compared to this, especially considering their special expertise in the areas of law germane to this case. The *Chanos* court additionally found that associate attorney rates of $570 to $710 per hour (for associates with four and six years of experience, respectively) were reasonable. Mr. Shepard's rate of $450 per hour is remarkably cheap in comparison.

More recently in California is *Clifford v. Trump*, 2018 U.S. Dist. LEXIS 211297, *19 (C.D. Cal. Dec. 11, 2018), where the court awarded nearly $300,000 in attorneys' fees and costs under a Texas fee-shifting statute; the prevailing defendant successfully transferred venue and dismissed a single defamation claim that implicated simpler issues of defamation law than those presented here. The court found that, for highly qualified defamation attorneys, partner hourly rates ranging from $841 to $611 were reasonable, and associate hourly rates from $586 to $307 were reasonable. In the Northern District of California case of *Open Source Sec., Inc. v. Perens*, 2018 U.S. Dist. LEXIS 98169, *7-8 (N.D.

---

[14]   The defendant in that matter sought rates of $650/hour for Randazza, $400/hour for Wolman, $325/hour for Shepard, and $180/hour for paralegal time.

Cal. June 9, 2018), the prevailing Anti-SLAPP defendant was found to be entitled to hourly rates of $880 to $995 for experienced partners, and rates from $355 to $535 for associates.

### 3.4.3    The Number of Hours Worked is Reasonable

All the hours worked in this case were necessary to obtain dismissal of Plaintiffs' claims without the burden of unnecessary discovery and to respond to Plaintiffs' unreasonable and vexatious litigation conduct.  Defendants' motions to dismiss were necessary to dismiss Plaintiffs' claims, and a second round of motions to dismiss were necessary given Plaintiffs' decision to file an amended complaint that did not fix any of the original complaint's problems.  As to the amended complaint, Defendants filed separate and distinct motions to untangle the jumbled-together claims because (1) materially different arguments were available to Owen Shroyer given that there was never an allegation that he actually did anything; and (2) Defendants were trying to respect the fiction that Klayman was not representing Dr. Corsi and filed separate motions to dismiss as to them, particularly since the Florida Anti-SLAPP statute only applied to Klayman. Plaintiffs' attempts to challenge the Magistrate Judge's Report and Recommendation were frivolous, but Defendants nonetheless had to respond to the arguments in Plaintiffs' motion to vacate the Report and Recommendation, their subsequent objection to it, and their motion for reconsideration.  Though the arguments in each of these filings were drawn from their motion to dismiss briefing, Plaintiffs introduced new arguments about the Magistrate Judge that misconstrued or outright misrepresented the Report and Recommendation, and Plaintiffs also made the new argument in their motion for reconsideration that they should be granted leave to amend. Defendants had to spend time responding to these non-meritorious arguments.

Other filings and time entries were also reasonably necessary.  *Pro hac vice* motions were necessary for Defendants to be represented by their counsel of choice, who previously appeared in D.C. Seeking a status conference after transfer to this Court was necessary due to Plaintiffs' failure to appear following transfer. Owen Shroyer's motion for sanctions was necessary in light of Dr. Corsi doubling down on keeping him in the case despite making no allegations against him specifically. Opposing Plaintiffs' procedurally improper attempts at discovery was necessary to avoid unneeded

depositions, and Magistrate Judge Austin agreed. Opposing Plaintiffs' procedurally improper attempt to prevent the Magistrate from deciding the motions to dismiss was necessary for the efficient management of this case, as the Court had already decided in referring the case to the Magistrate.

There was also some time spent in this case on correspondence with Plaintiffs, including addressing how to respond to Plaintiffs' threats of litigation before actually filing suit. This work was necessary to determine what Defendants' options and potential liabilities were, as well as to potentially resolve the dispute before litigation was filed. Plaintiffs ultimately filing their frivolous lawsuit does not make this work unnecessary.

Overall, the affirmative actions Defendants took in this case were filing motions to dismiss and a motion for sanctions. Everything else was done in response to Plaintiffs' procedurally improper motion practice and frivolous attempts to overturn dismissal of their claims.

### 3.4.4   The *Johnson* and *Joyce* Factors Show the Requested Fee Award is Reasonable

#### 3.4.4.1   Time and Labor Required

As explained in Section 3.4.3, *supra*, all time spent on this case was reasonable. As an example of billing discipline, Defendants' counsel also wrote off a significant amount of time, including writing off all time entries of other attorneys and staff who performed valuable work on this case but had a limited role in it. This factor weighs in favor of the reasonableness of the requested fee award.

