**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

DR. JEROME CORSI, et al

　　　　　　　Plaintiffs

　　　　v.

INFOWARS, LLC, et al

　　　　　　　Defendants.

**Case Number:   1:20-cv-298-LY**

**HEARING RESPECTFULLY**
**REQUESTED**

## PLAINTIFFS JEROME CORSI'S AND LARRY KLAYMAN'S OPPOSITION TO DEFENDANT DAVID JONES' MOTION FOR ATTORNEY'S FEES AND COSTS AND CROSS MOTION FOR ATTORNEY'S FEES AND COSTS

Plaintiffs Jerome Corsi and Larry Klayman ("Plaintiffs") hereby submit the following in opposition and response to Defendant David Jones' ("Defendant Jones") Motion for Attorneys' Fees and Sanctions. ECF No. 158.  First, and foremost, Defendant Jones' motion, as it that of the other defendants,  is not only non-meritorious they are entirely premature, as Plaintiffs still have pending an appeal to the U.S. Court of Appeals for the Fifth Circuit. ("Fifth Circuit") At a bare minimum, Defendant Jones' motion should not be considered until Plaintiffs have been allowed to exhaust all legal avenues, as Defendant Jones' and the other Defendants motions for attorneys fees would obviously be mooted out by any future ruling favorable to Plaintiffs. It is therefore is a misuse of judicial resources, as well as Plaintiffs' resources, to even have to consider Defendant Jones' motion at this time.  Furthermore, as shown in Exhibit 1, counsel for Plaintiffs have requested an investigation by the Chief Judge of this Court as well as the Federal Bureau of Investigation and United States Attorney into this case. This investigation is necessary because

1

Plaintiffs were summarily denied any hearings on the substantive motions, as well as discovery, among other inexplicable actions and judicial conduct. As just one example, there was absolutely no reason for discovery to be stayed, as it was in this case, since there was no applicable anti-SLAPP statute (although Defendants have disingenuously asserted that the Florida Anti-SLAPP statue be applied here, which would, of course, result in a two year statute of limitations for defamation under Florida law) and, given all the enumerated circumstances, it strongly shows that appears to be some outside influences working behind the scenes. At a minimum, a stay must be entered pending this investigation. More importantly, however is the fact that the Defendant Jones' motion is wholly without merit, as set forth below.

Plaintiffs had no choice but to file this lawsuit, as they were severely harmed, and continue to be harmed, by the malicious defamation of Defendant Jones, in concert with the Infowars Defendants and Defendant Stone not only to their personal reputations, but in their trades and professions, as defamation *per se*. In addition and importantly, as also set forth below, Plaintiffs were unfairly competed against in violation of the Lanham Act, 15 U.S.C. § 1125. Indeed, Plaintiffs properly pled all causes of action and even went far beyond the necessary pleading standard to provide sworn affidavits in support. Even more, in their Motion for Reconsideration, Plaintiffs have requested leave to amend any areas that the Court deemed insufficiently pled, which the Court erroneously denied, and all of this is now up on appeal to the Fifth Circuit.

With regard to Defendant Jones specifically, the primary issue that the Court took, and which Defendant Jones now takes in his motion, is that the Amended Complaint did not allege facts that showed that he had personally been involved in the conduct at issue. At the initial hearing before Judge Yeakel in this matter, counsel for Defendant Jones attempted to make this

argument that his client had no involvement, which was then correctly discounted at the pleading

stage by Judge Yeakel:

> I have never encountered a defendant that wanted to be in a lawsuit or be sued. Never happened in private practice. None of my clients were ever properly sued when I was in private practice. Everyone I sued when I represented plaintiffs deserved to be in the lawsuit.

It is clear that Judge Yeakel's initial reaction was correct, as the Amended Complaint alleged:

> Defendant David Jones is Defendant Alex Jones's father and holds the official title of Director of Human Relations for Defendant Free Speech Systems. On information and belief, Defendant David Jones is the owner of Defendant InfoWars and Free Speech Systems and he manages and controls the business and related activities for Defendants InfoWars and Free Speech Systems, as well as Defendant Alex Jones' other companies. Defendant David Jones is a citizen of Texas. At all material times he worked in concert with and as an agent for the other Defendants and Defendant Roger Stone and furthered, participated in and ratified the illegal acts set forth in this Complaint. He profits and profited at all material times financially and otherwise from the tortious acts of the other Defendants. Am. Comp. ¶ 8.

> In any event, Plaintiffs buttressed the record with a sworn affidavit from Kelly Morales,

Defendant Alex Jones' ex-wife, which showed that Defendant Jones is intricately involved in

every single facet of Infowars' operations, including its "defamation for profit":

> I am the former wife of Defendant Alex Jones. I was married to Alex Jones for 12 years and with him for 15 years and we have 3 children together. During our time together, I was involved in the activities of Alex, his father David and Infowars and am intimately knowledgeable about their activities and business structure.

> Based on my personal knowledge and experience, David Jones runs Infowars with Alex Jones and helps him with his activities, including fixing media stories and endorsing and/or aiding his slanderous and/or fraudulent behaviors, all for profit.

