**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

DR. JEROME CORSI, et al

                  Plaintiffs

       v.

INFOWARS, LLC, et al

              Defendants.

**Case Number:   1:20-cv-298-LY**

**HEARING RESPECTFULLY
REQUESTED**

**PLAINTIFFS JEROME CORSI'S AND LARRY KLAYMAN'S SURREPLY TO REPLY
TO OPPOSITION TO DEFENDANT DAVID JONES' MOTION FOR ATTORNEY'S
FEES AND COSTS AND CROSS MOTION FOR ATTORNEY'S FEES AND COSTS**

Plaintiffs Jerome Corsi and Larry Klayman ("Plaintiffs") hereby submit the following suprreply to Defendant David Jones' ("Defendant Jones") Reply to Opposition to Motion for Attorneys' Fees and Sanctions. ECF No. 169. This surreply is necessary to correct additional, continued misstatements made in Defendant Jones' reply. Indeed, Defendant Jones lists supposed "unsupported" arguments by Plaintiffs, when in fact, it is Defendant Jones who has continues to mislead and misrepresent material facts to the Court. There are addressed in turn:

**(1)  Accusing Dr. Jones of "malicious defamation" while conceding that Dr. Jones did not disseminate any allegedly defamatory statements**.

This is patently false.  Plaintiffs have clearly pled and provided affidavits that show that Defendant Jones was working together in concert with each of his co-Defendants. Just because Defendant Jones says that Plaintiffs' assertions are baseless does not make them so. Defendant Jones continues to disingenuously attempt to distance himself from the conduct of his-co-

Defendants, particularly in re-arguing that Plaintiffs' Lanham Act claims were "exceptionally weak." This flies in the face of the Amended Complaint, which alleged:

> Defendant David Jones is Defendant Alex Jones's father and holds the official title of Director of Human Relations for Defendant Free Speech Systems. On information and belief, Defendant David Jones is the owner of Defendant InfoWars and Free Speech Systems and he manages and controls the business and related activities for Defendants InfoWars and Free Speech Systems, as well as Defendant Alex Jones' other companies. Defendant David Jones is a citizen of Texas. At all material times he worked in concert with and as an agent for the other Defendants and Defendant Roger Stone and furthered, participated in and ratified the illegal acts set forth in this Complaint. He profits and profited at all material times financially and otherwise from the tortious acts of the other Defendants. Am. Comp. ¶ 8.

Again, at the initial hearing before Judge Yeakel in this matter, counsel for Defendant Jones attempted to make this argument that his client had no involvement, which was then correctly discounted at the pleading stage by Judge Yeakel:

> I have never encountered a defendant that wanted to be in a lawsuit or be sued. Never happened in private practice. None of my clients were ever properly sued when I was in private practice. Everyone I sued when I represented plaintiffs deserved to be in the lawsuit.

In any event, Plaintiffs buttressed the record with a sworn affidavit from Kelly Morales, Defendant Alex Jones' ex-wife, which showed that Defendant Jones is intricately involved in every single facet of Infowars' operations, including its "defamation for profit":

> I am the former wife of Defendant Alex Jones. I was married to Alex Jones for 12 years and with him for 15 years and we have 3 children together. During our time together, I was involved in the activities of Alex, his father David and Infowars and am intimately knowledgeable about their activities and business structure.

> Based on my personal knowledge and experience, David Jones runs Infowars with Alex Jones and helps him with his activities, including fixing media stories and endorsing and/or aiding his slanderous and/or fraudulent behaviors, all for profit.

> Infowars, LLC is a sub-entity of Free Speech Systems, LLC ("FSS"), and David Jones is an employee of FSS, or he has been.

> David Jones is additionally a managing member of multiple entities that are

closely held businesses, constituting financial holding companies or financial distribution centered around Infowars/Alex Jones' supplement line, which are quintessential to funding and running Infowars.