#### 3.4.4.2   Novelty and Difficulty of Issues

This case dealt primarily dealt with jurisdictional issues, defamation law, and the Lanham Act. However, to address all of the bad-faith arguments and frivolous claims Plaintiffs brought, Defendants' counsel also needed to research and brief the contours of Texas law on secondary liability to address Plaintiffs' surrogacy theory, the constitutional contour of true threats to address their assault claim, and Texas law on intentional infliction of emotional distress. Consideration of the laws of three jurisdictions was also necessitated.  Defense also required maintaining familiarity with the other, duplicative lawsuits Plaintiffs filed in other courts so that Defendants could inform this Court of such lawsuits and their outcome.  This should have been a simple defamation case, but Plaintiffs decided

to needlessly complicate it by throwing in duplicative claims and unusual legal theories, all of which had to be addressed. This factor weighs in favor of the reasonableness of the requested fee award.

### 3.4.4.3    Requisite Skill

Plaintiffs' claims are frivolous, but they tried to repackage them as one of unfair competition among competing political commentators. Randazza Legal Group is intimately familiar with this tactic, as its attorneys have observed a growing trend of defamation plaintiffs masquerading defamation claims as Lanham Act claims. [Randazza Decl. at ¶ 33.] Without this experience, Defendants would not have been able to secure dismissal of Plaintiffs' claims without having to undergo the burden and expense of discovery. This factor weighs in favor of the reasonableness of the requested fee award.

### 3.4.4.4    Preclusion of Other Employment

This was a time-consuming case that required hundreds of hours from Randazza Legal Group's attorneys.  It is a small firm with only 4 full-time attorneys available to work on all matters, and so dismissing Plaintiffs' claims against Defendants precluded Randazza Legal Group from taking on clients or matters that otherwise would have been available to it.  [Randazza Decl. at ¶ 34.]

### 3.4.4.5    Customary Fee

When considering the skill of Defendants' attorneys and the nature of this case, the hourly rates charged by Defendants' counsel are in line with those approved of by Texas district courts.  *See Miller v. Raytheon Co.*, 2013 U.S. Dist. LEXIS 180752, *26-29 (N.D. Tex. Dec. 27, 2013) (finding hourly rates of $685, $550, and $375 for attorneys at small firm with under 30 attorneys to be reasonable);[15] *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1087-88 (S.D. Tex. 2012) (in class action case, finding hourly rate of $825 for one attorney and median hourly rate of $400 to be reasonable); *City of San Antonio v. Hotels.com, L.P.*, 2017 U.S. Dist. LEXIS 58384, *36-37 (W.D. Tex. Apr. 17, 2017) (approving hourly rates of $625 for attorneys with over 20 years of experience, $475 for attorneys with 10 to 20 years of experience, and $350 for attorneys with 5 to 9 years of experience). Furthermore, in 2017, the *Houston Chronicle* observed that an influx of national law firms to the state had caused a spike in the

---

[15]    Though these rates are lower than those sought here, the Court should keep in mind average hourly rates have increased since 2013).

hourly rates charged not only by those firms, but also local Texas firms, with several hundred attorneys charging over $800 per hour. [Mark Curriden, "Texas legal rates soar as national firms rush in," HOUSTON CHRONICLE (Mar. 24, 2017), attached as **Exhibit 16**.][16]

### 3.4.4.6    Fixed or Contingent Fee

Due to the nature of defense work, Randazza Legal Group charged Defendants an hourly fee. This factor is thus neutral.

### 3.4.4.7    Time Limitations

Parties actually trying to litigate in good faith would not have engaged in the kind of motion practice Plaintiffs have here, including forcing all Defendants to seek an emergency protective order or a stay of discovery initiated by Plaintiffs who had not even fulfilled the most basic prerequisite to conduct it.  Had Plaintiffs conducted this case in a reasonable manner, Defendants' counsel would not have had to spend as much time on this case, and certainly would not have been subject to the same time constraints.  Randazza Legal Group is a small law firm, and so this waste of time had a notable effect on its ability to serve other existing and potential clients. [Randazza Decl. at ¶ 35.]