> Infowars, LLC is a sub-entity of Free Speech Systems, LLC ("FSS"), and David Jones is an employee of FSS, or he has been.

> David Jones is additionally a managing member of multiple entities that are closely held businesses, constituting financial holding companies or financial distribution centered around Infowars/Alex Jones' supplement line, which are quintessential to funding and running Infowars.

Alex Jones could not function without David Jones, and has conspired with him on the past to commit this breach of fiduciary duty and fraud on my business with Alex Jones. While David Jones did this, he slandered and/or defamed me to experts and assisted Alex Jones and his attorneys to do the same, so as to steal/hide my estate and his grandchildren's inheritance.

David Jones is additionally a managing member of multiple entities that are closely held businesses, constituting financial holding companies or financial distribution centered around Infowars/Alex Jones' supplement line, which are quintessential to funding and running Infowars. ECF No. 74, Ex. 3. Exhibit 2.

Plaintiffs were not able to obtain this compelling affidavit of Ms. Morales until September, 2020, after they had amended their Complaint, which is why this affidavit was not included in and attached to the Amended Complaint. The Morales Affidavit completely eliminates any potential argument from Defendant Jones that he was not "personally involved" in the conduct at issue.

Then, when the Court erroneously adopted the fatally flawed and for lack of a less diplomatic word bizarre Report and Recommendation of Magistrate Austin and dismissed all claims against Defendant Jones, as well as the other Defendants, the reasoning that it employed was that that Morales Affidavit, as well as accompanying affidavits by the Plaintiffs which further buttressed allegations against Defendant Jones, could not be considered under the Fed. R. Civ. P. 12(b)(6) standard: "[t]he affidavits referenced in Corsi and Klayman's objections were attached to Corsi and Klayman's opposition briefs and not included with the Amended Complaint. The Magistrate is correct to focus on the actual pleadings and the application of the Rule 12(b)(6) legal standard." ECF No. 122 at 3. This reasoning appears to admit that dismissal would have been improper had the affidavits been properly considered, which is really the only possible conclusion given how detailed they were.

Thus, in the interests of due process and fundamental fairness Plaintiffs requested leave to file a Second Amended Complaint, with all of the affidavits attached and incorporated, which totally mooted out any possible "deficiencies" that the Court may have perceived. This made the

Court's decision to deny leave to file a Second Amended Complaint especially curious, as it effectively  admitted that these affidavits were sufficient to proceed past the 12(b)(6) stage, but that it simply did not want to adjudicate this case any further, for whatever reason. Thus, the Court created a "heads I win, tails you lose"  scenario for Plaintiffs.  Indeed, this flies in the face of FRCP Rule 15(a), which provides that leave to amend shall be freely given when justice requires. "Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999). The U.S. Supreme Court has declared that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1136 (D.C. Cir. 1989). The U.S. Supreme Court explained that "if the underlying facts or circumstances relied upon by a plaintiff may be a proper source of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 at 182. This egregious error is now on appeal to the Fifth Circuit.

All this goes to say that Plaintiffs have put on the record detailed affidavits that Defendant Jones was intricately involved in every aspect of the underlying misconduct, and it was only through the error of the Court that they have not been considered. Thus, there is absolutely nothing frivolous about Plaintiffs' claims, and attorneys' fees and costs are clearly not warranted.

## I.     Plaintiffs Did Not File Numerous, Repetitive Cases

Defendant Jones, in line with the repeated strategy of his co-Defendants, disingenuously attempts to create the misleading if not outright false impression that Plaintiffs have filed the same case over and over again. This is not the case. Plaintiffs filed this case *first*, in the U.S. District Court for the District of Columbia, on March 7, 2019. This case was then transferred to

this Court on March 20, 2020. The case before Judge Altman in the U.S. District Court for the Southern District of Florida was not filed until April 20, 2020, and was brought by Plaintiff Klayman *only*. *Klayman v. Infowars*, LLC, et al., Case No. 9:20-cv-80614 (S.D. Fla.). Notably, this case was not dismissed by Judge Altman, but instead, in actuality and in truth, Mr. Klayman took a voluntary dismissal when, based on Altman's refusal to respond to Mr. Klayman's inquiry and other circumstances, he concluded based on objective facts that the judge likely had a personal relationship with Roger Stone and had likely been recommended for appointment by President Trump to the federal bench by Stone, one of the Defendants. Thus, there was never any judicial determination on the merits in this case, contrary to the false statements of the Defendants.

Lastly, the case cited by Defendant Jones which was original filed in Broward County, and later removed by the Defendants to the U.S. District Court for the Southern District of Florida, *Klayman v. Infowars, LLC et al*, 0:20-cv-61912 (S.D. Fl.), also was brought by Plaintiff Klayman *only* and not Dr. Corsi. It also included Defendant Stone from the very outset, whereas Defendant Stone was only added to this action as a part of the Amended Complaint out of an abundance of caution because Plaintiffs believed that Court might find him an indispensable party. Fed. R. Civ. P. 19. Thus, each case was brought a different purpose, and they are not duplicative or repetitive, contrary to Defendant Jones' disingenuous if not false assertions. Indeed, as set forth previously, Mr. Klayman and Dr. Corsi offered to consolidate these cases, but it was the Defendants who refused, showing that their intention all along was to "play games" and attempt to disingenuously and misleadingly assert that Plaintiffs have filed repetitive lawsuits.