Alex Jones could not function without David Jones, and has conspired with him on the past to commit this breach of fiduciary duty and fraud on my business with Alex Jones. While David Jones did this, he slandered and/or defamed me to experts and assisted Alex Jones and his attorneys to do the same, so as to steal/hide my estate and his grandchildren's inheritance.

David Jones is additionally a managing member of multiple entities that are closely held businesses, constituting financial holding companies or financial distribution centered around Infowars/Alex Jones' supplement line, which are quintessential to funding and running Infowars. ECF No. 74, Ex. 3. <u>Exhibit 1.</u>

**(2) Claiming Defendants created the "false impression" that Plaintiffs have "filed the same case over and over" while admitting to suing Dr. Jones on identical allegations and claims in two Florida cases during the pendency of this case AND (3) Claiming "each case was brought [for] a different purpose" without explaining what possible legitimate purpose there was for suing Dr. Jones on the same allegations and claims in multiple courts simultaneously.**

Defendant Jones, in line with the repeated strategy of his co-Defendants, does disingenuously attempt to create the misleading if not outright false impression that Plaintiffs have filed the same case over and over again. Again, this is simply not the case. Plaintiffs filed this case *first*, in the U.S. District Court for the District of Columbia, on March 7, 2019. This case was then transferred to this Court on March 20, 2020. The case before Judge Altman in the U.S. District Court for the Southern District of Florida was not filed until April 20, 2020, and was brought by Plaintiff Klayman *only*. *Klayman v. Infowars*, LLC, et al., Case No. 9:20-cv-80614 (S.D. Fla.). Notably, this case was not dismissed by Judge Altman, but instead, in actuality and in truth, Mr. Klayman took a voluntary dismissal when, based on Altman's refusal to respond to Mr. Klayman's inquiry and other circumstances, he concluded based on objective

3

facts that the judge likely had a personal relationship with Roger Stone and had likely been recommended for appointment by President Trump to the federal bench by Stone, one of the Defendants. Thus, there was never any judicial determination on the merits in this case, contrary to the false statements of the Defendants.

*Klayman v. Infowars, LLC et al*, 0:20-cv-61912 (S.D. Fl.), also was brought by Plaintiff Klayman *only* and not Dr. Corsi. It also included Defendant Stone from the very outset, whereas Defendant Stone was only added to this action as a part of the Amended Complaint out of an abundance of caution because Plaintiffs believed that Court might find him an indispensable party. Fed. R. Civ. P. 19. Thus, each case was brought a different purpose, and they are not duplicative or repetitive, contrary to Defendant Jones' disingenuous if not false  assertions. Indeed, as set forth previously, Mr. Klayman and Dr. Corsi offered to consolidate these cases, but it was the Defendants who refused, showing that their intention all along was to "play games" and attempt to disingenuously and misleadingly assert that Plaintiffs have filed repetitive lawsuits.

Lastly, it is important to point out that there is nothing inherently wrong about multiple lawsuits, as they serve a specific purpose. For instance, only yesterday, November 15, 2021, Alex Jones was found liable for defamation in the fourth defamation case brought by the Sandy Hook victims' families. Exhibit 2.

**(4) Claiming their Lanham Act theory was "exceptionally strong" despite its rejection by this Court, a Florida federal judge, and the D.C. Circuit AND (5) Claiming Dr. Jones is a "direct competitor" while conceding that he is not a media personality, broadcaster, author, columnist, or lawyer, and, in his limited role as Director of Human Relations, did not compete with Plaintiffs.**

Plaintiffs' Lanham Act theory was exceptionally strong. The fact that this Court rejected it erroneously, particularly where there are strong indications that there has been external pressure and undue influence exerted, does not render Plaintiffs' assertion false. . The dismissal by the Court is subject to appeal to the U.S. Court of Appeals for the Fifth Circuit. Plaintiffs respectfully assert that the Court's adoption of the Magistrate's Report and Recommendation that Plaintiffs lacked standing was in error and that it will be reversed on appeal by the Fifth Circuit. As set forth above, Plaintiffs have expressly pled that Defendant Jones was working together in concert with the other Defendants, and has provided affidavits which show that Defendant Jones was, in fact, at the top of this malicious operation and therefore personally participated in every single allegation of the Amended Complaint. Thus, the Lanham Act claims against Defendant Jones are, in fact, exceptionally strong.