### 3.4.4.8    Amount Involved and Results Obtained

Plaintiffs sought compensatory damages in excess of $75,000,000 for each of them, in addition to treble damages under the Lanham Act.  [Dkt. 47 at 25-26.]  This means, by Plaintiffs' own estimation, this case was worth $450,000,000.  The requested fee award is a fraction what Plaintiffs sought. Defendants' counsel also managed to secure dismissal of all claims with prejudice.  This factor weighs in favor of the reasonableness of the requested fee award.

### 3.4.4.9    Experience, Reputation, and Ability of Attorneys

As explained in Section 3.4.2.1, *supra*, Defendants' counsel have over 50 years of experience between them, largely in intellectual property and free speech litigation. Attorney Randazza, in particular, has a national reputation for representing often unpopular clients in free speech cases and

---

[16]    Available at: https://www.houstonchronicle.com/business/article/Texas-legal-rates-soar-as-national-firms-rush-in-11025525.php (last accessed July 9, 2021).

has built a practice focused on this particular kind of litigation. This factor weighs in favor of the reasonableness of the requested fee award.

### 3.4.4.10    Undesirability of the Case

Defendants have the same First Amendment rights as anyone else in the U.S., but they are deeply unpopular throughout the country for the views they express.  Though Defendants' counsel is proud to protect Defendants' First Amendment rights, they have drawn significant criticism and ire from the general public for their decision to represent Defendants in this matter.  [Randazza Decl. at ¶ 36; Reeves Decl. at ¶ 18.]  This factor weighs in favor of the reasonableness of Defendants' requested fee award, as a failure to award fees in a case just because the defendants are unpopular is likely to render many other defendants without access to justice.

### 3.4.4.11    Nature and Length of Client Relationship

Defendants seek a fee award based on their customary rate, and so discounts in recognition of a good relationship with a client do not factor into what fee award should be granted.

### 3.4.4.12    Awards in Similar Cases

As explained in Section 3.4.2.2, *supra*, Defendants' counsel have been awarded fees in multiple free speech cases, whether or not involving the Lanham Act.  The case most comparable to the case here is *Novella*, where the plaintiff brought Lanham Act claims based on non-commercial speech and Defendants' counsel obtained an attorneys' fee award of over $200,000 solely for work performed in connection with the Lanham Act claims.  This was in addition to fees awarded under California's Anti-SLAPP statute. Furthermore, in other free speech cases, courts have awarded fees and approved of hourly rates similar to or higher than those sought here.

## 4.0    CONCLUSION

For the foregoing reasons, the Court should award Defendants $270,053.75 in attorneys' fees or, at bare minimum $216,102.50 in fees for work performed in connection with defense against Plaintiffs' Lanham Act claim.

## MEET AND CONFER CERTIFICATION

Pursuant to Rule CV-7(g) and CV-54(b), undersigned counsel hereby advises the Court that counsel for the moving Defendants have attempted to confer in good-faith with Attorney Biswas (counsel for Plaintiff Corsi) and with Plaintiff Klayman prior to the filing of this motion.  However, both plaintiffs frustrated these efforts and refused to meet or confer.  The matter could not be resolved by agreement because Plaintiffs declined to confer in good faith regarding the entitlement to fees or the amount thereof.

Dated: July 9, 2021                              Respectfully submitted,

                                                 /s/Marc J. Randazza
                                                 Marc J. Randazza
                                                 Jay M. Wolman (*pro hac vice*)
                                                 RANDAZZA LEGAL GROUP, PLLC
                                                 2764 Lake Sahara Drive, Suite 109
                                                 Las Vegas, NV 89117
                                                 Telephone: 702-420-2001
                                                 ecf@randazza.com

                                                 Bradley J. Reeves (TX Bar No. 24068266)
                                                 REEVES LAW, PLLC
                                                 702 Rio Grande Street, Suite 306
                                                 Austin, TX 78701
                                                 Telephone: 512-827-2246
                                                 brad@brtx.law

                                                 Attorneys for Defendants
                                                 Infowars, LLC; Free Speech Systems, LLC;
                                                 Alex E. Jones; and Owen Shroyer

RANDAZZA | LEGAL GROUP

Civil Action No. 1:20-cv-00298-LY

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above document was filed and served upon all parties of record on July 9, 2021 by CM/ECF, the court's electronic filing system.

/s/ Marc J. Randazza
Marc J. Randazza