## II.      Sanctions Are Not Warranted Under 15 U.S.C. § 1117(a)

The Infowars Defendants seek sanctions under 15 U.S.C. § 117(a), which states that reasonable attorneys fees may be awarded on in <u>exceptional</u> cases. An "exceptional" case is simply one that stands out from the others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District Courts may determine whether a case is "exceptional" in the case- by-case exercise of their discretion, considering the totality of the circumstances. *Octane Fitness, LLC v. Icon Health & Fitness*, 134 S. Ct. 1749, 1756 (2014).

Here, to the contrary Plaintiffs' case under the Lanham Act was "exceptionally" strong, and the Court's granting of dismissal in this regard was in clear error.

## A.    Plaintiffs' Litigating Position Was Very Strong

Indeed, the only thing "exception" about this case was how strong Plaintiffs' Lanham Act claims were. The dismissal by the Court is subject to appeal to the U.S. Court of Appeals for the Fifth Circuit. Plaintiffs respectfully assert that the Court's adoption of the Magistrate's Report and Recommendation that Plaintiffs lacked standing was in error and that it will be reversed on appeal by the Fifth Circuit

In *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983) the Supreme Court set forth a three-factor test for determining whether speech is commercial. These factors are (i) whether the communication is an advertisement, (ii) whether it refers to a specific product or service, and (iii) whether the speaker has an economic motivation for the speech.

In *Bolger*, the Supreme Court found that "informational pamphlets discussing the desirability and availability of prophylactics in general or  Youngs' products in particular" constituted commercial speech despite the fact that they contained "discussions of important public issues such as venereal disease and family planning." *Id*.at 67. In doing so, the Supreme

Court reasoned:

> We have made clear that advertising which "links a product to a current public debate" is not thereby entitled to the constitutional protection afforded noncommercial speech. *Central Hudson Gas & Electric Corp.* v. *Public Service Comm'n of New York*, 447 U.S., at 563, n. 5. A company has the full panoply of protections available to its direct comments on public issues, so there is no reason for providing similar constitutional protection when such statements are made in the context of commercial transactions. See *ibid*. Advertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues. *Id*. at 68.

The *Bolger* case definitively rebuts the strategy of attempting to mischaracterize the issue as competition in the "marketplace of ideas." A Defendant cannot escape liability under the Lanham Act simply by disguising their commercial speech as public discourse.

Other circuits have reached the same conclusion. In *Procter & Gamble Co.* v. *Haugen*, 222 F.3d 1262 (10th Cir. 2000), the Tenth Circuit found that the following was commercial speech:

> I wanna run something by you real quick that I think you will find pretty interesting. Just talking to a guy the other night about this very subject and it just so happens that a guy brings information in and lays it on my desk this morning, so here it goes.
>
> It says the president of Procter & Gamble appeared on the Phil Donahue Show on March 1, '95. He announced that due to the openness of our society, he was coming out of the closet about his association with the church of satan. He stated that a large portion of the profits from [P&G] products go to support his satanic church. When asked by Donahue if stating this on television would hurt his business, his reply was, "There are not enough Christians in the United States to make a difference." And below it has a list of the [P&G] products which I'll read: [the subject message then lists 43 P&G products].
>
> It says if you are not sure about a product, look for the symbol of the ram's horn that will appear on each product beginning in April. The ram's horn will form the 666 which is known as satan's number. I'll tell you it really makes you count your blessings to have available to all of us a business that allows us to buy all the products that we want from our own shelf and I guess my real question is, if people aren't being loyal to themselves and buying from their own business, then whose business are they supporting and who are they buying from. Love you. Talk to you later. Bye.

In doing so, the Tenth Circuit reasoned:

In the present case, we are likewise dealing with a message containing both a noncommercial, "theological" component and a commercial component. As *Bolger* and *Fox* indicate, however, the bare fact that the subject message contains a "theological" component is insufficient to transform it into noncommercial speech.

Furthermore, we reject appellees' assertion that the subject message does not promote "commercial transactions." On the contrary, the message unambiguously urges recipients to eschew purchasing P&G products in favor of Amway products. While economic motivation or reference to a specific brand name and products, when viewed in isolation, might not render a message commercial speech, we conclude that those factors taken together with the instant message's promotion of Amway products at the expense of P&G products support the characterization of the subject message as commercial speech.

Similarly, in *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109 (8th Cir. 1999), the Eighth Circuit found that the following was commercial speech:

*ALERT* Please be advised that a filter has been introduced to the marketplace that in *appearance* seems to be a "clone" of the Pall Breathing Circuit Filter (BB-50T). Be advised that the similarity *ends* with appearance. The attached [set of reports] notes a serious *hydrophobic deficiency* as to the competitive product. The "clone" device is offered by a company called Porous Media. If your particular application for the Pall BB-50T operates in *any* moist, wet, high-humidity (condensation) environment, then you will run into "product occurrence" situations routinely should you utilize the Porous Media device instead of the Pall BB-50T. I urge you or your engineering staff to consider the enclosed, and conduct your own tests for verification if necessary. Please contact me with any questions or comments.