In *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983) the Supreme Court set forth a three-factor test for determining whether speech is commercial. These factors are (i) whether the communication is an advertisement, (ii) whether it refers to a specific product or service, and (iii) whether the speaker has an economic motivation for the speech.

In *Bolger*, the Supreme Court found that "informational pamphlets discussing the desirability and availability of prophylactics in general or Youngs' products in particular" constituted commercial speech despite the fact that they contained "discussions of important public issues such as venereal disease and family planning." *Id*.at 67. In doing so, the Supreme Court reasoned:

> We have made clear that advertising which "links a product to a current public debate" is not thereby entitled to the constitutional protection afforded noncommercial speech. *Central Hudson Gas & Electric Corp.* v. *Public Service Comm'n of New York*, 447 U.S., at 563, n. 5. A company has the full panoply of protections available to its direct comments on public issues, so there is no reason for providing similar constitutional protection when such statements are made in

the context of commercial transactions. See *ibid*. Advertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues. *Id*. at 68.

The *Bolger* case definitively rebuts the strategy of attempting to mischaracterize the issue as competition in the "marketplace of ideas." A Defendant cannot escape liability under the Lanham Act simply by disguising their commercial speech as public discourse.

Other circuits have reached the same conclusion. In *Procter & Gamble Co. v. Haugen*, 222 F.3d 1262 (10th Cir. 2000), the Tenth Circuit found that the following was commercial speech:

> I wanna run something by you real quick that I think you will find pretty interesting. Just talking to a guy the other night about this very subject and it just so happens that a guy brings information in and lays it on my desk this morning, so here it goes.
> It says the president of Procter & Gamble appeared on the Phil Donahue Show on March 1, '95. He announced that due to the openness of our society, he was coming out of the closet about his association with the church of satan. He stated that a large portion of the profits from [P&G] products go to support his satanic church. When asked by Donahue if stating this on television would hurt his business, his reply was, "There are not enough Christians in the United States to make a difference." And below it has a list of the [P&G] products which I'll read: [the subject message then lists 43 P&G products].
> It says if you are not sure about a product, look for the symbol of the ram's horn that will appear on each product beginning in April. The ram's horn will form the 666 which is known as satan's number. I'll tell you it really makes you count your blessings to have available to all of us a business that allows us to buy all the products that we want from our own shelf and I guess my real question is, if people aren't being loyal to themselves and buying from their own business, then whose business are they supporting and who are they buying from. Love you. Talk to you later. Bye.

In doing so, the Tenth Circuit reasoned:

> In the present case, we are likewise dealing with a message containing both a noncommercial, "theological" component and a commercial component. As *Bolger* and *Fox* indicate, however, the bare fact that the subject message contains a "theological" component is insufficient to transform it into noncommercial speech.
>
> Furthermore, we reject appellees' assertion that the subject message does not

promote "commercial transactions." On the contrary, the message unambiguously urges recipients to eschew purchasing P&G products in favor of Amway products. While economic motivation or reference to a specific brand name and products, when viewed in isolation, might not render a message commercial speech, we conclude that those factors taken together with the instant message's promotion of Amway products at the expense of P&G products support the characterization of the subject message as commercial speech.