In doing so, the Eighth Circuit reasoned, "**Whatever nobler concerns may have driven Pall to inform the market of the public health dangers allegedly posed by Porous's non-hydrophobic filter, "commercial speech" need not originate *solely* from economic motives**." (emphasis added).

Both *Porous Media* and *Haugen* involved one competitor denigrating the quality of another competitor's goods and/or services for their financial gain, which is exactly what is alleged here:

Plaintiffs, like Defendants, rely on viewer and listener financial and other support

> and sales and their reputations and good will in order to continue their work. Defendants' false and/or misleading statements concerning Plaintiffs is meant to, and has, diverted financial and other support, referrals and sales away from Plaintiffs and to Defendants instead, and severely harmed Plaintiffs' personal and professional reputations. Am. Comp. ¶ 74.

Thus, Plaintiffs and Defendants are direct competitors. Each of the courts found this to be commercial speech. *Haugen* is particularly instructive. The Tenth Circuit found that an email from an Amway provider accusing the president of Proctor & Gamble of being affiliated with the church of satan to be commercial speech. There was no reference the quality of any of Proctor & Gamble's products, but nonetheless, the Tenth Circuit correctly found this to be commercial speech despite the clear "noncommercial theological" component.

Here, as set forth in the Amended Complaint, the Defendant Jones, in concert with his co-Defendants, clearly engaged in commercial speech, as everything that he stated was intended to "and has, diverted financial and other support, referrals and sales away from Plaintiffs and to Defendants instead." Am. Comp. ¶ 74. The Amended Complaint explains Defendant Jones' economic motivation:

> Defendants, each and every one of them, in concert, do substantial business and promote and sell various goods in this judicial district and nationwide, including medicine, supplements, and "tchotchkes" with InfoWars branding. The money earned from these sales funded the conspiracy and concerted acts between amongst Defendants to defame, intimidate, coerce and threaten Plaintiffs in order to first try to improperly influence the Mueller Russian collusion investigation and subsequently try to coerce false testimony from Plaintiff Corsi at Stone's criminal prosecution favorable to Defendant Stone once he had been indicted. Am. Comp. ¶ 15.

Thus, Defendant Jones wished to harm Dr. Corsi and Mr. Klayman has direct competitors, with Dr. Corsi having broken away from Infowars in the past. By depriving Plaintiffs of revenue through false advertising, Defendant Jones, in concert with his co-Defendants, was attempting to make Plaintiffs less of a threat to Defendant Stone, who has long

been intricately tied to Infowars. Both Plaintiffs sell products and books on his websites, exactly like what Infowars does. Thus, there is clear economic motivation, economic speech, and economic injury.

This is far more compelling than even the facts in *Haugen* or *Porous Media*. Thus, it is indisputable that Defendant Jones, in concert with his co-Defendants, engaged in commercial speech and therefore Plaintiffs have properly alleged a cause of action under the Lanham Act.

At a minimum, Plaintiffs have made viable causes of action under the Lanham Act, and therefore sanctions under 15 U.S.C. § 1117(a) are clearly unwarranted.

### B.     Plaintiffs Did Not Litigate Unreasonably

Defendant Jones make the blanket assertion that Plaintiffs litigated unreasonably without any actual support for this frivolous allegation. They purportedly take issue with the fact that Plaintiffs filed an Amended Complaint—common litigation practice, which the Court accepted. There is nothing sanctionable about filing an Amended Complaint. "The court should freely give leave [to amend a Complaint] when justice so requires." Fed. R. Civ. P 15(a)(2). "Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999). The U.S. Supreme Court has declared that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1136 (D.C. Cir. 1989). The U.S. Supreme Court explained that "if the underlying facts or circumstances relied upon by a plaintiff may be a proper source of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 at 182. The Infowars Defendants' assertion amending a complaint just <u>one time</u> is "unreasonable" is laughable.

Defendant Jones also appears take issue with the fact that Plaintiffs filed four pleadings: (1) Plaintiffs Motion to Have Presiding Judge Decide Outstanding Motions to Dismiss, (2) Motion to Vacate the Report and Recommendation, (3) Objections to Report and Recommendation, and (4) Motion for Reconsideration. These four pleadings are in no way repetitive or vexatious. They were all filed for different, proper reasons, seeking independent forms of relief. The mere fact that the Court denied the relief sought by Plaintiffs does not render their pleadings vexatious. The Motion to Have Presiding Judge Decide Outstanding Motions to Dismiss sought to have the Honorable Lee Yeakel rule on Defendants' motions to dismiss notwithstanding Magistrate Austin's Report and Recommendation. The Motion to Vacate Report and Recommendation sought to vacate Magistrate Austin's Report and Recommendation. Plaintiffs' Objections to the Report and Recommendation were required as per the Court's instructions and the Federal Rules of Civil Procedure, and Plaintiffs Motion for Reconsideration seeks reconsideration of the adoption of the Report and Recommendation.

In sum, there was nothing remotely unreasonable with the way that Plaintiffs litigated this case, and as such, an award of sanction is entirely unwarranted under 15 U.S.C. § 1117(a).