Similarly, in *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109 (8th Cir. 1999), the Eighth Circuit found that the following was commercial speech:

> *ALERT* Please be advised that a filter has been introduced to the marketplace that in *appearance* seems to be a "clone" of the Pall Breathing Circuit Filter (BB-50T). Be advised that the similarity *ends* with appearance. The attached [set of reports] notes a serious *hydrophobic deficiency* as to the competitive product. The "clone" device is offered by a company called Porous Media. If your particular application for the Pall BB-50T operates in *any* moist, wet, high-humidity (condensation) environment, then you will run into "product occurrence" situations routinely should you utilize the Porous Media device instead of the Pall BB-50T. I urge you or your engineering staff to consider the enclosed, and conduct your own tests for verification if necessary. Please contact me with any questions or comments.

In doing so, the Eighth Circuit reasoned, "**Whatever nobler concerns may have driven Pall to inform the market of the public health dangers allegedly posed by Porous's non-hydrophobic filter, "commercial speech" need not originate *solely* from economic motives**." (emphasis added).

Both *Porous Media* and *Haugen* involved one competitor denigrating the quality of another competitor's goods and/or services for their financial gain, which is exactly what is alleged here:

> Plaintiffs, like Defendants, rely on viewer and listener financial and other support and sales and their reputations and good will in order to continue their work. Defendants' false and/or misleading statements concerning Plaintiffs is meant to, and has, diverted financial and other support, referrals and sales away from Plaintiffs and to Defendants instead, and severely harmed Plaintiffs' personal and professional reputations. Am. Comp. ¶ 74.

Thus, Plaintiffs and Defendants are direct competitors. Each of the courts found this to be

commercial speech. *Haugen* is particularly instructive. The Tenth Circuit found that an email from an Amway provider accusing the president of Proctor & Gamble of being affiliated with the church of satan to be commercial speech. There was no reference the quality of any of Proctor & Gamble's products, but nonetheless, the Tenth Circuit correctly found this to be commercial speech despite the clear "noncommercial theological" component.

Here, as set forth in the Amended Complaint, the Defendant Jones, in concert with his co-Defendants, clearly engaged in commercial speech, as everything that he stated was intended to "and has, diverted financial and other support, referrals and sales away from Plaintiffs and to Defendants instead." Am. Comp. ¶ 74. The Amended Complaint explains Defendant Jones' economic motivation:

> Defendants, each and every one of them, in concert, do substantial business and promote and sell various goods in this judicial district and nationwide, including medicine, supplements, and "tchotchkes" with InfoWars branding. The money earned from these sales funded the conspiracy and concerted acts between amongst Defendants to defame, intimidate, coerce and threaten Plaintiffs in order to first try to improperly influence the Mueller Russian collusion investigation and subsequently try to coerce false testimony from Plaintiff Corsi at Stone's criminal prosecution favorable to Defendant Stone once he had been indicted. Am. Comp. ¶ 15.

Thus, Defendant Jones wished to harm Dr. Corsi and Mr. Klayman as direct competitors, with Dr. Corsi having broken away from Infowars in the past. Defendant Jones, as the *de facto* head of Infowars, as set forth in Ms. Morales' affidavit, clearly is a direct competitor of the Plaintiffs. By depriving Plaintiffs of revenue through false advertising, Defendant Jones, in concert with his co-Defendants, was attempting to make Plaintiffs less of a threat to Defendant Stone, who has long been intricately tied to Infowars. Both Plaintiffs sell products and books on his websites, exactly like what Infowars does. Thus, there is clear economic motivation, economic speech, and economic injury.

This is far more compelling than even the facts in *Haugen* or *Porous Media*. Thus, it is indisputable that Defendant Jones, in concert with his co-Defendants, engaged in commercial speech and therefore Plaintiffs have properly alleged a cause of action under the Lanham Act. At a minimum, Plaintiffs have made viable causes of action under the Lanham Act, and therefore sanctions under 15 U.S.C. § 1117(a) are clearly unwarranted.