## III.    The Amended Complaint Alleged Concerted Action For Clear Defamation

It is indisputable that the Amended Complaint expressly pled that Defendant Jones was working together in concert with his co-Defendants to defame Plaintiffs:

> Defendant InfoWars and Defendant Free Speech Systems are both owned, controlled, and operated by Defendant Alex Jones and David Jones. Defendant Free Speech Systems owns www.infowars.com, where content created by Defendants Alex Jones, Shroyer and Stone were at all material times posted and broadcast into this district, nationally and internationally. Comp. ¶ 11.

> Defendant David Jones is Defendant Alex Jones's father and holds the official title of Director of Human Relations for Defendant Free Speech Systems. On information and belief, Defendant David Jones is the owner of Defendant InfoWars and Free Speech Systems and he manages and controls the business and

related activities for Defendants InfoWars and Free Speech Systems, as well as Defendant Alex Jones' other companies. At all material times, he worked in concert with the other Defendants and Roger Stone and furthered and ratified the illegal acts set forth in this Complaint. Comp. ¶ 7

These factual allegations were only buttressed by the conclusive affidavit of Ms. Morales, set forth above, as well as affidavits of Mr. Klayman and Dr. Corsi that indisputably show that Defendant Jones directed, ratified, and personally participated in the defamation of Plaintiffs. In stark contrast, neither Defendant Jones nor his co-Defendants produced a single affidavit. Thus, especially where discovery was inexplicably, without legal justification and improperly cut off by Magistrate Austin, the express allegations of the Amended Complaint and the supporting affidavits can lead only to the finding that Defendant Jones did <u>personally participate</u> in the defamation.

Furthermore the defamatory statements at issue in this case are so outrageous that they are clearly defamatory on their faces, and they are defamatory *per se*, as they harm Plaintiffs in their trade and profession, and as such damages are presumed, as set forth in detail below. Statements that injure a person in her office, profession, or occupation are typically classified as defamatory per se. *Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013). This is indisputable. With regard to Dr. Corsi, these published statements are:

   **(1) "Plaintiff Corsi "seemed to be extremely mentally degraded to the point of what I would call dementia." Am. Comp. ¶ 42**

   **(2) Defendant Alex Jones purportedly saw Plaintiff Corsi at a steakhouse "on the ground at another table" and that his security staff "thought he was dead in the elevator." Am. Comp. ¶ 43**

   **(3) Accusing Plaintiff Corsi of having suffered a stroke, publishes maliciously that "whatever comes out of his mouth ain't the truth." Am. Comp. ¶ 44**

   **(4) that Plaintiff Corsi was "fired from World Net Daily." Am. Comp. ¶ 49**

(5) "He (Corsi) was perfectly willing to lie, to perjure himself saying that a memo that he had wrote me was written on the 30th for the purposes of cover-up.... which is further proof that Jerry lied under oath." Am. Comp. ¶ 50

(6) "and then states that I knew about John Podesta's emails being stolen in advance, the only proof of that is Jerry's feeble alcohol affected memory – it's a lie...." Am. Comp. ¶ 51

(7) "Jerry was prepared to stab a principle Trump supporter in the back, he was perfectly prepared to bear false witness against me, even though I had done nothing in my entire life other than help him." Am. Comp. ¶ 52

(8) "all I ever did was show Jerry Corsi friendship and support and try to help him and his family and what I get is Judas Iscariot, the willingness to testify against me and help the deep state bury me....and then he makes up this story about helping me formulate a cover story." Am. Comp. ¶ 53

(9) "… you can always tell when Jerry Corsi is lying because his lips are moving...." Am. Comp. ¶ 54

(10) "He [Corsi] was perfectly willing to bear false witness against me on multiple points that are complete fabrications." Am. Comp. ¶ 64

(11) "the good doctor [Corsi] has told a number of lies. In fact, he's starting to conflate his lies.... he was perfectly willing to lie about me.... but now lying about Alex Jones, lying about InfoWars, lying about Dr. (David) Jones, who's one of the nicest, gentlest, sweetest, most honest men I have ever met, it's beyond the pale.... Jerry Corsi can no longer be believed." Am. Comp. ¶ 65

(12) "I think you've [Corsi] been deep state from the beginning. Your whole birther thing is used as a club to destroy conservatives....I look forward to our confrontation. I will demolish you. You're a fraudster, out of your alcoholic haze you have made up lies about David Jones and Alex Jones and Roger Stone and now I suspect they want you to lie about the President." Am. Comp. ¶ 66

(13) Plaintiff Corsi of being a "spook, back and forth with different agencies," Am. Comp. ¶ 67

(14) Falsely publishing a false statement of Plaintiff Corsi "not being able to walk." Am. Comp. ¶ 6

These are all false statements of fact, of and concerning Dr. Corsi, which are extremely harmful

to Dr. Corsi's reputation, both personally and also professionally as an investigative journalist and New York Times best-selling author. There is also no dispute that there are no statute of limitations issues with regard to Dr. Corsi. Thus, not only were the defamation claims as to Dr. Cors and Defendant Jones not frivolous, they were clearly properly pled and should have survived dismissal. This is now on appeal.