**(6) Suggesting they couldn't amend their Complaint after obtaining the Morales affidavit in September 2020 even though the deadline for amendments was in November 2020 AND (7) Suggesting the Morales affidavit proves Dr. Jones was "personally involved" in the conduct at issue, even though the affidavit makes no mention of the allegedly defamatory statements or Dr. Jones's alleged involvement with Plaintiffs' claimed conspiracy, and is based on observations from three years before the statements at issue were made.**

This is another completely false accounting of what actually occurred. Plaintiffs never once suggested that they could not amend their Complaint after obtaining Ms. Morales' affidavit. Indeed, they have moved for leave to file a Second Amended Complaint containing Ms. Morales' affidavit. This is indisputable. Furthermore Defendant Jones now argues that Ms. Morales' affidavit is "stale" because she was divorced from Alex Jones in 2015. However, it is by no means a stretch of the imagination to believe that Defendant Jones still interacts in the same with his son, Alex Jones, and the other Defendants just a few mere years later. Tellingly, Defendant Jones has not provided any affidavit in this regard either. At a minimum, this creates a factual question that was not properly disposed of at the motion to dismiss stage, and further underscores why discovery was needed in this case and why it was such a prejudicial error for Magistrate Austin to deny this to Plaintiffs.

**(8) Arguing that Dr. Jones's lead counsel spent 20.8 hours on Dr. Jones's successful motion to dismiss when time records reflect only 14 hours on the motion, which addressed Plaintiffs' six causes of action in their 109-paragraph Amended Complaint; AND (10) Asserting that attorney Sapire's name does not appear on Dr. Jones's motion to dismiss even though his name appears on the cover and signature pages.**

As set forth previously, even in the unlikely event that the Court determines that sanctions are warranted, the amount of fees claimed by Defendant Jones is clearly hyper-inflated. Defendant Jones' counsel is claiming that they have spent $109,452.90 in fees for a case decided at the motion to dismiss stage. This is not even remotely believable.

Defendant Jones' counsel doubles down on his questionable accounting in claiming that he actually only spent 14 hours on Defendant Jones' Motion to Dismiss the Amended Complaint. This entirely omits the billed charges on September 1, 2020 for 0.1 hours and on September 2, 2020 for 2.2 hours. Furthermore On August 11, 2020, counsel billed a total of 2.5 hours on tasks including the Motion to Dismiss, although the amount of time actually spent on the motion is not clear. This underscores why a full evidentiary hearing and discovery is necessary, should the Court find that Defendant Jones is entitled to any fees at all. This is in the interest of fundamental fairness and justice that counsel only be allowed to recover fees for the actual work done, not whatever is put on a billing statement with no verification. Indeed, this is not the only instance of questionable accounting that Plaintiffs assert. This is just one egregious example, as set forth in Plaintiffs' opposition brief. This is just meant to show the Court exactly why a full evidentiary hearing and discovery are necessary.

With regard to Mr. Sapire, his "participation" in this case was minimal at best, and has gone mostly unnoticed. Although his name appears on Defendant Jones' Motion to Dismiss, he

does not even sign his name. This evidences the clearly minimal input and collaboration, with his inclusion being just a formality. Again, this shows why a full evidentiary hearing and discovery is needed on the issue of fees.

**(9) Claiming Dr. Jones's fee motion is "entirely premature" despite rules requiring its filing within 14 days of judgment, the Court's permitting the filing when it was filed, and Plaintiffs' counsel's agreeing to the timetable.**

This misrepresents and misconstrues Plaintiffs' arguments. Plaintiffs are clearly arguing that Defendant Jones' motion is premature because this matter is on appeal to the U.S. Court of Appeals for the Fifth Circuit. A decision favorable to Plaintiffs would clearly moot out Defendant Jones' motion, thus rendering it premature.

**(11) Claiming Plaintiffs' entitlement to fees and costs despite having their case dismissed with prejudice and without offering any authority for "winner pays" fee-shifting.**

Again, this misrepresents and misconstrues Plaintiffs' arguments. Plaintiffs are not arguing for "winner pays" fee shifting. Plaintiffs argued that Defendant Jones and his co-Defendants should be ordered to pay. fees for making false representations to the Court and making frivolous and baseless filings.