With regard to Mr. Klayman, the false statements are equally damaging to his reputation both personally and professionally as a public interest advocate and private litigator.

> **(1) "He (Klayman) was ousted at Judicial Watch. Ask Tom Fitton [the current president of Judicial Watch] why he left. He was 'ousted' because of a 'sexual harassment complaint.'" Am. Comp. ¶ 56.**

> **(2) "He's (Klayman) never actually won a courtroom victory in his life." Am. Comp. ¶ 55**

> **(3) "For those people out there who think...that Larry Klayman's IQ is higher than 70, you're wrong..." Am. Comp. ¶ 62.**

> **(4) "He's (Klayman) incompetent, he's a numbskull, he's an idiot, he's an egomaniac, and he could be the single worst lawyer in America. With him as Jerry Corsi's lawyer, Corsi may get the electric chair. So your idea that he's a good guy is entirely wrong" Am. Comp. ¶ 59**

> **(5) Plaintiff Klayman is a "piece of garbage." Am. Comp. ¶ 61**

These statements, which were made by Defendant Stone, at the direction of and in concert with Defendant Jones and the other Defendants, was found to have occurred outside of Texas' one-year statute of limitations for defamation. However, Defendant Stone's inclusion in the lawsuit was not frivolous, and done in an abundance of caution because Plaintiffs believed that the Court may have found him an indispensable party under Fed. R. Civ. P. 19. In any event, the clearly defamatory nature of these statements are patently obvious, and, given the fact that the Defendants had argued that they wished to apply Florida substantive law in the form of the Florida Anti-SLAPP statute against Mr. Klayman, then Florida's two-year statute of limitations

would have applied for defamation claims as well.

## IV.    The Florida Anti-SLAPP Statute is Inapplicable

"As a general rule, questions of substantive law are governed by the laws of the state where the cause of action arose, but matters of remedy and procedure are governed by the laws of the state where the action is brought." *Brandon v. Ivie*, 2018 Tex. App. LEXIS 7417, at *3 (Tex. App. Aug. 22, 2018). "What is a matter of substance and what is a matter of procedure is determined by the law of the forum state…..**Under Texas conflict of law principles, courts apply non-substantive procedural rules of the forum state**." *Id*. (emphasis added). Indeed, as conceded by the Infowars Defendants in their frivolous motion, the U.S. Court of Appeals has already found that the Texas Anti-SLAPP law, or the Texas Citizens Participation Act ("TCPA") is procedural and not substantive, and therefore does not apply in federal court. *Klocke v. Watson*, 936 F.3d 240, 248-49 (5th Cir. 2019). This right here ends the inquiry, as "[u]nder Texas conflict of law principles, courts apply non-substantive procedural rules of the forum state." *Brandon*, 2018 Tex. App. 7417 at 3. Therefore, perhaps ironically, it is the Infowars Defendant's attempts to argue for the application of the Florida Anti-SLAPP statute that is clearly frivolous, brought in bad faith, and which should be sanctioned.

Furthermore, *arguendo*, even if the TCPA were deemed to be substantive, which again, the Fifth Circuit has already found it not to be, "questions of substantive law are governed by the laws of the state where the cause of action arose." *Id*. This Court has already made the finding that Texas is "where the cause of action arose," in its decision to apply Texas substantive law to this case, as evidenced by the application of the one-year defamation statute of limitations to Defendant Stone. Again, if the Court wishes to apply Florida substantive law to this case,

Plaintiffs would take no exception, as then the two-year statute of limitations for defamation would apply to Defendant Stone.

Defendant Jones merely adopts the frivolous arguments of his co-Defendants. As set forth previously, the two cases cited by the Infowars Defendants do not apply, as *Tobinick v. Novella*, 108 F. Supp. 3d 1299 (S.D. Fla. 2015) was decided on an analysis of the differences between the Florida Anti-SLAPP statute and the California Anti-SLAPP statute under Florida's choice of law provisions, and *Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013) was decided on an analysis of the differences between the District of Columbia Anti-SLAPP statute and the Nevada Anti-SLAPP statute under New York's choice of law provision. Neither is instructive here.

Lastly, even if the Florida Anti-SLAPP statute were to apply here (which again would mean that Florida's two-year statute of limitations for defamation would also apply) it should not apply to a federal court sitting in diversity because it conflicts with federal law. Fed. R. Civ. P. 8(a)(2) states that a pleading need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotations omitted). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual  content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. 678.

On the other hand, under Florida's Anti-SLAPP statute, once a Defendant makes a *prima facie* case that the Anti-SLAPP statute applies, the Plaintiff must demonstrate that the claims are not primarily based on First Amendment rights in connection with a public issue, and also not "without merit." *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 314 (Fla. Dist. Ct. App. 2019). Florida Courts have readily admitted that this places an extra burden on Plaintiffs—especially after Gundel—and indeed, the Court in *Lam v. Univision Communs.*, 2019 Fla. Cir. LEXIS 3475 even expressly spelled out how:

> In sum—and in contrast to the standard under 1.140—*Gundel* stands for the following propositions:
> • Rather than defendants having to show that plaintiffs have failed to state a claim, plaintiffs faced with an Anti-SLAPP motion have the burden to show their claims are not "without merit,"
> • As a result, courts need *not* accept their factual allegations as true or draw all inferences in their favor, and
> • Courts may look beyond the four corners of the complaint.
> Bearing in mind the ***Plaintiffs' heightened burden*** and the Court's obligation to subject their claims to increased scrutiny.…

*Id.* at 6-7. Thus, it is indisputable that Florida's Anti-SLAPP statute places additional burdens on the Plaintiff and is therefore in conflict with Fed. R. Civ. P. 8(a)(2), as interpreted by both *Iqbal* and *Twombly*.