**(12) Asserting that Plaintiffs did not argue why Florida's Anti-SLAPP statute is inapplicable**

Defendant Jones' arguments that the Florida Anti-SLAPP statute is applicable are disingenuous and misleading. Mr. Klayman's argument has been that Florida's Anti-SLAPP statute <u>does</u> create an extra burden on litigants, and therefore conflicts with the Federal Rules of Civil Procedure. Importantly, however, this inquiry need not even be reached as it is clear that Florida's Anti-SLAPP statute does not apply in this Court in the Western District of Texas.

"As a general rule, questions of substantive law are governed by the laws of the state where the cause of action arose, but matters of remedy and procedure are governed by the laws of the state where the action is brought." *Brandon v. Ivie*, 2018 Tex. App. LEXIS 7417, at *3 (Tex. App. Aug. 22, 2018). "What is a matter of substance and what is a matter of procedure is determined by the law of the forum state…..**Under Texas conflict of law principles, courts apply non-substantive procedural rules of the forum state**." *Id*. (emphasis added). Indeed, as conceded by the Infowars Defendants in their frivolous motion, the U.S. Court of Appeals has already found that the Texas Anti-SLAPP law, or the Texas Citizens Participation Act ("TCPA") is procedural and not substantive, and therefore does not apply in federal court. *Klocke v. Watson*, 936 F.3d 240, 248-49 (5th Cir. 2019). This right here ends the inquiry, as "**[u]nder Texas conflict of law principles, courts apply non-substantive procedural rules of the forum state**." *Brandon*, 2018 Tex. App. 7417 at 3.

Furthermore, *arguendo*, even if the TCPA were deemed to be substantive, which again, the Fifth Circuit has already found it to not be, "questions of substantive law are governed by the laws of the state where the cause of action arose." *Id*. This Court has already made the finding that Texas is "where the cause of action arose," in its decision to apply Texas substantive law to this case, as evidenced by the application of the one-year defamation statute of limitations to Defendant Stone. Again, if the Court wishes to apply Florida substantive law to this case, Plaintiffs would take no exception, as then the two-year statute of limitations for defamation would apply to Defendant Stone.

Lastly, even if the Florida Anti-SLAPP statute were to apply here (which again would mean that Florida's two-year statute of limitations for defamation would also apply) it should not apply to a federal court sitting in diversity because it conflicts with federal law. Fed. R. Civ. P.

8(a)(2) states that a pleading need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotations omitted). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual  content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. 678.

On the other hand, under Florida's Anti-SLAPP statute, once a Defendant makes a *prima facie* case that the Anti-SLAPP statute applies, the Plaintiff must demonstrate that the claims are not primarily based on First Amendment rights in connection with a public issue, and also not "without merit." *Gundel v. AV Homes, Inc*., 264 So. 3d 304, 314 (Fla. Dist. Ct. App. 2019). Florida Courts have readily admitted that this places an extra burden on Plaintiffs—especially after Gundel—and indeed, the Court in *Lam v. Univision Communs*., 2019 Fla. Cir. LEXIS 3475 even expressly spelled out how:

> In sum—and in contrast to the standard under 1.140—*Gundel* stands for the following propositions:
> • Rather than defendants having to show that plaintiffs have failed to state a claim, plaintiffs faced with an Anti-SLAPP motion have the burden to show their claims are not "without merit,"
> • As a result, courts need *not* accept their factual allegations as true or draw all inferences in their favor, and
> • Courts may look beyond the four corners of the complaint.
> Bearing in mind the ***Plaintiffs' heightened burden*** and the Court's obligation to subject their claims to increased scrutiny….

*Id*. at 6-7. Thus, it is indisputable that Florida's Anti-SLAPP statute places additional burdens on

the Plaintiff and is therefore in conflict with Fed. R. Civ. P. 8(a)(2), as interpreted by both *Iqbal* and *Twombly*.