This conflict is why many federal courts have found that their respective local Anti-SLAPP statutes do not apply to federal courts sitting in diversity jurisdiction, as is true here. The U.S. Court of Appeals for the District of Columbia Circuit has made this finding in *Abbas v. Foreign Policy Group*, 783 F.3d 1328, 1337 (D.C. Cir. 2015) ("In sum, Federal Rules 12 and 56 answer the same question as the D.C. Anti-SLAPP Act, and those Federal Rules are valid under the Rules Enabling Act. A federal court exercising diversity jurisdiction therefore must apply Federal Rules 12 and 56 instead of the D.C. Anti-SLAPP Act's special motion to dismiss provision."). The same conclusion has been reached by the U.S. Court of Appeals for the

Eleventh Circuit when applying Georgia's Anti-SLAPP statute. *Carbone v. CNN, Inc.*, 910 F.3d 1345 (11th Cir. 2018). Indeed, many states have even begin to find Anti-SLAPP statutes unconstitutional as well. *Leiendecker v. Asian Women United of Minn.*, 895 N.W.2d 623 (Minn. 2017); *Davis v. Cox*, 351 P.3d 862 (Wash. 2015).

The Infowars Defendants relied on a recent decision in *Bongino v. Daily Beast Co., LLC*, 2020 U.S. Dist. LEXIS 208381 (S.D. Fla. Aug. 6, 2020), which Defendant Jones has adopted here, to find Florida's Anti-SLAPP statute applicable to this instant case, even as Federal Court sitting in diversity jurisdiction. However, it is important to note that *Bongino* is not controlling authority on this Court, as it is also a District Court case that has not yet been reviewed by the Eleventh Circuit. Furthermore, the Court in *Bongino*'s analysis of the Florida Anti-SLAPP statute is erroneous.

The Court in *Bongino* first conceded that many federal courts have found their local Anti-SLAPP statute conflict with federal law and are therefore inapplicable. They include Georgia, California, Texas, and the District of Columbia. However, the *Bongino* court makes the following incorrect finding:

> Not so for Florida's anti-SLAPP statute. *See* Fla. Stat. § 768.295(4). Instead, it fuses with Rules 8, 12, and 56 by entitling the prevailing party to fees and costs if, after invoking the devices set forth by those rules, a court finds an action is "without merit" and thus prohibited.

Thus, the *Bongino* Court's rationale for finding that Florida's Anti-SLAPP statute was applicable was that it believed the statute to be only a fee-shifting provision that did not conflict with the Federal Rules of Civil Procedure. As shown above, this is simply not true.

Under the Federal Rules of Civil Procedure, a Plaintiff need only plead a "plausible" claim for relief. *See* Fed. R. Civ. P. 8(a)(2), *Twombly* and *Iqbal*. Florida's Anti-SLAPP statute, however, forces the Plaintiff to <u>prove</u> that his claims are not "without merit." This is clearly a

heightened, elevated burden and standard. This was again expressly recognized in *Lam v. Univision Communs.*, 2019 Fla. Cir. LEXIS 3475, where it characterized the Plaintiff's burden as a "heightened burden."

Accordingly, the Court's reasoning in *Bongino* was erroneous, as Florida's Anti-SLAPP statute <u>does</u> in fact conflict with the Federal Rules of Civil Procedure, like in Texas, California, District of Columbia, and Georgia, and therefore is inapplicable to a Florida federal court sitting in diversity.

Accordingly, there is simply no chance that the Florida Anti-SLAPP statute applies to this litigation. Defendant Jones should be ordered to pay Plaintiffs' attorneys' fees and costs for putting forth this argument and forcing Plaintiffs to expend the time and resources to Respond.

## V.      Sanctions Are Not Warranted Under 28 U.S.C. § 1927

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. As set forth below, Plaintiffs' legitimate conduct does not even come close to this standard.

First, there is no authority to apply 28 U.S.C. § 1927 to a *pro se* litigant. *Simmons v. Methodist Hosps. of Dall.*, 632 Fed. Appx. 784, 787 n.5 (5th Cir. 2015). The Infowars Defendants argue that nonetheless, this provision should be applied to Mr. Klayman, a *pro se* litigant, because he was acting "as his own lawyer." This reasoning is fundamentally flawed because every *pro se* litigant is "acting as his own lawyer." That's the whole point of *pro se* litigation. Thus, at a minimum, 28 U.S.C. § 1927 does not apply to Mr. Klayman acting *pro se*.