Defendant Jones  cites a recent decision in *Bongino v. Daily Beast Co., LLC*, 2020 U.S. Dist. LEXIS 208381 (S.D. Fla. Aug. 6, 2020),, to find Florida's Anti-SLAPP statute applicable to this instant case, even as Federal Court sitting in diversity jurisdiction. However, it is important to note that *Bongino* is not controlling authority on this Court, as it is also a District Court case that has not yet been reviewed by the Eleventh Circuit. Furthermore, the Court in *Bongino*'s analysis of the Florida Anti-SLAPP statute is erroneous.

The Court in *Bongino* first conceded that many federal courts have found their local Anti-SLAPP statute conflict with federal law and are therefore inapplicable. They include Georgia, California, Texas, and the District of Columbia. However, the *Bongino* court makes the following incorrect finding:

> Not so for Florida's anti-SLAPP statute. *See* Fla. Stat. § 768.295(4). Instead, it fuses with Rules 8, 12, and 56 by entitling the prevailing party to fees and costs if, after invoking the devices set forth by those rules, a court finds an action is "without merit" and thus prohibited.

Thus, the *Bongino* Court's rationale for finding that Florida's Anti-SLAPP statute was applicable was that it believed the statute to be only a fee-shifting provision that did not conflict with the Federal Rules of Civil Procedure. As shown above, this is simply not true.

Under the Federal Rules of Civil Procedure, a Plaintiff need only plead a "plausible" claim for relief. *See* Fed. R. Civ. P. 8(a)(2), *Twombly* and *Iqbal*. Florida's Anti-SLAPP statute, however, forces the Plaintiff to <u>prove</u> that his claims are not "without merit." This is clearly a heightened, elevated burden and standard. This was again expressly recognized in *Lam v. Univision Communs.*, 2019 Fla. Cir. LEXIS 3475, where it characterized the Plaintiff's burden as a "heightened burden."

Accordingly, the Court's reasoning in *Bongino* was erroneous, as Florida's Anti-SLAPP statute <u>does</u> in fact conflict with the Federal Rules of Civil Procedure, like in Texas, California, District of Columbia, and Georgia, and therefore is inapplicable to a Florida federal court sitting in diversity.

Thus, in conclusion, Plaintiffs' respectfully request in the unlikely event that  the issue of attorneys fees proceeds beyond a summary denial,  a full evidentiary hearing on this matter is necessary as a matter of due process, as the fees and costs proffered to this Court are inflated, non-believable and potentially fraudulent.

Lastly, Plaintiffs have recently discovered, based on disclosure by Ms. Morales, that Judge Yeakel allegedly sits or sat as a director of the Headliners Club in Austin along with counsel for the Infowars Defendants, David Minton. There is no telling whether, and to what extent, *ex parte* communications regarding this case occurred. This requires further investigation as well before any further proceedings occur, as set forth in <u>Exhibit 3.</u>

Dated: November 16, 2021                                    Respectfully Submitted,


                                                           */s/Sanjay Biswas*_____
                                                           SANJAY BISWAS, Esq.
                                                           #24061235—Texas
                                                           #24966--Louisiana
                                                           11720 Duxbury Dr.
                                                           Frisco, Texas 75035
                                                           Telephone: (972)-866-5879
                                                           Email:sanjaybiswas41@gmail.com
                                                           Fax: 1-800-506-6804

                                                           *Counsel for Dr. Jerome Corsi*

                                                           */s/Larry Klayman*_____
                                                           Larry Klayman, Esq.
                                                           7050 W. Palmetto Park Rd
                                                           Boca Raton FL, 33433
                                                           Email:leklayman@gmail.com

Tel: 561-558-5336

*Plaintiff Pro Se*


### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 16, 2021 a true copy of the foregoing was filed via ECF and served to all counsel of record though the Court's ECF system.

*/s/ Sanjay Biswas*