Further, 28 U.S.C. § 1927 does not apply to either of Plaintiffs under a substantive

analysis, as there was simply nothing "vexatious" about the pleadings cited by Defendant Jones

Defendant Jones takes apparent issue with Plaintiffs' attempts to protect their rights by moving

to stay and attempting to file a Second Amended Complaint after the Court had dismissed their

claims. Once, again, there is nothing vexatious about seeking to amend, Fed. R. Civ. P 15(a)(2).

There is also nothing vexatious about seeking a stay for the first time. Plaintiffs did not move in

this regard repeatedly. The mere fact that the Court improperly denied some of the relief sought

by Plaintiffs does not render their pleadings vexatious. This is why this matter is now on appeal

to the Fifth Circuit/

## VI.     The Infowars Defendants Fees Are Clearly Inflated

Even in the unlikely event that the Court determines that sanctions are warranted, the

amount of fees claimed by Defendant Jones is clearly hyper-inflated. Defendant Jones' counsel is

claiming that they have spent $109,452.90 in fees for a case decided at the motion to dismiss

stage. This is not even remotely believable.

The clearly bad-faith and hyper-inflated nature of the amount of claimed fees is perhaps

most obvious in the alleged 20.8 hours spent by Defendant Jones' counsel David Wachen, Esq.

in preparing the Motion to Dismiss Plaintiff's Amended Complaint, which totaled only 18 pages

of substance. This does not even include the hours purportedly spent by local counsel Gregory

Sapire, Esq. in conjunction with this motion, such as reviewing motions by Defendant Jones' co-

Defendants. Mr. Sapire's name does not even appear on Defendant Jones' motion to dismiss.

Thus, at a minimum, there needs to be an evidentiary hearing held to determine the

validity of Defendant Jones' claimed fees, as their counsel has asserted a patently unbelievable

and unreasonable amount for the amount of work actually done. This is underscored by the fact

that counsel for Defendant Jones has submitted sworn affidavits attesting to these clearly false

numbers. A full evidentiary hearing is needed in the interests of justice and fundamental fairness.

## VII.    Plaintiffs' Cross-Motion for Attorney's Fees and Costs

As shown conclusively above, there was absolutely no basis for Defendant Jones to move for sanctions against Plaintiffs. Not only was such a motion premature, as this matter is on appeal, it was entirely substantively meritless, and only filed for the purpose of bad faith, harassment, and, multiplying the pleadings needlessly. Accordingly, Plaintiffs move for sanctions against Defendant Jones for reasonable attorneys fees and costs for having to expend enormous time and resources to address this non-meritorious frivolous motion for sanctions. It is important to note that the Magistrate, who issued a flawed Report and Recommendation which must respectfully be reversed, did not himself recommend sanctions, only that the Court could consider them.  Nor has Judge Yeakel weighed in on the sanctions motions and ruled that sanctions be considered, other than referring Defendants motions pro forma to you honor.

## VIII.   Conclusion

As set forth above, Defendant Jones' motion for sanctions is entirely premature, as this matter is on  appeal to the U.S. Court of Appeals for the Fifth Circuit. In any event, sanctions are clearly unwarranted.

Plaintiffs had no choice but to file this lawsuit, as they were severely harmed, and continue to be harmed, by the malicious acts of Defendants which  not only to their personal reputations, but in their trades and professions, as defamation *per se*. Moreover, these are valid, strong and enforceable Lanham Act claims, as set forth in detail above, as the false advertising by direct competitors of Plaintiffs was another means to harm them and to reap profits for the Defendants at Plaintiffs' expense.

Lastly, the Defendant Jones' claimed amount of fees is clearly hyper-inflated and

patently unreasonable and unbelievable. Given the fact that Plaintiffs' claims were properly pled and Defendant Jones knew that there was no basis for him to seek sanctions against Plaintiffs, Plaintiffs hereby respectfully request that the Court order Defendant Jones to pay fees and costs for Plaintiffs having to have expended enormous time and resources to respond to this motion.

**Plaintiffs' respectfully request in the unlikely event that the issue of attorneys fees proceeds beyond a summary denial, a full evidentiary hearing on this matter is necessary as a matter of due process, as the fees and costs proffered to this Court are inflated, non-believable and potentially fraudulent.**

Dated: October 22, 2021                                  Respectfully Submitted,


                                                         /s/Sanjay Biswas
                                                         SANJAY BISWAS, Esq.
                                                         #24061235—Texas
                                                         #24966--Louisiana
                                                         11720 Duxbury Dr.
                                                         Frisco, Texas 75035
                                                         Telephone: (972)-866-5879
                                                         Email:sanjaybiswas41@gmail.com
                                                         Fax: 1-800-506-6804

                                                         *Counsel for Dr. Jerome Corsi*

                                                         /s/Larry Klayman
                                                         Larry Klayman, Esq.
                                                         7050 W. Palmetto Park Rd
                                                         Boca Raton FL, 33433
                                                         Email:leklayman@gmail.com
                                                         Tel: 561-558-5336

                                                         *Plaintiff Pro Se*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 22, 2021 a true copy of the foregoing was filed via

ECF and served to all counsel of record though the Court's ECF system.

/s/ Sanjay Biswas